IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER INC.,<br><br>    Defendant. | CIVIL ACTION NO. 6:19-CV-00059-RWS<br><br>**LEAD CASE** |

## ORDER

Before the Court is ASUSTeK Computer Inc.'s motion to dismiss for failure to state a claim.  Docket No. 24 (incorporating Docket No. 29); *see also* Docket No. 29.  That motion is **GRANTED-IN-PART** and **DENIED-IN-PART**.

## BACKGROUND

Lone Star's First Amended Complaint ("FAC") accused ASUSTeK of infringing U.S. Pat. No. 6,724,435.  Docket No. 22.  According to Lone Star, the '435 Patent "relate[s] to systems and methods for selecting and adjusting [an] individual color in a real time digital video image (*i.e.* changing the hue or saturation of a selected individual color) without affecting other colors."  Docket No. 30 at 5.  The '435 Patent has two independent claims—Claims 1 and 17—and 30 dependent claims.  Claim 17 recites:

> 17. A system for independently controlling hue or saturation of individual colors in a real time digital video image, comprising:
>
>> (a) a real time digital video image display device displaying the real time digital video image featuring input image pixels;
>>
>> (b) a master control device in operative electronic communication with and controlling said real time digital video image display device; and

> (c) a viewer of said real time digital video image display device operating said master control device for selecting to independently change the hue or the saturation of an individual color in the real time digital video input image, by selecting an independent color hue control delta value or an independent color saturation control delta value featured on said master control device, respectively, Wherein said independent color hue control delta value represents an extent of change in the hue of said selected individual color and Wherein said independent color saturation control delta value represents an extent of change in the saturation of said selected individual color, Whereby said real time digital video image display device in said operative electronic communication With said master control device per forms steps including:
>
>> (i) identifying a plurality of said input image pixels having said selected individual color in the real time digital video input image with the hue or the saturation selected to be independently changed, by performing arithmetic and logical operations using input image pixel values of each said input image pixel of the real time digital video input image;
>>
>> (ii) determining corresponding output image pixel values for each of said plurality of said input image pixels identified as having said selected individual color in the real time digital video input image with the hue or the saturation selected to be independently changed, by separately evaluating independent color hue control functions or independent color saturation control functions, respectively, using said input image pixel values of said plurality of said input image pixels, and using corresponding said selected independent color hue control delta value or said corresponding selected independent color saturation control delta value, for forming a corresponding plurality of output image pixels having said selected individual color with the hue or the saturation selected to be independently changed; and
>>
>> (iii) displaying a real time digital video output image including said corresponding plurality of said output image pixels having said selected individual color with the hue or the saturation selected to be independently changed in the real time digital video input image, whereby the hue or the saturation of said selected individual color in the real time digital video input image has been changed without affecting the hue or the saturation of any other individual color in the real time digital video input image.

'435 Patent col. 29.

Lone Star accused ASUSTeK of direct infringement—both individually and as a member of a joint enterprise—and of indirect infringement—both by contributing to others' infringement

and by inducing others to infringe.  Docket No. 22.  To support those allegations, Lone Star attached a chart to its FAC that purports to map the ASUS PA32UC 32-inch Ultra HD Monitor (the "ASUSTeK Monitor") to each claim of the '435 Patent.  Docket No. 22-2.

Lone Star's complaint and claim charts alleged the ASUSTeK Monitor "directly infringe[s] one or more claims of the '435 Patent, including . . . claim 17 . . . ."  Docket No. 22 ¶ 14.  Lone Star cited several screen shots from the PA32U Series LCD Monitor: User Guide to support its allegation.  For example, Lone Star alleged the screen shot below shows that "[t]he hue (e.g., color) of individual colors displayed by the Accused Device can be adjusted. The number of colors that can be adjusted is 3:"

- **Advanced Setting**:
    * Six-axis Hue adjustment.
    * Six-axis Saturation adjustment.
    * Adjusts the gain levels for R, G, B.
    * Adjusts the black level offset values for R, G, B.

