

# PohlmanUSA®
## Court Reporting and Litigation Services

---

Robert Stevenson, Ph.D

April 7, 2020

---

Lone Star Technological Innovations, Inc.

vs.

Asustek Computer, Inc.

**EXHIBIT**

**4**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

LONE STAR TECHNOLOGICAL     §
INNOVATIONS, INC.,             §
                           §
      Plaintiff,             §
                           §   CIVIL ACTION
               v.         §
                           §   NO.: 6:19-cv-00059-RWS
ASUSTEK COMPUTER, INC.,     §
                           §
      Defendant.             §

-----------------------------------

ORAL VIDEOCONFERENCE DEPOSITION OF

ROBERT STEVENSON, Ph.D.

APRIL 7, 2020

VOLUME 1 OF 1

-----------------------------------

     ORAL VIDEOCONFERENCE DEPOSITION OF ROBERT STEVENSON,

Ph.D., produced as a witness at the instance of the

Plaintiff, and duly sworn, was taken in the above-styled

and numbered cause on April 7, 2020, from 1:33 p.m. to

4:01 p.m., via videoconference, before April R. Brunson,

CSR in and for the State of Texas, reported by machine

shorthand, pursuant to the Federal Rules of Civil

Procedure and the provisions stated on the record or

attached hereto.

```
 1                   A P P E A R A N C E S

 2

 3    FOR THE PLAINTIFF:

 4        Mr. John Lee
          BANIE & ISHIMOTO, L.L.P.
 5        3705 Haven Avenue
          Suite 137
 6        Menlo Park, California  94025
          650.241.2771
 7        650.241.2770  (Fax)
          jlee@banishlaw.com
 8             (Appearing via teleconference.)

 9

10    FOR THE DEFENDANT ASUSTEK COMPUTER, INC.:

11        Mr. Andrew T. Oliver
          AMIN, TUROCY & WATSON, LLP
12        160 West Santa Clara Street
          Suite 975
13        San Jose, California  95113
          650.393.0634
14        aoliver@atwiplaw.com
               (Appearing via teleconference.)
15

16
      FOR THE DEFENDANT BARCO N.V.:
17
          Mr. Edward K. Runyan
18        NEUSTEL LAW OFFICES, LTD
          2534 South University Drive
19        Suite 4
          Fargo, North Dakota  58103
20        701.281.8822
          701.237.0544  (Fax)
21        edward@neustel.com
               (Appearing via teleconference.)
22

23

24

25
```

```
 1                      I N D E X

 2                                                PAGE

 3   Appearances........................................2

 4
     Exhibit List.......................................4
 5

 6   Stipulations......................................--

 7
     THE WITNESS:  ROBERT STEVENSON, Ph.D.
 8        Examination by Mr. Lee.........................6

 9
     Signature and Changes.............................75
10

11   Reporter's Certificate............................77

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    E X H I B I T S

 2     NO.   DESCRIPTION                           PAGE

 3     1     Plaintiff's Amended Notice of Deposition   6
             of Robert Stevenson
 4
       2     Declaration of Robert Stevenson, Ph.D.   11
 5
       3     U.S. Patent 6,724,435                    44
 6
       4     "Estimation-theoretic approach to dynamic   49
 7           range enhancement using multiple
             exposures" Robertson, Borman, Stevenson
 8           Journal of Electronic Imaging
             April 2003
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              P R O C E E D I N G S
 2           (Proceeding commenced at 1:33 p.m.)
 3              THE REPORTER:  Now on the record, today
 4    is April 7, 2020.  The time is 1:33 p.m.  This is the
 5    oral deposition of Robert Stevenson, and it is being
 6    conducted remotely via videoconference, in the matter of
 7    Lone Star Technological Innovations, LLC, versus Asustek
 8    Computer, Inc., Civil Action Number 6:19-cv-00059-RWS.
 9              My name is April Brunson, Certified
10    Shorthand Texas Reporter Number 7495.  I am
11    administering the oath and reporting the deposition
12    remotely by stenographic means.  The witness has been
13    identified to me through attestation of counsel.
14              Will counsel please state your
15    appearances for the record, and then I will swear in the
16    witness.
17              MR. LEE:  John Lee of the firm Banie &
18    Ishimoto, LLP, on behalf of Plaintiff Lone Star
19    Technological Innovations, LLC.
20              MR. RUNYAN:  Edward Runyan with Neustel
21    Law Offices, Ltd., on behalf of Defendant Barco N.V.
22              MR. OLIVER:  This is Andrew Oliver with
23    Amin, Turocy & Watson representing Asustek Computer,
24    Inc.
25              ROBERT STEVENSON, Ph.D.,
```

1  having been first duly sworn, testified as follows:

2                          EXAMINATION

3  BY MR. LEE:

4      Q.   Yes.  Dr. Stevenson, this is John Lee.  Good

5  afternoon.

6      **A.   Good afternoon.**

7                MR. RUNYAN:  John -- John, may I -- a

8  point of order while we're on the record so I don't

9  forget, I would like to go on the record to request

10 reading and signing of the transcript.

11               MR. LEE:  Okay.

12               MR. RUNYAN:  Sorry for interrupting.

13     Q.   (BY MR. LEE)  Dr. Stevenson, is there anything

14 that impacts the truthfulness or voracity of your

15 statement today?

16     **A.   No, I don't believe so.**

17     Q.   I will be asking questions.  Your counsel may,

18 from time to time, lodge objections.  Absent

19 instructions from counsel to not answer on the basis of

20 privilege, after those objections are lodged, you are

21 required to answer my questions.

22                    (Exhibit 1 introduced.)

23     Q.   (BY MR. LEE)  I'm introducing the -- as

24 Exhibit 1 the amended Notice of Deposition of Robert

25 Stevenson, and that's on your screen right there.  Do

 1   you see that, Dr. Stevenson?

 2       **A.   Yes.**

 3       Q.   And what is your understanding of the -- your

 4   deposition testimony today?  Why are you being deposed

 5   today?

 6            MR. RUNYAN:  Objection, vague.

 7       **A.   I wrote a declaration, and my understanding is**

 8   **you have an opportunity to ask me questions about that**

 9   **declaration.**

10       Q.   (BY MR. LEE)  Okay.  When were you retained to

11   serve as a expert in this case?

12       **A.   I certainly don't recall the specific date.**

13   **It was a couple months ago.**

14       Q.   Who contacted you to work on this case?

15       **A.   I believe the first contact was from Ed**

16   **Runyan.**

17       Q.   And who retained you to serve as an expert on

18   this case?

19       **A.   I mean, I'd probably have to go back and look**

20   **at an engagement letter to know, you know, maybe**

21   **specifically.  But I certainly went back and forth with**

22   **Mr. Runyan about the issues about getting engaged.**

23       Q.   Do you know whether you've been retained by

24   Barco or Asustek to represent in this matter?

25       **A.   I probably would have to see if there's an**

1  **engagement letter to look at.  I mean, my understanding**

2  **is I'm, you know, working for both, I guess, but I'm not**

3  **sure about that.**

4      Q.   The declaration that you submitted, when were

5  you contacted to -- to work on that declaration to

6  submit that testimony?

7           MR. RUNYAN:  Objection, vague.

8      **A.   Again, I certainly don't have a specific date**

9  **that I would recall.  It came up relatively early in the**

10 **conversations I had, so a little while ago.**

11     Q.   (BY MR. LEE)  How much time did you spend

12 working on the declaration?

13     **A.   I don't know.  I'd have to go back and look at**

14 **my billing records.**

15     Q.   What did you do to prepare for your deposition

16 today?

17     **A.   Do you mean like what I did in the past day or**

18 **two or since I started working on the case?**

19     Q.   Since you were notified that you had to

20 testify at this deposition.

21     **A.   I reviewed my declaration, and I -- I looked**

22 **at the patent.**

23     Q.   How much time did you spend looking at your

24 declaration and at the patent in preparing for this

25 deposition?

1      **A.    You know, I can tell you, in the past day or**

2   **two, I probably spent on the order of four to six hours.**

3            **Sorry, my -- sorry, my screen went blank.**

4   **I guess I have to touch it every once in a while or else**

5   **I won't see things.  I'm sorry.  What was your next**

6   **question?**

7      Q.   You said in the past day or two, you spent

8   four to six hours preparing for this deposition.  Did

9   you spend any -- any time before the past day or two in

10  preparing for your deposition?

11     **A.    I'd have to go back and look at my records to**

12  **see if I -- you know, it feels like I was first told**

13  **about this maybe a week or two ago.  I don't know if I**

14  **did anything initially or not.  I don't recall.**

15     Q.   Did you speak with anybody in preparing for

16  this deposition?

17     **A.    I spoke a little bit with Mr. Runyan.**

18     Q.   When did you speak with Mr. Runyan?

19             MR. RUNYAN:  Objection, calls for

20  privileged information, vague.

21             MR. LEE:  So I believe asking the

22  specific time would be similar to the privilege log.

23  I'm not asking him to disclose the contents of that.

24             MR. RUNYAN:  He can answer to the extent

25  that no -- no work product or privileged information is

```
 1   revealed.
 2       Q.   (BY MR. LEE)  Dr. Stevenson, can you answer
 3   when you spoke with Mr. Runyan in preparing for this
 4   deposition?
 5       A.   I recall a relatively short conversation,
 6   maybe towards the end of last week, and then a -- I had
 7   a conversation yesterday.
 8       Q.   How much time did you spend talking with
 9   Mr. Runyan at the end of last week?
10            MR. RUNYAN:  Objection, relevance.
11       Q.   (BY MR. LEE)  Please answer.
12       A.   I mean, I don't recall.  Probably no more
13   than, like, five or ten minutes.
14       Q.   And when you spoke with Mr. Runyan yesterday,
15   how much time did you speak with -- how long did you
16   speak with him?
17       A.   It was probably a little bit longer, but it
18   was probably still something like no more than, like,
19   15 minutes.
20       Q.   Besides Mr. Runyan, did you speak with anybody
21   else about this -- in preparing for this deposition?
22       A.   Certainly not since I've been noticed for the
23   deposition, no.
24       Q.   So you haven't spoken with Mr. Andrew Oliver
25   or Vinay Joshi in preparing for this deposition?
```

1        **A.    If they were participating in a call, I**

2    **certainly don't -- I don't believe they participated in**

3    **any call.  I believe Mr. Runyan is the only person I've**

4    **talked to in the past week or two.  Before then, I don't**

5    **really recall if they even participated in anything.**

6        Q.    I'm marking as Exhibit Number 2 the

7    Declaration of Robert Stevenson.

8                        (Exhibit 2 marked.)

9        Q.    (BY MR. LEE)  Dr. Stevenson, do you recognize

10    this document?

11        **A.    Yes, I do.**

12        Q.    What is this document?

13        **A.    It looks to be my declaration that I submitted**

14    **in this case.**

15        Q.    Who did you speak with in preparing this

16    declaration?

17                        MR. RUNYAN:  Objection, vague, lacks

18    foundation.

19        **A.    My recollection is I -- I primarily spoke with**

20    **Mr. Runyan.**

21        Q.    (BY MR. LEE)  Did you speak with any of

22    Asustek's counsel, such as Mr. Vinay Joshi, Mr. Andrew

23    Oliver?

24        **A.    I don't recall.  You know, maybe they**

25    **participated in some phone call.  I don't know.  I don't**

1   recall really talking to them, certainly -- certainly

2   not substantively about anything.

3       Q.   Did you communicate to either Mr. Joshi or

4   Mr. Oliver via e-mail?

5       A.   They might be cc'd on some messages.  I don't

6   recall.

7       Q.   Turning your attention, Dr. Stevenson, to

8   paragraph number 1 of your declaration, it speaks that

9   you've been retained by Complainant Barco N.V.; is that

10  accurate?

11      A.   I believe so.

12      Q.   So you have not been retained by Asustek in

13  this case; is that correct?

14      A.   Well, that paragraph doesn't say that.  And as

15  I answered before, I don't really recall.  I'd have to

16  go and look at something to see if I have some sort of

17  engagement letter with them.

18      Q.   If you -- if Asustek retained you, wouldn't

19  you have put it -- that in this paragraph?

20      A.   I might have.  You know, it's not there.

21  Maybe -- you know, without going back and looking at

22  other records, I can't tell you why it's not there.  I

23  just don't have a recollection.

24      Q.   Who drafted this declaration, Dr. Stevenson?

25      A.   I did.

```
 1        Q.   How much time did you spend drafting this
 2   declaration?
 3        A.   I don't recall.  I'd have to go back and look
 4   at my records.
 5        Q.   Can you give me an estimate of how much time
 6   you spent?
 7             MR. RUNYAN:  Objection, relevance.
 8        Q.   (BY MR. LEE)  You can answer.
 9        A.   I know I worked -- sorry?
10        Q.   If you can answer the question, please do so.
11        A.   I know I spent several hours on multiple days,
12   several hours each day on multiple days.  I don't know
13   what the total would be.  Certainly more than 10,
14   probably less than 50.
15        Q.   This declaration was submitted on March 16th.
16   When did you start working on this declaration?
17             MR. RUNYAN:  Objection, relevance.
18        A.   I'd -- I'd have to go back and look at my
19   records.  My, you know, sense is it was a week or two
20   before.
21             Actually, my recollection is it might
22   have been due originally earlier than that, and it was
23   like a week or two before that earlier date that I
24   started.
25        Q.   (BY MR. LEE)  And you estimate somewhere
```

1   between 10 to 50 hours is the amount of time you spent

2   in -- after you were asked to draft the declaration to

3   when you signed it?

4       **A.   That's a very rough estimate.  I just don't --**

5   **you know, I don't keep track of it in my mind, those**

6   **sort of things.  You know, I have records, obviously, I**

7   **can go back and look at, but you know, that's just a**

8   **vague sense of, sort of, the time.**

9       Q.   How often do you submit your bills to -- to

10  Barco?

11              MR. RUNYAN:  Objection, relevance.

12      **A.   I mean, I don't know what I've done so far.**

13  **My general practice is to try to do it once a month.  I**

14  **don't always do it every month but usually at least**

15  **every other month.  A lot of strange things going on**

16  **right now, so you know, I'm not sure I'm doing my normal**

17  **either, though, so...**

18      Q.   (BY MR. LEE)  This declaration was submitted

19  on March 16th.  Have you submitted the bill for this

20  work to Barco yet?

21              MR. RUNYAN:  Objection, assumes facts,

22  lacks foundation, irrelevant.

23      **A.   I believe so.**

24      Q.   (BY MR. LEE)  But you don't recall how much

25  you've spent time-wise from those billing records that

1  you just recently submitted?

2            MR. RUNYAN:  Objection --

3       **A.   No.**

4            MR. RUNYAN:  -- vague, assumes facts,

5  misstates testimony.

6       **A.   No.  I don't have that invoice memorized, so I**

7  **don't know how -- how it's broken up and what portion of**

8  **the time was spent on this declaration.**

9       Q.   (BY MR. LEE)  Have you ever worked with

10 Mr. Runyan before, serving as a consultant for Barco?

11      **A.   Yes, I have.**

12      Q.   In what other matters have you worked with

13 Mr. Runyan?  If you could, provide a description.

14      **A.   I recall two matters.  One was some previous**

15 **work for Barco.  That was quite a while ago.  I don't**

16 **know; probably more than five years ago.**

17           **And the other one, I believe, was work**

18 **for -- I want to say Nintendo.  I'm not sure I've got**

19 **the right case, though.**

20      Q.   Besides those two matters, do you recall of

21 any other matters you worked with Mr. Runyan on?

22      **A.   I don't believe there's anything else, you**

23 **know, that I -- of substance.  I did a fair amount of**

24 **work.  You know, there's times I've been hired by people**

25 **that, you know, they hire me and then I never -- nothing**

1    ever comes of it, so I never -- it really doesn't stick

2    in my mind at all if I don't do any work.  I think those

3    are the only two matters that, you know, I did some work

4    on.  There might be something else out there that, you

5    know, I really didn't work on, but you know, maybe I'm

6    technically engaged by -- by them.  I just don't know.

7        Q.   Have you ever worked with defendants' counsel

8    Mr. Joshi or Mr. Oliver in prior matters?

9        A.   I don't recognize the names, so I don't

10   believe so.

11       Q.   Where are you currently employed,

12   Dr. Stevenson?

13       A.   The University of Notre Dame.

14       Q.   And how long have you worked at the University

15   of Notre Dame?

16       A.   In August, it will be 30 years.

17       Q.   Besides working at University of Notre Dame,

18   are you employed by anybody else currently?

19       A.   Other than just these consulting engagements I

20   sometimes do.

21       Q.   How much of your time does the consulting

22   matters -- do they occupy your time compared to working

23   at Notre Dame?

24       A.   You know, to give you specific numbers, I'd

25   have to look at some records.  My -- you know, my rough

1    estimate would be I spend about 75 percent of my time on

2    my Notre Dame activities and 20 to 25 percent on these

3    other sort of activities.

4        Q.   In submitting your declaration, Dr. Stevenson,

5    you also submitted an Exhibit A.  I'm turning your

6    attention to the screen there.  Do you recognize what

7    Exhibit A is?

8        A.   Yes.

9        Q.   What is it?

10       A.   It's a copy of what I refer to as my academic

11   CV from February 3rd, 2020.

12       Q.   And the CV lists your qual- -- your

13   professional experience, your education, publications,

14   talks you've had.  It's quite an extensive list there.

15   Is this meant to be an identification of all of the

16   publications that you've worked on, that you've

17   authored, the talks?  Are they -- I'm just trying to get

18   an understanding of what the CV covers.

19             MR. RUNYAN:  Objection, vague, compound.

20       A.   Well, first I would -- I would point you to

21   the last page which is dated February 3rd, 2020, so

22   anything more recent than that certainly wouldn't be on

23   this copy of the CV.  This is something I update very

24   frequently.

25             Certainly, my attempt is to capture all of

1    my activities -- all my academic activities.  Every once

2    in a while, I find something that escaped, and I put it

3    on there.  So it's my best attempt at being complete,

4    but I find it not always is.

5         Q.   (BY MR. LEE)  And in Exhibit B, it's a

6    document that lists your litigation experience.  Is that

7    something that you prepared as well?

8         A.   Yes.

9         Q.   On page 3, it lists a November 6 [sic], 2019,

10   date?

11        A.   Yes.

12        Q.   Are there any other litigation experience

13   between November 26, 2019, and now that's not listed in

14   this Exhibit B?

15        A.   I don't believe so.

16        Q.   What sort of -- what material did you rely on,

17   Dr. Stevenson, in preparing and submitting this

18   declaration?

19        A.   Well, primarily, it was about the patent and

20   its file history.  That was the -- kind of my primary

21   go-to source, you might say.

