**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>ASUSTEK COMPUTER INC.,<br><br>    Defendant. | Civil Action No. 6:19-CV-00059-RWS<br><br>**LEAD CASE** |
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,<br><br>    Plaintiff,<br><br>  v.<br><br>BARCO N.V.,<br><br>    Defendant. | Civil Action No. 6:19-CV-00060-RWS<br><br>**Jury Trial Demanded** |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE**

Pursuant to Local Rule CV-7(f), Defendants Asustek Computer Inc. ("Asus") and Barco NV ("Barco") respectfully submit this reply in support of their motion to strike (ECF No. 86).

## I.     Lone Star's Belated Disclosure Regarding "Viewer"

Lone Star offers no explanation nor any good cause for its violation of the scheduling order by belatedly disclosing its attorney argument construction of viewer.  This is not surprising, because when asked about the meaning of "viewer" in the same claim 17 in a prior case, Lone Star's expert witness testified as follows:

> Q The '435 Patent, for the record, is Exhibit 4. And let me know when you're at claim 17 of the '435 Patent.
> A I'm there.
>
> Q Okay. Now, you state that a person – that one of ordinary skill in the art would understand the meaning of the term viewer; is that correct?
> A Correct.
>
> Q What would a person of ordinary skill in the art understand the term viewer to mean?
> A Exactly what it says.
>
> Q But -- but if I was going to ask you to tell me what the viewer is, what would you say?
> A Somebody that views.
>
> Q Did you say somebody that views?
> A Uh-huh.
>
> Q So a person that views, correct?
> A Correct.

(Attachment 1 (ECF 54-2 from case 6:15-cv-973 at pp. 22-23) (deposition tr. pp. 77-78)).  Lone Star's expert testified in direct contradiction to Lone Star's current position and in direct support of Defendants' position that: a person of ordinary skill in the art would understand the term "viewer" in claim 17 of the '435 patent to mean "a person."  (Despite Lone Star's claim construction position, ironically, the opposition brief to which this brief replies uses "viewer" in its ordinary and common sense meaning: "Courts have found testimony of a viewer of Internet evidence…"  ECF No. 91 p. 5.  Surely such testimony is by a "person" and not a graphical user interface.)

If Lone Star had timely disclosed its construction of "viewer," Defendants could have searched for the above-cited testimony early enough to disclose it under P.R. 4-3(a)(2).  And Defendants could have disclosed Lone Star's prior witness under P.R. 4-3(b).  However, because Lone Star construed "viewer" as "Not indefinite. No construction necessary" from the P.R. 4-2 deadline until the P.R. 4-3 disclosure – while internally knowing that it intended to change its construction – Defendants were left without opportunity to timely provide this evidence.

And Lone Star's change in construction was not a <u>narrowing</u> of issues as permitted by P.R. 4-2(c).  Rather, Lone Star radically changed from a construction that it has espoused for at least the past four years.  *See, e.g.,* ECF No. 50 in case no. 6:15-cv-973-JRG-JDL at p. 27.  In Lone Star's 2016 claim construction brief, Lone Star's proposed construction for "viewer" was "No construction necessary."  *Id.*  And Defendant's proposed construction of "viewer" was "a person."  *Id.*  So Lone Star has known since that time that it would be likely that a defendant would assert that the "viewer" is a person.  Yet, at the last minute, and after at least four years of standing firm on its position, Lone Star made a drastic shift to incongruously assert that "viewer" means "graphic user interface (GUI) menu display, configured on a man-machine interaction (MMI) mechanism."

By the time of this shift, it was too late for either defendant to secure timely expert testimony directed to this unusual construction or to timely disclose the above-cited testimony wherein Lone Star's expert testified that "viewer" meant "a person."

