# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | |
|---|---|
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER INC.,<br><br>Defendant. | Civil Action No. 6:19-CV-00059-RWS<br><br>**LEAD CASE** |
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BARCO N.V.,<br><br>Defendant. | Civil Action No. 6:19-CV-00060-RWS<br><br>**Jury Trial Demanded** |

**DEFENDANTS' REPONSE TO PLAINTIFF'S MOTION TO STRIKE INVALIDITY CONTENTIONS AND EXPERT REPORT**

I.      **Date of Filing**

Plaintiff filed the Motion (ECF No. 128) under seal on September 15, 2020, but did not serve the Motion on Defendants until September 16, 2020.  Accordingly, this response is being filed 14 days after service.

II.     **Introduction**

The claims of the asserted patent are exemplars of poor claim drafting.  The Court already recognized as much at claim construction by invalidating claim 17 (and all of the apparatus claims) due to the inclusion of method steps and a human in an apparatus claim.  As will be explained further herein, claim 1 and all the remaining method claims have already been rendered invalid by the claim construction, but the parties have not had the opportunity to put this invalidity before the Court until now.  Plaintiff's motion to strike is  a desperate attempt to push invalid claims past the Court and to the jury.

Plaintiff Lone Star Technological Innovations ("Lone Star") has moved to strike Defendants ASUS Computer, Inc. and Barco N.V.'s (collectively, "Defendants") amended invalidity contentions and portions of the Expert Report of Dr. Robert Louis Stevenson, in particular, indefiniteness under 35 U.S. §112(2), that was necessitated by the claim construction, and lack of utility based on inoperability under 35 U.S.C. §101.  ECF No. 128 ("Motion").  Lone Star's Motion should be denied as it seeks to strike one defense that did not exist prior to the Court's unexpected Claim Construction Ruling, and an inoperability defense under 35 U.S.C. §101 that is not related to P.R. 3-3 disclosures.

The weakness of Plaintiff's motion is highlighted by the fact that Lone Star requests to strike these defenses on meritless grounds.  First, with respect to Defendants' §112(2) defense, as explained in Dr. Stevenson's report, which was incorporated into Defendants' invalidity

contentions, it was not the construction of the few terms identified by Plaintiff that provided the good faith necessary to add this new theory. It was the overall inconsistent effect of the Court's Claim Construction Ruling that provides the foundational good faith for Defendants to add a new indefiniteness assertion. Lone Star's attempts to simplify the good faith standard utterly fails to account for this rather unique factual circumstance.

Second, Lone Star cannot in good faith make an argument that Defendants had any obligation to disclose any §101 invalidity theories under P.R. 3-3. Realizing this, Lone Star manufactured a convoluted argument that Defendants' inoperability §101 defense is essentially an enablement defense under §112 defense that was subject to P.R. 3-3. Not so. Some Courts have held that a successful inoperability defense under §101 necessitates a finding of indefiniteness under §112(2), but none has gone so far as to suggest that parties cannot raise defenses under §101.

Finally, for the §112 defense, Defendants provided notice of the defense more than two weeks (specifically, 16 days) before the P.R. 3-6(a)(2)(B) deadline to amend Invalidity Contentions. Plaintiff's motion to strike should be denied.

## III. LEGAL STANDARD

P.R. 3-6(a)(2) allows amendment of Invalidity Contentions based on a good faith assessment of the claim construction order:

> (2) Not later than 50 days after service by the Court of its Claim Construction Ruling, each party opposing a claim of patent infringement may serve "Amended Invalidity Contentions" without leave of court that amend its "Invalidity Contentions" with respect to the information required by P.R. 3-3 if:
>
> (A) a party claiming patent infringement has served "Infringement Contentions" pursuant to P.R. 3-6(a), or
>
> (B) the party opposing a claim of patent infringement believes in good faith that the ***Court's Claim Construction Ruling*** so

requires.

