IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER INC.,<br><br>    Defendant. | Civil Action No. 6:19-CV-00059-RWS<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**<u>DEFENDANT ASUSTEK COMPUTER INC.'S
OPPOSED MOTIONS *IN LIMINE*</u>**

## TABLE OF CONTENTS

1. Motion *in Limine* No. 1:  Exclude Plaintiff's Expert Alfred Ducharme from Testifying About Source Code. ...................................................................... 4

2. Motion *in Limine* No. 2: Exclude Lone Star's Counsel from Making any Representations and Ducharme from Offering any Testimony that the MediaTek Source Code Produced by MediaTek is the Same or Similar for every MediaTek Scalar Chip............................................................. 7

3. Motion *in Limine* No. 3: Exclude Ducharme from Offering Any Testimony that the Functionalities of the PA328Q and VG248QE are Representative of All Accused ASUS Products. ............................................. 8

4. Motion *in Limine* No. 4: Exclude Lone Star from Making any Representations or Offering any Testimony that the Validity of the '435 Patent has never been Challenged in any Proceeding before the United States Patent and Trademark Office. ......................................................... 9

5. Motion *in Limine* No. 5: Exclude Lone Star's Damages Expert Glenn Perdue and Ducharme from Offering any Testimony Suggesting ASUS has Directly Infringed any Asserted Method Claim Because an Accused Product was sold within the United States Without Showing Use.................................................................................................................... 10

6. Motion *in Limine* No. 6: To Exclude Perdue and Ducharme from Offering any Testimony Suggesting that ASUS's Accused Products are Calibrated or Tested in the United States....................................................... 11

7. Motion *in Limine* No. 7: To Exclude Ducharme and Perdue from offering any Testimony or Evidence that Suggests End Users Will use the Accused Color Control Functionality found In the Accused Products at Least Once. ....................................................................................... 11

8. Motion *in Limine* No. 8: To Exclude Lone Star from Offering any Testimony that Would Suggest that the Existence of License Agreements involving the '435 patent Means that the Technology Disclosed by the Asserted Claims is Actually Being Used. ............................... 13

9. AGREED UPON MOTIONS *IN LIMINE:* ..................................................... 13

**Cases**

*I4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010) ........................................10

*Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1317 (Fed. Cir. 2009)..................................10

*Mobile Telecomms, LLC v. ZTE (USA) Inc.,* No. 2:13-CV-046-JRG, 2016 WL 8260584, at *2 (E.D. Tex. July 22, 2016)..............................................................................................................10

*Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,* 725 F.3d 1377, 1381 (Fed. Cir. 2013)............................................................................................................... 9, 12

*Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-cv-176, 2011 WL 7563868, at *2 (E.D. Tex. Sept. 23, 2011)................................................................................................ 9, 12

*Wi-Lan Inc. v. Sharp Elecs. Corp,* 2021 U.S. App. LEXIS 9909, __F.3d__ (Fed. Cir. 2021) .............*passim*

**Rules**

Fed. R. Civ. P. 26(a)(2) ........................................................................................................ 7, 8, 12

Fed. R. Evid. 402, 403 ...................................................................................................................13

Fed. R. Evid. 803(6)........................................................................................................................5

Fed. R. Evid. 901(b)(4)...................................................................................................................6

Fed. R. Evid. 802 ............................................................................................................................5

Fed. R. Civ. Proc. 26(a)(2) .............................................................................................................8

1. **Motion** *in Limine* **No. 1:  Exclude Plaintiff's Expert Alfred Ducharme from Testifying About Source Code.**

The only source code in this case was produced by third-party MediaTek.  Lone Star's infringement expert Ducharme claims that the source code produced by MediaTek is for all the scalar chips that are inside all the accused products of Defendant ASUS.  However, there is no authentication that the source code is for even one of the relevant scalar chips, let alone for multiple relevant scalar ship.  The source code does not identify which product it is for.  Nor is there any declaration or deposition testimony from MediaTek to that effect.  During the recent meet and confer process, ASUS learned that Lone Star is not bringing any MediaTek witness to the trial.  To make matters worse for Lone Star, the contents of the source code printouts produced by MediaTek include indications that the source code is unreliable.

Just recently, the Federal Circuit addressed the importance of and factors for source code authentication in *Wi-Lan Inc. v. Sharp Elecs. Corp,* 2021 U.S. App. LEXIS 9909, __F.3d__ (Fed. Cir. 2021).  That case is attached hereto as **Exhibit 1**.  The Federal Circuit's *Wi-Lan Inc.* decision leaves no doubt that Ducharme cannot testify about the source code.  The source code is unauthenticated and experts in Ducharme's field do not rely on unauthenticated source code.  Lone Star did not argue otherwise during meet and confer.

