Exhibit G

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,** | § § § | |
| *Plaintiff,* | § § | **Civil Case No. 6:19-cv-00059-RWS** |
| v. | § § | **LEAD CASE** |
| **ASUSTEK COMPUTER INC.,** | § § | |
| *Defendant.* | § § § | |

## JURY INSTRUCTIONS

**1.     Introduction**

MEMBERS OF THE JURY:

You have now heard the evidence in this case, and I will instruct you now on the law that you must apply. It is your duty to follow the law as I give it to you.  On the other hand, you, the jury, are the sole judges of the facts. Do not consider any statement that I may have made during the trial or make in these instructions as an indication that I have any opinion about the facts of the case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and argument of the attorneys are not evidenceand are not instructions on the law. They are intended only to assist you in understanding the evidence and what the parties' contentions are.

1

## 2.    General Instructions

### 2.1    Verdict Form

A verdict form has been prepared for you. You will take this form with you to the jury room and when you have reached a unanimous agreement as to your verdict, you will have your foreperson fill in, date it and sign the form. Answer each question on the verdict form from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

### 2.2    Considering Witness Testimony

In determining whether any fact has been proven in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received into evidence, regardless of who may have produced or introduced them. You the jurors are the sole judges of the credibility of all the witnesses and the weight and effect of all evidence.  By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that some other time the witness said or did something or failed to say or do something that was different from the testimony the witness gave before you during trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it because people may forget some things or remember other things inaccurately. So, if a witness has made

2

a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory. And the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail. In deciding whether to accept or rely upon the testimony of any witness, you may also consider any bias of the witness.

### 2.3    How to Examine the Evidence

Certain testimony in this case has been presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness testimony may be presented, under oath, in the form of a deposition. Before this trial, the attorneys representing the parties in this case questioned these deposition witnesses under oath. A court reporter was present and recorded the testimony. Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand. You should judge the credibility of and weigh the importance of deposition testimony to the best of your ability just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

The parties have stipulated, or agreed, to some facts in this case. When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

### 2.4    Direct and Circumstantial Evidence

Some of you may have heard the terms "direct evidence" and "circumstantial evidence." Direct evidence is simply evidence like the testimony of an eyewitness which, if you believe it, directly proves a fact. Circumstantial evidence is simply a chain of circumstances that indirectly proves a fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

It is your job to decide how much weight to give the direct and circumstantial evidence. As a general rule, the law makes no distinction between the weights that you should give to direct and circumstantial evidence, nor does it say that one is any better evidence than the other, but simply requires that you find the facts from all the evidence, both direct and circumstantial, and give it the weight you believe it deserves.

### 2.5    Objections to Evidence

Attorneys representing clients in courts such as this one have an obligation to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence. The essence of a fair trial is that it be conducted pursuant to the rules of evidence and that your verdict be based only on legally admissible evidence. So, you should not be influenced by the objection or by the Court's ruling on it. If the objection is sustained, then ignore the question. If the objection is overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

During the trial, I may not have let you hear the answers to some of the questions the lawyers asked. I also may have ruled that you could not see some of the exhibits the lawyers wanted you to see. And sometimes I may have ordered you to disregard things that you saw or heard. You must completely ignore all of these things as I have instructed you to disregard or ignore. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom. This happened because often during a trial, something comes up that does not involve the jury. You should not speculate on what was said during such discussions that took place outside of your presence.

### 2.6    Demonstrative Evidence

Certain exhibits shown to you are illustrations of the evidence, but are not themselves evidence. We call these types of exhibits "demonstrative exhibits." Demonstrative exhibits are a party's description, picture, or model to describe something involved in this trial. If your recollection of the evidence differs from the demonstrative exhibit, rely on your recollection.

### 2.7    Expert Witnesses

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field, he or she is called an expert witness, and is permitted to state his or her opinion on technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether the witness's

testimony is believable or not, whether it is supported by the evidence, and whether to rely upon it.

### 3. Contentions of the Parties

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

Plaintiff Lone Star Technological, Innovations, LLC ("Lone Star" or "Plaintiff"), seeks money damages from Defendant  ASUSTek Computer Inc. ("ASUS" or "Defendant") for allegedly infringing certain claims of U.S. Patent No. 6,724,435 (referred to as the "'435 Patent").  Plaintiff contends that certain ASUS monitors, displays and projectors infringe claims 1-3, 5-6 and 13-15 of the '435 Patent. The '435 Patent is also referred to as the "patent-in-suit" and claims 1-3, 5-6 and 13-15 are referred to as the "asserted claims."

