FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC, | § § § | |
| | § | Civil Action No. 6:19-CV-00059-RWS |
| *Plaintiff*, | § § | |
| v. | § | LEAD CASE |
| | § § | |
| ASUSTEK COMPUTER INC., | § § | |
| *Defendant*. | § § | JURY TRIAL DEMANDED |
| | § § § § § | |

**PLAINTIFF LONE STAR TECHNOLOGICAL INNOVATIONS, LLC'S RESPONSE TO
<u>ASUSTEK COMPUTER INC.'S MOTIONS IN LIMINE</u>**

Plaintiff Lone Star Technological Innovations, LLC ("Lone Star") respectfully requests the Court deny Defendant ASUSTek Computer Inc.'s ("ASUS") Motions *in Limine* (Dkt. 179) ("Motion") for the reasons set forth herein.  Each of ASUS's points are addressed below in turn.

1. **ASUS's Motion *in Limine* No. 1: Exclude Plaintiff's Expert Alfred Ducharme from Testifying About Source Code.**

ASUS argues that Lone Star's expert, Dr. Al Ducharme, should be excluded from testifying about the source code he reviewed from third-party chip maker, MediaTek, Inc. and MediaTek USA Inc. ("MediaTek").  Before addressing ASUS's argument, a short procedural background regarding discovery of the MediaTek source code is warranted.

From the outset of this lawsuit, ASUS has represented that it does not have access to or control over the source code that resides on the display chips of the accused devices.  *See* Defendant ASUS's Opposition to Motion to Compel (Dkt. 70).  As a result, Lone Star issued letters rogatory to third-party chip manufacturer, MediaTek, (among other third parties) to obtain and inspect the source code for the accused devices.  *See* Letters Rogatory to MediaTek (Dkt. 96-2). The letters rogatory to MediaTek included a request for the production of relevant source code for the ASUS accused devices which contain MediaTek chipsets.  *See id*. at Attachment 1.

ASUS did not oppose the letters rogatory.  *See* **Exhibit A**, August 26, 2020 Email from ASUS's counsel (stating "I am glad that you are making progress with MediaTek. This is exactly what Asus had hoped would happen when we supported your letters rogatory to various third parties.").  MediaTek in turn, produced the relevant source code for inspection.

On or about September 21, 2020, Mr. Dan Burroughs, who works with Lone Star's expert, Dr. Ducharme, traveled to New York to inspect the MediaTek source code in person, because MediaTek did not allow a remote code inspection.  *See* **Exhibit B**, September 18, 2020 Email from Lone Star's counsel to MediaTek.  Following his review and pursuant to the protective order,

MediaTek then provided copies of the relevant source code directly to Dr. Ducharme's office.  *See* **Exhibit C**, October 1, 2020 Email from Lone Star's counsel to MediaTek.  ASUS also was provided copies of what Lone Star reviewed.  MediaTek also made the source code available for ASUS to inspect but ASUS did not do so.

Now for the first time in this litigation, ASUS argues that the MediaTek source code warrants exclusion.  Motion at 4.  ASUS argues that "[t]he source code is unauthenticated and experts in Ducharme's field do not rely on unauthenticated source code."  *Id*.  ASUS is incorrect on both fronts.

First, as a procedural matter and in light of ASUS's recent complaint, Lone Star has since recently obtained a business record declaration from MediaTek addressing ASUS's procedural concerns.  Attached as **Exhibit D** is the declaration from MediaTek.  Pursuant to Rules 803(6) and 902 (11) of the Federal Rules of Evidence, this business record declaration renders moot ASUS's procedural concerns as self-authenticating.[1]

Second—setting the MediaTek business records declaration aside— the third-party source code is otherwise admissible under Rule 703 of the Federal Rules of Evidence because it was examined and relied upon by Lone Star's Expert, Dr. Al Ducharme.  "An expert may base an opinion on facts or data 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject,'" and "[t]he underlying facts or data need not be admissible in evidence in order for the opinion to be admitted."  *Children's Med. Ctr. of Dallas v. Columbia Hosp. at Med. City Dallas Subsidiary, L.P.*, 3-04-CV-2436-BD, 2006 WL 616000, at