Docket No. 22-2 at 118.  In addition, Lone Star alleged "[t]he precise manner in which the Accused Device is configured to perform this limitation is not publically [sic] known and therefore Plaintiff reserves the right to supplement these infringement contentions once it has been afforded discovery."  *Id.* at 121.

Lone Star also alleges certain acts of direct infringement are attributable to ASUSTeK because ASUSTeK either (1) "direct[s] and/or control[s] other parties, including through a contractual relationship" or (2) "conditions participation in an activity or receipt of a benefit of its performance of a step or steps and establishes the manner or timing of that performance."  Docket

No. 20 ¶ 16. Lone Star does not provide any example contracts, but it does allege the benefits of the ASUSTeK Monitor are obtained by third parties when following ASUSTeK's instructions to change the hue or saturations of individual colors. *Id.* ¶ 17.

Lone Star further alleges that ASUSTeK induces others to infringe the '435 Patent. According to Lone Star, ASUSTeK's customers directly infringe on claim 1 of the '435 patent, and "[w]ith knowledge of the Patent-in-Suit, [ASUSTeK] intentionally provide[s] services and instructions for the installation and infringing operation of infringing products (including, by way of example, the resources, materials, and customer support available at [ASUSTeK's website]." *Id.* ¶ 19. For example, Lone Star argues ASUSTeK "advertises [the infringing] feature on its website: '6-axis independent color adjustment: Customized hue and saturation control with 6 color adjustment allows you to adjust six colors (red, green, blue, cyan, magenta and yellow) independently without effecting other colors.' " *Id.* ¶ 20.

Finally, Lone Star alleges that ASUSTeK contributes to others' direct infringement of the '435 Patent "by instructing or specifying that its customers operate its accused products in a manner to change the saturation and/or hue of individual colors." *Id.* According to Lone Star, ASUSTeK's "products contain the functionality to specifically allow changes to the hue and/or saturation of an individual color – functionality which is material to practicing the Patent-in-Suit. Based on information and belief, this functionality has no substantially non-infringing uses and is only used to change the hue and/or saturation of an individual color." *Id.* ¶ 21. Again, Lone Star notes:

> [t]he asserted claims include elements that are implemented, at least in part, by proprietary electronics, firmware and software in the Accused Device. The precise designs, processes, and algorithms used in them are held secret, at least in part, and are not publicly available in their entirety. An inspection of the Accused Device, and an analysis of Asus's documentation and/or source code may be necessary to fully and accurately describe all infringing features and functionality of the

>Accused Device and, accordingly, Plaintiff reserves the right to supplement these contentions once such information is made available to Plaintiff.

Docket No. 22-2 at 1; *see also* Docket No. 22-2 at 9.

## LEGAL STANDARD

### I. Motion to Dismiss

When considering a motion to dismiss under Federal Rule of Procedure 12(b)(6), a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then decide whether those facts state a claim that is plausible on its face. *Bowlby*, 681 F.3d at 219. The complaint need not contain detailed factual allegations, but a plaintiff must plead sufficient factual allegations to show that he is plausibly entitled to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–79, 684 (2009) (discussing *Twombly* and applying *Twombly* generally to civil actions pleaded under Rule 8). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

### II. Direct Infringement: 35 U.S.C. § 271(a)

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). For systems claims, a defendant

must "combine all of the claim elements" to make the patented system. *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1288 (Fed. Cir. 2011). For method claims, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). The latter circumstance, when all steps of a claimed method are merely attributable to a single entity, is often referred to as divided infringement. *See id.*

An entity is responsible for others' performance of method steps, and thus may be liable under a divided infringement theory, in two circumstances: "(1) where that entity directs or controls others' performance, and (2) where the actors form a joint enterprise." *Id.* A strict principle-agent relationship, contractual relationship or joint enterprise, however, is not required. *Id.* at 1023. Instead, the touchstone of divided infringement is "whether all method steps can be attributed to a single entity." *Id.*

To determine whether an entity directs or controls others' performance, courts look to general principles of vicarious liability. *Akamai Techs., Inc.*, 797 F.3d at 1023. An actor is liable for infringement if they act through an agent or contract with another to perform one or more steps of a claimed method. *Id.* Similarly, an actor may be liable when they "condition[] participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establish[] the manner or timing of that performance." *Id.*