22             But certainly I relied on the fact that

23   I've been working in this area for over 30 years, and I

24   work with people and educate people who work in this

25   area, so certainly I'm pulling on the -- my knowledge

1    **about their activities and what they know.**

2        Q.   So you relied on reviewing the '435 patent,

3    its file history, and your experience and knowledge in

4    this field?

5        **A.   That's primarily the things I relied on for**

6    **this declaration.**

7        Q.   What else did you rely on that --

8        **A.   Those are the things that -- those are the**

9    **things that come to mind.  I mean, if I cited something**

10   **else -- if I relied on something else, I certainly would**

11   **have cited it within the declaration.**

12       Q.   Okay.  And that's consistent with the

13   paragraph 1 in -- that sentence in the middle of that

14   paragraph:  The expert opinions that I've set forth in

15   my declaration are based upon my knowledge in the field,

16   the patents at issue in this investigation, the file

17   history of the patents at issue in this matter.  Is that

18   correct?

19       **A.   Yes.**

20       Q.   If I could turn your attention to paragraph 7

21   of your declaration, Dr. Stevenson.  Let me know when

22   you're there.

23       **A.   I'm there.**

24       Q.   You talk about your early -- the past

25   30 years, focus on design techniques, hardware and

```
1    software for processing of digital signals using digital
2    computing devices.  The last sentence of that paragraph
3    where it says:  My early work on digital techniques for
4    printing image capture devices led to significant
5    interaction with companies developing desktop computer
6    products in the early 1990s.  I began trying to
7    incorporate those ideas into their products.
8              Do you see that?
9         A.   Yes.
10        Q.   Can you elaborate on that?
11        A.   Well, the -- you know, in this time frame, you
12   know, I was doing a lot of imaging work, and there
13   wasn't much desktop imaging.  There was some very
14   high-end desktop publishing.
15             But for instance, around that time frame,
16   I started working with Apple.  They gave me some money
17   and computers starting around '94, maybe, and they were
18   interested in color aspects.  There's a -- there's a
19   color problem that everyone kind of feels differently
20   about color.  You know, red is not always red from
21   device to device.  And so how to manage that process
22   was -- was their interest in working with me.
23             They had a digital camera at the time
24   called the QuickTake.  They were -- it was -- the color
25   retention on it was horrendous, so I was working with
```

 1    them on that.

 2                  And also at this time, I spent a summer at

 3    Intel in Oregon as part of their Pentium architecture

 4    group.  This is the group that designs the Pentium chip,

 5    their main product.  And at the time, they were trying

 6    to incorporate multimedia image and video-type signal

 7    processing better into the hardware.  And so I was part

 8    of a video compression effort in looking at how to try

 9    to get better support in the Pentium architecture for

10    such sorts of processing.

11                  Shortly after that, I started working with

12    a company like Sun Microsystems.  Somewhat similar, they

13    were trying to get more video into their SPARC

14    architecture.

15                  I also worked in the -- probably a little

16    bit later, maybe '97, '98, with Motorola.  They were

17    starting -- you know, beginning to look at trying to do

18    video over the cellular network, some of the challenges

19    there in terms of the noise in the cellular channel and

20    what happens to image and video when in that sort of

21    environment.

22                  Those are just some of the examples.

23    Q.   Were there any specific products where your --

24    where your work with these companies resulted in

25    commercialization of products?

1       A.   Well, I certainly wasn't trying -- and I -- I

2    wouldn't try to write production code.  That's someone

3    else's job.  I was trying to bring in ideas and

4    algorithms and develop new techniques that other people

5    were putting into production code.

6             The -- you know, the products that were

7    associated with the group that I was working with, at

8    Apple they had something called ColorSync, which was an

9    add-on to their operating system.

10             At Intel, there was a videoconferencing

11    product.  I think it was called ProShare, if I remember

12    right.

13             At Sun, it was about their SPARC

14    architecture, and they had a -- what they called the

15    visual instruction set.  That was the thing they were

16    adding into the SPARC architecture at the time that I

17    was working with them on.

18       Q.   Turning your attention to page 5 of your

19    declaration, paragraph 14, under the legal standard, you

20    write:  I'm not an attorney, but I have -- I have been

21    informed by counsel of the following standards.

22             Do you see that?

23       A.   Yes.

24       Q.   Who is the counsel that informed you of the

25    standards, Dr. Stevenson?

```
 1        A.   I've been doing this sort of consulting for a

 2   while, and this is my understanding from numerous

 3   counsel over the years.  I couldn't list -- list them

 4   all.

 5        Q.   So this is not something -- you know, the

 6   paragraphs following 14 are not something from current

 7   counsel that you've -- on this matter.  But this is

 8   something from -- amalgam of your understanding from

 9   working with counsel in the past?

10        A.   Well, I would say it's kind of both.  I mean,

11   I've certainly reviewed this with the current counsel,

12   but I know it's also, you know, in part, based on my

13   knowledge from interactions with previous counsel.

14        Q.   Moving on to paragraph 15, if I can direct

15   your attention to the first sentence:  I am informed by

16   counsel that claim construction begins with the words of

17   the claim itself, which generally receive their ordinary

18   and customary meaning as understood by a person of

19   ordinary skill in the art at the time of -- at the time

20   of invention, in the context of the specification and

21   prosecution history.

22               Do you see that?

23        A.   Yes.

24        Q.   What does -- what does ordinary and customary

25   meaning mean to you?
```

1          A.    The way I understand that, I'm supposed to,

2     you know, put myself in the place of someone of ordinary

3     skill in the art, which I provided a definition of what

4     I felt was that later in this declaration, you know,

5     with the knowledge they had, what they would understand

6     based on reading the claims, having read the

7     specification, having seen whatever went on in the file

8     history, what they would think that the terms mean.

9          Q.    And in moving to paragraph 16, you wrote that

10     as well, correct?

11          A.    I did what?

12          Q.    You also wrote paragraph 16 of your

13     declaration?

14          A.    That's certainly my understanding.  At least

15     that's my understanding, yes.

16          Q.    And what was the purpose of this paragraph 16?

17          A.    Paragraph 15 or 16?

18          Q.    16.

19                MR. RUNYAN:  Objection, calls for a legal

20     conclusion.

21          A.    I don't know.  It's just a -- it's just a

22     further explanation of my understanding of the law and

23     how I'm trying to apply it.

24          Q.    (BY MR. LEE)  And the same would go to

25     paragraph 17 as well, Dr. Stevenson?

```
 1        A.   Yes.  I'm just trying to lay out there, so I'm
 2   explaining how I understand and how I looked at the --
 3   you know, the tasks set forth in this declaration.
 4        Q.   Are there any -- are there any other legal
 5   principles that you're relying on for claim construction
 6   that you have not stated in this declaration?
 7             MR. RUNYAN:  Objection, vague, calls for
 8   a legal opinion.
 9        A.   What -- what is a legal principle?
10        Q.   (BY MR. LEE)  Well, you -- the principles you
11   put forth in paragraphs 15, 16 and 17, as I understand
12   from your testimony, those are the principles that
13   you're using for claim construction in forming your
14   opinions in this declaration.
15             MR. RUNYAN:  Objection, vague, compound,
16   mischaracterizes testimony.
17        A.   You know, I don't know what constitutes a
18   legal principle.  It seems like -- that sounds like
19   something that has a specific meaning to, maybe, a
20   lawyer.
21             What I put in these paragraphs was trying
22   to explain, you know, based on my understanding, what
23   has been told to me by counsel, you know, over the
24   years, of how I should be going about, you know, forming
25   the opinions I have in this case from a legal
```

1    perspective.

2              If you want to call them principles, okay.

3    I don't know what -- quite what you mean there.

4    Q.   (BY MR. LEE)  Was there anything else that

5    you went by or relied upon that's not stated in

6    paragraphs 15 to 17 of your declaration?

7              MR. RUNYAN:  Objection --

8    A.   I'm not sure --

9              MR. RUNYAN:  The document speaks for

10   itself, asked and answered.

11   A.   Yeah, I'm not sure how to answer that

12   question.  I'm trying to -- in these paragraphs, trying

13   to explain how I understood the law and how I applied my

14   understanding of the law to the task at hand.

15             I don't know what things you're referring

16   to, so I'm not sure exactly, you know, what constitutes

17   something else I might have thought of.

18   Q.   (BY MR. LEE)  I guess what I'm asking is,

19   you've -- paragraphs 15 to 17 is your understanding of

20   the law, and that's what you've applied in formulating

21   your opinions; is that correct?

22             MR. RUNYAN:  Objection, vague, misstates

23   testimony, compound, lacks foundation.

24   A.   I'm sorry.  It sounds like you're drawing some

25   legal line that I'm not sure I understand, so I'm not

```
 1    sure how to answer your question.  I'm not a lawyer, so
 2    if you're drawing some sort of legal distinction, I'm
 3    not sure what you mean by it.
 4              What I'm doing in these paragraphs, as I
 5    repeated a couple times now, is I put down -- what I
 6    attempted to put down is my understanding of the law and
 7    how I applied it in forming -- you know, when I went to
 8    form my opinions later in this document.
 9         Q.   (BY MR. LEE)  My -- let me put this another
10    way.  Are there any understandings of the law that are
11    not explicitly written in paragraphs 15 to 17 that
12    impacted or formulated -- helped formulate your opinions
13    in your declaration?
14         A.   I don't -- your question is so vague.  I don't
15    know what you mean by "understandings of the law."
16              You know, I tried to be as clear as I
17    could in this paragraph.  If there's something that's
18    unclear or if there's something wrong, certainly, you
19    could ask me about it.  I don't know what other sorts of
20    understandings -- I'm not sure what you consider a
21    different understanding.  You know, I didn't put down my
22    entire brain process through -- in here.  I tried to
23    summarize it in a distinct, you know, clear way.
24         Q.   And paragraphs 18 and 19, under the subheading
25    "Claim Indefiniteness," is that -- you're writing those
```

1   to kind of -- you were writing those to put down your

2   understanding of what constitutes claim indefiniteness;

3   is that correct?

4         **A.   What I attempted to do --**

5               MR. RUNYAN:  Objection, vague.

6         **A.   What I attempted to do --**

7               MR. RUNYAN:  Compound.

8      **A.   Sorry.**

9              **What I attempted to do in those two**

10  **paragraphs was to summarize and put down my**

11  **understanding of the legal -- you know, the legal -- my**

12  **understanding of the legal process and how I were to**

13  **apply that understanding to the work I was doing in this**

14  **case.**

15              THE REPORTER:  Would you repeat that

16  objection?  I'm sorry.  The crosstalk, I didn't catch

17  the objection.

18              MR. RUNYAN:  I believe it was vague and

19  compound.

20              Counsel, can I request, when you ask

21  questions, you asked about multiple paragraphs, but

22  you're only showing 18 here.  Could you make sure

23  they're all shown?  Thank you.

24              MR. LEE:  I will.  And I also -- I will.

25              And Ed?

```
 1                    MR. RUNYAN:  Yes.
 2                    MR. LEE:  Can we -- you know, you've been
 3    making speaking objections.  In the Eastern District of
 4    Texas, you're only allowed to object to form and object
 5    to privilege, so I would ask that you adhere to the
 6    protocol in the Eastern District of Texas.
 7                    MR. RUNYAN:  I am.
 8         Q.   (BY MR. LEE)  Turning your attention to
 9    paragraph 21, Dr. Stevenson, that -- you set forth, in
10    your opinion, what the ordinary skill in the art for
11    this patent should be; is that correct?
12         A.   Yes.
13         Q.   Can you walk me through your -- your opinion
14    on the ordinary skill in the art and explain to me how
15    you arrived at that conclusion?
16         A.   I'm not sure what you mean by walk you
17    through.  I mean, I could -- I could read it to you.
18         Q.   So you -- sure.  You set forth where people
19    with, one, at least a bachelor's degree in electrical
20    engineering, computer science, applied mathematics or in
21    an equivalent field, as well as at least one or two
22    years of industry experience in the digital video system
23    design.
24                    Why, in your opinion, is that the -- one
25    of ordinary skill in the art for this patent?
```

1       **A.   Well, I think, if you read the following**

2  **paragraph, it kind of lays out my -- my -- you know,**

3  **what things I looked at and considered and, you know,**

4  **how I arrived at that.**

5       Q.   So -- and you're referring to the following

6  paragraph, that's paragraph 22, and you wrote:  I have

7  reached this opinion regarding the level of ordinary

8  skill in the art based on my review of the asserted

9  patents and my personal experience in educating,

10  supervising, and working with persons having the level

11  of ordinary skill in the art around the time of

12  invention of the asserted patents.

13              Is that what you're referring to?

14       **A.   Yes.**

15       Q.   So why is it at least one or two years of

16  industry experience in the digital video system design?

17  What -- versus two to three or three to five, how did

18  you decide on one to two?

19       **A.   Well, I have a very good understanding of, you**

20  **know, what someone who has just earned a bachelor's**

21  **degree in electrical engineering, computer science, or**

22  **applied mathematics, what they come out of school with,**

23  **right.  So I've worked with those sort of students, you**

24  **know, for 30 years, so I know they don't have enough**

25  **experience.  You know, they -- the typical one certainly**

1    does not have any experience on the digital images and

2    digital video and the concepts that cover that the

3    patent is kind of built on.  So I know that's not

4    enough.

5              I also know that, if you work in that

6    field, these are -- these are concepts that you would --

7    you would come across relatively soon, in the first year

8    or two of exposure to that field.  So -- and so at that

9    point, I think you would have a -- you know, be able to

10   understand a patent.  You would be able to learn from

11   the patent.  You would be what would be considered a

12   person of ordinary skill in the art at that time.

13        Q.   Subpart 2 of one of ordinary skill in the art

14   you write is at least five years of comparable industry

15   experience in digital video system design.  What would

16   be considered comparable industrial experience in

17   digital video system design?

18        A.   Well, I certainly, over the years, have worked

19   with people who -- who didn't earn a bachelor's degree.

20   They were more self-taught or they learned on the job,

21   you might say.  Some of those people were very skilled

22   and, you know, very much contributed to the field, but

23   they generally had much longer time in industry working

24   on the, you know, technology before they gained that

25   appreciation and understanding I think someone of

1    ordinary skill in the art would have had, so that's why

2    I came up with five years.

3        Q.   And then the third part of your -- of the

4    standard for one of ordinary skill in the art is an

5    equivalent combination of academic study and work

6    experience.  Can you elaborate on that?

7        A.   Well, the -- again, as I said, there are some

8    people who didn't have any higher education and yet I've

9    seen make contributions in this area.  There are some

10   who went to school for a while, went in the industry,

11   maybe didn't finish a degree.  They got that equivalency

12   somehow.

13              There's also, if someone had done -- maybe

14   they hadn't worked in the industry but they've done an

15   advanced degree beyond a bachelor's degree specifically

16   in the area of digital video, so maybe like a master's

17   degree or, you know, partial Ph.D. in digital video.  I

18   think they would certainly be someone of ordinary skill

19   in the art and would be able to appreciate the patent.

20       Q.   What does the word "characterize" mean to you,

21   Dr. Stevenson?

22       A.   In the context of the patent, I didn't find it

23   particularly clear.

24       Q.   Why didn't you find it particularly clear?

25       A.   Because they were -- in the claim, it was

1   referring to the characterization of a digital image or

2   video maybe.  I'd have to look at the claim to tell you

3   for sure.  And I didn't know what -- based on my review

4   of the material what sort of characterization they were

5   referring to.

6      Q.   Is "characterizing" a technical term?

7      A.   Not particularly.  Not -- it wasn't introduced

8   as a technical term in the -- in the patent.

9      Q.   What do you -- what would you understand --

10  what would you understand "characterizing" to mean?

11     A.   Well, my basic problem is it could -- it's

12  incredibly broad.  Maybe you're characterizing the video

13  as a comedy, drama, or musical.  I don't think that, you

14  know, is probably what the claim is going after, but

15  based on the teachings of the patent, I don't know.

16  Maybe that's enough of a -- some sort of

17  characterization.  That was kind of the crux of my

18  problem with that term.

19     Q.   And your opinion on characterizing is on

20  page 9 of your declaration?

21     A.   Looks like it begins on 9, ends on 10, yeah.

22     Q.   Yes.  What materials did you review in

23  formulating your opinions on characterizing?

24     A.   The materials we've already discussed.

25     Q.   The '435 patent is something that you

```
 1  reviewed?

 2       A.   Yes.

 3            MR. RUNYAN:  Objection, vague.

 4       Q.   (BY MR. LEE)  Did you review the -- did you

 5  review the file history of the '435 patent in

 6  formulating your opinion on characterizing?

 7       A.   Yes.

 8       Q.   You also relied on your experience in the

 9  field of digital video -- digital video systems in

10  formulating your opinion?

11       A.   Yes.

12       Q.   Did you rely on any other materials in

13  formulating your opinion on characterizing?

14       A.   I don't recall anything else.  If I had, I

15  would have cited it in the document here.

16       Q.   So you did not review or consider materials

17  from previous cases concerning the '435 patent?

18       A.   I recall at some point someone giving me a

19  declaration from another expert in the '435.  I believe

20  I read it very early on.  I couldn't tell you what the

21  name was or what was -- what was discussed in that

22  declaration.  I don't know if this term was in there or

23  not.  I just -- I do recall looking at that at some

24  point.

25       Q.   Did you rely -- did that declaration influence
```

1   your opinions in this case -- or in this declaration?

2       **A.   No.   Like I said, I don't even recall what**

3   **it said at this point.   I just know it was something**

4   **that was provided to me early on and I looked at it**

5   **briefly.**

6       Q.   Was there any other materials that you

7   reviewed that's not listed in your declaration?

8       **A.   At some point, I saw some sort of chart that**

9   **basically had your proposed constructions, so I had an**

10  **understanding of what the -- what Lone Star viewed the**

11  **constructions were.   That's the only other type of**

12  **document I can remember looking at.   And again, it**

13  **didn't form my opinion at all.   It just was information**

14  **that I had access to.**

15      Q.   Did you have access to briefings from prior

16  litigation cases concerning the '435 patent?

17      **A.   I don't recall anything that I would call a**

18  **briefing.   I recall this one declaration from this other**

19  **expert.   I don't believe I saw anything that looked like**

20  **a briefing.**

21      Q.   Did you review any claim construction briefs

22  and filings from prior cases concerning the '435 patent?