Lone Star argues it wasn't late and pretends there was no prejudice to defendants, but this is not so.  Absent Lone Star's dilatory change, Defendants would have had the time permitted under the rules to seek expert testimony from the expert that Barco retained and to make the testimony of Lone Star's own expert in a prior case a part of the record here.  Barco's expert would have likely pointed to the same disclosures in the patent that show the "viewer pushing or turning [controls]" and to Lone Star's own expert's prior sworn testimony.  Further, it is well established by the Fifth

Circuit that any attempt to change a scheduling order after a date has passed, requires good cause and the four (or five) factor test cited in the motion to strike.  (ECF No. 86 p. 4).  Here, the prejudice is plain: Defendants were precluded from eliciting expert testimony or offering the admissions of Lone Star's expert that support Defendants and directly contradict Lone Star, i.e., that a "viewer" is "a person."

If the Court does not strike Lone Star's belated construction of "viewer" and arguments related to that construction, to partially cure the resulting prejudice to Defendants, Defendants respectfully request that the Court take judicial notice of the above cited testimony from ECF No. 54-2 in case no. 6:15-cv-973-JRG-JDL, establishing by Lone Star's expert that a person of ordinary skill in the art would understand "viewer" to mean "a person" in the context of claim 17.

## II.     Exhibit 5

Lone Star's attempt to authenticate and prove a publication date for Exhibit 5 should be rejected and Exhibit 5 and argument relying on the exhibit stricken.

First, in this Circuit, attempts to rely on internet postings as evidence are disfavored.[1]

Even beyond the hearsay problem, Lone Star's declaration establishes only that the document is available on the internet today, in 2020, or at best in 2016 when Lone Star asserts that it was previously submitted to the Court.  This is irrelevant, because the application for the '435 patent

---

[1] *See United States v. El-Mezain*, 664 F.3d 467, 496 (5th Cir. 2011) (considering sources including the internet and stating, "These sources constitute classic hearsay rather than personal knowledge."); *Bing Shun Li v. Holder*, 400 F. App'x 854, 858 (5th Cir. 2010) ("We discuss this issue separately only to express our disapproval of the IJ's reliance on Wikipedia and to warn against any improper reliance on it or similarly unreliable internet sources in the future."); *see also St. Clair v. Johnny's Oyster & Shrimp, Inc.,* 76 F. Supp. 2d 773, 774-75 (S.D. Tex. 1999) ("There is no way Plaintiff can overcome the presumption that the information he discovered on the Internet is inherently untrustworthy.  Anyone can put anything on the Internet. No web-site is monitored for accuracy and nothing contained therein is under oath or even subject to independent verification absent underlying documentation."); *accord United States v. Jackson*, 208 F.3d 633, 637 (7th Cir. 2000) ("Any evidence procured off the Internet is adequate for almost nothing, even under the most liberal interpretations of the hearsay exception rules.").  Government websites are treated differently with respect to official records but Exhibit 5 is not an official record.

was filed in 2001, and the Court looks to what a person of ordinary skill would understand at the time that the patent application was filed.  *See, e.g., Honeywell Int'l Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 991 (Fed. Cir. 2007) (considering "ordinary meaning to a skilled artisan at the time of filing of the patent application").

And the purported copyright date on the document does not establish either publication or that the portion of the document relied upon by Lone Star was published prior to 2016.  Rather, it is possible that the copyright date refers to a claimed copyright in some portion of the document that is not related to this case.  Without proper authenticating testimony, we cannot know what portion of the document is related to the purported copyright date.

Finally, as to the timing of Defendants raising the objection, Defendants could not have objected earlier because Defendants did not know if Lone Star would have a declaration establishing admissibility.  After seeing no declaration, Defendant moved to strike the inadmissible evidence.