L.P.R. 3-6(a)(2) (emphasis added).  Plaintiff did not amend its infringement contentions, so subsection (B) applies here.  This rule does not require or even suggest that a party must seek "leave" of the Court as argued by Plaintiff.  *See also* ECF No. 70 p. 6 ("[E]xcept as provided in Patent Rule 3-6(a), it is necessary to obtain leave of Court …").

Further, and undisputed by Plaintiff (Motion at p. 7), "this district's Patent Rules do not require a party to disclose an invalidity ground related to subject matter ineligibility under §101." *See Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 U.S. Dist. LEXIS 79832, *7 (E.D. Tex. May 24, 2017), *see also* L.P.R. 3-3.  And, while inoperability under 101 can often relate to a lack of enablement under 112[1], they are separate defenses.  *Raytheon Co. v. Roper Corp.*, 724 F.2d 951, 956 (Fed. Cir. 1983) ("Whether the appropriate basis for holding claim 1 invalid be failure of compliance with the utility requirement of § 101 or with the enablement requirement of § 112, therefore, that holding must be affirmed.").

## IV.  BACKGROUND

On December 29, 2019, Defendants served their P.R. 3-3 invalidity contentions.  On July 31, 2020, the Court issued its Claim Construction Ruling.  ECF No. 105.  Based on P.R. 3-6, Plaintiffs could amend infringement contentions by August 28, 2020, but did not do so.  Thus, Defendants could amend invalidity contentions by September 20, 2020,[2] if they believed in good faith that such an amendment was required.  P.R. 3-6(a)(2).  And Defendants did believe in good faith that such an amendment was required.  Thus, Defendants served the expert report of Dr. Stevenson on September 2, 2020 that, among other defenses, elaborated on the two invalidity

---

[1] For example, certain types of devices such as perpetual motion machines and cold fusion devices are deemed impossible by the patent office and lack utility under §101.  Those devices also, necessarily, cannot be explained sufficiently in a patent to comply with the enablement requirement of §112.

[2] The 50th day fell on Sept. 19, a weekend day.

defenses that Plaintiff now seeks to strike: inoperability under 35 U.S. §101 and indefiniteness under 35 U.S.C. §112. Ex. 1 at ¶¶150-170. With respect to Defendants' indefiniteness defense, Dr. Stevenson provided a lengthy explanation of how this defense resulted from the Court's Claim Construction Ruling. *Id.* at 150-158. Thus, Plaintiff received full disclosure of Defendants indefiniteness defenses as well as the good faith basis for the new indefiniteness defense. These were provided a full *sixteen days* before Defendants' deadline to amend its invalidity contentions. Furthermore, as acknowledged by Plaintiff, Defendants amended their invalidity contentions to incorporate by reference Dr. Stevenson's report and all exhibits on September 8, 2020. Dkt. 128-4.

Plaintiff asserts that the amended invalidity contentions were served only in response to Plaintiff's request for a meet and confer to discuss the contents of Dr. Stevenson's Expert Report. Motion at p. 2, *citing* Dkt. 128-3. Plaintiff is mistaken. Defendants planned to serve amended invalidity contentions before any contact from Plaintiff regarding Dr. Stevenson's Expert Report. In fact, when the amended invalidity contentions were served, Defendants still had an additional 16 days remaining in the period provided by P.R. 3-6 for amendment. Nevertheless, if the Court desires, Defendants will provide for *in camera* review of the communications establishing that Defendants intended to amend the contentions prior to receiving Plaintiff's complaints about Dr. Stevenson's report.

## V. ARGUMENT

Neither Defendants' indefiniteness defense[3] nor their §101 defense should be stricken from the amended invalidity contentions or Dr. Stevenson's Expert Report. As explained below,

---

[3] Because indefiniteness is typically addressed during claim construction (ECF No. 70 p. 7 ¶ c), but this indefiniteness arose through claim construction, Defendants were not able to address it in claim construction briefing, but expect to address this defense in connection with motions for summary judgment.

good faith exists for Defendants' inclusion of the indefiniteness defense; it resulted from an unexpected and unforeseeable claim construction ruling. Moreover, Plaintiff's attempt to strike the §101 defense is meritless because Defendants had no obligation to disclose it in their invalidity contentions.