Early on in discovery, ASUS informed Lone Star that the alleged infringement is performed by scalar chips, the functionality of which is designed by third parties such as MediaTek and Realtek.  The source code is necessary to learn whether the accused products infringe or not.  Lone Star then took discovery from MediaTek.  MediaTek allowed Lone Star to review its source code and then sent hardcopy printouts of source code requested by Lone Star.  However, Lone Star did not take a deposition of MediaTek.  Lone Star did not bother to even obtain a declaration from MediaTek stating which product(s) the source code is for.  What makes matters even more problematic is that Ducharme did not review the source code himself.  Someone else reviewed the source code and

4

selected the portions that Lone Star wanted printouts for.  *See* **Exhibit 2**, MediaTek Letter dated 10.2.2020 (printouts were selected by someone named David Burroughs).  Ducharme then reviewed just those printouts with no context of the rest of the source code.  Ducharme's report does not explain why the selected printout pieces were selected and why other portions of source code were not selected.

On September 2, 2020, Lone Star served ASUS with the Expert Report of Alfred D. Ducharme, PhD., Regarding Infringement of U.S. Patent No. 6,724,435.  Footnote 17 to Dr. Ducharme's September 2, 2020 report states "To the extent additional discovery (e.g. ASUS depositions, source code, etc.) is subsequently produced, discovered or made available, I reserve the right to supplement this report and my opinions contained herein."  **Exhibit 3** (Excerpts from Ducharme September 2, 2020 report) at p. 25.  On October 29, 2020, Dr. Ducharme submitted a supplemental expert report regarding infringement of the '435 Patent.  In the October 29, 2020 report, Dr. Ducharme superficially analyzed and referenced certain portions of MediaTek source code in order to supplement his infringement opinions.  *See, e,g,,* **Exhibit 4** (Excerpts from Ducharme October 29, 2020 report) at ¶49.

Dr. Ducharme's infringement report makes references to MediaTek Source Code, but he does not explain why he believes the source code is relevant to the accused products.  Lone Star never authenticated the source code.  MediaTek designs and makes hundreds if not thousands of chips.  Authentication is thus very important here, not just a formality.  The source code is inadmissible hearsay.  FRE 802.  Moreover, there is no hearsay exception that applies to the source code.  Lone Star, for example, cannot argue that the source code meets the business records exception (Fed. R. Evid. 803(6)) as Lone Star has not established by testimony "from a custodian or another qualified witness" that the source code meets the requirements of Fed. R. Evid. 803(6).  *See, Wi-Lan Inc.,* 2021 U.S. App. LEXIS 9909 at *9 (Fed. Cir. 2021).

In *Wi-Lan*, the Federal Circuit held that the district court did not abuse its discretion in holding that source code printouts, <u>even when accompanied by custodial declarations</u>, were not admissible business records under Fed. R. Evid. 803(6). *Id.* at *13. Here, Lone Star has not even offered custodial declarations. Lone Star has had ample opportunity in this case to authenticate the source code. Yet, it made no such attempt. Moreover, Lone Star has not identified any specific person at MediaTek who will be doing so at trial.

There is also no basis to admit the source code into evidence under Federal R. Evid. 901(b)(4). Rule 901(b)(4) permits a record to be admitted into evidence if "[t]he appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances…support a finding that the item is what the proponent claims to be." Here, there is no reliable indication of what MediaTek scalar chip any of the code relates to.

For example, in paragraph 49 of his supplemental report, Dr. Ducharme cites to certain code that he claims is from ▮▮▮▮▮▮▮▮▮▮▮▮ implying that it is source code for a product named ▮▮▮▮▮. **Exhibit 4** at ¶49. However, this chip identifying information is not from the code, but rather a label that appears to have been added by MediaTek's outside counsel. Furthermore, although Dr. Ducharme purports to analyze ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, not the ▮▮▮▮▮ chip whose purported source code Ducharme is analyzing. Thus, the source code itself and the manner in which Ducharme has used it is riddled with lack of reliability and errors. Again, Lone Star could have deposed MediaTek to authenticate the source code and clarify which product(s) the source code is relevant to. Lone Star did not even make that attempt.