Lone Star contends that ASUS directly infringed the asserted claims of the '435 Patent by making, using, selling, offering for sale, or importing certain monitors, displays and projectors in the United States.  Lone Star further contends that ASUS has induced infringement of the asserted claims of the patent-in-suit by others, such as its customers, and contributed to the infringement of the asserted claims of the patent-in-suit by its customers.

ASUS denies that it has infringed the asserted claims of the patent-in-suit either directly or by induced or contributory infringement. ASUS further denies that the Lone Star is entitled to any damages. ASUS also contends the asserted claims are invalid because they are anticipated or rendered obvious by the prior art. ASUS contends that at the time of the alleged invention, prior art existed that disclosed every element of the asserted claims and made them obvious to a person of ordinary skill in the art.

ASUS further contends that the claims of the '435 Patent are invalid in view of a doctrine referred to as obviousness-type double patenting. ASUS contends that claims 1-3, 5-6 and 13-15 of the '435 Patent are invalid because they are an obvious variation of the claims and/or not otherwise patentably distinct from another, earlier expiring patent having a common inventor.

[**ASUS proposes the following instructions for defenses that are subject to Lone Star's pending Motion to Strike**: ASUS further contends that claims 1-3, 5-6 and 13-15 of the '435 Patent are invalid as they are indefinite. This means that a person of ordinary skill in the art would not understand the scope of these claims with reasonable certainty, when the claim is read in light of the rest of the patent specification and the prosecution history.

ASUS further contends that claims 1-3, 5-6 and 13-15 of the '435 Patent are invalid as these claims recite an inoperative method of operation and therefore fail to meet the requirement that patent claims must be useful to be valid. ASUS contends that because claims 1-3, 5-6 and 13-15 of the '435 patent recite no steps to accomplish the intended result set forth in these claims, the claims fail to meet the requirement that a claim must be useful and are therefore invalid. ]

ASUS further contends that claims 1-3, 5-6 and 13-15 of the '435 patent are invalid as they are not enabled. A claim is invalid for lack of enablement if the specification does not provide a sufficient description of the manner and process of making and using the invention that would allow one of ordinary skill in the art to make and use the claimed invention without undue experimentation.[1]

---

[1] The parties' respective positions regarding this defense are set forth in Section 7.7 below.

Your job is to decide whether ASUS has infringed the asserted claims of the patent-in-suit, and whether the asserted claims of the patent-in-suit are invalid. Infringement and invalidity are separate and distinct questions and should be considered and answered separately. If you decide that any asserted claim has been infringed and is not invalid, you will then need to decide the amount of money damages to be awarded to Lone Star to compensate it for the infringement, if any.

### 4.    Burdens of Proof

Facts must be proved by a required standard of evidence known as the burden of proof. You've heard about it, I'm sure, from television in criminal cases. There's a reference to proof beyond a reasonable doubt. That does not apply in a civil case like this. In a patent case like this one there are two other burdens of proof that will apply:  (1) the preponderance of the evidence standard; and (2) the clear and convincing evidence standard.

The Plaintiff, Lone Star, must prove its claims of patent infringement and damages by a preponderance of the evidence.

When a party has the burden of proof by a preponderance of the evidence, it means that you must be persuaded that what the party seeks to prove is more probably true than not true.

If you put the evidence for and against the party who must prove the fact on opposite sides of the scale, the preponderance of the evidence requires that the scale tip somewhat toward the party who has the burden of proof.

ASUS has the burden of proving invalidity by clear and convincing evidence. That means evidence that produces in your mind a firm conviction or belief as to the matter at issue.

Although proof to a certainty is not required, the clear and convincing standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.

If the proof establishes in your mind a firm belief or conviction, then the clear and convincing evidence standard has been met.

### 4.1     No Inference from Filing Suit

The fact that the plaintiff brought a lawsuit in this Court seeking damages creates no inference that the plaintiff is entitled to a judgment or damages. The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

## 5.     Patent Claims

### 5.1     Role of Patent Claims

Before you can decide many of the issues in this case, you'll need to understand the role of the patent "claims."

Patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims themselves that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends upon what each of its claims cover.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid.  The law says that it's my role to define the terms of the claims, and it's your role to apply these definitions to the issues that you are asked to decide in this case.

Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms at issue in this case and I have provided you those definitions in

**Appendix A.** You must accept the definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including infringement and validity. The claim language I have not interpreted for you is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

### 5.2    What a Claim Covers

I will now explain how a patent claim defines what it covers. A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or system satisfies each of these requirements, then it is covered by the claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." There can be several claims in a patent.  Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations."

When a thing, such as a device, product, or system, meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a feature, product, or system where each of the claim elements or limitations is present in thatdevice, product, or system—a claim covers such a product or system even if the product or system has additional features or components that are not covered by the claim. Conversely, if the device, product, or system meets only some, but not all, of the claim elements or limitations, then that device, product, or system is not covered by the claim.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product must meet in order to be covered by

that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

### 5.3    Claim Interpretation

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims.