---

[1] FED. R. EVID. 902(11) provides for the authentication of domestic records as long as it is accompanied by a declaration meeting the requirements of Rule 803(6)— the business records exception—and the proponent "provides the adverse party  reasonable written notice of the intent to offer the record — and must make the record and certification available for inspection — so that the party has a fair opportunity to challenge them."  ASUS has had a copy of the MediaTek code since it was produced in this matter to both parties.

*5 (N.D. Tex. Mar. 10, 2006) (citing FED. R. EVID. 703); *see also Soden v. Freightliner Corp*., 714 F.2d 498, 502–03 & n. 4 (5th Cir.1983).  Very plainly, the source code obtained by third-party MediaTek which is contained on the chips in ASUS's accused products is not only relevant to the infringement theories in this case, but is also the type of evidence that a technical expert in a patent infringement case typically relies upon to formulate his opinions.

In his report Dr. Ducharme explains that he reviewed the MediaTek source code which performs the "adjustment of hue and saturation in ASUS's Accused Products."  *See* **Exhibit E,** Dr. Ducharme Supp. Expert Report ("Ducharme Report") at p. 12.[2]  Then he explains how the functions of the excerpted MediaTek source code infringe upon the asserted claims.  *See e.g.* Ducharme Report at ¶¶ 49, 57 & 66.  Considering and relying upon the MediaTek source code in the underlying ASUS accused products is certainly the type of material that Dr. Ducharme— an expert with "nearly 30 years or professional experience in the relevant field of [] display technology"—would customarily consider.  *See id.* at p. 11.

It is axiomatic that under FED. R. EVID. 703, "[e]xperts are entitled to rely upon information that would not otherwise be admissible," like source code.  *See CXT Sys., Inc. v. Acad., Ltd.*, 2:18-CV-00171-RWS-RSP, 2020 WL 435492, at *4 (E.D. Tex. Jan. 28, 2020) (citing Federal Rule of Evidence 703).  "If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." *Id.* (allowing the expert testimony and noting that movant had failed to show "that other experts in the particular field would *not* reasonably rely upon such evidence.").  Thus, ASUS argument against Dr. Ducharme's reliance on the MediaTek source code has no merit.  *See Genband US LLC v. Metaswitch Networks Corp.*, 2:14-CV-33-JRG-RSP, 2016 WL 3475688, at

---

[2] Lone Star refers the Court to its **Exhibit E**, Ducharme's Report, because ASUS did not include all relevant pages to same.

*4 (E.D. Tex. Jan. 7, 2016) (denying a challenge to strike an expert report because the expert identified the code he reviewed and provided an analysis of same.).

ASUS also claims that "there is no hearsay exception that applies to source code."  Motion at 5.  Not only is this proposition incorrect, but the *opposite* is true: "Experts may rely on hearsay evidence in forming their opinions."  *First Nat. Bank of Louisville v. Lustig*, 96 F.3d 1554, 1576 (5th Cir. 1996).  Again, ASUS is incorrect and the MediaTek source code should not be excluded for improper admissibility or hearsay.

ASUS citation to *Wi-Lan v. Sharp Elecs. Corp*, is inapposite.  *See* 2021 Westlaw 1257074, __F.3d__ (Fed. Cir. 2021).  As an initial matter, *Wi-Lan* is not binding on this Court.  The Federal Circuit holds that "[w]hether proffered evidence is admissible at trial is a procedural issue not unique to patent law, and we therefore review the district court's decision to admit expert testimony under the law of the regional circuit, here the Fifth Circuit."  *See Summit 6, LLC v. Samsung Elecs. Co., Ltd.*, 802 F.3d 1283, 1294 (Fed. Cir. 2015) (noting that "the Fifth Circuit reviews the admissibility of expert testimony for abuse of discretion.").