To determine whether two or more actors form a joint enterprise, the United States Court of Appeals for the Federal Circuit applies a four-pronged test. *Id.* That test requires the plaintiff to prove four elements:

(1) an agreement, express or implied, among the members of the group;

(2) a common purpose to be carried out by the group;

(3) a community of pecuniary interest in that purpose, among the members; and

(4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Id.*

### III. Induced Infringement: 35 U.S.C. § 271(b)

Induced infringement under 35 U.S.C. § 271(b) requires: (1) an act of direct infringement by another and (2) that the defendant knowingly induced the infringement with the specific intent to encourage the other's infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Thus, the complaint must (1) adequately plead direct infringement by the defendant's customers, (2) contain facts plausibly showing that the defendant specifically intended for its customers to infringe and (3) contain facts plausibly showing that defendant knew the customer's acts constituted infringement. *See In re Bill of Lading Transmission & Processing Sys. Patent Lit.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012). The Federal Circuit has held "that inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to engage in an infringing use." *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018).

### IV. Contributory Infringement: 35 U.S.C. § 271(c)

To establish contributory infringement under 35 U.S.C. § 271(c), "the patent owner must show the following elements . . . : (1) that there is direct infringement, (2) that the accused infringer had knowledge of the patent, (3) that the component has no substantial noninfringing uses, and (4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

"Functions of [an] accused product . . . [that] are 'separate and distinct' must [be] treated separately in analyzing contributory infringement." *Id.* at 1331 (citing *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010)). An infringer cannot "escape liability as a contributory infringer merely by embedding the infringing apparatus in a larger product with some additional, separable feature before importing and selling it." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1320 (Fed. Cir. 2009). The fact that "a user can turn off the infringing features," standing alone, is insufficient to show substantial non-infringing uses. *Fujitsu*, 620 F.3d at 1331.

On the other hand, however, "[w]here the [accused] product is equally capable of, and interchangeably capable of both infringing and substantial non-infringing uses, a claim for contributory infringement does not lie." *R+L Carriers, Inc. v. DriverTech LLC (In re Bill of Lading Transmission & Processing Sys. Patent Litig.)*, 681 F.3d 1323, 1338 (Fed. Cir. 2012). The plaintiff must do more than say "if you use this device to perform the patented method, the device will infringe and has no noninfringing uses." *Id.*

## ANALYSIS

### I. Lone Star Adequately Pleaded Direct Infringement

ASUSTeK argues that Lone Star has failed to state a claim for direct infringement. Docket No. 29.[1] Primarily, ASUSTeK contents that Lone Star's "highly duplicative claim chart" does not "show the presence of claim elements." Docket No. 29 at 6. Instead, ASUSTeK believes Lone Star's complaint "merely parrot[s] the claims." *Id.*

ASUSTeK argues that, to the extent Lone Star pleaded specific facts, those facts show Lone Star's sought relief is implausible for two reasons. First, ASUSTeK views Lone Star's claim chart as self-defeating. That is, "the color and hue adjustments that Lone Star cites actually affect

---

[1] Docket No. 29 refers to the products of Barco N.V., a co-defendant. The parties agreed to adopt Barco's briefing for ASUSTeK's motion. Docket Nos. 25, 27.

all, or nearly all, colors, and the screen shots Lone Star has used show that they do," but the patent requires adjusting colors individually. *Id.* at 7.

Second, ASUSTeK argues that Lone Star's claim charts merely recite claim language and accuse the ASUSTeK Monitor, without bridging the gap between the two. *Id.* at 8. To ASUSTeK, Lone Star is "using and re-using just a few screenshots that refer very generally to changing hue, color saturation, and brightness of display products to support highly specific claim limitations." *Id.* at 9. By way of example, ASUSTeK lists a collection of claim elements it believes are unsupported in Lone Star's charts. *Id.* For support, ASUSTeK draws an analogy to *Chapterhouse LLC v. Shopify, Inc.*, Case No. 2:18-cv-00300, 2018 WL 6981828, *1 (E.D. Tex., Dec. 11, 2018). It argues the detail provided here is similar to the detail provided in Plaintiff's claim charts in *Chapterhouse*, which did not satisfy the *Twombly/Iqbal* pleading standard. Docket No. 29 at 10.