23      **A.   I don't believe so.   I don't recall anything**

24  **like that.   I don't believe I had access to anything**

25  **like that.**

```
 1        Q.   Did you know that there was a Markman hearing
 2   concerning the '435 patent in a prior case?
 3        A.   I guess I don't know that.  I had -- like I
 4   said, I had this conversation very early on about this
 5   other declaration.  I might have been told something at
 6   that point.  I recall looking at it.  I certainly don't
 7   remember any of the details of the declaration or what
 8   happened in that prior case.
 9        Q.   Were you aware that in a prior case the court
10   had a -- had a preliminary proposed construction for
11   some of the claim terms at issue in this case?
12        A.   I -- I don't -- I don't believe I ever heard
13   something like that, no.  Again, though, it could have
14   been part of that very early conversation I had about
15   this other declaration which I -- I don't remember
16   anything about, really.  I just know I -- I know I had
17   access to it.  I know I had some sort of conversation.
18   I don't really remember what the contents of the
19   conversation was.
20        Q.   So for this declaration, what you've -- your
21   opinion is based upon the '435 patent, its file history,
22   and your industry experience?
23        A.   Yes.  As I said, those are the things I -- I
24   primarily relied on, the only thing I can think I relied
25   on.  If I relied on anything else, it's certainly in my
```

1    practice to cite those things.  Without rereading

2    everything, I couldn't tell you if it's everything I

3    cited.  If it's not cited, I don't think there's

4    anything else.

5        Q.    All right.  I just want to be clear I

6    understand.  When you say "primarily," is there

7    something else you secondarily relied on?

8        A.    Well, that's why I -- that's why I cleared up

9    what I meant by that.  As soon as I said that, I knew

10   that word was going to catch your attention.

11              What I'm -- what I'm trying to say is

12   those are the big things that certainly come to mind

13   right away.  If there's something that would be minor, I

14   would have cited it someplace else.  If I -- without

15   rereading the entire declaration, which I can do, I

16   don't recall any cites.  If there is a cite, that would

17   be something I also looked at.  But without rereading, I

18   don't know.  I don't believe so because I don't recall

19   it, but...

20       Q.    When you -- if I can turn your attention to

21   paragraph 24.  What do you mean by when you wrote, "As

22   such, applicants of the '435 patent created this term to

23   attempt to describe the alleged invention,"

24   Dr. Stevenson?

25       A.    Are you asking me what did I mean by that

1    sentence?

2         Q.   Yes.

3         A.   Well, what I'm trying to get across -- and I

4    think maybe to fully appreciate what I'm saying there,

5    you have to look at the term in the context of the

6    claim.  The -- it's being used in a -- I don't know what

7    you want to call it -- a kind of a technical way.  You

8    have to do something to the image.  You have to

9    characterize.  So it's being used as a technical -- in a

10   sort of technical way in the structure of the claim, but

11   it doesn't -- it doesn't have any particular technical

12   meaning, and yet, they're introducing it some way.

13             I looked at the specification to try to

14   understand what they might mean by that, and there's

15   just nothing in the specification that talks about the

16   characterization of a digital image, so I -- that's why

17   I'm kind of left to no -- unknown as what they mean by

18   that term.

19        Q.   In paragraph 25 -- in paragraph 25, it says --

20   you write:  Parts of the specification discuss colors or

21   color components as being characterized by linear

22   combinations of the basic colors red, green, and blue.

23             Doesn't that provide you with guidance on

24   what characterizing means?

25        A.   It provides guidance of what they might

1    technically mean about characterizing a color.  But

2    that's not what's being characterized in the claim.  So

3    if the claim had something about characterizing the

4    color, I would probably look to those parts of the

5    specification to understand what was being referred to.

6    But that's not the claim language.  The claim language

7    is about characterizing a digital image, and so then

8    I'm -- this is where I'm left not knowing what they

9    mean.

10        Q.   But when you're characterizing linear --

11   linear combinations of red -- basic colors of red,

12   green, and blue, aren't you characterizing a digital

13   image?

14        A.   No.  You're characterizing a color, as the --

15   as the patent clearly states.

16        Q.   And a color is part of an image, isn't it?

17        A.   Not necessarily, no.

18        Q.   Why do you say that?

19        A.   You could have a color fabric.  Fabric can be

20   a color and has nothing to do with a digital image at

21   all, so I'm not sure why that's confusing.  Color is

22   color.  It's not a digital image.  It's something

23   different.

24        Q.   Digital image doesn't have color?  Is that

25   what you're saying?

1      A.   Some digital images we refer to as having

2   color.  Not all.

3      Q.   What digital image doesn't have color?

4      A.   There's lots.  There's -- you know, certainly,

5   you could start with black and white images, intensity

6   images.  I use --- I do a lot of thermal images in my

7   work, so they don't have color.  We also do things that

8   we call using pseudocolor when we're talking with

9   hyperspectral images.  So a lot of images don't have

10  color.

11     Q.   What is your understanding of characterizing

12  to mean in the normal context?

13          MR. RUNYAN:  Objection, vague.

14     A.   I don't know what you mean by "normal

15  context."

16     Q.   (BY MR. LEE)  If we were not talking about the

17  patent and I asked you to define "characterizing," how

18  would you define it?

19     A.   I'd probably have to give some thought to

20  that.  I haven't tried to define it outside the context

21  of the patent.

22     Q.   In paragraph 10 of your declaration, you write

23  in the last sentence of the paragraph:  In the course --

24  in this course, I covered many topics related to digital

25  video systems including concepts of color, its

```
 1    modification, and its characterization using attributes
 2    such as hue and saturation.
 3                  What does "characterization" mean there?
 4         A.   Well, I'm specifically talking about color, so
 5    I'm talking about the same sort of ideas that are talked
 6    about in the patent in terms of characterizing the
 7    color.  Specifically, you know, I even mentioned hue and
 8    saturation, so I'm using it the same way the patent is
 9    using it.
10         Q.   You're using it the same way as the patent is
11    using it; is that what you just stated, Dr. Stevenson?
12         A.   In terms of it talks about -- as we already
13    discussed, the patent talks about how it characterize --
14    how color can be characterized.  In the patent, they
15    talk about red, green, and blue.  You know, hue and
16    saturation are another type of characterization of
17    color.
18         Q.   So you understand what "characterization"
19    means in paragraph 10 of your declaration?
20         A.   Yes.
21         Q.   And what does it mean in paragraph 10 of your
22    declaration?
23         A.   Well, as I'm talking about here in this
24    paragraph 10, I'm talking about color, and I'm talking
25    about some of the things we can -- we can do in order to
```

1  describe its characteristics that are, you know, maybe

2  relevant to something.  So the characteristics I'm

3  talking about here are hue and saturation, so I view

4  those as characteristics of color.

5      Q.   And characterization as you've used it on

6  paragraph 10 is not indefinite?

7          MR. RUNYAN:  Objection, calls for a legal

8  conclusion, irrelevant in the con- -- out of context.

9      A.   You know, look, I recognize that the word

10  "characterization" is an English word that can be

11  properly used in English.  My problem is, within the

12  patent, in the context of the patent and specifically

13  the context of how it's used in the claims, it's used in

14  a technical way because they're talking about

15  characterization of a digital image and I don't know

16  what that means there.

17          If it -- if it had provided any example, I

18  could maybe say something about it, but there's

19  nothing -- like I said, you know, in my prior example,

20  maybe a characterization of a video to someone may mean

21  a comedy, a drama, or a musical.  That doesn't seem like

22  that should fall within the scope of the patent based on

23  the teachings of the patent, so I have a problem with

24  understanding the scope of the patent.  It feels like

25  that term is indefinite because I don't understand the

1    scope of it because of the use of that word in the

2    context they put it in in the claim.

3        Q.    (BY MR. LEE)   Is there anything from a -- in

4    the '435 patent that would lead you to believe that

5    characterization or characterizing would mean

6    characterizing a drama or a comedy?

7        A.    Well, you know, that is the basic -- my basic

8    problem.   There's nothing in the patent that would lead

9    me to attribute anything to it, so that's -- that's the

10   crux of the issue.   There's nothing there.   There's

11   nothing about -- that talks about how one might

12   characterize a digital video.   And as a result, I think

13   the term is indefinite as it's used in the claim.

14       Q.    You said on paragraph 25 -- and that's two

15   cites to the '435 patent:   Column 6, 44 to 46 and 40 to

16   50.   Are those your support in the patent to support

17   your position?

18       A.    Well, what I'm doing in paragraph 25, because

19   I expected this would be the sort of response, you know,

20   someone else would say, which is, the word

21   "characterization" is used in the patent, and so I

22   talked about it.   I talked about how it was used in the

23   patent in this paragraph.   And this is the only places

24   where I found that -- the word being used, I understood

25   something from it, and I understood that it was

1   **character- -- you know, how the patentee looked at**

2   **characterizing a color.**

3        Q.   So why wouldn't you understand characterizing

4   to mean -- to mean characterizing of colors or color

5   components characterized by linear combination of basic

6   colors, red, green, blue, and RGB space?  Doesn't that

7   provide the guidance on how to characterize the digital

8   image?

9             MR. RUNYAN:  Objection, vague, compound,

10  argumentive.

11       **A.   No.  It doesn't in any way provide a limited**

12  **scope that I would understand.  You know, there's lots**

13  **of things I could -- you could talk about a digital**

14  **image that I don't believe, you know, the patentee**

15  **talked about at all.  I'm not sure why I would just**

16  **select these, this one particular thing.**

17       Q.   (BY MR. LEE)  I'm marking as Exhibit 3

18  U.S. Patent Number 6,724,435.

19                 (Exhibit 3 marked.)

20       Q.   (BY MR. LEE)  You cited to Column 6 in your

21  declaration on characterizing; is that correct,

22  Dr. Stevenson?

23       **A.   I believe we just saw that.**

24       Q.   And you didn't cite to anywhere else in the

25  '435 patent on characterizing; is that correct?

1       **A.    I mean, we'd have just to reread my section to**
2  **see if I did or not.  Do you want me to reread?**
3       Q.    Sure.  Please do.
4       **A.    That seems to be the -- where I cite to talk**
5  **about -- you know, point out where they do talk about**
6  **characterization.**
7       Q.    And that's your only citation in the -- to the
8  '435 patent for characterizing; is that correct?
9       **A.    Well, I think you're making my point for me.**
10 **The patent doesn't talk about characterizing the digital**
11 **image, so there is no cites because the patent doesn't**
12 **talk about it, and that's the crux of the problem as to**
13 **why I believe it's indefinite.**
14      Q.    When we go to Column 1 of the '435 patent,
15 lines 42 to 45, different formats are used for
16 characterizing colors or color components in a real time
17 digital video image.
18            You don't consider that being instructive
19 on how to characterize a digital video image,
20 Dr. Stevenson?
21      **A.    No, I don't.**
22      Q.    You made the statement earlier that the
23 '435 patent doesn't talk about characterizing anywhere
24 else besides to where you pointed to in your
25 declaration, but that's not true.  It's talking about

 1   characterizing here, Dr. Stevenson; isn't that correct?

 2       **A.   Okay.  Well, let me amend my previous**

 3   **statement since you're -- you want to be nitpicky about**

 4   **this.  They don't talk about it in any different way.**

 5   **This is talking about it in exactly the same way as**

 6   **Column 6, as characterizing colors.  So I guess I didn't**

 7   **cite every utterance of the phrase "characterizing," but**

 8   **I believe I cited how they used "characterizing" within**

 9   **the context of the patent, which is in characterizing**

10   **colors and not in characterizing digital video images.**

11       Q.   So what you're saying is, even though this

12   cite talks about characterizing colors or color

13   components in a real time digital video image, you're

14   concluding that that's characterizing colors and not

15   characterizing a real time digital video image?

16       **A.   Well, that's what the sentence says.**

17       Q.   If a color is in a real time digital video

18   image and it's being characterized, doesn't it teach or

19   provide guidance on how to characterize a real time

20   digital video image, Dr. Stevenson?

21            MR. RUNYAN:  Objection, vague.

22       **A.   If I talk about the broad concept of**

23   **characterization or characterizing an image, there are,**

24   **you know, things like the dimensions, the number of**

25   **pixels, you know, when it was captured, that are**

1    technical in nature that have -- are relevant to any

2    sort of implementation that I don't believe fall within

3    the scope of the patent but which are captured by this

4    idea of characterizing.  So I don't believe they

5    disclosed anywhere what they mean by characterizing a

6    digital video image.  They disclose ideas of how they're

7    going to characterize colors.

8        Q.   (BY MR. LEE)  Following your logic, when the

9    patentee in the specification states in Column 1,

10   line 46, in another format, a real time digital image

11   features colors or color components characterized by the

12   linear combinations of the basic color yellow, cyan, and

13   magenta in the YCM color space, you would conclude that

14   that's not characterizing a real -- teaching about

15   characterizing a real time digital video image?

16       A.   As I -- as I've repeatedly said now -- I'm not

17   sure why you keep going back to this, but I believe the

18   patent does talk about characterizing color.  It talks

19   about it several places, as we've seen as you walked

20   through, on how to characterize color in terms of things

21   like RGB color space.

22                The way that term is used in the claims is

23   not that.  It's not about characterizing colors.

24   It's -- if it was about characterizing colors, we'd have

25   a different conversation.  It's about characterizing the

1   **digital image in a technical way.  It's used in a way**

2   **that we're saying we are doing something technically**

3   **speaking.**

4                   **I don't know what the limits of that are**

5   **in the claim.  You -- this doesn't disclose that.  It**

6   **doesn't disclose that this is what they mean by**

7   **characterizing the digital image.**

8       Q.   Can you provide a hypothetical in which

9   characterizing would be disclosed, in your view?

10      **A.   I'm not sure what you're asking.**

11      Q.   You're saying characterizing is not disclosed

12   in the patent for a real time digital video image.  What

13   would be an example of characterizing being disclosed

14   that would satisfy your -- your level of scrutiny?

15                   MR. RUNYAN:  Objection, irrelevant, lacks

16   foundation, calls for speculation.

17      **A.   I think anything that clearly stated what the**

18   **scope of the claim was in terms of how you go about**

19   **characterizing the digital image would be -- would be**

20   **fine.**

21      Q.   (BY MR. LEE)  So it's your view, where the

22   patent talks about characterizing in the patent, it

23   doesn't satisfy you on what it means to be

24   characterizing a digital video image as used in the

25   claim term; is that what I understand it to be?

```
 1        A.   I think --

 2              MR. RUNYAN:  Objection, mischaracterizes

 3   testimony.

 4        A.   I think -- I think I've been very clear.

 5   The -- while the patent does talk about characterizing a

 6   color, no place could I find where someone of ordinary

 7   skill of the art having read the patent would understand

 8   what they mean by characterizing a digital image so that

 9   they would understand the scope of the claims.

10              MR. LEE:  Can we go off the record?

11              MR. RUNYAN:  Sure.

12              THE REPORTER:  Off the record.

13         (Break taken from 2:52 to 3:02 p.m.)

14              (Exhibit 4 marked.)

15        Q.   (BY MR. LEE)  I'm marking as Exhibit 4 an

16   article entitled, "Estimation-theoretic approach to

17   dynamic range enhancement using multiple exposures,"

18   authored by Mark A. Robertson, Sean Borman, and Robert

19   L. Stevenson.

20              Do you recognize this article,

21   Dr. Stevenson?

22        A.   It's certainly been a long time since I've

23   looked at it, but I recall it.

24        Q.   This is something where you are a coauthor,

25   correct?
```

 1      **A.   Yes.   There's two -- the two other authors are**

 2   **Ph.D. students of mine.**

 3      Q.   If I can point your attention to page 222 of

 4   this article, the right column, the last paragraph, the

 5   second sentence says:  Note that accurately

 6   characterizing the noise term Nij would be extremely

 7   difficult as it would require detailed knowledge of the

 8   specific image capture process being employed.

 9           Do you see that there, Dr. Stevenson?

10      **A.   Yes.**

11      Q.   Do you understand what characterizing means

12   for that sentence for this article?

13      **A.   Well, probably, a full explanation, we'd have**

14   **to go into other parts of the article.  But I'm**

15   **certainly talking about how you might go about**

16   **characterizing a noise in an imaging system.**

17      Q.   And how do you use "characterizing" in this

18   context, in this article?

19      **A.   Here, I'm talking about the idea of -- well,**

20   **without rereading the patent, I couldn't tell you for**

21   **positive, but given the work I was doing at this time,**

22   **I'm almost definitely talking about the idea of**

23   **statistical characterization, so estimating something**

24   **like a probability density function or distribution**

25   **function so that I can work it into the estimation**

1    problems that is being posed here.

2        Q.   And in this context, you would understand what

3    characterizing means?

4        A.   Because there's extensive discussion

5    throughout this paper of noise and how you go about

6    characterizing it, you know, kind of the exact opposite

7    of the patent and the -- and the issue with the patent.

8            And clearly, this sort of characterization

9    I don't believe is a relevant -- is relevant to the

10   patented technology, so it's -- it's again pointing out

11   the problem with the patent.

12       Q.   Is there anything --

13       A.   Because we don't mean this.

14       Q.   But you do understand what characterizing

15   means in this article- -- for this paper, correct?

16       A.   I feel like we're just going -- we're circling

17   back to -- yes, and I agree that the word

18   "characterizing," "characterization," that's a word in

19   the English language.  Someone can use it in an English

20   sentence, and it makes sense.

21           It doesn't -- you know, it doesn't address

22   the issue that in the patent it's used in a technical

23   way to talk about some aspect of a digital image that is

24   not at all described in the patent.

25           So I don't -- you know, beyond the fact

1    that I can agree that "characterization" is an English

2    word, it just is not described in the patent.  I don't

3    know what they mean in the context of the claim.

4        Q.   Is your position on "characterizing"

5    inconsistent with any of your prior publications,

6    speeches, talks, papers?

7                MR. RUNYAN:  Objection, vague, lacks

8    foundation.

9        A.   I -- you know, like I said, "characterization"

10   is a word or "characterize" is a word I recognize from

11   the English language.  I believe it can be used by an

12   English speaker and given context someone would

13   understand what I might be talking about.

14                Like, for example, in the paper, I was

15   talking about characterizing the statistical properties

16   of a noise source.  That has a well understood technical

17   meaning.

18                Here, in the patent, they're using it in a

19   technical way.  They're talking about characterizing

20   something, in this case, a digital image; yet they --

21   they don't indicate how that is done, so it's -- it's

22   just indefinite.

23       Q.   (BY MR. LEE)  You don't have a legal

24   background, do you, Dr. Stevenson?

25       A.   I do not.

```
 1        Q.   You don't have a law degree, do you?
 2        A.   I do not.
 3        Q.   Do you have legal experience to qualify you to
 4   provide a legal conclusion on whether the patent is
 5   definite or indefinite?
 6        A.   I'm not trying to provide a legal conclusion.
 7   I'm trying to provide an opinion of how one of ordinary
 8   skill in the art would understand terms in a claim.
 9             In my opinion, from a technical person,
10   having read that, would not know how that term is being
11   used in that claim.  And my understanding is, if a
12   technical person doesn't understand how that word is
13   used, doesn't understand its meaning in the scope of the
14   claim, that's what I believe the lawyers call
15   indefinite.  So if I'm somehow using that wrong,
16   that's -- I'm sorry I have the law slightly wrong.
17             My fundamental opinion is, one of ordinary
18   skill in the art having read that term would not
19   understand the scope of the claim, would not understand
20   what is covered and what is meant by the phrase
21   "characterizing" as it's used in the claims.
22        Q.   If I could turn your attention to
23   paragraph 27, this is the -- concerning the claim term
24   "individual color," correct?
25        A.   Yes.
```

1    Q.   You state that the term "individual color" is

2    expressly defined in the '435 patent in Column 1,

3    lines 20 to 21; is that correct?