## III.    Exhibit 2

Contrary to Lone Star's arguments, Exhibit 2 is neither self-authenticating nor is it entitled to deference.  First, this is not a court record and Lone Star does not even attempt to show that it can be found anywhere in the Court's records.  Second, even if the document was indeed received from the Court, it is not the type of order or ruling with finality that would be entitled to deference.  In fact, in the hearing referenced by Lone Star, the Court stated, "[I]f you're happy with the Court's proposed construction, I don't expect you to argue.  If you're unhappy with it, you can argue, tell me why I'm wrong, and the other side can respond.  Of course, if neither side is happy with it, then, you know, y'all can just […] We'll go back and forth on that term …"  (ECF NO. 66 at p. 5, from case 6:15-cv-973-JRG-JDL).

Finally, permitting a party to rely on a draft, unsigned, preliminary document in future cases may have a chilling effect on the Court's practice of offering preliminary thoughts to permit the

5

parties to focus their arguments.  Doing so puts potentially controlling information into the hands of one party who may or may not choose to disclose it to the other side.  Moreover, Lone Star itself treats the preliminary document as something that it is free to contradict and ignore where it suits Lone Star.  This can be seen in Lone Star's disregard of Exhibit 2's construction of "viewer" (at p. 4) and Lone Star's ongoing assertion of claim 9, a claim that was deemed indefinite at p. 3 of Exhibit 2.

## IV.    The Purported Technology Tutorial

There is no lack of authority to strike Lone Star's advocacy video that was styled as a "technology tutorial."  As noted, this video was largely a claim construction brief submitted to "exceed the briefing limits."  (ECF No. 86 p. 7).  P.R. 4-5(e) governs the page limitations by reference to Local Rule CV-7(a).  That rule allows 30 pages for claim construction briefs.  Lone Star's opening brief was between 28 and 29 pages without the addition of the video.  (*See* ECF No. 84).  Thus, an additional 12 plus minutes of spoken advocacy far exceeds the 30 page limit.

Finally, while Defendants disagree with all of Lone Star's responses to the objections, a few of them are worth emphasizing.  Regarding 02:40-2:52, it is worth noting that Lone Star's opposition uses the term "individual color component" to describe various shades of blue, whereas the video attempts to use the claim term "individual color" to describe shades, different from both sides' constructions.  Rather, an "individual color" has only one shade, whereas a "color component" such as "blue" can have different shades.  Thus, the video argues about the meaning of claim terms in a manner contradictory to both sides' proposed constructions.  Second, regarding 03:40-03:49, Lone Star claims that using the <u>agreed</u> claim construction for hue or saturation would turn the video into improper advocacy, so instead it was proper to use definitions of hue and saturation that are *different* from the <u>agreed</u> constructions.  This logic is baffling.  Without discussing the other terms, it is plain from  reading Lone Star's responses that Lone Star used the video as an advocacy piece about claim construction, not a neutral tutorial regarding the relevant technology.

Dated:  May 26, 2020                        Respectfully submitted,


By:     */s/ Vinay V. Joshi*
      Vinay V. Joshi (Calif. Bar No. 213487)
      vjoshi@thepatentattorneys.com
      Andrew T. Oliver (Calif. Bar No. 226098)
      aoliver@atwiplaw.com
      Amin Turocy & Watson LLP
      160 West Santa Clara Street
      Suite 975
      San Jose CA 95113
      Telephone: (650) 618-6481
      Facsimile:  (216) 696-8731

      Counsel for Defendant
      ASUSTeK Computer Inc.


Dated:  May 26, 2020                        Respectfully submitted,


By:     */s/ Edward Runyan*
      Edward Runyan (pro hac vice)
      NEUSTEL LAW OFFICES, LTD
      2534 S University Drive, Suite 4
      Fargo, ND 58103
      (701) 281-8822
      Email: Edward@neustel.com

      Charles Ainsworth
      State Bar No. 00783521
      PARKER, BUNT & AINSWORTH, P.C.
      100 E. Ferguson, Suite 418
      Tyler, TX 75702
      (903) 531-3535
      Email: charley@pbatyler.com

      Counsel For Defendant Barco N.V.

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 26, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Tyler Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Andrew T. Oliver*

**Andrew T. Oliver**