      **A.**      **Defendants' Indefiniteness Defense Meets the Good Faith Standard as it is Based on the Court's Unexpected and Unforeseeable Claim Construction Ruling**

Plaintiffs incorrectly argue that Defendants cannot meet the good faith standard to add an indefiniteness defense because "the Court's construction was not unforeseeable or unexpected." Motion at 4. While Plaintiff is correct that the Court's constructions of the terms "identifying", "individual color", and "arithmetic and logical operations" were either agreed constructions or proffered by one of the parties, that is not the point. While individual constructions of some terms may have been foreseeable, the Claim Construction Ruling *as a whole* was not. As explained by Dr. Stevenson, it was the "[t]he claim construction order [that] introduced indefiniteness into the claim." Ex. 1 at ¶157. This was not due to any faulty analysis by the Court, but rather due to the Court recognizing the indefiniteness that was always present in claim 1 that none of the parties recognized prior to the claim construction ruling.

Specifically, Dr. Stevenson considered the Court's Claim Construction Ruling and formed the opinion that a person of ordinary skill in the art "would not understand the scope of these claims on being unable to determine which pixels are identified in the 'identifying a plurality of said input image pixels…'step'". *Id.* at ¶152. Dr. Stevenson explained his reasoning in detail. In step (b) of each of the asserted claims (the "selecting step")[4], the Court construed "individual color" to mean "a linear combination of colors or color components." Dkt. 105 at

---

[4] The asserted claims of the '435 Patent are 1-3, 5-6, 13-15. Claims 2-3, 5-6, and 13-15 are all dependent on claim 1.

p.11. The Court further agreed with Defendants that the selecting step "is limited to selecting an exact 'individual color'…" *Id.* at 13. Dr. Stevenson has no disagreement with the Court's construction of "individual color" nor its clarification that the selecting step is limited to selecting an exact individual color. Ex. 1 at ¶154.

In step (c) of the asserted claims (the "identifying step"), however, the Court's Claim Construction Ruling did not limit the "identifying step" (i.e., "identifying a plurality of . . . input image pixels having said selected individual color") to the "exact" individual color that would have been selected in step (b). The Court, despite having already limited the selecting step to selecting an exact individual color, stated that it is incorrect to "argue claim 1's 'identifying' step is limited to identifying input image pixels to have the *exact* 'individual color' previously selected…" Dkt. 105 at p. 14. The Court's constructions are set forth in the table below:

| "individual color" | "having said selected individual color" |
|---|---|
| "linear combination of colors or color components" (ECF No. 105 p. 12) <br><br> Additional statement: "Defendants suggest that claim 1's 'selecting' step is limited to selecting an exact 'individual color,' and they are correct." *Id.* at p. 13. | "To the extent defendants argue claim 1's 'identifying' step is limited to identifying input image pixels that have the exact 'individual color' previously selected, they are incorrect… Pixels are identified as 'having red' when they satisfy logical conditions, not when they correspond to a particular color point… In each embodiment, a set of pixels is identified according to two inequalities. And applying those inequalities, pixels coded to display other exact individual colors would be 'identifi[ed].'" ECF No. 105 pp. 14-15. |