Lone Star may not argue that the source code should be admissible under Fed. R. Evid. 703 because its expert, Dr. Ducharme, relied on the source code. Not so. A party may not use "its expert as a substitute for a fact witness to circumvent the rules of evidence to admit otherwise

6

inadmissible evidence." *Wi-Lan,* 2021 U.S. App. LEXIS 9909 at *19. Also, Lone Star may not argue that even if the source code is inadmissible, that Dr. Ducharme should be allowed to offer his opinions on the source code. While experts may typically rely on material such as source code, Lone Star has not "made a showing that source code experts reasonably rely on unauthenticated Source Code printouts." *Id.* at *20.

As such, Dr. Ducharme should be prevented from testifying as to the contents of the source code. Lone Star may not argue that ASUS should have addressed this issue in a Daubert motion or that this is an issue for cross-examination. A Daubert motion would have been premature because Lone Star has always said that it might bring a MediaTek witness to the trial. The date for identifying trial witnesses has now passed and no MediaTek witness is coming to trial. Thus, this issue is now ripe for adjudication. Also, cross-examination cannot address the issue of unauthenticated evidence. By the time cross-examination occurs, the jury will have already been improperly exposed, and prejudiced by, this improper evidence.

AGREED:_____ GRANTED:_____ DENIED:_____

2. **Motion *in Limine* No. 2: Exclude Lone Star's Counsel from Making any Representations and Ducharme from Offering any Testimony that the MediaTek Source Code Produced by MediaTek is the Same or Similar for every MediaTek Scalar Chip.**

To the extent that Ducharme is allowed to present any evidence of MediaTek Source Code or any testimony concerning said Source Code, Ducharme should be precluded from making any representations or offering any testimony that the Source Code is the same or similar for every MediaTek Scalar Chip.

Fed. R. Civ. P. 26(a)(2) requires that an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." Moreover, this Court "consistently limits expert's testimony to the opinions and bases disclosed in their expert report." *Witt v. Chesapeake Exploration, L.L.C.,* 2011 U.S. Dist. Lexis 76033, at *5 (E.D. Tex. July 13, 2011); *see*

7

*also Adv. Tech. Incubator, Inc. v. Sharp Corp.,* 2010 U.S. Dist. LEXIS 146530, at *32-33 (E.D. Tex. Mar. 31, 2010) (granting motion *in limine* to limit scope of expert testimony at trial to expert report.). In his report, Dr. Ducharme makes only the following conclusory opinion regarding the similarity of MediaTek source code among different scalar chips: "I understand that MediaTek produced source code related to multiple chip sets, but I also understand that the underlying source code is the same or substantially similar all chip sets." **Exhibit 4** at p. 12. While the second part of this sentence is not entirely clear, Dr. Ducharme appears to offer the opinion that the underlying source code is the same or substantially the same for all MediaTek chipsets. It is unknown what he means by "I also understand" and "underlying source code," as Dr. Ducharme fails to disclose any of this in his report. In sum, contrary to Rule 26(a)(2), Dr. Ducharme never disclosed the basis or reason for this opinion. As such, he should not be able to testify that the underlying source code is the same or substantially similar for all MediaTek chipsets. Counsel for Lone Star should also be precluded from making any statements, whether in opening or closing arguments, or otherwise, to the jury that would have the same effect. Dr. Ducharme had every opportunity to provide the basis for his opinions, and his failure to do so should preclude him from doing so for the first time at trial.

AGREED:_____          GRANTED:_____          DENIED:_____

3. **Motion *in Limine* No. 3: Exclude Ducharme from Offering Any Testimony that the Functionalities of the PA328Q and VG248QE are Representative of All Accused ASUS Products.**

Ducharme should be precluded from offering any testimony that all Accused ASUS products have the same functionality as the PA328Q and VG248QE products. Fed. R. Civ. P. 26(a)(2) requires that an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them." In his infringement report, Dr. Ducharme claims that he "evaluated the evidence to determine whether each of the limitations of asserted claims of the '435 Patent…were present in each of the Accused Devices." **Exhibit 4** at p. 11. Dr.

8

Ducharme, however, only disclosed his analysis as to two of ASUS products:  the PA327Q and VG248QE monitors.  See **Exhibit 4** at p. 11 ("For purposes of brevity, my explanation below concerns an exemplary product, ASUS PA328Q"); p. 12 ("An additional ASUS device was also tested, model VG248QE, which exhibited similar results.").  Although Dr. Ducharme attempts to play off his analysis of these two models as "exemplary", the fact is his report contains no disclosure of any testing, study or other analysis he performed that would allow him to reach the conclusion that all of ASUS's Accused Products are the same in function with either the VG248QE or the PA328Q.  Thus, Dr. Ducharme has no basis to testify that other ASUS products function in the same way as the PA327Q or VG248QE products.  Dr. Ducharme should be precluded from offering any such testimony to the jury where he failed to disclose this analysis and opinion in his expert report.  *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,* 725 F.3d 1377, 1381 (Fed. Cir. 2013) ("An expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information was 'substantially justified or harmless.'"); *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-cv-176, 2011 WL 7563868, at *2 (E.D. Tex. Sept. 23, 2011) ("The general rule is that an expert is not permitted to testify beyond the scope of his or her expert report.")