As you may recall, certain claim terms have already been interpreted or defined by the Court.  These definitions are also called claim constructions. The Court's definitions are set forth in the claim construction chart provided in your notebooks.

As I have previously instructed you, you must accept my definition of these words in the claims as correct. You must disregard any argument or evidence presented by either party suggesting that the terms in the claim construction chart mean anything other than the definitions provided in the chart.

For any words in the claim for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and validity.  These issues are yours to decide.

You will also find another copy of my definitions as **Appendix A** to this charge. I will now turn to **Appendix A** and read the claim terms and the Court's constructions.  You can follow along from your juror notebook if you would like.

### 5.4    Independent Claims and Dependent Claims

This case involves two types of patent claims: independent claims and dependent claims. An "independent claim" sets forth all of the requirements that must be met in order to

11

be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers.  In this case, claim 1 of the '435 Patent is the independent claim.

Other claims in the case are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this case, for example, claim 3 of the '435 Patent depends from claim 1. In this way the claim "depends" on another claim. The dependent claim incorporates all of the requirements of the claims to which it refers. Claim 3, for example, includes all of the requirements of claim 1 and additionally includes the additional requirements set forth in claim 3.  The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers. A feature or product that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim.

### 6.    Infringement

I will now instruct you how to decide whether or not ASUS has infringed the patent-in-suit.  Infringement occurs when a person, without the patent owner's permission, makes, uses, offers to sell, or sells the patented invention anywhere in the United States or imports the patented invention into the United States while the patent is in force.  Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In order to prove infringement, Lone Star must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, *i.e.*, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

In this case, there are two possible ways that a claim may be infringed. The two types of infringement are called: (1) active inducement and (2) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.

ASUS is accused here of active inducement and contributory infringement.  For ASUS to be liable, its customers must be direct infringers – either literally or under the doctrine of equivalents.  To prove indirect infringement, Lone Star must also prove that ASUS's indirect infringement caused direct infringement within the United States.   Lone Star has alleged that ASUS's customers or end-users directly infringe the patent-in-suit in the United States, and that ASUS is liable for actively inducing or contributing to that direct infringement by its customers or end-users in the United States.

For ASUS to be liable for indirect infringement, you must first find that Lone Star has proven direct infringement – either literally of under the doctrine of equivalents. Let me start, then, by explaining direct infringement in more detail and then indirect infringement.

### 6.1    Direct Infringement – Literal Infringement

As I mentioned, a finding of indirect infringement requires a showing that someone has directly infringed one of the asserted claims within the United States. Lone Star asserts that ASUS's customers directly infringe the asserted claims by using the ASUS products in an infringing manner within the United States.  However, a plaintiff is not required to present direct evidence that any individual third-party direct infringer was actually persuaded to infringe, but may instead present circumstantial evidence of inducement directed to an entire class of direct infringers, *e.g.* customers, end users. [2]   You must consider the question of direct

---

[2] Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharmaceuticals,* Case No. 1:14-cv-00878-LPS-CJB, Dkt.

infringement for its customers in determining whether or not ASUS indirectly infringes any Asserted Claim.  You cannot find that ASUS indirectly infringes a claim of the patent-in-suit if you do not first find that at least one of its customers directly infringes that claim by how the device operates.

To show direct infringement of a claim, Lone Star must prove by a preponderance of the evidence that ASUS's accused products practices every step in that claim.  You must compare the accused product with each and every one of the requirements of a claim to determine whether all of the requirements are met.  A claim requirement or step is present if it exists in the accused product or method just as it is described in the claim language, either as I have explained that language to you, or, if I did not explain it, as it would be understood by one of ordinary skill in the art.

Whether ASUS's customers knew that its product or method infringed does not matter for your consideration of direct infringement. The customer may directly infringe a patent even if it believed in good faith that what it was doing was not an infringement of any patent, and even if it did not know about the patent.

If you find that the accused product or system includes each element of the claim, then that product or system infringes the claim, even if such product or system contains additional features or components that are not recited in the claims.

### 6.2      Direct Infringement – Doctrine of Equivalents

If a company makes, uses, sells, offers to sell within, or imports into the United States a product that does not meet all of the requirements of a claim and thus does not literally infringe that claim, there can still be direct infringement if that product satisfies that claim "under the

---

440, (D. Del. June 19, 2017).

14

doctrine of equivalents."