In *Wi-Lan*, the Federal Circuit reviewed the Delaware district court's decision granting summary judgment of non-infringement based upon inadmissible third-party evidence.  *Wi-Lan*, 2021 Westlaw 1257074 at *2.  In that instance, the court found that the third-party source code was improperly authenticated as a business record under Rule 803(6).  *Id*. at *3.  The plaintiff also argued in the alternative, that the source code was admissible under Rule 703.  In addressing the latter argument under Rule 703, the court noted that "Wi-LAN's expert did not attempt to authenticate the source code printout."  *Id.* at *5.  In other words, it appears that the expert did not really consider the source code, but rather was merely serving as a conduit for admissibility.  Citing Second Circuit case law, the court reasoned that "a party cannot call an expert simply as a conduit

for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Id.* at *6 (citing *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119 (2d Cir. 2013). The court also cited Second Circuit authority criticizing an expert for not analyzing "his source materials so much as repeat their contents." *Id.* (citing *U.S. v. Mejia*, 545 F.3d 179 (2d Cir. 2008)). That is not the case here.

In this matter Mr. Dan Burroughs, who works with Dr. Ducharme, reviewed the code base without objection from ASUS.  Once that live code review was completed, MediaTek sent the earmarked code excerpts to Dr. Ducharme who then reviewed, analyzed, and incorporated its contents in his report on a claim-by-claim basis.  This is exactly the type of situation of which Rule 703 applies and thus Dr. Ducharme should not be precluded from discussing his findings.

Finally, and worth note, ASUS neither resisted the third-party MediaTek discovery nor elected to even depose Dr. Ducharme.  Moreover, ASUS never challenged Dr. Ducharme or his opinions in a motion to strike or *Daubert* motion.  Nor, did ASUS even move for summary judgement on non-infringement.[3]  Rather, ASUS elected to "lay behind the log" and attempt to masquerade a *Daubert* challenge through its Motions *in limine*.  "*Daubert* motions, although disguised as motions in limine, are not timely." *See Kern v. Hershberger*, 4:09-CV-264, 2010 WL 11531096, at *2 (E.D. Tex. Sept. 3, 2010).  ASUS's Motion should be denied in its entirety.

2. **ASUS's Motion *in Limine* No. 2: Exclude Lone Star's Counsel from Making any Representations and Ducharme from Offering any Testimony that the MediaTek Source Code Produced by MediaTek is the Same or Similar for every MediaTek Scalar Chip.**

In the course of his review and analysis, Lone Star's expert, Dr. Ducharme, stated in his expert report that the MediaTek source code he reviewed was the same or substantially similar

---

[3] Under the Court's Docket Control Order, the deadline for expert challenges and dispositive motions was in March 31, 2021.  *See* Second Amend. DCO (Dkt. 140).

across all chip sets disclosed by MediaTek.  *See* Ducharme Report at p. 12.  And, as previously mentioned, Dr. Ducharme then proceeds to explain—on a claim-by-claim basis—how the MediaTek source code specifically infringes on the asserted claims.  *See e.g.* Ducharme Report at ¶¶ 49, 57 & 66.

In contrast, ASUS's expert did *not* review the MediaTek source code.  Nor, did ASUS depose Dr. Ducharme or move to strike his report concerning the scope of his opinions.  Rather, ASUS now seeks to exclude the parts of Dr. Ducharme's testimony and opinions that it simply does not agree with it.

It is true that expert testimony is restricted to the scope of what was provided in an expert's report.  *See e.g. Advanced Tech. Incubator, Inc. v. Sharp Corp.*, 5:09-CV-135, 2010 WL 11451797, at *10 (E.D. Tex. Mar. 31, 2010) (granting a motion *in limine* to the extent that expert testimony exceeds the scope of a report).  But, Dr. Ducharme's testimony regarding the similarities in the MediaTek code *are* within the scope of his report and for that reason proper.  Notably, *Advanced Tech. Incubator*—which ASUS cites in its Motion—also states that "[i]ssues of the propriety of expert testimony are more appropriately addresse[d] by motions to strike expert testimony rather than motions *in limine.*"  For that reason, ASUS's Motion *in limine* on this point warrants denial.