Lone Star believes it has more than exceeded the *Twombly/Iqbal* standard. Docket No. 30. Lone Star argues that its attached claim charts are sufficient. *Id.* at 8. It argues those charts are not "conclusory." *Id.* at 9. Instead, Lone Star asserts its charts provide highly-detailed infringement allegations spanning several pages for each claim element. *Id.* at 10. In response to ASUSTeK's implausibility argument, Lone Star argues that its screenshots do, in fact, show adjustment of the hue or saturation of individual colors. *Id.* at 9. Lone Star attempts to distinguish *Chapterhouse*, arguing this case involves far fewer patents and independent claims. Docket No. 32 at 3.

Lone Star's FAC states a plausible claim for direct infringement. Though Lone Star offers little to no information regarding direct infringement in its complaint, it did attach extensive claim charts. Docket No. 22-2. Because those charts are "central to the claim and referenced by the complaint," the Court may consider them on a motion to dismiss. *Lone Star Fund V (U.S.) L.P.*,

594 F.3d at 387. Though generally brief, Lone Star's complaint does identify claim 17—a system claim—as an example of its direct infringement allegations. As noted above, for systems claims, direct infringement occurs when a defendant "combine[s] all of the claim elements," thereby making the patented system. *Centillion Data Sys., LLC v. Qwest Communs. Int'l*, 631 F.3d 1279, 1288 (Fed. Cir. 2011).

Lone Star's claim charts plausibly allege ASUSTeK "combine[s] all of [claim 17's] elements" when it manufactures the ASUSTeK Monitor. Lone Star's claim chart for claim 17, spanning 39 pages, sets forth each element of the patented system. Docket No. 22 at 84–143. For each element, Lone Star has identified facts supporting ASUSTeK's alleged infringement. *Id.*

Contrary to ASUSTeK's position, the charts are not conclusory or insufficient. For example, ASUSTeK identifies a portion of claim 1—"selecting to independently change the hue or the saturation of an individual color"—as one element it believes lacks factual support. Lone Star's chart, however, provides sufficient factual support for that element. Specifically, Lone Star's claim chart identifies the "Advanced Setting" present on the ASUSTeK Monitor that allows for "Six-axis Hue adjustment" and "adjusting the gain levels for R, G, B." Docket No. 22-2 at 21. And it alleges that "[t]he number of colors that can be adjusted is 6." *Id.* It is plausible that the "Six-axis Hue adjustment" allows a user to adjust one of six colors independently. Notably, Lone Star's support for this element also belies another ASUSTeK argument—that infringement is implausible based on Lone Star's claim chart. Lone Star's chart alleges, with sufficient factual support, that the ASUSTeK Monitor allows for adjusting individual colors.

*Chapterhouse* is inapposite. There, the plaintiff alleged infringement of four patents with 13 independent claims. *Chapterhouse, LLC v. Shopify, Inc.*, 2018 WL 6981828, at *2. But Lone Star's allegations are more straightforward, involving only one patent and two independent claims.

Additionally, the complaint dismissed in *Chapterhouse* recited one exemplary claim per patent accusing one product of infringement in the body of the complaint. *Id.* Here, on the other hand, Lone Star has attached nearly 200 pages of claim charts that attempt to map every claim of the '435 Patent onto the ASUSTeK Monitor. There are substantially more factual allegations in Lone Star's claim charts, which are sufficient to meet the *Twombly/Iqbal* standard.