4         **A.   That's what my sentence says.**

5    Q.   And you -- in your opinion, the term should be

6    defined as a linear combination of colors or color

7    components?

8         **A.   Yes.**

9    Q.   If I can turn your attention back to the

10   '435 patent, Column 1, line 20 to 21:  Herein, an

11   individual color represents the linear combination of

12   colors, color components, such as red, green, blue,

13   yellow, cyan, and magenta.

14             It goes on to say:  Wherein, RGB color

15   space the basic colors are -- color components are red,

16   green, and blue.

17             Do you see that, Dr. Stevenson?

18        **A.   Yes.**

19   Q.   Why did your definition stop at "linear

20   combinations of colors or color components"?

21        **A.   Because the rest of that sentence doesn't**

22   **really add anything to the definition.  It's just kind**

23   **of an example, I guess, tells you the next part of the**

24   **definition.**

25   Q.   You said they defined it.  That's a whole

1   sentence there.  Why is the --

2       **A.   Where did I say a whole sentence?**

3       Q.   You cite to -- you cite to -- it's the last

4   sentence of paragraph 27:  This term is expressly

5   defined in the '435 patent Column 1, 20 through 21.

6             So is it your position that that

7   definition is -- stops at color components and then the

8   other language, "such as red, green, blue, yellow, cyan

9   and magenta" and so on is not part of the definition?

10  How did you determine that that's the definition?

11  Because that sentence says "herein," and it defines what

12  individual color is.

13      **A.   Well, I see --**

14            MR. RUNYAN:  Objection, vague, compound.

15      **A.   Well, I see everything after the -- I guess**

16  **it's the second comma where it starts the "such as,"**

17  **those are just kind of an example.  I don't see where**

18  **that's part of a definition.  It's just here's an**

19  **example of what I mean by that -- by the -- by the**

20  **definition I just gave you.**

21      Q.   (BY MR. LEE)  What you're saying is an

22  example, is it inconsistent with the definition?

23      **A.   I'm sorry.  I missed the words.  "Consistent"**

24  **or "inconsistent"?**

25      Q.   So you're defining -- consistent --

1    inconsistent.

2              You're defining, in your view, the

3    definition should be "linear combination of colors or

4    color components."  I'm asking whether "such as red,

5    green, blue, yellow, cyan and magenta" is inconsistent

6    with your definition?

7        **A.    I'm sorry.  Something about the way you're**

8    **saying "consistent," I can't tell if it's "consistent"**

9    **or "inconsistent."**

10       Q.    Inconsistent.

11       **A.    Inconsistent.  I view it as just an example.**

12   **It's not -- it's inconsistent.  It's just I don't need**

13   **to go -- in terms of a definition, I don't need that in**

14   **terms of a definition.  It's just -- you know, it's a**

15   **linear combination of color or color components, period.**

16   **I could have rewritten that sentence easily, you know,**

17   **combination of color or color components, period, for**

18   **example, red, green, and blue, you know, provided an**

19   **example that way.  I mean, it's -- that's all I see.  So**

20   **I don't see why that should be part of the definition.**

21       Q.    What's wrong with the plaintiff's definition

22   of an individual color?

23       **A.    I -- you'd have to remind me what their**

24   **definition is.**

25       Q.    I'm assuming you considered a definition

 1    because you mentioned you reviewed the parties'

 2    constructions, as well as the '435 patent, its file

 3    history, your industrial knowledge in formulating your

 4    opinion.  Was there anything wrong with the plaintiff's

 5    proposed construction?

 6        **A.   Well, as I --**

 7                  MR. RUNYAN:  Objection, vague, compound.

 8        **A.   I did not memorize the definition, so I don't**

 9    **have your definition memorized.  I definitely considered**

10    **it.  I definitely looked at it, and I considered it.**

11                  **Sitting here today, since I don't have it**

12    **memorized and you're asking me a very specific question**

13    **about what is wrong with it, I would like to be reminded**

14    **of what their -- your definition is.  I don't have it**

15    **written in here.  I don't complain about it specifically**

16    **that I know what it's -- I could recall.  So I'm just**

17    **asking for clarification of what your definition is if**

18    **you want me to answer the previous question.**

19        Q.   (BY MR. LEE)  I'm trying to understand, when

20    you wrote this declaration, if you had -- whether you

21    had any issues with plaintiff's construction.  You

22    didn't --

23        **A.   And you -- and you want me to answer that**

24    **without --**

25        Q.   Well, I mean, I guess, if you had any -- let

1  me ask it this way:  If you had any issues with it,

2  would you have put it in your declaration?

3      **A.   And you want me to answer this without**

4  **reminding me what the definition is?**

5      Q.   I'm not -- I'm asking you if the -- that's not

6  what I'm doing.  You're twisting my words,

7  Dr. Stevenson.

8              I'm trying to understand if you had

9  issues with -- if you had issues with plaintiff's

10  positions, would you not have put it in your

11  declaration?

12      **A.   Without recalling the definition, I don't know**

13  **if I would have or not.**

14      Q.   When you said you relied -- you reviewed the

15  '435 patent and its file history, you didn't cite to the

16  '435 patent file history, did you?

17      **A.   I don't recall doing that.  I recall the file**

18  **history being pretty brief, not much there, one of the**

19  **shorter file histories I've ever looked at.**

20      Q.   Did you re- -- and I'm showing you the first

21  page of the '435 patent.  Did you review any of the

22  patent documents that were cited on the face of the

23  patent?

24      **A.   I don't believe so.  I don't recall any of**

25  **those.  I'd have to look at them, probably, to know for**

1    sure.

2         Q.   In Column 2 of the '435 patent, lines 8

3    through 10, this patent talks -- refers to U.S. Patent

4    Number 6,122,012 by the same inventor of the present

5    invention.  There's disclosed a method of selective

6    color control of digital video images.

7              Did you review the 6,122,012 patent in

8    preparing and formulating your declaration?

9         A.   Since it wasn't incorporated by reference, no,

10   I did not, because it's not -- it's just a cite.  If it

11   had been incorporated by reference, I definitely would

12   have.

13        Q.   If I can turn your attention to paragraph 28,

14   "Input Image Pixel," it's your opinion the term should

15   be construed as image data including an integer row, an

16   integer column, and color component values for each red,

17   green, and blue.

18             How did you come up with this definition?

19        A.   From the patent, reading the patent.

20        Q.   And that's why you wrote in the next

21   paragraph, Number 29, "This is confirmed in the

22   specification"; is that -- is that correct?

23        A.   You know, I -- I wrote these two paragraphs

24   based on how I understood that the term was being used

25   by the patentee and how one of ordinary skill in the art

1    **having read the patent would understand that term in the**

2    **claim.**

3        Q.   And you considered -- did you consider the

4    file history of the '435 patent for your -- for your

5    proposed definition?

6        **A.   I did.**

7        Q.   Did you review the 6,122,012 patent in

8    formulating your position?

9        **A.   You have to remind me what patent that is.**

10       Q.   That was the patent that was referenced in

11   Column 1 -- Column 2 of the '435 patent by the same

12   inventor.

13       **A.   Since it wasn't part of the intrinsic record,**

14   **it didn't -- it didn't seem appropriate to be referring**

15   **to that in terms of how one of ordinary skill in the art**

16   **would understand that term in the -- in the patent, so I**

17   **specifically would not have.**

18       Q.   What does "input image pixel" mean outside the

19   context of the patent?

20       **A.   I didn't try to form a definition for it**

21   **outside the context of the patent.**

22       Q.   In the digi- -- in your experience in the

23   digital video image field, what does "input image pixel"

24   mean to you?

25       **A.   It depends very much on the context.  It means**

1    different things in different contexts.

2         Q.   Can you provide examples?

3         A.   Sure.  In a -- in a camera system, so if I was

4    building a digital camera or video camera, quite often

5    we talk about the sensors that make up the CCD ray as

6    the pixels or the input image pixel, so that -- that's

7    the data that receives the light that generates

8    something in a digital video system that we call a

9    pixel.

10                  In a -- in a display system, when we talk

11   about monitors, the monitors we talk about the

12   individual -- for example, an LCD monitor has individual

13   pixels depending on where you're -- you know, what part

14   of the system you're looking at, you talk about the CCD

15   elements being input image pixels.

16                  In the image processing, you know, with

17   some of the processing stuff you see, it has to do with,

18   you know, aspects of the image.  So it depends on the

19   context.

20        Q.   What is a preferred embodiment?

21                  MR. RUNYAN:  Objection, calls for a legal

22   conclusion.

23        A.   You know, my understanding of, you know, this

24   concept of what the lawyers call "preferred embodiment"

25   is that the -- you know, the patent -- the claims of the

1  **patent's scope are not limited necessarily by the --**

2  **what's called the preferred embodiment in the patent,**

3  **you know, whatever the inventor thought what was the**

4  **best way of implementing their particular invention was.**

5              **And so we talk about, you know, the**

6  **patentee, when they write the specification, might**

7  **clearly lay out what they think is the best way of**

8  **implementing it, and that's called the preferred**

9  **embodiment, but the scope of the claims can be broader**

10 **than that.**

11     Q.   (BY MR. LEE)  Moving on to the next term,

12 "Forming a corresponding plurality of output image

13 pixels having said selected individual color,"

14 paragraph 30 of your declaration, you define that term

15 to be:  Forming a plurality of output image pixels that

16 correspond to one of the plurality of input image pixels

17 that have said selected individual color in the real

18 time digital video input image with the hue or the

19 saturation selected to be independently changed, the

20 output image pixels having said selected individual

21 color.

22              How did you come up with -- how did you

23 come up with this definition, Dr. Stevenson?

24     A.   **Well, in this particular element, the -- I**

25 **thought there needed to be some clarification because of**

1    the -- you know, you might say the context of the

2    patent.

3                    The -- in particular the idea of what was

4    the selected individual color, you know, that's

5    something that comes from earlier in the claim.  And

6    this is -- you know, this is talking about -- and that's

7    not just clear -- that's not really -- what that means

8    is not completely clear from, you know, this phrase by

9    itself, and so I felt there was some clarity needed

10   about what was contained in the output image pixels,

11   right?

12                   So this -- so you know -- but the language

13   is trying to get across that it has the selected

14   individual color which is the color that the individual,

15   the viewer, had chosen as the one we're going to modify

16   the hue and possibly modify the hue and saturation of.

17   So I thought the definition provided clarity.

18        Q.   And you cite to the Column 11, lines 14

19   through 30, to support your position; is that correct?

20        A.   That looks like something I cite, yes.

21        Q.   How does your definition provide clarity?

22                   MR. RUNYAN:  Objection, asked and

23   answered.

24        A.   As I -- as I said already, I thought the

25   phrase by itself, it was un- -- it -- you had to

```
 1    understand what the selected individual colors that's
 2    being referred to as part of the output image, what that
 3    was referring to.  And that was -- you have to look at
 4    the rest of the claim to understand that.  And so what's
 5    the selected individual colors are, you know, what I put
 6    in the definition there, it's the colors -- the
 7    individual colors that the viewer had selected in order
 8    to, you know, selectively change the hue or saturation.
 9        Q.   (BY MR. LEE)  The next term, "By performing
10    arithmetic and logical operations," it's your opinion
11    that this term is indefinite, correct?
12        A.   Yes.
13        Q.   Why is it -- why, in your opinion, is it
14    indefinite?
15        A.   It's -- it's not identifying in the claim
16    language, you know, how it's used in the claim, it's,
17    you know, just based on the plain English language,
18    quite frankly.  It's not -- we don't know what operation
19    is done by performing arithmetic and logical
20    operators -- operations.
21               There's two in the claim that possibly
22    could be it depending on, you know, which one you
23    choose.  Or maybe, I guess, you could choose both.  I
24    don't know.  But the claim is just -- you know, this
25    causes the claim to be indefinite because we don't know
```

1    what we are doing by performing arithmetic and logical

2    operations.

3                    I think I spell it out.  It's -- this

4    aspect about identifying particular pixels and another

5    one about changing them.  I don't know, from the way the

6    claim language is written, which one of those things is

7    done by performing arithmetic and logical operators.

8        Q.   The next term, "Evaluating and Evaluated," why

9    are those term -- why are the terms "evaluating" and

10   "evaluated," in your opinion -- why is it your opinion

11   that these two -- that these terms are indefinite?

12       A.   Well, it's somewhat similar to our previous

13   conversation about "characterizing."  I recognize the

14   words "evaluating" and "evaluated" are part of the

15   English language and can be used in the English

16   language.  But here in the context of the claims,

17   they're talking about something particularly technical

18   and something that's being evaluated.

19                    In fact, we call it something about the --

20   the hue control and saturation control is being

21   evaluated.  I could find nothing in the patent that is

22   telling me what that means.  I don't know how to

23   evaluate hue control or the -- or the saturation

24   control, so I don't know what that means.

25                    And I don't think someone of ordinary

 1    **skill in the art would understand what they mean and**
 2    **what scope they're -- the claim they're trying to claim**
 3    **here with that use of that language.**
 4        Q.   And this is -- you give the same similar
 5    reasons for "characterizing" that you had earlier in our
 6    discussion; isn't that correct?
 7        **A.   Well, I mean, I think my position has --**
 8                MR. RUNYAN:  Could you -- I didn't hear
 9    that question clearly at all.  I'm sorry.  Could you
10    repeat that, John?
11                MR. LEE:  Yes.
12        Q.   (BY MR. LEE)  Is your -- we went round and
13    round on "characterizing" earlier.  Is your opinion on
14    "evaluating" and "evaluated" using a similar rationale
15    as "characterizing"?  Or --
16        **A.   Well, I -- it's similar --**
17                MR. RUNYAN:  Objection, vague.
18    Objection, vague, mischaracterizes testimony, compound.
19        **A.   It's similar in the sense I already mentioned.**
20        Q.   (BY MR. LEE)  So when it says evaluating, you
21    know, independent color hue control functions, you don't
22    know what exactly of hue -- of hue control color
23    function is being evaluated?  Is that what you're
24    saying?
25        **A.   I don't -- I don't know how to perform that**

 1    **evaluation.  I don't know what that evaluation entails**

 2    **or what the scope of that evaluation is.  It actually**

 3    **doesn't make much sense to me to use "evaluating" in**

 4    **that context, but they do.  And I don't find it -- I**

 5    **don't find any way -- I don't find anything in the**

 6    **patent that illuminates what they mean there.**

 7         Q.   So if -- when we go to the '435 patent, Column

 8    Number -- Column Number 11, line 62, and it goes -- it

 9    talks, in context, as having the individual color in

10    real time digital video input image whose hue or

11    saturation was selected to be independently changed by

12    separately evaluating independent color hue control

13    functions, F, color -- F, function, color hue or

14    independent color saturation control functions.

15              That doesn't help provide guidance on what

16    "evaluating" means?

17         **A.   No.  If I recall, that's pretty much the same**

18    **language that's used in the claim, so it provides no**

19    **clarity whatsoever about what the claim means.  It's --**

20    **I think it's pretty much a repeat.**

21              **That sentence says nothing about how you**

22    **actually do an evaluation or what that evaluation might**

23    **be.  It just says you're going to do it.**

24              MR. LEE:  If we could take another quick

25    break for another 10 minutes.

```
 1                 MR. RUNYAN:  All right.

 2            (Break taken from 3:41 to 3:50 p.m.)

 3       Q.   (BY MR. LEE)  Dr. Stevenson, for the term

 4  "viewer," you rendered a legal opinion, correct?

 5       A.   I rendered a what?

 6       Q.   A legal opinion that the claim term is --

 7  your -- it's your opinion the term requires -- must be

 8  performed by someone as claimed; is that correct?

 9       A.   I'm sorry.  Your question started one way and

10  went a different direction.  Maybe you could state a

11  clear question.

12       Q.   Paragraph Number 40, you write that viewer

13  means a human; as used in Claim 17, it illustrates that

14  the recited method steps, as discussed below, must be

15  actually performed by someone, as claimed.

16                 Is that correct?

17       A.   You read -- you part of my paragraph 17 --

18  40 correctly, yes.

19       Q.   And the supporting evidence -- or the evidence

20  in support of your opinion is identified in

21  paragraph 41, correct?

22       A.   Yes, that's part of what I tried to do in 41.

23       Q.   Is there any other evidence that supports

24  your position that's not cited in the declaration of

25  yours?
```

1          **A.    I think there's at least some other language**

2     **where they talk about a viewer, but it's pretty much the**

3     **same sort of language as this.   Maybe -- maybe it's in**

4     **that string cite at the bottom.   Maybe they're all cited**

5     **there.**

6                **But I know I -- I talk about one here.   I**

7     **quote one particularly here.   But I know they use the**

8     **same -- the word "viewer" a couple different times in**

9     **the patent all meaning the same thing.   They seem very**

10    **consistent.   They're talking about a user of the system.**

11         Q.   And if there were any additional cites that

12    you thought would be helpful, you would have included it

13    in your declaration?

14         **A.    I thought those were the most useful.   I**

15    **thought they were -- they made the point very well of**

16    **how the patentee was using the word "viewer" and how one**

17    **skilled in the art would understand the word "viewer" in**

18    **the claim.**

19         Q.   For the next term, in the paragraph heading H,

20    "All method steps, or the combination of method steps

21    and system elements in a single claim," it's your

22    opinion -- what is your opinion about this claim term,

23    Dr. Stevenson?

24         **A.   Well, I'd --**

25                MR. RUNYAN:  Objection, vague as --

1    objection, vague as to "claim term."

2        A.   In Section H, paragraphs, what, 42 through 44,

3    I talk about, you know, my understanding -- you know,

4    I've seen this in a couple other cases where this --

5    this idea of -- I don't know what you want to call it.

6    There's probably some legal term, but some sort of

7    hybrid claim where it's both a system and a -- and a

8    method.  That's not a proper structure for a claim, and

9    so that's what I'm talking about in Section H.

10       Q.   (BY MR. LEE)  The basis of your opinions in

11   your declaration is based upon your review of the

12   '435 patent; is that correct?

13       A.   Well, I mean, probably most importantly for

14   this one, it's the claim language and what the claim

15   language lays out.

16            Now, certainly, I get my understanding of

17   what that claim language is laying out and the fact that

18   some of the operations are talking about a human

19   performing some steps and the other operations are about

20   a system, you know, comes from the -- from the -- from

21   the patent.

22       Q.   You testified earlier that you considered the

23   '435 file history; is that correct?

24       A.   Yes.

25       Q.   Your declaration doesn't cite to the

1    '435 patent file history, does it?