Thus, an "individual color" has very different meanings depending on whether or not it is preceded by the word "having." When "having" is included, individual color can mean any number of colors, but without "having," individual color is limited to a single exact color. The Court recognized what none of the parties recognized, that "individual color" in the "selecting" step must be construed inconsistently with its construction in the identifying step based upon the

specification and claim language.  This inherent contradiction was not recognized by any party, as the parties strived to give like terms like meanings throughout the claim, despite what the Court recognized, i.e., that the specification did not allow this.  *See Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, No. SA CV 05-323 AHS (RNBx), 2007 U.S. Dist. LEXIS 23768, *9 (C.D. Cal. Feb. 8, 2007) (*citing Process Control Corp. v. HydReclaim Corp.*, 190 F.3d 1350, 1356-57 (Fed. Cir. 1999)) ("Where subsequent uses of a claim term within a claim make reference to the first usage as an antecedent (through the use of introductory definite articles such as 'said' or 'the'), the claim term must be interpreted consistently across all such uses.").  Again, the Court noted, "[T]he parties' positions are incorrect," confirming that no party could have anticipated the Court's construction.  ECF No. 105 p. 19.

Further, the Court departed from and did not accept either side's construction of the clause "without affecting the hue or the saturation of any other individual color" found in step (e).  Rather, the Court both proffered an unexpected construction and stated that, "[T]he 'without affecting' phrase refers back to the remaining plurality of input image pixels, rather than a specific individual color or the colors capable of being selected.  No party's construction is correct."  ECF No. 105 p. 17.  As set forth below, while the Court recognized a feature of the claim not identified by the parties, this construction introduced further uncertainty into the claim that is underlying the unresolved indefiniteness defense.

In particular, the claim construction order points out that one example of "identifying" can be performed through use of the inequalities disclosed in a preferred embodiment in the patent specification, such as: $R_{in} > [A_{rg} + G_{in}]$ and $R_{in} > [A_{rb} + B_{in}]$.  *Id.* at 14-15.  However, the claims are not limited to the preferred embodiments.  *Modine Mfg. Co. v. United States ITC*, 75 F.3d 1545, 1551 (Fed. Cir. 1996) ("All rules of construction must be understood in terms of the

factual situations that produced them, and applied in fidelity to their origins. Thus, although Modine stresses the rule that the description of the preferred embodiment in the specification does not limit the claims to that embodiment, when the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment."). And because of this, the claims are indefinite. The specification does not disclose any other embodiments to use for identifying pixels. And there are potentially infinite numbers of equations and/or inequalities that can be used to identify pixels. *See* Ex. 1 at ¶157 (a person of ordinary skill in the art would "understand that there are many, possibly an infinite number of, 'arithmetic and logical operations' that could be performed to identify pixels."). Accordingly, a person of ordinary skill in the art is left (i) without any guidance as to which of those infinite equations can be used to determine the pixels to identify and fall within step (c) and (ii) without any guidance as to how to determine which individual colors fall within the "without affecting" clause of step (e). As a result, it would be absolutely impossible for anyone to determine whether or not this claim limitation is met, because the boundary is not defined.

As Dr. Stevenson explains, by introducing a test other than equality into the claim and by identifying the inequality that the claim construction order describes as the "preferred embodiment" as an option *without limiting the claim to that option*, a person of ordinary skill in the art would not be able to determine which pixels are not affected. *See* Ex. 1 at ¶156. This result was neither foreseeable nor expected by the Defendants. Ordinarily, a claim construction clarifies the claims rather than introducing indefiniteness through contradictory interpretations of identical claim language.

Plaintiff misses the mark in arguing that Defendants lack good faith to add the above defense. Plaintiff relies on the Court's constructions of agreed terms or constructions proffered

by a party.[5]  Motion at 4-5.  As explained above, it is not an individual construction, but the unexpected interplay of multiple constructions that provide good faith for amendment of Defendants' invalidity contentions.  The Court's Claim Construction Ruling introduced indefiniteness in a way that could not have been foreseen or expected.  Moreover, the final paragraph of the claim construction order specifically binds Dr. Stevenson's testimony, stating, "[T]he testimony of any witness is bound by the Court's reasoning in this order…" ECF No. 105 p. 44.  Thus, Dr. Stevenson is required to apply this indefiniteness analysis in view of the claim construction order.