      AGREED:_____             GRANTED:_____            DENIED:_____

4. **Motion *in Limine* No. 4: Exclude Lone Star from Making any Representations or Offering any Testimony that the Validity of the '435 Patent has never been Challenged in any Proceeding before the United States Patent and Trademark Office.**

Lone Star should be precluded from making any representations or offering any testimony that the validity of claims 1-3, 5-6 and 13-15 of the '435 patent have never been challenged in any proceeding before the Patent Office.  What has or has not happened in other proceedings is irrelevant to any issue the jury must decide.  Allowing Lone Star's attorneys or witnesses to mention to the jury that the asserted claims have not previously had their validity challenged in the Patent

9

Office would only serve confuse and mislead the jury.  Courts routinely preclude evidence of other litigations and IPR proceedings as irrelevant and unduly prejudicial.  *See Mobile Telecomms, LLC v. ZTE (USA) Inc.,* No. 2:13-CV-046-JRG, 2016 WL 8260584, at *2 (E.D. Tex. July 22, 2016) ("The parties SHALL NOT introduce any references, evidence, testimony (including expert testimony), or argument regarding unrelated litigations, investigations, or accusations involving the parties or their affiliates or principles.").

        AGREED:_____        GRANTED:_____        DENIED:_____

5. **Motion *in Limine* No. 5: Exclude Lone Star's Damages Expert Glenn Perdue and Ducharme from Offering any Testimony Suggesting ASUS has Directly Infringed any Asserted Method Claim Because an Accused Product was sold within the United States Without Showing Use.**

Lone Star should be precluded from offering any testimony from its damages expert Glenn Perdue or its infringement expert Alfred Ducharme that would suggest that the mere sale of an Accused Product within the United States constitutes infringement and thus entitles Lone Star to damages for that Accused Product.  While Lone Star originally asserted both system and method claims, the system claims were found invalid during claim construction and only the method claims remain.  Dkt. No. 105.

Where the asserted claims are method claims, the sale of a product, without more, does not infringe the patent.  *I4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 850 (Fed. Cir. 2010).  Instead, direct infringement of a method claim requires a showing that ever step of the claimed method has been practiced.  *Lucent Techs., Inc. v. Gateway, Inc.,* 580 F.3d 1301, 1317 (Fed. Cir. 2009).

As such, Lone Star should not be allowed to confuse the jury or potentially cause the jury to misunderstand the law with respect to infringement of a method claim.  The mere sale of an Accused Device is not sufficient to show infringement, and any testimony to the contrary should be excluded.

        AGREED:_____        GRANTED:_____        DENIED:_____

6.  **Motion *in Limine* No. 6: To Exclude Perdue and Ducharme from Offering any Testimony Suggesting that ASUS's Accused Products are Calibrated or Tested in the United States.**

    As set forth above in Motion *in Limine* No. 5, only method claims remain at issue in this case. As such, the issue of whether the Accused Products have been operated in an infringing manner within the United States will be central to the upcoming trial.

    In his expert report, Lone Star's damages expert Glenn Perdue cites to an ASUS web page for the ASUS PA328Q product. Mr. Perdue mentions that this web page indicates that the PA328Q is "Factory pre-calibrated, industry-leading color accuracy with 100% sRGB and Rec. 709 color space support." **Exhibit 5** at p. 17 (excerpts from the September 3, 2020 expert report of Glenn Perdue). While the PA328Q product may well be "factory-calibrated", Mr. Perdue offers no supporting basis, evidence or analysis that this calibration was done within the United States. As such, while Mr. Perdue can testify that the PA328Q product was "factory-calibrated", he should not be allowed to testify in any way that would suggest this calibration was performed within the United States.

    Similarly, Dr. Ducharme, Lone Star's infringement expert also mentions that certain Pro Art products are "factory calibrated." **Exhibit 4** at ¶83. Again, while Dr. Ducharme is free to opine that certain ASUS products are "factory calibrated", he should be precluded from testifying in any way that would suggest this calibration was performed within the United States.