Under the doctrine of equivalents, a product infringes a claim if the accused product contains elements corresponding to each and every requirement of the claim that is equivalent to, even though not literally met by, the accused product. You may find that an element is equivalent to a requirement of a claim that is not met literally if a person having ordinary skill in the field of technology of the patent would have considered the differences between them to be "insubstantial" or would have found that the structure: (1) performs substantially the same function and (2) works in substantially the same way (3) to achieve substantially the same result as the requirement of the claim.  In order to prove infringement by "equivalents," Lone Star must prove the equivalency of the structure to a claim element by a preponderance of the evidence.

### 6.3     Indirect Infringement -- Active Inducement

Lone Star alleges that ASUS is liable for infringement by actively inducing its customers to directly infringe the '435 Patent within the United States. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

To prove active inducement, Lone Star must establish that it is more likely than not that:

1.      the acts are actually carried out by another, such as ASUS's customers, and that the other directly infringes that claim within the United States;

2.      ASUS took action during the time the patent was in force intending to cause the infringing acts by another; and

3.      ASUS was aware of the patent-in-suit and knew that the acts, if taken, would constitute infringement of that patent or ASUS believed that there was a high

probability that the actions taken by others infringed the patent-in-suit and took deliberate steps to avoid learning of that infringement. [3]

Although Lone Star need not prove that ASUS has directly infringed to prove indirect infringement, Lone Star must prove that someone directly infringed. If there is no direct infringement by anyone within the United States, ASUS cannot have actively induced infringement of the patent.

If you find that ASUS was aware of the patent-in-suit, but believed that the acts it encouraged did not infringe that patent, ASUS cannot be liable for inducement. In order to establish inducement of infringement, it is not sufficient that another directly infringes the claims. Nor is it sufficient that ASUS was aware ofthe act(s) by another that allegedly constitute the direct infringement. Rather, in order to find inducement of infringement, you must find that ASUS specifically intended another to infringe the patent-in-suit. The mere fact, if true, that ASUS knew or should have known that there was a substantial risk that another's acts would infringe the patent-in-suit would not be sufficient for active inducement of infringement.

Like all other disputed issues in this case, this final element of induced infringement can be proven by circumstantial evidence. Lone Star is not required to present hard proof of any direct infringer.  Lone Star must prove that ASUS's actions led customers to directly infringe a claim of the patent-in-suit within the United States, but Lone Star may do so with circumstantial— as opposed to— direct evidence. [4]

### 6.4    Indirect Infringement -- Contributory Infringement

---

[3] Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharmaceuticals,* Case No. 1:14-cv-00878-LPS-CJB, Dkt. 440, (D. Del. June 19, 2017).
[4] *GlaxoSmithKline LLC v. Teva Pharmaceuticals*, 976 F.3d 1347, 1350 (Fed.Cir. 2020); Final Jury Instructions, *GlaxoSmithKline LLC v. Teva Pharmaceuticals,* Case No. 1:14-cv-00878-LPS-CJB, Dkt. 440, (D. Del. June 19, 2017).

Lone Star argues that ASUS is liable for contributory infringement by contributing to the direct infringement of the patent-in-suit by its customers. As with direct infringement, you must determine contributory infringement on a claim-by- claim basis.

To establish contributory infringement, Lone Star must prove that it is more likely than not that ASUS had knowledge of both the patent-in-suit and direct infringement of that patent-in-suit.  Lone Star must prove that each of the following is more likely than not:[5]

1. someone other than ASUS has directly infringed a claim of the patent-in-suit;

2. ASUS sold, offered for sale, or imported within the United States a component of the infringing product or an apparatus for use in the infringing method;

3. the component or apparatus has no substantial, non-infringing use;

4. the component or apparatus constitutes a material part of the invention; and

5. ASUS knew that the component was especially made or adapted for use in an infringing method.

ASUS's knowledge that the component was especially made or adapted for use in an infringing product may be shown with evidence of willful blindness where ASUS consciously ignored the existence of both the patent and direct infringement of that patent. To find willful blindness (1) ASUS must have subjectively believed that there was a high probability that a patent existed covering the accused method, and (2) ASUS must have taken deliberate actions to avoid learning of the patent.

---

[5] AIPLA's Model Patent Jury Instructions (2018).

Alleged non-infringing uses that are unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental are not substantial.

**7.    Invalidity**

I will now instruct you on the rules you must follow in deciding whether or not ASUS has proven that claim 1-3, 5-6 and 13-15 of the '435 Patent are invalid.  Before discussing the specific rules, I want to remind you about the standard of proof that applies to this defense. To prove invalidity of any patent claim, ASUS must persuade you by clear and convincing evidence that the claim is invalid.[6]

Patent invalidity is a defense to patent infringement. For a patent to be valid, the invention claimed must be new, useful, and not obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made.