### 3. ASUS's Motion *in Limine* No. 3: Exclude Ducharme from Offering Any Testimony that the Functionalities of the PA328Q and VG248QE are Representative of All Accused ASUS Products.

ASUS asserts that Dr. Ducharme's expert opinion should be limited to two ASUS products—the PA327Q and VG248QE monitors—because ASUS's contends that he only disclosed his analysis solely to these two products.  ASUS is incorrect.  Dr. Ducharme analyzed a host of technical material to support his opinions across all accused products, in addition to testing

two actual exemplar ASUS accused products.  Thus, his testimony and opinions should not be limited to two accused products.

In his expert report, Dr. Ducharme explains that "[i]n [his] analysis, [he] conducted a careful review and considered the operations and capabilities of [all] Accused Devices and ASUS's materials along with the other materials listed in in [his] report, to reach [his] conclusions contained in this report."  Ducharme Report at p. 11.  Those Materials explicitly include but are not limited to, ASUS's product manuals and supporting technical documentation, ASUS discovery responses, a "tear down" report of an ASUS accused device, MediaTek source code and other relevant materials.  *Id*. at p. 8.  In addition, Dr. Ducharme performed a test of two ASUS products, the PA327Q and VG248QE monitors.  *See id*. at p. 11-12.  And, because Dr. Ducharme asserted that all of the accused products operate in the same infringing manner, he specifically used the products he tested as an example in explaining his infringement theories throughout his report.  *See id*. at p. 12 (noting that ""[f]or purposes of brevity, [his] explanation [] concerns an exemplary product, ASUS PA328Q.").  Thus, ASUS contention that Dr. Ducharme only analyzed two products is false.

In the instance where an expert "conducted extensive hands-on research involving the accused products, evaluated the product guide[s]," and familiarized himself with other technical documents, the expert's opinion as to all accused products is proper and "[n]othing more is required."  *PerdiemCo, LLC. v. Industrack LLC*, 2:15-CV-00727-JRG-RSP, 2016 WL 8135383, at *3–4 (E.D. Tex. Oct. 25, 2016).  Any objections that ASUS may have with Dr. Ducharme's infringement theories can be "adequately addressed by cross examination at trial."  *Id*.

In *Netgear*, a defendant moved to exclude the opinions of plaintiff's expert because "he did not review the entirety of the source code" and "did not [actually] test any accused infringing

products." *Netgear, Inc. v. Ruckus Wireless, Inc.*, 5 F. Supp. 3d 592, 625 (D. Del. 2013).  The

district court denied the motion to exclude for both reasons and noted that an expert is not required

to even perform testing.  *Id*.  Infringement can be established through direct *or circumstantial*

evidence." *Id*. (emphasis added) (noting that the "[d]efendant's concerns go to the weight of the

testimony and may properly be addressed on cross-examination.").

4.  **ASUS's Motion *in Limine*:  Exclude Lone Star from Making any Representations or Offering any Testimony that the Validity of the '435 Patent has never been Challenged in any Proceeding before the United States Patent and Trademark Office.**

ASUS requests that Lone Star be prohibited from mentioning that the '435 Patent has

"never been challenged in any proceeding before the Patent Office."  Motion at 9.  Indeed, this

fact is true: the '435 Patent has neither been challenged by any third party, nor ASUS.  ASUS

elected not to file an *IPR*, when it could have.  In attempting to argue this point, ASUS advances

no authority for its basis to preclude discussing the procedural history of the '435 Patent at trial.

(ASUS citation to *Mobile Telecomms, LLC v. ZTE (USA) Inc*. is inapposite because it discusses

preclusion as to introducing the substance of a parallel proceeding.)  Nor, does ASUS articulate

how it would be prejudiced if such testimony was elicited at trial.  For that reason alone, ASUS's

argument fails.