Therefore, ASUSTeK's motion to dismiss Lone Star's claims of direct infringement is **DENIED.**

## II. Lone Star Did Not Adequately Pleaded Divided Infringement

ASUSTeK also argues that Lone Star failed to adequately plead divided infringement. Docket No. 29 at 17–18. ASUSTeK alleges Lone Start did not plead facts leading to a plausible inference that ASUSTeK exercised "any control or direction over" a direct infringer—the first of two ways to show divided infringement. *Id.* at 17. ASUSTeK characterizes Lone Star's FAC as attempting to "turn an ordinary use of a product in accordance with its instruction manual into a contractual relationship . . . ." *Id.* at 18. Citing *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373 (Fed. Cir. 2007), ASUSTeK argues that such a relationship is not enough. *Id.* To ASUSTeK, an accused infringers contract with a third party must, instead, obligate the third-party direct infringer to perform acts of infringement. *Id.*

Lone Star responds that its allegations are sufficient to support joint infringement. Lone Star characterizes ASUSTeK's arguments as relating to the merits, *i.e.*, whether ASUSTeK in fact exercises control sufficient for joint infringement, rather than pleading sufficiency.

Lone Star fails to state a claim for joint infringement. Lone Star's FAC sets forth its joint infringement claim in two paragraphs, which, in their entirety, allege:

> 16. Based on information and belief, [ASUSTeK] has jointly infringed the Patent-in- Suit by directing and/or controlling other parties, including through a

> contractual relationship. Upon information and belief, [ASUSTeK] contracts and/or enter into agreements with other parties. concerning the operation and use of infringing devices and functionality within this jurisdiction and elsewhere. Upon information and belief, [ASUSTeK]'s contracts and agreements enable [ASUSTeK] to direct and/or control the infringing conduct of the third parties.
>
> 17. [ASUSTeK] conditions participation in an activity or receipt of a benefit of its performance of a step or steps and establishes the manner or timing of that performance. For example, as shown in Exhibit B, the benefits of [ASUSTeK]'s products is obtained by a third-party by following the [ASUSTeK]'s instructions to effectuate a change to the hue and/or saturation of a selected color. Defendant, through its product, provides the software and systems that establish the manner and/or timing of the performance of the steps such as allowing for individual color change.

Docket No. 22 at 4–5. First, these allegations are insufficient to plausibly claim that ASUSTeK directs or controls third party infringement. Apart from allegations "on information and belief," Lone Star does not provide any factual support: no example contracts, no example agreements and no terms suggesting control. Pleading facts "on information and belief," alone, is not enough. *See Twombly*, 550 U.S. at 551.

Second, these allegations are insufficient to plausibly claim ASUSTeK conditions participation in an activity or receipt of a benefit on its performance of a step or steps and establishes the manner or timing of that performance. ASUSTeK has provided no factual support to show ASUSTeK imposes any "conditions." It alleges that its customers receive a benefit when using the ASUSTeK Monitor in an infringing manner, pointing to its claim charts, but provides no support for ASUSTeK conditioning that benefit on infringement. If Lone Star's allegations that ASUSTeK instructs its customers to use the ASUSTeK Monitor in an infringing way, combined with some benefit achieved through infringement, were enough, every claim of induced infringement would also state a claim for divided infringement.

Therefore, ASUSTeK's motion to dismiss Lone Star's claims of divided infringement is **GRANTED.** Lone Star's claims of divided infringement are **DISMISSED WITHOUT PREJUDICE**.

### III. Lone Star Adequately Pleaded Induced Infringement

ASUSTeK argues that Lone Star failed to even recite the elements of induced infringement, let alone plead sufficient facts to state a claim on which relief might be granted. Docket No. 29 at 15. ASUSTeK first contends that Lone Star's knowledge allegations are insufficient because Lone Star failed to provide facts supporting ASUSTeK's knowledge of infringement—rather than mere knowledge of the patent. Similarly, ASUSTeK asserts that Lone Star's allegations of intent to induce infringement are insufficient because Lone Star pleaded only a general intent to sell products, rather than a specific intent to induce infringement. *Id.* To ASUSTeK, Lone Star only alleged ASUSTeK provided instructions on how to use its product, which, alone, is insufficient to plead induced infringement. *Id.* at 16; Docket No. 31 at 4–5.[2]

Lone Star, on the other hand, asserts that it has satisfied the requirements for pleading induced infringement. According to Lone Star, its FAC pleaded that ASUSTeK has knowledge of the '435 Patent, instructed its customers to use its products in a way that infringes the '435 Patent and advertised the benefits of that infringement. Collectively, Lone Star argues these facts state a plausible claim for induced infringement.