2        **A.   My recollection is the file history of the**

3    **'435 is very brief.  I think it was like -- something**

4    **like a hundred pages.  There was not much discussion**

5    **about any -- I don't recall any discussion of claim**

6    **terms or, you know, things that were particularly**

7    **relevant to any of the terms at issue, so it doesn't --**

8    **it doesn't surprise me that there's no cites to anything**

9    **in there.**

10       Q.   So your opinions, then, is based on the

11   '435 patent?

12       **A.   Well, it's also --**

13       Q.   And what else?

14       **A.   -- based on the file history.**

15       Q.   Is there anything else that your opinion is

16   based upon?

17       **A.   My knowledge and understanding of what a**

18   **person of ordinary skill in the art would know at the**

19   **time of the invention.**

20       Q.   And your declaration provides -- states all

21   the bases for your opinion -- bases and support for your

22   opinions; is that correct?

23       **A.   I believe that the bases for my opinion are**

24   **well spelled out in my declaration and, you know,**

25   **provide the necessary insight to understand how I**

1    reached the opinions I did.

2         Q.   Is there anything that you relied upon that's

3    not disclosed in your declaration?

4         A.   Is this question somehow different than the

5    last ten times you've asked that question?  I mean, I

6    feel like we've gone around and around on this.  It's --

7    I've repeated this answer over and over again.

8                   Things I relied on were the '435, its file

9    history, my knowledge and experience, especially of

10   the -- what a person of ordinary skill in the art would

11   know at the time.

12                  If I had relied on anything else, I would

13   have cited it in the body of my declaration.  We've gone

14   through pretty much every paragraph, and I didn't see

15   any additional cites outside that, so I don't know of

16   anything else.  I don't believe I relied on anything

17   else.

18        Q.   Earlier you testified that you spend about

19   75 percent of your time working at Notre Dame and the

20   other 25 percent of your time doing consulting work; is

21   that correct?

22        A.   I gave you rough -- rough values.  You know, I

23   said 75 percent at Notre Dame, 20, 25 percent doing

24   these sort of consulting things.

25        Q.   What is your annual income at Notre Dame?

```
 1        A.   I don't know.  I'd have to look it up.

 2        Q.   What's your -- do you know what your salary is

 3   at Notre Dame?

 4             MR. RUNYAN:  Objection, irrelevant.

 5        A.   No.

 6        Q.   (BY MR. LEE)  How much money have you earned

 7   as a consultant in the past year?

 8        A.   I don't really track these things.  My wife

 9   does all the bills and all the taxes, so until I sign

10   things, I don't really know -- pay attention.

11        Q.   Do you earn more as a consultant or more as

12   working at Notre Dame?

13        A.   Well, even though I spend more time working at

14   Notre Dame, I probably earn more as a consultant most

15   years.

16        Q.   How much more?

17        A.   I don't know.  I mean, I really have no idea

18   at this point.

19        Q.   And you don't know how much you've billed on

20   this case so far?

21        A.   No.  I have to go back and look at some

22   records.  I mean, I can know.  I just -- I don't pay

23   much attention to these numbers.  I've got other things

24   to think about.

25             MR. LEE:  I have no further questions at
```

 1   this point.

 2                  Ed, if you have any questions, please

 3   proceed.

 4                  MR. RUNYAN:  I don't have any questions.

 5                  MR. LEE:  Andrew?

 6                  MR. OLIVER:  No questions from me.

 7                  MR. LEE:  Dr. Stevenson, thank you for

 8   your time.

 9                  THE WITNESS:  No problem.  Good bye.

10                  (Momentary off-the-record discussion.)

11                  THE REPORTER:  It is 4:01, and the

12   deposition has concluded.  Thank you.

13                  (Proceeding concluded at 4:01 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25

```
1                    CHANGES AND SIGNATURE

2    WITNESS NAME:  ROBERT STEVENSON, Ph.D.

3    DATE:  April 7, 2020

4    Reason Codes: (1) to clarify the record; (2) to conform
     to the facts; (3) to correct a transcription error; (4)
5    other (please explain).

6    PAGE LINE       CHANGE              REASON

7    _____

8    _____

9    _____

10   _____

11   _____

12   _____

13   _____

14   _____

15   _____

16   _____

17   _____

18   _____

19   _____

20   _____

21   _____

22   _____

23   _____

24   _____

25   _____
```

```
 1              I, ROBERT STEVENSON, Ph.D., have read the
 2     foregoing deposition and hereby affix my signature that
 3     same is true and correct, except as noted above.
 4
 5                          _____
                            ROBERT STEVENSON, Ph.D.
 6     THE STATE OF _____)
 7     COUNTY OF _____)
 8
 9              Before me, _____, on
10     this day personally appeared ROBERT STEVENSON, Ph.D.,
11     known to me (or proved to me under oath or through
12     _____) (description of identity
13     card or other document)) to be the person whose name is
14     subscribed to the foregoing instrument and acknowledged
15     to me that they executed the same for the purposes and
16     consideration therein expressed.
17              Given under my hand and seal of office this
18     _____ day of _____, _____.
19
20
21                          _____
                            NOTARY PUBLIC IN AND FOR
22                          THE STATE OF _____
23     COMMISSION EXPIRES: _____
24
25
```

```
 1              IN THE UNITED STATES DISTRICT COURT
                FOR THE EASTERN DISTRICT OF TEXAS
 2                        TYLER DIVISION

 3  LONE STAR TECHNOLOGICAL      §
    INNOVATIONS, INC.,           §
 4                               §
         Plaintiff,              §
 5                               §  CIVIL ACTION
                 v.              §
 6                               §  NO.: 6:19-cv-00059-RWS
    ASUSTEK COMPUTER, INC.,      §
 7                               §
         Defendant.              §
 8

 9

10

11          -----------------------------------

12               REPORTER'S CERTIFICATION

13          DEPOSITION OF ROBERT STEVENSON, Ph.D.

14                    APRIL 7, 2020

15                    VOLUME 1 OF 1

16          -----------------------------------

17

18

19       I, April R. Brunson, Certified Shorthand Reporter in

20  and for the State of Texas, hereby certify to the

21  following:

22       That the witness, ROBERT STEVENSON, Ph.D., was duly

23  sworn by the officer and that the transcript of the oral

24  deposition is a true record of the testimony given by

25  the witness;
```

```
 1        I further certify pursuant to FRCP Rule 30(f)(1)

 2   that the examination and signature by the deponent was

 3   requested by the deponent or a party before the

 4   completion of the deposition and that, therefore, the

 5   deposition transcript was submitted on the 13th day

 6   of April, 2020, to the witness or to the

 7   attorney for the witness for examination and signature

 8   before any notary public and to be returned to me within

 9   30 days from date of receipt of the transcript.

10   If returned, the attached Changes and Signature Page

11   contains any changes and the reasons therefore;

12        That pursuant to information given to the deposition

13   officer at the time said testimony was taken, the

14   following includes counsel for all parties of record:

15

16        FOR THE PLAINTIFF:
               Mr. John Lee
17             BANIE & ISHIMOTO, L.L.P.
               3705 Haven Avenue
18             Suite 137
               Menlo Park, California  94025
19             650.241.2771
               650.241.2770  (Fax)
20             jlee@banishlaw.com

21        FOR THE DEFENDANT ASUSTEK COMPUTER, INC.:
               Mr. Andrew T. Oliver
22             AMIN, TUROCY & WATSON, LLP
               160 West Santa Clara Street
23             Suite 975
               San Jose, California  95113
24             650.393.0634
               aoliver@atwiplaw.com

25
```

```
 1      FOR THE DEFENDANT BARCO N.V.:
              Mr. Edward K. Runyan
 2         NEUSTEL LAW OFFICES, LTD
           2534 South University Drive
 3         Suite 4
           Fargo, North Dakota  58103
 4         701.281.8822
           701.237.0544  (Fax)
 5         edward@neustel.com

 6      That the amount of time used by each party at the

 7   deposition is as follows:

 8         MR. LEE - 2 hours, 9 minutes
           MR. OLIVER - 0 minutes
 9         MR. RUNYAN - 0 minutes

10      That $_____ is the deposition officer's charges

11   to the Plaintiff for preparing the original deposition

12   transcript and any copies of exhibits;

13      I further certify that I am neither counsel for,

14   related to, nor employed by any of the parties or

15   attorneys in the action in which this proceeding was

16   taken, and further that I am not financially or

17   otherwise interested in the outcome of the action.

18      Certified to by me this 13th day of

19   April, 2020.

20

21

22                         April O Brunson
                           _____
23                         April R. Brunson
                           Texas CSR No. 7495
                           Expiration Date:  4/30/2022
24                         PohlmanUSA
                           Firm Registration No. 814
25                         314.421.0099
```

## A

**able** 31:9,10 32:19
**above-styled** 1:19
**Absent** 6:18
**academic** 17:10
  18:1 32:5
**access** 35:14,15
  35:24 36:17
**accurate** 12:10
**accurately** 50:5
**acknowledged**
  76:14
**action** 1:5 5:8
  77:5 79:15,17
**activities** 17:2,3
  18:1,1 19:1
**add** 54:22
**add-on** 22:9
**adding** 22:16
**additional** 69:11
  72:15
**address** 51:21
**adhere** 29:5
**administering**
  5:11
**advanced** 32:15
**affix** 76:2
**afternoon** 6:5,6
**ago** 7:13 8:10
  9:13 15:15,16
**agree** 51:17 52:1
**algorithms** 22:4
**alleged** 37:23
**allowed** 29:4
**amalgam** 23:8
**amend** 46:2
**amended** 4:3 6:24
**Amin** 2:11 5:23
  78:22
**amount** 14:1
  15:23 79:6
**Andrew** 2:11 5:22
  10:24 11:22
  74:5 78:21
**annual** 72:25
**answer** 6:19,21
  9:24 10:2,11
  13:8,10 26:11
  27:1 57:18,23
  58:3 72:7
**answered** 12:15
  26:10 63:23
**anybody** 9:15
  10:20 16:18
**aoliver@atwipl...**
  2:14 78:24
**appearances** 3:3
  5:15

## (col 2)

**appeared** 76:10
**Appearing** 2:8,14
  2:21
**Apple** 20:16 22:8
**applicants** 37:22
**applied** 26:13,20
  27:7 29:20
  30:22
**apply** 24:23 28:13
**appreciate** 32:19
  38:4
**appreciation**
  31:25
**approach** 4:6
  49:16
**appropriate** 60:14
**April** 1:13,20,21
  4:8 5:4,9 75:3
  77:14,19 78:6
  79:19,22
**architecture** 21:3
  21:9,14 22:14
  22:16
**area** 18:23,25
  32:9,16
**argumentive**
  44:10
**arithmetic** 64:10
  64:19 65:1,7
**arrived** 29:15 30:4
**art** 23:19 24:3
  29:10,14,25
  30:8,11 31:12
  31:13 32:1,4,19
  49:7 53:8,18
  59:25 60:15
  66:1 69:17
  71:18 72:10
**article** 49:16,20
  50:4,12,14,18
**article-** 51:15
**asked** 14:2 26:10
  28:21 40:17
  63:22 72:5
**asking** 6:17 9:21
  9:23 26:18
  37:25 48:10
  56:4 57:12,17
  58:5
**aspect** 51:23 65:4
**aspects** 20:18
  61:18
**asserted** 30:8,12
**associated** 22:7
**assumes** 14:21
  15:4
**assuming** 56:25
**Asustek** 1:6 2:10

## (col 3)

  5:7,23 7:24
  12:12,18 77:6
  78:21
**Asustek's** 11:22
**attached** 1:25
  78:10
**attempt** 17:25
  18:3 37:23
**attempted** 27:6
  28:4,6,9
**attention** 12:7
  17:6 19:20
  22:18 23:15
  29:8 37:10,20
  50:3 53:22 54:9
  59:13 73:10,23
**attestation** 5:13
**attorney** 22:20
  78:7
**attorneys** 79:15
**attribute** 43:9
**attributes** 41:1
**August** 16:16
**authored** 17:17
  49:18
**authors** 50:1
**Avenue** 2:5 78:17
**aware** 36:9

## B

**B** 4:1 18:5,14
**bachelor's** 29:19
  30:20 31:19
  32:15
**back** 7:19,21 8:13
  9:11 12:21 13:3
  13:18 14:7
  47:17 51:17
  54:9 73:21
**background**
  52:24
**Banie** 2:4 5:17
  78:17
**Barco** 2:16 5:21
  7:24 12:9 14:10
  14:20 15:10,15
  79:1
**based** 19:15
  23:12 24:6
  25:22 30:8 33:3
  33:15 36:21
  42:22 59:24
  64:17 70:11
  71:10,14,16
**bases** 71:21,21,23
**basic** 33:11 38:22
  39:11 43:7,7
  44:5 47:12

## (col 4)

  54:15
**basically** 35:9
**basis** 6:19 70:10
**began** 20:6
**beginning** 21:17
**begins** 23:16
  33:21
**behalf** 5:18,21
**believe** 6:16 7:15
  9:21 11:2,3
  12:11 14:23
  15:17,22 16:10
  18:15 28:18
  34:19 35:19,23
  35:24 36:12
  37:18 43:4
  44:14,23 45:13
  46:8 47:2,4,17
  51:9 52:11
  53:14 58:24
  71:23 72:16
**best** 18:3 62:4,7
**better** 21:7,9
**beyond** 32:15
  51:25
**big** 37:12
**bill** 14:19
**billed** 73:19
**billing** 8:14 14:25
**bills** 14:9 73:9
**bit** 9:17 10:17
  21:16
**black** 40:5
**blank** 9:3
**blue** 38:22 39:12
  41:15 44:6
  54:12,16 55:8
  56:5,18 59:17
**body** 72:13
**Borman** 4:7 49:18
**bottom** 69:4
**brain** 27:22
**break** 49:13 67:25
  68:2
**brief** 58:18 71:3
**briefing** 35:18,20
**briefings** 35:15
**briefly** 35:5
**briefs** 35:21
**bring** 22:3
**broad** 33:12 46:22
**broader** 62:9
**broken** 15:7
**Brunson** 1:21 5:9
  77:19 79:22
**building** 61:4
**built** 31:3
**bye** 74:9

## C

**C** 2:1 5:1
**California** 2:6,13
  78:18,23
**call** 11:1,3,25 26:2
  35:17 38:7 40:8
  53:14 61:8,24
  65:19 70:5
**called** 20:24 22:8
  22:11,14 62:2,8
**calls** 9:19 24:19
  25:7 42:7 48:16
  61:21
**camera** 20:23
  61:3,4,4
**capture** 17:25
  20:4 50:8
**captured** 46:25
  47:3
**card** 76:13
**case** 7:11,14,18
  8:18 11:14
  12:13 15:19
  25:25 28:14
  35:1 36:2,8,9,11
  52:20 73:20
**cases** 34:17 35:16
  35:22 70:4
**catch** 28:16 37:10
**cause** 1:20
**causes** 64:25
**cc'd** 12:5
**CCD** 61:5,14
**cellular** 21:18,19
**certainly** 7:12,21
  8:8 10:22 11:2
  12:1,1 13:13
  17:22,25 18:22
  18:25 19:10
  22:1 23:11
  24:14 27:18
  30:25 31:18
  32:18 36:6,25
  37:12 40:4
  49:22 50:15
  70:16
**Certificate** 3:11
**CERTIFICATION**
  77:12
**Certified** 5:9
  77:19 79:18
**certify** 77:20 78:1
  79:13
**challenges** 21:18
**change** 64:8 75:6
**changed** 62:19
  67:11
**changes** 3:9 75:1

```
78:10,11                58:22 68:24              55:7,12 56:4,15         45:16 46:13             73:7,11,14
changing 65:5           69:4 72:13               56:15,17,17,22          47:11 54:7,12           consulting 16:19
channel 21:19           cites 37:16 43:15        59:6,16 62:13           54:15,20 55:7             16:21 23:1
character- 44:1           45:11 69:11            62:17,21 63:4           56:4,15,17              72:20,24
characteristics           71:8 72:15             63:14,14 66:21          compound 17:19          contact 7:15
  42:1,2,4              Civil 1:5,23 5:8         66:22 67:9,12             25:15 26:23            contacted 7:14
characterization          77:5                   67:13,13,14             28:7,19 44:9              8:5
  33:1,4,17 38:16       claim 23:16,17          colors 38:20,22          55:14 57:7              contained 63:10
  41:1,3,16,18            25:5,13 27:25          39:11 44:4,6            66:18                    contains 78:11
  42:5,10,15,20          28:2 32:25 33:2         45:16 46:6,10          compression              contents 9:23
  43:5,21 45:6           33:14 35:21             46:12,14 47:7           21:8                      36:18
  46:23 50:23            36:11 38:6,10           47:11,23,24            computer 1:6             context 23:20
  51:8,18 52:1,9         39:2,3,6,6 43:2         54:6,12,15,20            2:10 5:8,23 20:5         32:22 38:5
characterize             43:13 48:5,18          56:3 64:1,5,6,7          29:20 30:21              40:12,15,20
  32:20 38:9             48:25 52:3 53:8        ColorSync 22:8           77:6 78:21               42:8,12,13 43:2
  41:13 43:12            53:11,14,19,23         column 43:15            computers 20:17           46:9 50:18 51:2
  44:7 45:19             60:2 63:5 64:4          44:20 45:14            computing 20:2            52:3,12 60:19
  46:19 47:7,20          64:15,16,21,24         46:6 47:9 50:4          con- 42:8                 60:21,25 61:19
  52:10                  64:25 65:6 66:2         54:2,10 55:5           concept 46:22             63:1 65:16 67:4
characterized            66:2 67:18,19          59:2,16 60:11           61:24                     67:9
  38:21 39:2             68:6,13 69:18          60:11 63:18            concepts 31:2,6          contexts 61:1
  41:14 44:5             69:21,22 70:1,7        67:7,8                   40:25                    contributed 31:22
  46:18 47:11            70:8,14,14,17         combination 32:5        concerning 34:17         contributions
characterizing           71:5                    44:5 54:6,11            35:16,22 36:2            32:9
  33:6,10,12,19         claimed 68:8,15          56:3,15,17             53:23                    control 59:6 65:20
  33:23 34:6,13         claims 24:6 42:13        69:20                 conclude 47:13            65:20,23,24
  38:24 39:1,3,7         47:22 49:9            combinations            concluded 74:12           66:21,22 67:12
  39:10,12,14           53:21 61:25             38:22 39:11             74:13                     67:14
  40:11,17 41:6         62:9 65:16              47:12 54:20            concluding 46:14         conversation
  43:5,6 44:2,3,4       Clara 2:12 78:22       come 19:9 30:22         conclusion 24:20           10:5,7 36:4,14
  44:21,25 45:8         clarification 57:17      31:7 37:12             29:15 42:8 53:4           36:17,19 47:25
  45:10,16,23            62:25                   59:18 62:22,23         53:6 61:22                65:13
  46:1,6,7,8,9,10       clarify 75:4           comedy 33:13            conducted 5:6           conversations
  46:12,14,15,23        clarity 63:9,17,21       42:21 43:6            confirmed 59:21           8:10
  47:4,5,14,15,18        67:19                 comes 16:1 63:5         conform 75:4             copies 79:12
  47:23,24,25           clear 27:16,23           70:20                 confusing 39:21          copy 17:10,23
  48:7,9,11,13,19        32:23,24 37:5         comma 55:16             consider 27:20           correct 12:13
  48:22,24 49:5,8        49:4 63:7,8           commenced 5:2            34:16 45:18               19:18 24:10
  50:6,11,16,17          68:11                 commercializat...        60:3                     26:21 28:3
  51:3,6,14,18          cleared 37:8             21:25                 consideration             29:11 44:21,25
  52:4,15,19            clearly 39:15          COMMISSION               76:16                    45:8 46:1 49:25
  53:21 65:13            48:17 51:8 62:7         76:23                 considered 30:3           51:15 53:24
  66:5,13,15            66:9                   communicate             31:11,16 56:25           54:3 59:22
charges 79:10          coauthor 49:24           12:3                   57:9,10 60:3              63:19 64:11
chart 35:8             code 22:2,5            companies 20:5          70:22                     66:6 68:4,8,16
chip 21:4              Codes 75:4              21:24                  consistent 19:12           68:21 70:12,23
choose 64:23,23        color 20:18,19,20      company 21:12           55:23,25 56:8,8           71:22 72:21
chosen 63:15             20:24 38:21          comparable 31:14         69:10                     75:4 76:3
circling 51:16           39:1,4,14,16,19       31:16                 constitutes 25:17         correctly 68:18
citation 45:7            39:20,21,22,24       compared 16:22           26:16 28:2               correspond 62:16
cite 37:1,16 44:24       40:2,3,7,10,25       complain 57:15         construction              corresponding
  45:4 46:7,12           41:4,7,14,17,24      Complainant 12:9         23:16 25:5,13             62:12
  55:3,3 58:15           42:4 44:2,4           complete 18:3           35:21 36:10             counsel 5:13,14
  59:10 63:18,20         45:16 46:12,17        completely 63:8         57:5,21                   6:17,19 11:22
  69:4 70:25             47:11,12,13,18       completion 78:4        constructions             16:7 22:21,24
cited 19:9,11            47:20,21 49:6        component 59:16          35:9,11 57:2              23:3,7,9,11,13
  34:15 37:3,3,14        53:24 54:1,6,11      components             construed 59:15           23:16 25:23
  44:20 46:8             54:12,14,15,20        38:21 44:5             consultant 15:10          28:20 78:14
```

79:13
**COUNTY** 76:7
**couple** 7:13 27:5
69:8 70:4
**course** 40:23,24
**court** 1:1 36:9
77:1
**cover** 31:2
**covered** 40:24
53:20
**covers** 17:18
**created** 37:22
**crosstalk** 28:16
**crux** 33:17 43:10
45:12
**CSR** 1:22 79:23
**current** 23:6,11
**currently** 16:11
16:18
**customary** 23:18
23:24
**CV** 17:11,12,18,23

**cyan** 47:12 54:13
55:8 56:5

**D**

**D** 3:1 5:1
**Dakota** 2:19 79:3
**Dame** 16:13,15,17
16:23 17:2
72:19,23,25
73:3,12,14
**data** 59:15 61:7
**date** 7:12 8:8
13:23 18:10
75:3 78:9 79:23
**dated** 17:21
**day** 8:17 9:1,7,9
13:12 76:10,18
78:5 79:18
**days** 13:11,12
78:9
**decide** 30:18
**declaration** 4:4
7:7,9 8:4,5,12
8:21,24 11:7,13
11:16 12:8,24
13:2,15,16 14:2
14:18 15:8 17:4
18:18 19:6,11
19:15,21 22:19
24:4,13 25:3,6
25:14 26:6
27:13 33:20
34:19,22,25
35:1,7,18 36:5,7
36:15,20 37:15
40:22 41:19,22

**44:21 45:25**
57:20 58:2,11
59:8 62:14
68:24 69:13
70:11,25 71:20
71:24 72:3,13
**Defendant** 1:7
2:10,16 5:21
77:7 78:21 79:1
**defendants'** 16:7
**define** 40:17,18
40:20 62:14
**defined** 54:2,6,25
55:5
**defines** 55:11
**defining** 55:25
56:2
**definite** 53:5
**definitely** 50:22
57:9,10 59:11
**definition** 24:3
54:19,22,24
55:7,9,10,18,20
55:22 56:3,6,13
56:14,20,21,24
56:25 57:8,9,14
57:17 58:4,12
59:18 60:5,20
62:23 63:17,21
64:6
**degree** 29:19
30:21 31:19
32:11,15,15,17
53:1
**density** 50:24
**depending** 61:13
64:22
**depends** 60:25
61:18
**deponent** 78:2,3
**deposed** 7:4
**deposition** 1:11
1:17 4:3 5:5,11
6:24 7:4 8:15,20
8:25 9:8,10,16
10:4,21,23,25
74:12 76:2
77:13,24 78:4,5
78:12 79:7,10
79:11
**describe** 37:23
42:1
**described** 51:24
52:2
**description** 4:2
15:13 76:12
**design** 19:25
29:23 30:16

**31:15,17**
**designs** 21:4
**desktop** 20:5,13
20:14
**detailed** 50:7
**details** 36:7
**determine** 55:10
**develop** 22:4
**developing** 20:5
**device** 20:21,21
**devices** 20:2,4
**different** 27:21
39:23 45:15
46:4 47:25 61:1
61:1 68:10 69:8
72:4
**differently** 20:19
**difficult** 50:7
**digi-** 60:22
**digital** 20:1,1,3,23
29:22 30:16
31:1,2,15,17
32:16,17 33:1
34:9,9 38:16
39:7,12,20,22
39:24 40:1,3,24
42:15 43:12
44:7,13 45:10
45:17,19 46:10
46:13,15,17,20
47:6,10,15 48:1
48:7,12,19,24
49:8 51:23
52:20 59:6
60:23 61:4,8
62:18 67:10
**dimensions** 46:24
**direct** 23:14
**direction** 68:10
**disclose** 9:23
47:6 48:5,6
**disclosed** 47:5
48:9,11,13 59:5
72:3
**discuss** 38:20
**discussed** 33:24
34:21 41:13
68:14
**discussion** 51:4
66:6 71:4,5
74:10
**display** 61:10
**distinct** 27:23
**distinction** 27:2
**distribution** 50:24
**District** 1:1,1 29:3
29:6 77:1,1
**DIVISION** 1:2 77:2

**document** 11:10
11:12 18:6 26:9
27:8 34:15
35:12 76:13
**documents** 58:22
**doing** 14:16 20:12
23:1 27:4 28:13
43:18 48:2
50:21 58:6,17
65:1 72:20,23
**Dr** 6:4,13 7:1 10:2
11:9 12:7,24
16:12 17:4
18:17 19:21
22:25 24:25
29:9 32:21
37:24 41:11
44:22 45:20
46:1,20 49:21
50:9 52:24
54:17 58:7
62:23 68:3
69:23 74:7
**draft** 14:2
**drafted** 12:24
**drafting** 13:1
**drama** 33:13
42:21 43:6
**drawing** 26:24
27:2
**Drive** 2:18 79:2
**due** 13:22
**duly** 1:19 6:1
77:22
**dynamic** 4:6
49:17

**E**

**E** 2:1,1 3:1 4:1 5:1
5:1
**e-mail** 12:6
**earlier** 13:22,23
45:22 63:5 66:5
66:13 70:22
72:18
**early** 8:9 19:24
20:3,6 34:20
35:4 36:4,14
**earn** 31:19 73:11
73:14
**earned** 30:20 73:6
**easily** 56:16
**Eastern** 1:1 29:3,6
77:1
**Ed** 7:15 28:25
74:2
**educate** 18:24
**educating** 30:9

**education** 17:13
32:8
**Edward** 2:17 5:20
79:1
**edward@neust...**
2:21 79:5
**effort** 21:8
**either** 12:3 14:17
**elaborate** 20:10
32:6
**electrical** 29:19
30:21
**Electronic** 4:8
**element** 62:24
**elements** 61:15
69:21
**else's** 22:3
**embodiment**
61:20,24 62:2,9
**employed** 16:11
16:18 50:8
79:14
**ends** 33:21
**engaged** 7:22
16:6
**engagement** 7:20
8:1 12:17
**engagements**
16:19
**engineering**
29:20 30:21
**English** 42:10,11
51:19,19 52:1
52:11,12 64:17
65:15,15
**enhancement** 4:7
49:17
**entails** 67:1
**entire** 27:22 37:15
**entitled** 49:16
**environment**
21:21
**equivalency**
32:11
**equivalent** 29:21
32:5
**error** 75:4
**escaped** 18:2
**especially** 72:9
**estimate** 13:5,25
14:4 17:1
**estimating** 50:23
**estimation** 50:25
**Estimation-the...**
4:6 49:16
**evaluate** 65:23
**evaluated** 65:8,10
65:14,18,21

66:14,23
**evaluating** 65:8,9
  65:14 66:14,20
  67:3,12,16
**evaluation** 67:1,1
  67:2,22,22
**evidence** 68:19
  68:19,23
**exact** 51:6
**exactly** 26:16 46:5
  66:22
**examination** 3:8
  6:2 78:2,7
**example** 42:17,19
  48:13 52:14
  54:23 55:17,19
  55:22 56:11,18
  56:19 61:12
**examples** 21:22
  61:2
**executed** 76:15
**Exhibit** 3:4 6:22
  6:24 11:6,8 17:5
  17:7 18:5,14
  44:17,19 49:14
  49:15
**exhibits** 79:12
**expected** 43:19
**experience** 17:13
  18:6,12 19:3
  29:22 30:9,16
  30:25 31:1,15
  31:16 32:6 34:8
  36:22 53:3
  60:22 72:9
**expert** 7:11,17
  19:14 34:19
  35:19
**Expiration** 79:23
**EXPIRES** 76:23
**explain** 25:22
  26:13 29:14
  75:5
**explaining** 25:2
**explanation** 24:22
  50:13
**explicitly** 27:11
**exposure** 31:8
**exposures** 4:7
  49:17
**expressed** 76:16
**expressly** 54:2
  55:4
**extensive** 17:14
  51:4
**extent** 9:24
**extremely** 50:6

**F**

**F** 67:13,13
**fabric** 39:19,19
**face** 58:22
**fact** 18:22 51:25
  65:19 70:17
**facts** 14:21 15:4
  75:4
**fair** 15:23
**fall** 42:22 47:2
**far** 14:12 73:20
**Fargo** 2:19 79:3
**Fax** 2:7,20 78:19
  79:4
**features** 47:11
**February** 17:11
  17:21
**Federal** 1:23
**feel** 51:16 72:6
**feels** 9:12 20:19
  42:24
**felt** 24:4 63:9
**field** 19:4,15
  29:21 31:6,8,22
  34:9 60:23
**file** 18:20 19:3,16
  24:7 34:5 36:21
  57:2 58:15,16
  58:17,19 60:4
  70:23 71:1,2,14
  72:8
**filings** 35:22
**financially** 79:16
**find** 18:2,4 32:22
  32:24 49:6
  65:21 67:4,5,5
**fine** 48:20
**finish** 32:11
**firm** 5:17 79:24
**first** 6:1 7:15 9:12
  17:20 23:15
  31:7 58:20
**five** 10:13 15:16
  30:17 31:14
  32:2
**focus** 19:25
**following** 22:21
  23:6 30:1,5 47:8
  77:21 78:14
**follows** 6:1 79:7
**foregoing** 76:2,14
**forget** 6:9
**form** 27:8 29:4
  35:13 60:20
**format** 47:10
**formats** 45:15
**forming** 25:13,24
  27:7 62:12,15

**formulate** 27:12
**formulated** 27:12
**formulating** 26:20
  33:23 34:6,10
  34:13 57:3 59:8
  60:8
**forth** 7:21 19:14
  25:3,11 29:9,18
**found** 43:24
**foundation** 11:18
  14:22 26:23
  48:16 52:8
**four** 9:2,8
**frame** 20:11,15
**frankly** 64:18
**FRCP** 78:1
**frequently** 17:24
**full** 50:13
**fully** 38:4
**function** 50:24,25
  66:23 67:13
**functions** 66:21
  67:13,14
**fundamental**
  53:17
**further** 24:22
  73:25 78:1
  79:13,16

**G**

**G** 5:1
**gained** 31:24
**general** 14:13
**generally** 23:17
  31:23
**generates** 61:7
**getting** 7:22
**give** 13:5 16:24
  40:19 66:4
**given** 50:21 52:12
  76:17 77:24
  78:12
**giving** 34:18
**go** 6:9 7:19 8:13
  9:11 12:16 13:3
  13:18 14:7
  24:24 45:14
  48:18 49:10
  50:14,15 51:5
  56:13 67:7
  73:21
**go-to** 18:21
**goes** 54:14 67:8
**going** 12:21 14:15
  25:24 33:14
  37:10 47:7,17
  51:16 63:15
  67:23

**good** 6:4,6 30:19
  74:9
**green** 38:22 39:12
  41:15 44:6
  54:12,16 55:8
  56:5,18 59:17
**group** 21:4,4 22:7
**guess** 8:2 9:4
  26:18 36:3 46:6
  54:23 55:15
  57:25 64:23
**guidance** 38:23
  38:25 44:7
  46:19 67:15

**H**

**H** 4:1 69:19 70:2,9
**hand** 26:14 76:17
**happened** 36:8
**happens** 21:20
**hardware** 19:25
  21:7
**Haven** 2:5 78:17
**heading** 69:19
**hear** 66:8
**heard** 36:12
**hearing** 36:1
**help** 67:15
**helped** 27:12
**helpful** 69:12
**hereto** 1:25
**high-end** 20:14
**higher** 32:8
**hire** 15:25
**hired** 15:24
**histories** 58:19
**history** 18:20 19:3
  19:17 23:21
  24:8 34:5 36:21
  57:3 58:15,16
  58:18 60:4
  70:23 71:1,2,14
  72:9
**horrendous** 20:25
**hours** 9:2,8 13:11
  13:12 14:1 79:8
**hue** 41:2,7,15
  42:3 62:18
  63:16,16 64:8
  65:20,23 66:21
  66:22,22 67:10
  67:12,13
**human** 68:13
  70:18
**hundred** 71:4
**hybrid** 70:7
**hyperspectral**
  40:9

**hypothetical** 48:8

**I**

**idea** 47:4 50:19,22
  63:3 70:5 73:17
**ideas** 20:7 22:3
  41:5 47:6
**identification**
  17:15
**identified** 5:13
  68:20
**identifying** 64:15
  65:4
**identity** 76:12
**illuminates** 67:6
**illustrates** 68:13
**image** 20:4 21:6
  21:20 33:1 38:8
  38:16 39:7,13
  39:16,20,22,24
  40:3 42:15 44:8
  44:14 45:11,17
  45:19 46:13,15
  46:18,20,23
  47:6,10,15 48:1
  48:7,12,19,24
  49:8 50:8 51:23
  52:20 59:14,15
  60:18,23,23
  61:6,15,16,18
  62:12,15,16,18
  62:20 63:10
  64:2 67:10
**images** 31:1 40:1
  40:5,6,6,9,9
  46:10 59:6
**imaging** 4:8 20:12
  20:13 50:16
**impacted** 27:12
**impacts** 6:14
**implementation**
  47:2
**implementing**
  62:4,8
**importantly** 70:13
**included** 69:12
**includes** 78:14
**including** 40:25
  59:15
**income** 72:25
**inconsistent** 52:5
  55:22,24 56:1,5
  56:9,10,11,12
**incorporate** 20:7
  21:6
**incorporated** 59:9
  59:11
**incredibly** 33:12

**indefinite** 42:6,25
43:13 45:13
52:22 53:5,15
64:11,14,25
65:11
**indefiniteness**
27:25 28:2
**independent**
66:21 67:12,14
**independently**
62:19 67:11
**indicate** 52:21
**individual** 53:24
54:1,11 55:12
56:22 61:12,12
62:13,17,20
63:4,14,14 64:1
64:5,7 67:9
**industrial** 31:16
57:3
**industry** 29:22
30:16 31:14,23
32:10,14 36:22
**influence** 34:25
**information** 9:20
9:25 35:13
78:12
**informed** 22:21
22:24 23:15
**initially** 9:14
**Innovations** 1:3
5:7,19 77:3
**input** 59:14 60:18
60:23 61:6,15
62:16,18 67:10
**insight** 71:25
**instance** 1:18
20:15
**instruction** 22:15
45:18
**instructions** 6:19
**instructive** 45:18
**instrument** 76:14
**integer** 59:15,16
**Intel** 21:3 22:10
**intensity** 40:5
**interaction** 20:5
**interactions**
23:13
**interest** 20:22
**interested** 20:18
79:17
**interrupting** 6:12
**intrinsic** 60:13
**introduced** 6:22
33:7
**introducing** 6:23
38:12
**invention** 23:20

30:12 37:23
59:5 62:4 71:19
**inventor** 59:4
60:12 62:3
**investigation**
19:16
**invoice** 15:6
**irrelevant** 14:22
42:8 48:15 73:4
**Ishimoto** 2:4 5:18
78:17
**issue** 19:16,17
36:11 43:10
51:7,22 71:7
**issues** 7:22 57:21
58:1,9,9

___

**J**

jlee@banishlaw...
2:7 78:20
**job** 22:3 31:20
**John** 2:4 5:17 6:4
6:7,7 66:10
78:16
**Jose** 2:13 78:23
**Joshi** 10:25 11:22
12:3 16:8
**Journal** 4:8

___

**K**

**K** 2:17 79:1
**keep** 14:5 47:17
**kind** 18:20 20:19
23:10 28:1 30:2
31:3 33:17 38:7
38:17 51:6
54:22 55:17
**knew** 37:9
**know** 7:20,20,23
8:2,13 9:1,12,13
11:24,25 12:20
12:21 13:9,11
13:12,19 14:5,6
14:7,12,16 15:7
15:16,23,24,25
16:3,5,5,6,24,25
19:1,21 20:11
20:12,20 21:17
22:6 23:5,12,12
24:2,4,21 25:3
25:17,17,22,23
25:24 26:3,15
26:16 27:7,15
27:16,19,21,23
28:11 29:2 30:2
30:3,20,24,24
30:25 31:3,5,9
31:22,24 32:17

33:3,14,15
34:22 35:3 36:1
36:3,16,16,17
37:18 38:6 40:4
40:14 41:7,15
42:1,9,15,19
43:7,19 44:1,12
44:14 45:5
46:24,25 48:4
51:6,21,25 52:3
52:9 53:10
56:14,16,18
57:16 58:12,25
59:23 61:13,16
61:18,23,23,25
62:3,5 63:1,4,6
63:8,12 64:5,8
64:16,17,18,22
64:24,24,25
65:5,22,24
66:21,22,25
67:1 69:6,7 70:3
70:3,5,20 71:6
71:18,24 72:11
72:15,22 73:1,2
73:10,17,19,22
**knowing** 39:8
**knowledge** 18:25
19:3,15 23:13
24:5 50:7 57:3
71:17 72:9
**known** 76:11

___

**L**

**L** 49:19
**L.L.P** 2:4 78:17
**lacks** 11:17 14:22
26:23 48:15
52:7
**language** 39:6,6
51:19 52:11
55:8 63:12
64:16,17 65:6
65:15,16 66:3
67:18 69:1,3
70:14,15,17
**law** 2:18 5:21
24:22 26:13,14
26:20 27:6,10
27:15 53:1,16
79:2
**lawyer** 25:20 27:1
**lawyers** 53:14
61:24
**lay** 25:1 62:7
**laying** 70:17
**lays** 30:2 70:15
**LCD** 61:12

**lead** 43:4,8
**learn** 31:10
**learned** 31:20
**led** 20:4
**Lee** 2:4 3:8 5:17
5:17 6:3,4,11,13
6:23 7:10 8:11
9:21 10:2,11
11:9,21 13:8,25
14:18,24 15:9
18:5 24:24
25:10 26:4,18
27:9 28:24 29:2
29:8 34:4 40:16
43:3 44:17,20
47:8 48:21
49:10,15 52:23
55:21 57:19
62:11 64:9
66:11,12,20
67:24 68:3
70:10 73:6,25
74:5,7 78:16
79:8
**left** 38:17 39:8
**legal** 22:19 24:19
25:4,8,9,18,25
26:25 27:2
28:11,11,12
42:7 52:23 53:3
53:4,6 61:21
68:4,6 70:6
**letter** 7:20 8:1
12:17
**level** 30:7,10
48:14
**light** 61:7
**limited** 44:11 62:1
**limits** 48:4
**line** 26:25 47:10
54:10 67:8 75:6
**linear** 38:21 39:10
39:11 44:5
47:12 54:6,11
54:19 56:3,15
**lines** 45:15 54:3
59:2 63:18
**list** 3:4 17:14 23:3
23:3
**listed** 18:13 35:7
**lists** 17:12 18:6,9
**litigation** 18:6,12
35:16
**little** 8:10 9:17
10:17 21:15
**LLC** 5:7,19
**LLP** 2:11 5:18
78:22

**lodge** 6:18
**lodged** 6:20
**log** 9:22
**logic** 47:8
**logical** 64:10,19
65:1,7
**Lone** 1:3 5:7,18
35:10 77:3
**long** 10:15 16:14
49:22
**longer** 10:17
31:23
**look** 7:19 8:1,13
9:11 12:16 13:3
13:18 14:7
16:25 21:17
33:2 38:5 39:4
42:9 58:25 64:3
73:1,21
**looked** 8:21 25:2
30:3 35:4,19
37:17 38:13
44:1 49:23
57:10 58:19
**looking** 8:23
12:21 21:8
34:23 35:12
36:6 61:14
**looks** 11:13 33:21
63:20
**lot** 14:15 20:12
40:6,9
**lots** 40:4 44:12

___

**M**

**machine** 1:22
**magenta** 47:13
54:13 55:9 56:5
**main** 21:5
**making** 29:3 45:9
**manage** 20:21
**March** 13:15
14:19
**Mark** 49:18
**marked** 11:8
44:19 49:14
**marking** 11:6
44:17 49:15
**Markman** 36:1
**master's** 32:16
**material** 18:16
33:4
**materials** 33:22
33:24 34:12,16
35:6
**mathematics**
29:20 30:22
**matter** 5:6 7:24

19:17 23:7
**matters** 15:12,14
  15:20,21 16:3,8
  16:22
**mean** 7:19 8:1,17
  10:12 14:12
  19:9 23:10,25
  24:8 26:3 27:3
  27:15 29:16,17
  32:20 33:10
  37:21,25 38:14
  38:17 39:1,9
  40:12,14 41:3
  41:21 42:20
  43:5 44:4,4 45:1
  47:5 48:6 49:8
  51:13 52:3
  55:19 56:19
  57:25 60:18,24
  66:1,7 67:6
  70:13 72:5
  73:17,22
**meaning** 23:18,25
  25:19 38:12
  52:17 53:13
  69:9
**means** 5:12 38:24
  41:19 42:16
  48:23 50:11
  51:3,15 60:25
  63:7 65:22,24
  67:16,19 68:13
**meant** 17:15 37:9
  53:20
**memorize** 57:8
**memorized** 15:6
  57:9,12
**Menlo** 2:6 78:18
**mentioned** 41:7
  57:1 66:19
**messages** 12:5
**method** 59:5
  68:14 69:20,20
  70:8
**Microsystems**
  21:12
**middle** 19:13
**mind** 14:5 16:2
  19:9 37:12
**mine** 50:2
**minor** 37:13
**minutes** 10:13,19
  67:25 79:8,8,9
**mischaracterizes**
  25:16 49:2
  66:18
**missed** 55:23
**misstates** 15:5

26:22
**modification** 41:1
**modify** 63:15,16
**Momentary** 74:10
**money** 20:16 73:6
**monitor** 61:12
**monitors** 61:11
  61:11
**month** 14:13,14
  14:15
**months** 7:13
**Motorola** 21:16
**moving** 23:14
  24:9 62:11
**multimedia** 21:6
**multiple** 4:7 13:11
  13:12 28:21
  49:17
**musical** 33:13
  42:21

_____

**N**

**N** 2:1 3:1 5:1
**N.V** 2:16 5:21 12:9
  79:1
**name** 5:9 34:21
  75:2 76:13
**names** 16:9
**nature** 47:1
**necessarily** 39:17
  62:1
**necessary** 71:25
**need** 56:12,13
**needed** 62:25
  63:9
**neither** 79:13
**network** 21:18
**Neustel** 2:18 5:20
  79:2
**never** 15:25 16:1
**new** 22:4
**Nij** 50:6
**Nintendo** 15:18
**nitpicky** 46:3
**noise** 21:19 50:6
  50:16 51:5
  52:16
**normal** 14:16
  40:12,14
**North** 2:19 79:3
**notary** 76:21 78:8
**Note** 50:5
**noted** 76:3
**Notice** 4:3 6:24
**noticed** 10:22
**notified** 8:19
**Notre** 16:13,15,17
  16:23 17:2

72:19,23,25
  73:3,12,14
**November** 18:9
  18:13
**number** 5:8,10
  11:6 12:8 44:18
  46:24 59:4,21
  67:8,8 68:12
**numbered** 1:20
**numbers** 16:24
  73:23
**numerous** 23:2

_____

**O**

**O** 5:1
**oath** 5:11 76:11
**object** 29:4,4
**objection** 7:6 8:7
  9:19 10:10
  11:17 13:7,17
  14:11,21 15:2
  17:19 24:19
  25:7,15 26:7,22
  28:5,16,17 34:3
  40:13 42:7 44:9
  46:21 48:15
  49:2 52:7 55:14
  57:7 61:21
  63:22 66:17,18
  69:25 70:1 73:4
**objections** 6:18
  6:20 29:3
**obviously** 14:6
**occupy** 16:22
**off-the-record**
  74:10
**office** 76:17
**officer** 77:23
  78:13
**officer's** 79:10
**Offices** 2:18 5:21
  79:2
**okay** 6:11 7:10
  19:12 26:2 46:2
**Oliver** 2:11 5:22
  5:22 10:24
  11:23 12:4 16:8
  74:6 78:21 79:8
**once** 9:4 14:13
  18:1
**operating** 22:9
**operation** 64:18
**operations** 64:10
  64:20 65:2
  70:18,19
**operators** 64:20
  65:7
**opinion** 25:8

29:10,13,24
  30:7 33:19 34:6
  34:10,13 35:13
  36:21 53:7,9,17
  54:5 57:4 59:14
  64:10,13 65:10
  65:10 66:13
  68:4,6,7,20
  69:22,22 71:15
  71:21,23
**opinions** 19:14
  25:14,25 26:21
  27:8,12 33:23
  35:1 70:10
  71:10,22 72:1
**opportunity** 7:8
**opposite** 51:6
**oral** 1:11,17 5:5
  77:23
**order** 6:8 9:2
  41:25 64:7
**ordinary** 23:17,19
  23:24 24:2
  29:10,14,25
  30:7,11 31:12
  31:13 32:1,4,18
  49:6 53:7,17
  59:25 60:15
  65:25 71:18
  72:10
**Oregon** 21:3
**original** 79:11
**originally** 13:22
**outcome** 79:17
**output** 62:12,15
  62:20 63:10
  64:2
**outside** 40:20
  60:18,21 72:15

_____

**P**

**P** 2:1,1 5:1
**p.m** 1:20,21 5:2,4
  49:13 68:2
  74:13
**page** 3:2 4:2
  17:21 18:9
  22:18 33:20
  50:3 58:21 75:6
  78:10
**pages** 71:4
**paper** 51:5,15
  52:14
**papers** 52:6
**paragraph** 12:8
  12:14,19 19:13
  19:14,20 20:2
  22:19 23:14

24:9,12,16,17
  24:25 27:17
  29:9 30:2,6,6
  37:21 38:19,19
  40:22,23 41:19
  41:21,24 42:6
  43:14,18,23
  50:4 53:23 55:4
  59:13,21 62:14
  68:12,17,21
  69:19 72:14
**paragraphs** 23:6
  25:11,21 26:6
  26:12,19 27:4
  27:11,24 28:10
  28:21 59:23
  70:2
**Park** 2:6 78:18
**part** 21:3,7 23:12
  32:3 36:14
  39:16 54:23
  55:9,18 56:20
  60:13 61:13
  64:2 65:14
  68:17,22
**partial** 32:17
**participated** 11:2
  11:5,25
**participating** 11:1
**particular** 38:11
  44:16 62:4,24
  63:3 65:4
**particularly** 32:23
  32:24 33:7
  65:17 69:7 71:6
**parties** 78:14
  79:14
**parties'** 57:1
**parts** 38:20 39:4
  50:14
**party** 78:3 79:6
**patent** 4:5 8:22,24
  18:19 19:2
  29:11,25 31:3
  31:10,11 32:19
  32:22 33:8,15
  33:25 34:5,17
  35:16,22 36:2
  36:21 37:22
  39:15 40:17,21
  41:6,8,10,13,14
  42:12,12,22,23
  42:24 43:4,8,15
  43:16,21,23
  44:18,25 45:8
  45:10,11,14,23
  46:9 47:3,18
  48:12,22,22

49:5,7 50:20
51:7,7,11,22,24
52:2,18 53:4
54:2,10 55:5
57:2 58:15,16
58:21,22,23
59:2,3,3,7,19,19
60:1,4,7,9,10,11
60:16,19,21
61:25 62:2 63:2
65:21 67:6,7
69:9 70:12,21
71:1,11
**patent's** 62:1
**patented** 51:10
**patentee** 44:1,14
47:9 59:25 62:6
69:16
**patents** 19:16,17
30:9,12
**pay** 73:10,22
**Pentium** 21:3,4,9
**people** 15:24
18:24,24 22:4
29:18 31:19,21
32:8
**percent** 17:1,2
72:19,20,23,23
**perform** 66:25
**performed** 68:8
68:15
**performing** 64:9
64:19 65:1,7
70:19
**period** 56:15,17
**person** 11:3 23:18
31:12 53:9,12
71:18 72:10
76:13
**personal** 30:9
**personally** 76:10
**persons** 30:10
**perspective** 26:1
**Ph.D** 1:12,18 3:7
4:4 5:25 32:17
50:2 75:2 76:1,5
76:10 77:13,22
**phone** 11:25
**phrase** 46:7 53:20
63:8,25
**pixel** 59:14 60:18
60:23 61:6,9
**pixels** 46:25 61:6
61:13,15 62:13
62:15,16,20
63:10 65:4
**place** 24:2 49:6
**places** 43:23

47:19
**plain** 64:17
**Plaintiff** 1:4,19 2:3
5:18 77:4 78:16
79:11
**plaintiff's** 4:3
56:21 57:4,21
58:9
**please** 5:14 10:11
13:10 45:3 74:2
75:5
**plurality** 62:12,15
62:16
**PohlmanUSA**
79:24
**point** 6:8 17:20
31:9 34:18,24
35:3,8 36:6 45:5
45:9 50:3 69:15
73:18 74:1
**pointed** 45:24
**pointing** 51:10
**portion** 15:7
**posed** 51:1
**position** 43:17
52:4 55:6 60:8
63:19 66:7
68:24
**positions** 58:10
**positive** 50:21
**possibly** 63:16
64:21
**practice** 14:13
37:1
**preferred** 61:20
61:24 62:2,8
**preliminary** 36:10
**prepare** 8:15
**prepared** 18:7
**preparing** 8:24
9:8,10,15 10:3
10:21,25 11:15
18:17 59:8
79:11
**present** 59:4
**pretty** 15:18 67:17
67:20 69:2
72:14
**previous** 15:14
23:13 34:17
46:2 57:18
65:12
**primarily** 11:19
18:19 19:5
36:24 37:6
**primary** 18:20
**principle** 25:9,18
**principles** 25:5,10

25:12 26:2
**printing** 20:4
**prior** 16:8 35:15
35:22 36:2,8,9
42:19 52:5
**privilege** 6:20
9:22 29:5
**privileged** 9:20,25
**probability** 50:24
**probably** 7:19,25
9:2 10:12,17,18
13:14 15:16
21:15 33:14
39:4 40:19
50:13 58:25
70:6,13 73:14
**problem** 20:19
33:11,18 42:11
42:23 43:8
45:12 51:11
74:9
**problems** 51:1
**Procedure** 1:24
**proceed** 74:3
**proceeding** 5:2
74:13 79:15
**process** 20:21
27:22 28:12
50:8
**processing** 20:1
21:7,10 61:16
61:17
**produced** 1:18
**product** 9:25 21:5
22:11
**production** 22:2,5
**products** 20:6,7
21:23,25 22:6
**professional**
17:13
**proper** 70:8
**properly** 42:11
**properties** 52:15
**proposed** 35:9
36:10 57:5 60:5
**prosecution**
23:21
**ProShare** 22:11
**protocol** 29:6
**proved** 76:11
**provide** 15:13
38:23 44:7,11
46:19 48:8 53:4
53:6,7 61:2
63:21 67:15
71:25
**provided** 24:3
35:4 42:17

56:18 63:17
**provides** 38:25
67:18 71:20
**provisions** 1:24
**pseudocolor** 40:8
**public** 76:21 78:8
**publications**
17:13,16 52:5
**publishing** 20:14
**pulling** 18:25
**purpose** 24:16
**purposes** 76:15
**pursuant** 1:23
78:1,12
**put** 12:19 18:2
24:2 25:11,21
27:5,6,9,21 28:1
28:10 43:2 58:2
58:10 64:5
**putting** 22:5

_____

**Q**

**qual-** 17:12
**qualify** 53:3
**question** 9:6
13:10 26:12
27:1,14 57:12
57:18 66:9 68:9
68:11 72:4,5
**questions** 6:17,21
7:8 28:21 73:25
74:2,4,6
**quick** 67:24
**QuickTake** 20:24
**quite** 15:15 17:14
26:3 61:4 64:18
**quote** 69:7

_____

**R**

**R** 1:21 2:1 5:1
77:19 79:22
**range** 4:7 49:17
**rationale** 66:14
**ray** 61:5
**re-** 58:20
**reached** 30:7 72:1
**read** 24:6 29:17
30:1 34:20 49:7
53:10,18 60:1
68:17 76:1
**reading** 6:10 24:6
59:19
**real** 45:16 46:13
46:15,17,19
47:10,14,15
48:12 62:17
67:10
**really** 11:5 12:1

12:15 16:1,5
36:16,18 54:22
63:7 73:8,10,17
**Reason** 75:4,6
**reasons** 66:5
78:11
**recall** 7:12 8:9
9:14 10:5,12
11:5,24 12:1,6
12:15 13:3
14:24 15:14,20
34:14,18,23
35:2,17,18,23
36:6 37:16,18
49:23 57:16
58:17,17,24
67:17 71:5
**recalling** 58:12
**receipt** 78:9
**receive** 23:17
**receives** 61:7
**recited** 68:14
**recognize** 11:9
16:9 17:6 42:9
49:20 52:10
65:13
**recollection** 11:19
12:23 13:21
71:2
**record** 1:24 5:3,15
6:8,9 49:10,12
60:13 75:4
77:24 78:14
**records** 8:14 9:11
12:22 13:4,19
14:6,25 16:25
73:22
**red** 20:20,20
38:22 39:11,11
41:15 44:6
54:12,15 55:8
56:4,18 59:16
**refer** 17:10 40:1
**reference** 59:9,11
**referenced** 60:10
**referred** 39:5 64:2
**referring** 26:15
30:5,13 33:1,5
60:14 64:3
**refers** 59:3
**regarding** 30:7
**Registration**
79:24
**related** 40:24
79:14
**relatively** 8:9 10:5
31:7
**relevance** 10:10

13:7,17 14:11
relevant 42:2 47:1
  51:9,9 71:7
relied 18:22 19:2
  19:5,10 26:5
  34:8 36:24,24
  36:25 37:7
  58:14 72:2,8,12
  72:16
rely 18:16 19:7
  34:12,25
relying 25:5
remember 22:11
  35:12 36:7,15
  36:18
remind 56:23 60:9
reminded 57:13
reminding 58:4
remotely 5:6,12
rendered 48:4,5
repeat 28:15
  66:10 67:20
repeated 27:5
  72:7
repeatedly 47:16
reported 1:22
Reporter 5:3,10
  28:15 49:12
  74:11 77:19
Reporter's 3:11
  77:12
reporting 5:11
represent 7:24
representing 5:23
represents 54:11
request 6:9 28:20
requested 78:3
require 50:7
required 6:21
requires 68:7
reread 45:1,2
rereading 37:1,15
  37:17 50:20
response 43:19
rest 54:21 64:4
result 43:12
resulted 21:24
retained 7:10,17
  7:23 12:9,12,18
retention 20:25
returned 78:8,10
revealed 10:1
review 30:8 33:3
  33:22 34:4,5,16
  35:21 58:21
  59:7 60:7 70:11
reviewed 8:21
  23:11 34:1 35:7

57:1 58:14
reviewing 19:2
rewritten 56:16
RGB 44:6 47:21
  54:14
right 6:25 14:16
  15:19 22:12
  30:23 37:5,13
  50:4 63:11 68:1
Robert 1:12,17
  3:7 4:3,4 5:5,25
  6:24 11:7 49:18
  75:2 76:1,5,10
  77:13,22
Robertson 4:7
  49:18
rough 14:4 16:25
  72:22,22
round 66:12,13
row 59:15
Rule 78:1
Rules 1:23
Runyan 2:17 5:20
  5:20 6:7,12 7:6
  7:16,22 8:7 9:17
  9:18,19,24 10:3
  10:9,10,14,20
  11:3,17,20 13:7
  13:17 14:11,21
  15:2,4,10,13,21
  17:19 24:19
  25:7,15 26:7,9
  26:22 28:5,7,18
  29:1,7 34:3
  40:13 42:7 44:9
  46:21 48:15
  49:2,11 52:7
  55:14 57:7
  61:21 63:22
  66:8,17 68:1
  69:25 73:4 74:4
  79:1,9

_____
         S
_____
S 2:1 4:1 5:1
salary 73:2
San 2:13 78:23
Santa 2:12 78:22
satisfy 48:14,23
saturation 41:2,8
  41:16 42:3
  62:19 63:16
  64:8 65:20,23
  67:11,14
saw 35:8,19 44:23
saying 38:4 39:25
  46:11 48:2,11
  55:21 56:8

66:24
says 20:3 38:19
  46:16 50:5 54:4
  55:11 66:20
  67:21,23
school 30:22
  32:10
science 29:20
  30:21
scope 42:22,24
  43:1 44:12 47:3
  48:18 49:9
  53:13,19 62:1,9
  66:2 67:2
screen 6:25 9:3
  17:6
scrutiny 48:14
seal 76:17
Sean 49:18
second 50:5
  55:16
secondarily 37:7
section 45:1 70:2
  70:9
see 7:1,25 9:5,12
  12:16 20:8
  22:22 23:22
  45:2 50:9 54:17
  55:13,15,17
  56:19,20 61:17
  72:14
seen 24:7 32:9
  47:19 70:4
select 44:16
selected 62:13,17
  62:19,20 63:4
  63:13 64:1,5,7
  67:11
selective 59:5
selectively 64:8
self-taught 31:20
sense 13:19 14:8
  51:20 66:19
  67:3
sensors 61:5
sentence 19:13
  20:2 23:15 38:1
  40:23 46:16
  50:5,12 51:20
  54:4,21 55:1,2,4
  55:11 56:16
  67:21
separately 67:12
serve 7:11,17
serving 15:10
set 19:14 22:15
  25:3 29:9,18
short 10:5

shorter 58:19
shorthand 1:23
  5:10 77:19
Shortly 21:11
showing 28:22
  58:20
shown 28:23
sic 18:9
sign 73:9
signal 21:6
signals 20:1
signature 3:9 75:1
  76:2 78:2,7,10
signed 14:3
significant 20:4
signing 6:10
similar 9:22 21:12
  65:12 66:4,14
  66:16,19
single 69:21
Sitting 57:11
six 9:2,8
skill 23:19 24:3
  29:10,14,25
  30:8,11 31:12
  31:13 32:1,4,18
  49:7 53:8,18
  59:25 60:15
  66:1 71:18
  72:10
skilled 31:21
  69:17
slightly 53:16
software 20:1
someplace 37:14
somewhat 21:12
  65:12
soon 31:7 37:9
sorry 6:12 9:3,3,5
  13:9 26:24 28:8
  28:16 53:16
  55:23 56:7 66:9
  68:9
sort 12:16 14:6,8
  17:3 18:16
  21:20 23:1 27:2
  30:23 33:4,16
  35:8 36:17
  38:10 41:5
  43:19 47:2 51:8
  69:3 70:6 72:24
sorts 21:10 27:19
sounds 25:18
  26:24
source 18:21
  52:16
South 2:18 79:2
space 44:6 47:13

47:21 54:15
SPARC 21:13
  22:13,16
speak 9:15,18
  10:15,16,20
  11:15,21
speaker 52:12
speaking 29:3
  48:3
speaks 12:8 26:9
specific 7:12 8:8
  9:22 16:24
  21:23 25:19
  50:8 57:12
specifically 7:21
  32:15 41:4,7
  42:12 57:15
  60:17
specification
  23:20 24:7
  38:13,15,20
  39:5 47:9 59:22
  62:6
speculation 48:16
speeches 52:6
spell 65:3
spelled 71:24
spend 8:11,23 9:9
  10:8 13:1 17:1
  72:18 73:13
spent 9:2,7 13:6
  13:11 14:1,25
  15:8 21:2
spoke 9:17 10:3
  10:14 11:19
spoken 10:24
standard 22:19
  32:4
standards 22:21
  22:25
Star 1:3 5:7,18
  35:10 77:3
start 13:16 40:5
started 8:18 13:24
  20:16 21:11
  68:9
starting 20:17
  21:17
starts 55:16
state 1:22 5:14
  54:1 68:10 76:6
  76:22 77:20
stated 1:24 25:6
  26:5 41:11
  48:17
statement 6:15
  45:22 46:3
states 1:1 39:15

47:9 71:20 77:1
**statistical** 50:23
52:15
**stenographic**
5:12
**steps** 68:14 69:20
69:20 70:19
**Stevenson** 1:12
1:17 3:7 4:3,4,7
5:5,25 6:4,13,25
7:1 10:2 11:7,9
12:7,24 16:12
17:4 18:17
19:21 22:25
24:25 29:9
32:21 37:24
41:11 44:22
45:20 46:1,20
49:19,21 50:9
52:24 54:17
58:7 62:23 68:3
69:23 74:7 75:2
76:1,5,10 77:13
77:22
**stick** 16:1
**Stipulations** 3:6
**stop** 54:19
**stops** 55:7
**strange** 14:15
**Street** 2:12 78:22
**string** 69:4
**structure** 38:10
70:8
**students** 30:23
50:2
**study** 32:5
**stuff** 61:17
**subheading**
27:24
**submit** 8:6 14:9
**submitted** 8:4
11:13 13:15
14:18,19 15:1
17:5 78:5
**submitting** 17:4
18:17
**Subpart** 31:13
**subscribed** 76:14
**substance** 15:23
**substantively**
12:2
**Suite** 2:5,12,19
78:18,23 79:3
**summarize** 27:23
28:10
**summer** 21:2
**Sun** 21:12 22:13
**supervising**

30:10
**support** 21:9
43:16,16 63:19
68:20 71:21
**supporting** 68:19
**supports** 68:23
**supposed** 24:1
**sure** 8:3 14:16
15:18 26:8,11
26:16,25 27:1,3
27:20 28:22
29:16,18 33:3
39:21 44:15
45:3 47:17
48:10 49:11
59:1 61:3
**surprise** 71:8
**swear** 5:15
**sworn** 1:19 6:1
77:23
**system** 22:9
29:22 30:16
31:15,17 50:16
61:3,8,10,14
69:10,21 70:7
70:20
**systems** 34:9
40:25

---

**T**

**T** 2:11 4:1 78:21
**take** 67:24
**taken** 1:19 49:13
68:2 78:13
79:16
**talk** 19:24 41:15
44:13 45:4,5,10
45:12,23 46:4
46:22 47:18
49:5 51:23 61:5
61:10,11,14
62:5 69:2,6 70:3
**talked** 11:4 41:5
43:22,22 44:15
**talking** 10:8 12:1
40:8,16 41:4,5
41:23,24,24
42:3,14 45:25
46:5 50:15,19
50:22 52:13,15
52:19 63:6
65:17 69:10
70:9,18
**talks** 17:14,17
38:15 41:12,13
43:11 46:12
47:18 48:22
52:6 59:3 67:9

**task** 26:14
**tasks** 25:3
**taxes** 73:9
**teach** 46:18
**teaching** 47:14
**teachings** 33:15
42:23
**technical** 33:6,8
38:7,9,10,11
42:14 47:1 48:1
51:22 52:16,19
53:9,12 65:17
**technically** 16:6
39:1 48:2
**techniques** 19:25
20:3 22:4
**Technological**
1:3 5:7,19 77:3
**technology** 31:24
51:10
**teleconference**
2:8,14,21
**tell** 9:1 12:22 33:2
34:20 37:2
50:20 56:8
**telling** 65:22
**tells** 54:23
**ten** 10:13 72:5
**term** 33:6,8,18
34:22 37:22
38:5,18 42:25
43:13 47:22
48:25 50:6
53:10,18,23
54:1,5 55:4
59:14,24 60:1
60:16 62:11,14
64:9,11 65:8,9
68:3,6,7 69:19
69:22 70:1,6
**terms** 21:19 24:8
36:11 41:6,12
47:20 48:18
53:8 56:13,14
60:15 65:9,11
71:6,7
**testified** 6:1 70:22
72:18
**testify** 8:20
**testimony** 7:4 8:6
15:5 25:12,16
26:23 49:3
66:18 77:24
78:13
**Texas** 1:1,22 5:10
29:4,6 77:1,20
79:23
**thank** 28:23 74:7

74:12
**thermal** 40:6
**thing** 22:15 36:24
44:16 69:9
**things** 9:5 14:6,15
19:5,8,9 26:15
30:3 36:23 37:1
37:12 40:7
41:25 44:13
46:24 47:20
61:1 65:6 71:6
72:8,24 73:8,10
73:23
**think** 16:2 22:11
24:8 30:1 31:9
31:25 32:18
33:13 36:24
37:3 38:4 43:12
45:9 48:17 49:1
49:4,4 62:7 65:3
65:25 66:7
67:20 69:1 71:3
73:24
**third** 32:3
**thought** 26:17
40:19 62:3,25
63:17,24 69:12
69:14,15
**three** 30:17,17
**time** 5:4 6:18,18
8:11,23 9:9,22
10:8,15 13:1,5
14:1,8 15:8
16:21,22 17:1
20:11,15,23
21:2,5 22:16
23:19,19 30:11
31:12,23 45:16
46:13,15,17,19
47:10,15 48:12
49:22 50:21
62:18 67:10
71:19 72:11,19
72:20 73:13
74:8 78:13 79:6
**time-wise** 14:25
**times** 15:24 27:5
69:8 72:5
**today** 5:3 6:15 7:4
7:5 8:16 57:11
**told** 9:12 25:23
36:5
**topics** 40:24
**total** 13:13
**touch** 9:4
**track** 14:5 73:8
**transcript** 6:10
77:23 78:5,9

79:12
**transcription** 75:4
**tried** 27:16,22
40:20 68:22
**true** 45:25 76:3
77:24
**truthfulness** 6:14
**try** 14:13 21:8
22:2 38:13
60:20
**trying** 17:17 20:6
21:5,13,17 22:1
22:3 24:23 25:1
25:21 26:12,12
37:11 38:3 53:6
53:7 57:19 58:8
63:13 66:2
**turn** 19:20 37:20
53:22 54:9
59:13
**turning** 12:7 17:5
22:18 29:8
**Turocy** 2:11 5:23
78:22
**twisting** 58:6
**two** 8:18 9:2,7,9
9:13 11:4 13:19
13:23 15:14,20
16:3 28:9 29:21
30:15,17,18
31:8 43:14 50:1
50:1 59:23
64:21 65:11
**TYLER** 1:2 77:2
**type** 35:11 41:16
**typical** 30:25

---

**U**

**U.S** 4:5 44:18 59:3
**un-** 63:25
**unclear** 27:18
**understand** 24:1
24:5 25:2,11
26:25 31:10
33:9,10 37:6
38:14 39:5
41:18 42:25
44:3,12 48:25
49:7,9 50:11
51:2,14 52:13
53:8,12,13,19
53:19 57:19
58:8 60:1,16
64:1,4 66:1
69:17 71:25
**understanding**
7:3,7 8:1 17:18
23:2,8 24:14,15

24:22 25:22
26:14,19 27:6
27:21 28:2,11
28:12,13 30:19
31:25 35:10
40:11 42:24
53:11 61:23
70:3,16 71:17
**understandings**
27:10,15,20
**understood** 23:18
26:13 43:24,25
52:16 59:24
**UNITED** 1:1 77:1
**University** 2:18
16:13,14,17
79:2
**unknown** 38:17
**update** 17:23
**use** 40:6 43:1
50:17 51:19
66:3 67:3 69:7
**useful** 69:14
**user** 69:10
**usually** 14:14
**utterance** 46:7

**V**
**v** 1:5 77:5
**vague** 7:6 8:7
9:20 11:17 14:8
15:4 17:19 25:7
25:15 26:22
27:14 28:5,18
34:3 40:13 44:9
46:21 52:7
55:14 57:7
66:17,18 69:25
70:1
**values** 59:16
72:22
**versus** 5:7 30:17
**video** 21:8,13,18
21:20 29:22
30:16 31:2,15
31:17 32:16,17
33:2,12 34:9,9
40:25 42:20
43:12 45:17,19
46:10,13,15,17
46:20 47:6,15
48:12,24 59:6
60:23 61:4,8
62:18 67:10
**video-type** 21:6
**videoconference**
1:11,17,21 5:6
**videoconferenc...**

22:10
**view** 42:3 48:9,21
56:2,11
**viewed** 35:10
**viewer** 63:15 64:7
68:4,12 69:2,8
69:16,17
**Vinay** 10:25 11:22
**visual** 22:15
**VOLUME** 1:14
77:15
**voracity** 6:14

**W**
**walk** 29:13,16
**walked** 47:19
**want** 15:18 26:2
37:5 38:7 45:2
46:3 57:18,23
58:3 70:5
**wasn't** 20:13 22:1
33:7 59:9 60:13
**Watson** 2:11 5:23
78:22
**way** 24:1 27:10,23
38:7,10,12 41:8
41:10 42:14
44:11 46:4,5
47:22 48:1,1
51:23 52:19
56:7,19 58:1
62:4,7 65:5 67:5
68:9
**we're** 6:8 40:8
48:2 51:16,16
63:15
**we've** 33:24 47:19
72:6,13
**week** 9:13 10:6,9
11:4 13:19,23
**went** 7:21 9:3
24:7 26:5 27:7
32:10,10 66:12
68:10
**West** 2:12 78:22
**whatsoever** 67:19
**white** 40:5
**wife** 73:8
**witness** 1:18 3:7
5:12,16 74:9
75:2 77:22,25
78:6,7
**word** 32:20 37:10
42:9,10 43:1,20
43:24 51:17,18
52:2,10,10
53:12 69:8,16
69:17

**words** 23:16
55:23 58:6
65:14
**work** 7:14 8:5
9:25 14:20
15:15,17,24
16:2,3,5 18:24
18:24 20:3,12
21:24 28:13
31:5 32:5 40:7
50:21,25 72:20
**worked** 13:9 15:9
15:12,21 16:7
16:14 17:16
21:15 30:23
31:18 32:14
**working** 8:2,12,18
13:16 16:17,22
18:23 20:16,22
20:25 21:11
22:7,17 23:9
30:10 31:23
72:19 73:12,13
**wouldn't** 12:18
17:22 22:2 44:3
**write** 22:2,20
31:14 38:20
40:22 62:6
68:12
**writing** 27:25 28:1
**written** 27:11
57:15 65:6
**wrong** 27:18
53:15,16 56:21
57:4,13
**wrote** 7:7 24:9,12
30:6 37:21
57:20 59:20,23

**X**
**X** 3:1 4:1

**Y**
**YCM** 47:13
**yeah** 26:11 33:21
**year** 31:7 73:7
**years** 15:16 16:16
18:23 19:25
23:3 25:24
29:22 30:15,24
31:14,18 32:2
73:15
**yellow** 47:12
54:13 55:8 56:5
**yesterday** 10:7,14

**Z**

**0**
**0** 79:8,9

**1**
**1** 1:14,14 4:3 6:22
6:24 12:8 19:13
45:14 47:9 54:2
54:10 55:5
60:11 75:4
77:15,15
**1:33** 1:20 5:2,4
**10** 13:13 14:1
33:21 40:22
41:19,21,24
42:6 59:3 67:25
**11** 4:4 63:18 67:8
**137** 2:5 78:18
**13th** 78:5 79:18
**14** 22:19 23:6
63:18
**15** 10:19 23:14
24:17 25:11
26:6,19 27:11
**16** 24:9,12,16,17
24:18 25:11
**160** 2:12 78:22
**16th** 13:15 14:19
**17** 24:25 25:11
26:6,19 27:11
68:13,17
**18** 27:24 28:22
**19** 27:24
**1990s** 20:6

**2**
**2** 3:3 4:4 11:6,8
31:13 59:2
60:11 75:4 79:8
**2:52** 49:13
**20** 17:2 54:3,10
55:5 72:23
**2003** 4:8
**2019** 18:9,13
**2020** 1:13,20 5:4
17:11,21 75:3
77:14 78:6
79:19
**21** 29:9 54:3,10
55:5
**22** 30:6
**222** 50:3
**24** 37:21
**25** 17:2 38:19,19
43:14,18 72:20
72:23
**2534** 2:18 79:2
**26** 18:13
**27** 53:23 55:4

**28** 59:13
**29** 59:21

**3**
**3** 4:5 18:9 44:17
44:19 75:4
**3:02** 49:13
**3:41** 68:2
**3:50** 68:2
**30** 16:16 18:23
19:25 30:24
62:14 63:19
78:9
**30(f)(1)** 78:1
**314.421.0099**
79:25
**3705** 2:5 78:17
**3rd** 17:11,21

**4**
**4** 2:19 3:4 4:6
49:14,15 75:4
79:3
**4/30/2022** 79:23
**4:01** 1:21 74:11,13
**40** 43:15 68:12,18
**41** 68:21,22
**42** 45:15 70:2
**435** 19:2 33:25
34:5,17,19
35:16,22 36:2
36:21 37:22
43:4,15 44:25
45:8,14,23 54:2
54:10 55:5 57:2
58:15,16,21
59:2 60:4,11
67:7 70:12,23
71:1,3,11 72:8
**44** 4:5 43:15 70:2
**45** 45:15
**46** 43:15 47:10
**49** 4:6

**5**
**5** 22:18
**50** 13:14 14:1
43:16
**58103** 2:19 79:3

**6**
**6** 3:8 4:3 18:9
43:15 44:20
46:6
**6,122,012** 59:4,7
60:7
**6,724,435** 4:5
44:18

**6:19-cv-00059-...**
  1:6 5:8 77:6
**62** 67:8
**650.241.2770** 2:7
  78:19
**650.241.2771** 2:6
  78:19
**650.393.0634** 2:13
  78:24

---
**7**
**7** 1:13,20 5:4
  19:20 75:3
  77:14
**701.237.0544** 2:20
  79:4
**701.281.8822** 2:20
  79:4
**7495** 5:10 79:23
**75** 3:9 17:1 72:19
  72:23
**77** 3:11

---
**8**
**8** 59:2
**814** 79:24

---
**9**
**9** 33:20,21 79:8
**94** 20:17
**94025** 2:6 78:18
**95113** 2:13 78:23
**97** 21:16
**975** 2:12 78:23
**98** 21:16