Finally, Plaintiff argues that Defendants' "have not shown in its Amended Contentions that the Court's Claim Construction Order was so different or unexpected that it would warrant an amendment of invalidity contentions pursuant to P.R. 3-6(a)(2).  As explained above, Defendants amended their invalidity contentions 10 days prior to the deadline to do so.  Defendants' amended contentions incorporated by reference Dr. Stevenson's report and exhibits that were served six days prior to service of the amended contentions.  As cited above, Dr. Stevenson provided a detailed explanation of why such a defense was warranted based on the Court's Claim Construction Ruling.

### B. P.R. 3-3 Does Not Require Disclosure of Defenses Under 35 U.S.C. §101

As an initial matter, P.R. 3-3 does not require disclosure of 35 U.S.C. §101 defenses. *Biscotti,* 2017 U.S. Dist. LEXIS 79832 at *7; *see also* P.R. 3-3.  In fact, Plaintiff admits this point: "[d]efendants are not required to disclose theories based on §101 in their Initial Contentions…" Motion at p. 7.  Based on this alone, the Court should deny the portion of

---

[5] Notably, at the time the invalidity contentions were made, Defendants were not privy to Plaintiff's proposed constructions.  So even if the good faith had to rest upon a construction proffered by Plaintiff (which it does not), the Court's adoption of Plaintiff's construction could provide good faith for amendment.

Plaintiff's motion directed to the §101 defense.

Realizing this, Plaintiff manufactured a convoluted and unsupported argument that because Dr. Stevenson's Expert Report allegedly "describes a [§] 101 argument that is inextricably intertwined with §112 and claim construction," one must conclude that the inoperability defense is "in part a § 112(1) argument and advances a new set of claim construction arguments." *Id.* at pp. 7-8.  However, Plaintiff cites no authority that categorizes inoperability under 35 U.S.C. §101 as a defense under §112.  And Defendants do not rely upon §112 at all with respect to the §101 defense.

Thus, Plaintiff seeks to twist cases such as *In re Swartz*, 232 F.3d 862 (Fed. Cir. 2000). Motion at 8.  *In re Swartz*, however, stands for the proposition that if claims "fail to meet the utility requirement because the invention is inoperative, they also fail to meet the enablement requirement because a person skilled in the art cannot practice the invention." *Id.* at 863. Plainly, *Swartz* states that if §101 renders the claim invalid, then §112 would also render the claim invalid.  But neither this case nor any similar cases state that a party *cannot* raise a defense independently under §101.

And this defense is not a defense that could fall under any of the indefiniteness, written description, or enablement requirements of §112.  In particular, Dr. Stevenson opines that based on the methods recited in claim 1, "the output is the same as the input."  ECF No. 128 Exh. B ¶161.  This isn't a claim construction issue; it is merely the application of a poorly drafted claim. (Defendants note that the Court already determined that claim 17 was poorly drafted (and was invalid) as a system claim requiring method steps.)  However, as noted by Dr. Stevenson, claim 1 is also poorly drafted, such that "an entire process must be performed on a computing system without resulting in any effect on the data."  *Id.*  Dr. Stevenson noted, "One would expect that if

the desired result is controlling hue or saturation the actual control or changes of such hue or saturation would occur. However, it does not." *Id.* at ¶¶162-163. Rather, "nothing is changed." *Id.* at 163. Instead, "the output pixels are formed with the 'selected individual color'…"; and "if the output pixels have the same individual color as the input pixels, then they have not been changed or modified." *Id.* And the "displayed output pixels have the same 'selected individual color.'" *Id.* Dr. Stevenson explains that "if the hue or the saturation was actually changed, then the color would no longer be the 'selected individual color,' but rather a different color based on the alteration of the hue or saturation." *Id.* at ¶164. This isn't claim construction, but rather application of the claim construction to a device covered by the claim. Dr. Stevenson notes that the claimed steps of method are in contrast with the stated goals of the claim. Rather than construing and/or changing the claim, Dr. Stevenson explains how the plain language of the claim coupled with the Court's constructions renders the claim "incapable of achieving a useful result." *Id.* at ¶168. As noted in the preceding paragraph, this defense does not relate to indefiniteness, written description, or enablement, but rather to faithfully applying the words of claim 1 as they are written.

Plaintiff also incorrectly argues that because "[d]efendants' expert seeks to interpret the meaning of several claim terms and phrases…Dr. Stevenson's attempt to make legal determinations regarding the meaning of method steps is improper and any such theory should have been disclosed in Defendants' Initial Contentions" Motion at 8-9. First, as noted in the preceding paragraph, this is incorrect. The parties did not seek construction of the relevant terms, so those terms are given their plain and ordinary meaning. An expert is entitled to opine as to how a person of ordinary skill in the art would apply the plain and ordinary meaning of a claim term. Dr. Stevenson does not interpret the claims, but merely applies the meaning of the

convoluted claim language.  Moreover, Plaintiff offers no authority to support its argument that an expert cannot offer opinions as to legal conclusions.  Instead, Plaintiff relies on *Freeny v. Apple Inc.*, which states "[i]ndefiniteness is a legal determination; if the court concludes that a person of ordinary skill in the art, with the aid of the specification, would understand what is claimed, the claim is not indefinite."  *Freeny*, No. 2:13-CV-361, 2014 WL 4294505, at *4 (E.D. Tex. Aug. 28, 2014).  This has no bearing on the stated defense.  Dr. Stevenson did not state anywhere that this § 101 defense relates to indefiniteness, nor any other defense required to be disclosed by the Patent Rules.  Rather, Dr. Stevenson explained inoperability under §101.  To do so, Dr. Stevenson obviously had to review and consider the claim language.  As Dr. Stevenson notes, his "analysis applies the Court's constructions… [and he] considered the reasoning in the Court's claim construction order."  Ex. 1 at ¶72.  No claim construction is performed by Dr. Stevenson; and no claim construction is needed to determine that this claim is inoperable.

Finally, the judges of this District are well versed in patent law and are fully aware of the overlap between an inoperability defense and an indefiniteness defense.  Even with this knowledge, the Patent Rules do not require identification of §101 defenses in invalidity contentions.  In fact, Chief Judge Rodney Gilstrap issued a standing order on July 25, 2019 which explicitly required defendants in cases assigned to him to submit "Subject Matter Eligibility Contentions" within 45 days of receiving the "Disclosure of Asserted Claims and Infringement Contentions," demonstrating that in particular instances, the judges of this Court require §101 disclosures.  Ex. 4.  Yet the Patent Rules have not been amended to require §101 disclosures.

## VI. Conclusion

As Defendants have shown good faith in amending their invalidity contentions with a §112 indefiniteness defense based on the Court's unexpected and unforeseeable Claim

Construction Ruling, and have asserted a §101 inoperability defense not subject to P.R. 3-3, Plaintiff's Motion should be denied.

Dated:  September 30, 2020 Respectfully submitted,

By:    */s/ Andrew T. Oliver*
Vinay V. Joshi (Calif. Bar No. 213487)
vjoshi@thepatentattorneys.com
Andrew T. Oliver (Calif. Bar No. 226098)
aoliver@atwiplaw.com
Amin Turocy & Watson LLP
160 West Santa Clara Street
Suite 975
San Jose CA 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

Counsel for Defendant
ASUSTeK Computer Inc.

   /s/ Edward Runyan

Edward Runyan (pro hac vice)
Edward@neustel.com
NEUSTEL LAW OFFICES, LTD
2534 S University Drive, Suite 4
Fargo, ND 58103
Telephone: (701) 281-8882

Charles Ainsworth
charley@pbatyler.com
PARKER, BUNT & AINSWORTH, P.C.
100 E. Ferguson, Suite 418
Tyler, TX 75702
Telephone: (903) 531-3535

Counsel for Defendant Barco N.V.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 30, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Tyler Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

>   */s/ Andrew T. Oliver*
>   **Andrew T. Oliver**