    AGREED:_____      GRANTED:_____      DENIED:_____

7.  **Motion *in Limine* No. 7: To Exclude Ducharme and Perdue from offering any Testimony or Evidence that Suggests End Users Will use the Accused Color Control Functionality found In the Accused Products at Least Once.**

    Lone Star should be precluded from offering any testimony or evidence that would suggest the end users of ASUS's accused products will use the accused color control functionality at least

once.  Fed. R. Civ. P. 26(a)(2) requires that an expert's report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them."

In Dr. Ducharme's infringement report, he offers the following opinion: "Finally, based on my knowledge, training and experience, a user of an Accused Device will at least implement the patented technology one time to initialize the proper setup and adjust the colors of the display or projector."  **Exhibit 4** at ¶81.  Although Dr. Ducharme states this is based on his "knowledge, training and experience", he does not disclose the basis for his opinion nor any evidence that would support it.  In fact, Dr. Ducharme does not even explain how his knowledge, training and experience would help him form such an opinion.  Having utterly failed to provide any support for this opinion, Dr. Ducharme should not be allowed to offer this opinion to the jury, as he has presented no basis for the opinion and his testimony would do nothing but prejudice and confuse the jury.  *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.,* 725 F.3d 1377, 1381 (Fed. Cir. 2013) ("An expert witness may not testify to subject matter beyond the scope of the witness's expert report unless the failure to include that information was 'substantially justified or harmless."); *Tyco Healthcare Grp. LP v. Applied Med. Res. Corp.*, No. 9:09-cv-176, 2011 WL 7563868, at *2 (E.D. Tex. Sept. 23, 2011) ("The general rule is that an expert is not permitted to testify beyond the scope of his or her expert report.")

Moreover, in his damages report, Mr. Perdue repeats Dr. Ducharme's baseless opinion: "Additionally, I understand the following from my discussion with Dr. Ducharme…Users of Accused Devices will use the patented technology at least once after their purchase."  **Exhibit 5** at ¶16.  As Mr. Perdue's only basis for his understanding is Dr. Ducharme, who did not provide the basis for his conclusory opinion, Mr. Perdue should be precluded from stating this "understanding" to the jury.

Additionally, as Dr. Ducharme has not produced or otherwise disclosed the basis of his

12

opinion regarding use, he should not be allowed to present such evidence for the first time at trial.

   AGREED:_____   GRANTED:_____   DENIED:_____

8. **Motion *in Limine* No. 8: To Exclude Lone Star from Offering any Testimony that Would Suggest that the Existence of License Agreements involving the '435 patent Means that the Technology Disclosed by the Asserted Claims is Actually Being Used.**

 During the trial, both parties are expected to rely on certain license agreements obtained by Lone Star as a result of litigations that involved the '435 Patent. Other than as necessary to potentially establish a royalty rate for damages purposes, Lone Star should be precluded from offering any testimony that would suggest the existence of such licenses means that the technology covered by the claims of the '435 Patent are actually being used. Fed. R. Evid. 402, 403.

 As this Court well knows, there are numerous reasons for entering settlement agreements. There is, however, no authority that would support the contention that a defendant who enters a settlement agreement must be doing so because it is using the patented technology. Allowing Lone Star to do so would only cause prejudice to ASUS and unnecessarily confuse the jury.

   AGREED:_____   GRANTED:_____   DENIED:_____

9. **AGREED UPON MOTIONS *IN LIMINE*:**

 During the parties' meet and confer on April 16, 2021, Lone Star agreed to the following two ASUS proposed Motions *in Limine*:

- Lone Star agrees not to offer any expert testimony from either Dr. Ducharme or Mr. Perdue that was not contained in either of their reports, including any supplemental or corrected reports. Thus, Dr. Ducharme's testimony will be limited by his September 2, 2020 infringement report, his October 29, 2020 revised infringement report, and his September 23, 2020 invalidity rebuttal report. Mr. Perdue's testimony will be limited by his September 3, 2020 damages report.

- Lone Star agrees not to offer any testimony that would suggest that Lone Star was involved

13

in any way in the issuance of the '435 Patent by the United States Patent and Trademark Office.

Dated:  April 20, 2021                              Respectfully submitted,


By:     /s/ *Vinay V. Joshi*
Vinay V. Joshi (Calif. Bar No. 213487)
vjoshi@thepatentattorneys.com
Andrew T. Oliver (Calif. Bar No. 226098)
aoliver@atwiplaw.com
Michael C. Ting (Calif. Bar No. 2476100)
mting@atwiplaw.com
Amin Turocy & Watson LLP
160 West Santa Clara Street
Suite 975
San Jose CA 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

Counsel for Defendant
ASUSTeK Computer Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on April 20, 2021, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Tyler Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.



/s/ *Michael C. Ting*
Michael C. Ting