That which precedes the priority date of the patent invalidates, and that which comes after infringes. Claims are given the same meaning for purposes of both validity and infringement.

An issued patent is accorded a presumption of validity based on the presumption that the Patent Office acted correctly in issuing a patent. Each claim of a patent is presumed valid independently of the validity of the other claims.

The presumption of validity remains intact. In other words, the burden never shifts to Lone Star to prove that its patent is valid.

Even though the Patent Office has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.

---

[6] *N.D. Cal. Model Patent Jury Instructions, Rev. Aug. 2017 (updated Oct. 2019)*

18

The presumption of validity is not an additional hurdle to be cleared for finding invalidity. By applying the clear and convincing standard, you are already accounting for the presumption of validity.

### 7.1    Prior Art

That which came before a patent is generally referred to as the "prior art." Prior art may include items that were publicly known such as patents and printed publications as well as products that have been used or offered for sale in this country that disclose the claimed invention or elements of the claimed invention.  To be prior art, the item or reference must have been made, known, used, published, or patentedbefore the priority date of the patent.

### 7.2    Priority Date and Effective U.S. Filing Date

The parties agree that the priority date for the patent-in-suit is August 6, 2001, and the effective U.S. filing date of the application of the patent is August 6, 2001.

### 7.3    Anticipation[7]

For a claim to be invalid because it is anticipated, ASUS must show by clear and convincing evidence that all of its requirements must have existed in a single device or method that predates the claimed invention, or must have been described in a single previous publication or patent that predates the claimed invention. In patent law, these previous devices, methods, publications or patents are called "prior art references."

**[ASUS would like to include the following paragraph.  Lone Star disagrees.  The Parties respectfully seek the Court's guidance on this issue:** The description in the written reference does not have to be in the same words as the claim, but all of the requirements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in

---

[7] *N.D. Cal. Model Patent Jury Instructions Rev. Aug. 2017 (updated Oct. 2019).*

the field of image and video processing looking at that one reference would be able to make and use the claimed invention. ]

To anticipate the invention, the prior art reference or system must disclose all of the requirements of the claim, either expressly or implicitly to a person having ordinary skill in the art in the technology of the invention, so that looking at that one prior art reference or system, the person could make and use the claimed invention. Anticipation must be determined on a claim-by-claim basis.

In determining whether a single item of prior art anticipates a patent claim, you may consider not only what is expressly disclosed in that item of prior art but also what is inherently present or disclosed in it or inherently results from its use. Prior art inherently anticipates a patent claim if the missing requirement or feature would necessarily be present in the prior art.

In order for someone to be entitled to a patent, the invention must actually be "new." In general, inventions are new when the claimed invention has not been used in this country, or the claimed invention was already patented or described in a printed publication anywhere in the world before the priority date of the patent.

Here is a list of ways that ASUS can show that a patent claim is anticipated:

1. if the claimed invention was already publicly known or publicly used by others in the United States before August 6, 2001;.

2. if the claimed invention was already patented or described in a printed publication, anywhere in the world before August 6, 2001;

3. if the claimed invention was already patented or described in a printed publication, anywhere in the world by anyone else, more than a year before the effective U.S. filing date of the application for the patent.  An invention

was patented by another if the other patent describes the same invention claimed by Lone Star to a person having ordinary skill in the technology.

4.  if the claimed invention was already described in another issued U.S. patent or published U.S. patent application that was based on a patent application filed before August 6, 2001

5.  if the claimed invention was publicly used, sold, or offered for sale in the United States more than one year before the effective U.S. filing date of the application for the patent. An invention was publicly used when it was either accessible to the public or commercially exploited.

To understand how the prior art system operates, you may rely on multiple pieces of evidence that describe a same prior art system for the purpose of finding anticipation. In other words, if you find that a single prior art system existed that meets every element of the claim, then that is enough to find the claim invalid as anticipated.

### 7.4    Obviousness

ASUS also contends that the asserted claims are invalid as obvious. Even though an invention may not have been identically disclosed or described before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the relevant field of technology of the patent at the time the invention was made.

ASUS may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art in the field of the invention at the time the invention was made.  In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of

21

technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

### 7.4.1   Level of Ordinary Skill

In deciding what the level of ordinary skill in the field of invention is, you should consider all the evidence introduced at trial, including but not limited to: (1) the levels of education and experience of the inventor and other persons actively working in the field; (2) the types of problems encountered in the field; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; and (5) the sophistication of the technology.

### 7.4.2   Scope and Content of the Prior Art

In considering whether the claimed invention was obvious, you must first determine the scope and content of the prior art. The scope and content of prior art for deciding whether the invention was obvious includes at least prior art in the same field as the claimed invention, regardless of the problem addressed by the item or reference, and prior art from different fields that a person of ordinary skill would have considered when trying to solve the problem that is addressed by the invention.

### 7.4.3   Differences between the Prior Art and the Claimed Invention

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art at the time of the invention. Your analysis must determine the impact, if any, of such differences on the obviousness or non-obviousness of the claimed invention.

### 7.5    Double Patenting[8]

ASUS contends that claims 1-3, 5-6 and 13-15 of the '435 Patent are invalid under a doctrine known as "obviousness-type double patenting."  This doctrine prevents one person from obtaining more than one valid patent for either (a) the same invention or (b) an obvious modification of the same invention.  The doctrine exists to prevent an inventor from extending the life of protection of his or her invention by securing a second, later expiring patent for the same invention.  To succeed on this defense, ASUS must show by clear and convincing evidence that the claim defines an invention that is an obvious variation of, or anticipated by, an invention claimed in another patent or patents owned by Lone Star.

There are two steps involved in assessing whether this doctrine applies.  First, you should compare the claims of the earlier patent or patents with the claim of the later patent (taking into account the claim construction definitions I have provided to you) and determine whether there are any differences between them.  In making this comparison, you may compare one or more claims of earlier Lone Star patents with the later claims asserted in this case by Lone Star that ASUS contends are invalid.  Lone Star patents that were issued earlier than the asserted patent in this case, or later-issued, but earlier-expiring Lone Star patents can qualify as a double patenting reference.  If you find, by clear and convincing evidence, that there are no differences between the claims of the earlier patent or patents and the asserted claim of the later patent, then the asserted claim is invalid under the doctrine of double patenting.

---

[8] *Gilead Sciences, Inc. v. Natco Pharma Ltd*., 753 F.3d 1208, 1212-13 (Fed. Cir. 2014); *Abbvie Inc. v. Mathilda & Terence Kennedy Inst. Of Rheumatology Trust*, 764 F.3d 1366, 1373 (Fed. Cir. 2014); *Otsuka Pharm. Co. v. Sandoz, Inc*., 678 F.3d 1280, 1297-99 (Fed. Cir. 2012); *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 689 F.3d 1368, 1377 (Fed. Cir. 2012); *Georgia-Pac. Corp. v. U.S. Gypsum Co*., 195 F.3d 1322, 1327-28 (Fed. Cir. 1999); MPEP § 804 at 800-21 & Form Paragraph ¶ 8.36; *In re Longi*, 759 F.2d 887, 896 (Fed. Cir. 1995)

Second, if you find that differences exist between the claims of the earlier patent or patents and the asserted claim of the later patent, you must then determine whether any such differences render the claimed inventions patentably distinct.  To answer this second question, you should consider whether the claim or claims of the reference patent renders the claim asserted in this case obvious.  Under the doctrine of double patenting, the claims in the earlier (filed or expiring) patent or patents serve as the "prior art."  This analysis differs from general obviousness because you need not consider any "secondary considerations" of non-obviousness.  Any differences between the reference claims and the asserted claim at issue should not be considered in isolation for purposes of determining whether the claimed inventions are patentably distinct; rather the claims must be considered and compared to one another as a whole.  If you find, by clear and convincing evidence, that any differences between the claims of the earlier patent or patents and the asserted claim of the later patent would have been obvious or not patentably distinct to a person of ordinary skill in the art, then the asserted claim is invalid under the doctrine of double patenting.

[**ASUS proposes the following instructions for "Inoperability and Lack of Utility" that are subject to Lone Star's pending Motion to Strike**:

### 7.6      Inoperability and Lack of Utility

ASUS asserts that claims 1-3, 5-6 and 13-15 of the '435 Patent are invalid based on a failure to meet the utility requirement.  In order for a patent claim to be valid, it must be useful.  In other words, a patent claim is invalid if it does not work as intended.

ASUS asserts that claims 1-3, 5-6 and 13-15 of the '435 Patent are invalid and cannot meet the utility requirement because the asserted claims embody an inoperative mode of operation.  In order for ASUS to prevail on this defense, it must show by clear and convincing

evidence that the claims are susceptible to only one reasonable interpretation and that that interpretation results in an inoperative construction of the claim as a whole.

[**ASUS proposes the following instructions for "enablement".  Lone Star contends that ASUS's expert has not advanced this invalidity theory and therefore is not proper.:**

**7.7    Enablement**

ASUS asserts that claims 1-3, 5-6 and 13-15 of the '435 Patent are invalid for lack of enablement.  ASUS bears the burden of showing by clear and convincing evidence that the specification lacks enablement.  As patent must disclose sufficient information to enable or teach persons of ordinary skill in the art in the field of the invention, as of the effective filing date of the claimed invention, to make and use the full scope of the claimed invention without undue experimentation.  This requirement is known as the enablement requirement.  If a patent claim is not enabled, it is not valid.

In considering whether a patent complies with the enablement requirement, you must keep in mind that patents are written for persons of ordinary skill in the art in the field of the invention.  Thus, a patent need not expressly state information that persons of ordinary skill would be likely to know or could obtain.

The fact that some experimentation may be required for a person of ordinary skill in the art to practice the claimed invention does not mean that a patent does not meet the enablement requirement.  Factors you may consider in determining whether persons of ordinary skill in the field of the invention would require undue experimentation to make and use the full scope of the claimed invention include:

1.  The quantity of experimentation necessary and whether that experimentation involves only known or commonly used techniques.  The question of undue

25

experimentation does not necessarily make the experiments unduly extensive where the experiments are routine, such as repetition of known or commonly used techniques.  But permissible experimentation is not without bounds.

2.   The amount of direction or guidance disclosed in the patent;

3.   The presence or absence of working examples in the patent;

4.   The nature of the invention;

5.   The state of the prior art;

6.   The relative skill of those in the art;

7.   The predictability of the art; and

8.   The breadth of the claims.]


[**ASUS proposes the following instructions for "indefiniteness" that are subject to Lone Star's pending Motion to Strike**:

**7.8     Indefiniteness[9]**

One of the requirements for patent claim is that they be sufficiently definite that a skilled person reading them knows what is covered by the claims, and what is not.  Claims that are not sufficiently definite are invalid.

In this case, ASUS asserts that claims 1-3, 5-6, and 13-15 of the '435 Patent are invalid because they are "indefinite", that is, these claims do not sufficiently advise a person of ordinary skill in the art what is covered by the claims and what is not.  You must decide whether the claims are sufficiently definite that, when in lead of the patent specification and prosecution

26

history, they inform one of ordinary skill in the art about the scope of the invention with reasonable certainty in light of the subject matter.

ASUS must prove that the claims are indefinite by clear and convincing evidence.]

## 8.   Damages

If you find that ASUS has infringed any valid claim of the patent-in-suit, you must then consider what amount of damages to award to Lone Star. If you find that ASUS has not infringed any valid claim of the patent, then Lone Star is not entitled to any damages.

I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. Any damages you award must be adequate to compensate Lone Star for any infringement you find. Damages are not meant to punish an infringer or to set an example. Any damages award, if you reach this issue, should put Lone Star in approximately the same financial position that it would have been in had the infringement not occurred.

Lone Star has the burden to establish the amount of its damages by a preponderance of the evidence. Plaintiff is not required to prove its damages with mathematical precision, but must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

In this case Lone Star seeks damages in the form of a reasonable royalty. A reasonable royalty is defined as the money amount Lone Star and ASUS would have agreed upon as a fee for ASUS's use of the invention at the time ASUS sold its first accused product. The damages should be no more or no less than the value of the patented invention.

The patent law does not allow you to use the value of an entire product or service, or the value of the entire market, to determine damages unless you find that Lone Star has proven

27

by a preponderance of the evidence that the patented feature of the product drives consumer demand for the entire product or service.

### 8.1    Reasonable Royalty

If you find that Lone Star has established infringement of a valid claim, Lone Star is entitled to at least a reasonable royalty to compensate them for that infringement.

#### 8.1.1   Hypothetical Negotiation

A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed upon at the time the infringement began for a license to make, use or sell the invention. It is the royalty that would have resulted from an arm's length negotiation between a willing licensor and a willing licensee—here, Lone Star (as the licensor) and ASUS (as the licensee) at the time ASUS sold its first accused product. This is known as the "hypothetical negotiation." Unlike in a real-world negotiation, all parties to the hypothetical negotiation are presumed to believe that the patent is both infringed and valid. In considering this hypothetical negotiation, you should focus on what the expectationsof the patent owner and the infringer would have been had they entered into an agreement at that time and had they acted reasonably in their negotiations.

The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation and not simply a royalty either party would have preferred.

The date of the hypothetical negotiation between Lone Star and ASUS is the earliest date that ASUS sold in the United States one of the products that Lone Star accuses in this lawsuit of infringing the patent-in-suit.

In making your determination of the amount of a reasonable royalty, it is important that you focus on the time period when ASUS first infringed the patent-in-suit and the facts that

28

existed at that time. However, evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.

Your determination does not depend on the actual willingness of the parties to the lawsuit to engage in such negotiations. Your focus should be on what the parties' expectations would have been had they entered into negotiations for royalties on the date of the hypothetical negotiation.

### 8.1.2  Georgia-Pacific Factors

In deciding what is a reasonable royalty that would have resulted from the hypothetical negotiation, you may consider the factors that the patent owner (Lone Star  and the alleged infringer (ASUS) would consider in setting the amount the alleged infringer should pay. I will list for you a number of factors you may consider. They are as follows:

1.  The royalties received by the patentee for the licensing of the patent-in- suit, proving or tending to prove an established royalty.

2.  The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

3.  The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

4.  The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

5.  The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

7.  The duration of the patent and the term of the license.

8.  The established profitability of the product made under the patent, its commercial success, and its current popularity.

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

11. The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process,

business risks, or significant features or improvements added by the infringer.

14. The opinion and testimony of qualified experts.

15. The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention— would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

The value that the patent owner gave to purchase the patent may be relevant to the determination of a reasonable royalty.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also considerany other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. In determining a reasonable royalty, you may also consider whether or not a commercially acceptable non-infringing alternative was available to ASUS at the time of the hypothetical negotiation and whether that would have affected the reasonable royalty the parties would have agreed upon.

31

### 8.2    License Comparability

When determining a reasonable royalty, you may consider evidence concerning the amounts that other parties have paid for rights to the patent in question or for rights to similar technologies. A license agreement need not be perfectly comparable to the hypothetical license that would have been negotiated between Lone Star and ASUS in order for you to consider it. However, if you choose to rely upon evidence from any license agreements, you must account for any differences between those licenses and the hypothetically negotiated license between Lone Star and ASUS when you make your reasonable royalty determination, including the type of technology licensed, whether the license contained a cross-license and/or similar patent protections, whether the license contained any value related to a release of liability, the date when the license was entered, the financial or economic conditions of the parties at the time the parties entered into the license, the extent of use, if any, of any particular licensed patents, the number of patents involved in the license, whether or not the license covered foreign intellectual property rights, the extent to which litigation may have affected the license and whether contrary to the hypothetical negotiation the licensee in the real world license, at the time of entering the license,believed that the patents were either not infringed or were invalid.

### 8.3    Use of Settlement and License Agreements

Licenses and settlement agreements must not be considered when determining issues of infringement or invalidity. However, licenses and settlement agreements may be considered in determining damages. Thus, the fact that other companies have taken licenses from Lone Star, or have settled litigation with Lone Star, is not relevant to any issue other than damages in this case.

### 8.4    Use of Non-Infringing Alternatives

In determining a reasonable royalty, you may also consider evidence concerning the availability and cost of non-infringing alternatives to the patented invention. A non-infringing alternative must be an acceptable product that is licensed under the patent or that does not infringe the patent.

### 8.5    Apportionment for Royalty

Damages for patent infringement must be apportioned to reflect the value the invention contributes to the accused products or features and must not include value from the accused products or features that is not attributable to the patent.

### 8.6    Consider All Evidence

In considering the evidence of a reasonable royalty, you are not required to accept one specific figure or another for the reasonable royalty. You are entitled to determine what you consider to be a reasonable royalty based upon your consideration of all of the evidence presented by the parties whether that evidence is of a specific figure or a range of figures.

### 8.7    Lump Sum versus Running Royalty

A royalty may be calculated as a one-time lump sum payment or a running royalty. A one-time lump sum payment that the infringer would have paid at the time of the hypothetical negotiation for a license covers all sales of the licensed product, both past and future. This differs from payment of a running royalty because, with a running royalty, the licensee pays based on the actual licensed products it sells.  When a one-time lump sum is paid, the infringer pays a single price for a license covering both past and future infringing sales. It is up to you, based on the evidence, to decide what type of royalty, if any, is appropriate in this case for the life of the patent.

33

### 8.8 When Damages Begin

In determining the amount of damages, you should not award damages for any infringement occurring prior to six years before the lawsuit was brought.  The lawsuit was filed on February 20, 2019.  As such, you should not award damages for any infringement occurring prior to February 20, 2013.

## 9. Instructions for Deliberations

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges of the facts. Your only interest is to seek the truth from the evidence in the case. You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. Corporations and businesses are entitled to the same fair trial as a private individual. All persons, including corporations, both foreign and domestic, stand equal before the law, regardless of size or who owns them or where they are located, and they are to be treated as equals.

34

When you retire to the jury room to deliberate on your verdict, you may take this charge with you, as well as the exhibits which the Court has admitted into evidence.  You will select your foreperson and conduct your deliberations.  If you recess during your deliberations, please follow all of the instructions that the Court has given you about your conduct during the trial.

After you have reached your verdict, your foreperson is to fill in on the form your answers to the questions.  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.

Any notes that you may have taken during the trial, are only aids to your memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. Your notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time during your deliberations, please give a written message or a question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible, either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

And then finally, after you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.