5.  **ASUS's Motion *in Limine* No. 5: Exclude Lone Star's Damages Expert Glenn Perdue and Ducharme from Offering any Testimony Suggesting ASUS has Directly Infringed any Asserted Method Claim Because an Accused Product was sold within the United States Without Showing Use.**

ASUS seeks to preclude plaintiff's experts from offering any testimony "that would

suggest that the mere sale of an Accused Product within the United States constitutes infringement

and thus entitles Lone Star to damages for that Accused Product."  Motion at 10.  Moreover, ASUS

argues that "direct infringement of a method claim requires a showing that ever [sic] step of the

claimed method has been practiced."  *Id*.  However, ASUS has misstated both the experts'

opinions, as well as the law.  Each is explained below.

With regard to the former, ASUS suggests that plaintiff's experts merely pointed to the

device sales of the accused products in the United States and then "assumed" infringement.  That

is far from the case.  First, Dr. Ducharme explains in his expert report, how ASUS instructs its

customers—through detailed user manuals—to allow enable individual color control changes (*i.e.*

patented technology).  Ducharme Report at ¶ 50.  What ASUS does not address (or include in its

exhibit of Dr. Ducharme's report) are the detailed steps of *exactly* how a user is instructed to

implement the color changing technology via the on-screen displays ("OSD") with the accused

devices.  *Id*. at 21-22.  In this regard, Dr. Ducharme's infringement opinions are supported by

proper and sufficient facts and data in that they explicitly describe how customers are instructed

to use the accused products in an infringing matter.

As this Court held in *Genband:*

> The evidence Dr. Beckmann relies upon <u>in his report is proper
> circumstantial evidence of infringement and his opinions are therefore
> supported by "sufficient facts or data.</u>" Fed. R. Evid. 702. <u>For example, Dr.
> Beckmann cites to manuals that he concludes instruct Metaswitch's
> customers to use the accused products in an infringing manner.</u> *See, e.g.*,
> (Dkt. No. 283 at 14–15)….<u>Technical documents and depositions are
> appropriate "facts or data" upon which an expert may rely, and the cited
> evidence is proper circumstantial evidence that can support an inference that
> customers practice the method claims.</u>

*Genband US LLC v. Metaswitch Networks Corp*., 2:14-CV-33-JRG-RSP, 2016 WL 3475688, at

*4 (E.D. Tex. Jan. 7, 2016).  Dr. Ducharme, like the expert in *Genband*, relies upon technical

documents and other materials to support the opinion that ASUS customers practice the method

claims.

With regard to the law, ASUS is also incorrect.  While it is true that direct infringement of

a method claim requires a showing that every step of the claimed method has been practiced, it is

not true that a plaintiff must do so solely with direct evidence, as ASUS suggests.  "Direct infringement can be proven by *circumstantial* evidence." *Toshiba Corp. v. Imation Corp*., 681 F.3d 1358, 1364 (Fed. Cir. 2012).  Specifically, this Court has held that an expert "is not required to rely on direct evidence and may opine that the method claims are directly infringed even if the evidence does not reveal the identity of a specific direct infringer."  *See Genband*, 2016 WL 3475688, at *4.  Because Dr. Ducharme has provided evidence of how ASUS instructs its customers to operate the devices in an infringing manner, as well as how the devices infringe, both of Lone Star's experts should not be prohibited from testifying about the number of accused devices sold in the United States.

6. **ASUS's Motion *in Limine* No. 6: To Exclude Perdue and Ducharme from Offering any Testimony Suggesting that ASUS's Accused Products are Calibrated or Tested in the United States.**

Here, ASUS does not dispute that the accused products are "factory-calibrated."  Motion at 11.  According to Patent Rule 3-4(a) and the Court's Discovery Order (Dkt. 39), ASUS had a duty to produce documents and information relevant to the accused products, which necessarily includes where the accused products are tested.  ASUS sells the accused products in the United States.  However, ASUS has not offered any evidence that the accused devices are not tested and calibrated in the United States.  To that end, Lone Star should not be precluded from testifying or eliciting testimony about same.

7. **ASUS's Motion *in Limine* No. 7: To Exclude Ducharme and Perdue from offering any Testimony or Evidence that Suggests End Users Will use the Accused Color Control Functionality found In the Accused Products at Least Once**

ASUS seeks to preclude Lone Star's expert opinions that a consumer will implement the patented technology in the accused products.  ASUS suggests that, for example, Dr. Ducharme has neither sufficiently "disclose[d] the basis for his opinion nor any evidence that would support it."

Motion at 12.  However, ASUS again fails to provide the Court with the whole context of this opinion.

As Dr. Ducharme explains in his report, "color calibration is recommended at between 200-300 hours of use or at least 2-6 weeks to ensure color accuracy in displays."  Ducharme Report at ¶ 82.  In describing this opinion, Dr. Ducharme cites to articles which discuss monitor calibration and the frequency and demand of same.  *Id*. at n. 19 & 20.[4]  In this regard Dr. Ducharme's opinions are sound as he "is not required to rely on direct evidence and may opine that the method claims are directly infringed even if the evidence does not reveal the identity of a specific direct infringer."  *See Genband*, 2016 WL 3475688, at *4.

8.  **Motion *in Limine* No. 8: To Exclude Lone Star from Offering any Testimony that Would Suggest that the Existence of License Agreements involving the '435 patent Means that the Technology Disclosed by the Asserted Claims is Actually Being Used.**

By ASUS's own admission, both parties will likely rely upon license agreements involving the '435 Patent.  In doing so, Lone Star should not be precluded from eliciting testimony or advancing evidence that other display manufacturers who were accused of selling similar infringing devices as ASUS entered into a license agreement for the '435 Patent.  *See Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1334 (Fed. Cir. 2009) (discussing "real-world licensing negotiations" and "royalty amounts" that are not tied strictly to usage and paid out "regardless of whether the invention is used frequently or infrequently by the consumer").  ASUS is free to qualify those license agreements in a manner that it chooses (as long as it is in accordance with the Federal Rules of Evidence).

Moreover, ASUS provides no authority to support its argument.  Further, ASUS provides no reason of how it will be prejudiced.  The bottom line is that since both parties are using the

---

[4] In his expert report, Dr. Ducharme references two articles to support his contention:  1) Ezio, Color Mgmt. Resources, Monitor Calibration and 2) Fstoppers, The Ultimate Screen Calibration Guide (not attached).

licenses, both parties should be allowed to make arguments regarding their importance or relevance to the calculation of damages.

Dated: April 29, 2021                              Respectfully submitted,


                                                  */s/ John D. Saba*
                                                  Bradley D. Liddle
                                                  Texas State Bar Number 24074599
                                                  bliddle@carterarnett.com
                                                  Dorothy Abzanka Culham
                                                  Texas State Bar Number 05207550
                                                  dculham@carterarnett.com
                                                  **CARTER ARNETT, PLLC**
                                                  8150 N. Central Expressway, Suite 500
                                                  Dallas, Texas 75206
                                                  Telephone: (214) 550-8188
                                                  Facsimile: (214) 550-8185

                                                  John D. Saba, Jr.
                                                  Texas State Bar Number 24037415
                                                  **WITTLIFF CUTTER PLLC**
                                                  1209 Nueces St.
                                                  Austin, Texas 78701
                                                  Telephone: (512) 960-4865
                                                  Facsimile: (512) 960-4689
                                                  john@witliffcutter.com

                                                  John Lee (admitted to E.D. Texas)
                                                  **BANIE & ISHIMOTO LLP**
                                                  2100 Geng Road, Suite 210
                                                  Palo Alto, CA 94303
                                                  Telephone: (650) 241-2771
                                                  Facsimile: (650)-241-2770

                                                  *Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing document has been served on all counsel of record through the Court's electronic filing system on April 29, 2021.

*/s/ John D. Saba*
John D. Saba, Jr.