Lone Star has stated a claim for induced infringement. ASUSTeK essentially argues that Lone Star has failed to plead specific intent. Docket No. 31 at 4–5. The intent requirement of "inducement can be found where there is evidence of active steps taken to encourage direct infringement, which can in turn be found in advertising an infringing use or instructing how to

---

[2] ASUSTeK also argues that Lone Star cannot claim induced infringement because it failed to state a claim for direct infringement. As noted above, Lone Star did state a claim for direct infringement.

engage in an infringing use." *Vanda Pharm. Inc. v. W.-Ward Pharm. Int'l Ltd.*, 887 F.3d 1117, 1129 (Fed. Cir. 2018). Lone Star pleaded that ASUSTeK "advertises [the infringing] feature on its website: '6-axis independent color adjustment: Customized hue and saturation control with 6 color adjustment allows you to adjust six colors (red, green, blue, cyan, magenta and yellow) independently without effecting other colors.' " Docket No. 22 ¶ 20. Lone Star further pleaded that ASUSTeK's customers infringe the '435 Patent when utilizing the "6-axis independent color adjustment" feature. Combined, these pleadings state a plausible claim for a specific intent to induce infringement.

Therefore, ASUSTeK's motion to dismiss Lone Star's claims of induced infringement are **DENIED.**

**IV.    Contributory Infringement**

ASUSTeK argues that Lone Star has failed to state a claim for contributory infringement because it failed to plead ASUSTeK's products are not suitable for substantial non-infringing uses. Docket No. 29 at 13. According to ASUSTeK, Lone Star's accused instrumentality is not distinct from other, non-infringing functionalities. *Id.* at 14. That is, ASUSTeK uses the same components to perform some functionalities that are accused of infringement and other functionalities that are not accused of infringement. *Id.* Thus, to ASUSTeK, Lone Star's assertion that those components have no substantial non-infringing uses is too narrow, saying nothing more than: if you use ASUSTeK's products to infringe, then there are no substantial non-infringing uses. *Id.* In fact, ASUSTeK argues that Lone Star's pleadings are contradictory, showing that the accused components can be used to change multiple colors at once—a non-infringing functionality—as well as allegedly infringing the '435 Patent. Docket No. 31 at 6.[3]

---

[3] ASUSTeK also argues that Lone Star cannot claim induced infringement because it failed to state a claim for direct infringement. As noted above, Lone Star did state a claim for direct infringement.

Lone Star argues that it has sufficiently pleaded contributory infringement. Docket No. 30 at 10–11. Primarily, Lone Star claims to have plausibly alleged that the accused instrumentalities have no substantial non-infringing uses. *Id.* Lone Star asserts that ASUSTeK's products rely on unique hardware and/or firmware to infringe the '435 Patent. *Id.* To Lone Star, ASUSTeK is attempting to bury an infringing instrumentality in a larger product to avoid infringement. *Id.*

Lone Star has stated a claim for contributory infringement. Lone Star has pleaded that the accused instrumentalities have no substantial non-infringing uses. Docket No. 22 ¶ 21. And that allegation is not without factual support. Lone Star's claim charts allege that the ASUSTeK Monitor's independent adjustment of individual colors is "a software limitation and the software of the Accused System is not publically [sic] available." Docket 22-2 at 9. Moreover, those charts allege that internal hardware and firmware may be involved in altering individual colors. *Id.* It is at least plausible that these software, firmware or hardware components are unique to individual color changes. And if those components are unique to an infringing functionality, a claim for contributory infringement may lie. Thus, without detailed review of code and schematics, which are more appropriately addressed at summary judgment, Lone Star states a plausible claim for contributory infringement.

## CONCLUSION

For the foregoing reasons, ASUSTeK's motion to dismiss is **GRANTED-IN-PART** and **DENIED-IN-PART**. It is therefore

**ORDERED** that Lone Star's joint infringement claims are **DISMISSED WITHOUT PREJUDICE**.

**So ORDERED and SIGNED this 14th day of January, 2020.**

*Robert W Schroeder III*
ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE