```
 1            IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF TEXAS
 2                    TYLER DIVISION

 3  LONE STAR TECHNOLOGICAL        )(
    INNOVATIONS, LLC,              )(
 4       PLAINTIFF,                )(    CIVIL ACTION NO.
                                   )(    6:19-CV-59-RWS
 5                                 )(
    VS.                            )(
 6                                 )(
                                   )(    TYLER, TEXAS
 7                                 )(
    ASUSTEK COMPUTER, INC.,        )(    MAY 21, 2021
 8       DEFENDANT.                )(    8:56 A.M.

 9                  TRANSCRIPT OF JURY TRIAL

10        BEFORE THE HONORABLE ROBERT W. SCHROEDER, III

11                UNITED STATES DISTRICT JUDGE

12
    FOR THE PLAINTIFF:       Mr. Joshua J. Bennett
13                           Mr. Bradley D. Liddle
                             Ms. Monica Litle
14                           CARTER ARNETT, PLLC
                             8150 N. Central Expressway
15                           5th Floor
                             Dallas, Texas 75206
16
                             Mr. John D. Saba, Jr.
17                           WITTLIFF & CUTTER, PLLC
                             1209 Nueces Street
18                           Austin, Texas 78701

19                           Mr. John Lee
                             BANIE & ISHIMOTO, LLP
20                           2100 Geng Road
                             Suite 210
21                           Palo Alto, California 94303

22  COURT REPORTER:          Ms. Kate McAlpine, RPR, CSR, CCR
                             Federal Official Court Reporter
23                           Texarkana Division
                             500 N. State Line Avenue
24                           Texarkana, Texas 75501

25  (Proceedings recorded by mechanical stenography, transcript
    produced on a CAT system.)
```

```
 1   FOR THE DEFENDANT:        Mr. Vinay V. Joshi
                               Mr. Andrew T. Oliver
 2                             AMIN, TUROCY, & WATSON
                               160 W. Santa Clara Street
 3                             Suite 975
                               San Jose, California 95113
 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

                     P R O C E E D I N G S

08:56:19    2          (Jury out.)

08:56:19    3          THE COURT:  Okay.  Good morning, everyone.

08:56:21    4          MR. BENNETT:  Good morning, Your Honor.

08:56:22    5          THE COURT:  We circulated last night copies of the

08:56:27    6    final jury instructions and the verdict form.  Did the

08:56:31    7    parties receive those and have an opportunity to review

08:56:33    8    them?

08:56:34    9          MR. BENNETT:  Yes, Your Honor.  Plaintiff received

08:56:36   10    and had a opportunity to review.

08:56:38   11          MR. OLIVER:  Yes, Your Honor.

08:56:39   12          THE COURT:  Anything you wish to -- as you saw,

08:56:43   13    I'm sure, we pretty much resolved everything, as I

08:56:48   14    suggested we would when discussed them yesterday afternoon.

08:56:54   15          Anything anyone wishes to put on the record at

08:56:57   16    this point with respect to the instructions or the form?

08:56:59   17          MR. BENNETT:  We just want to lodge our formal

08:57:03   18    objection to submission of invalidity defenses to the jury.

08:57:06   19    We don't think the evidence has been sufficient to meet the

08:57:10   20    high standard of clear and convincing evidence on either

08:57:13   21    anticipation or obviousness.  So we ask that they be struck

08:57:20   22    for lack of sufficient evidence.

08:57:23   23          THE COURT:  Okay.  Mr. Oliver?

08:57:24   24          MR. OLIVER:  Your Honor, Plaintiff -- or Defendant

08:57:26   25    maintains its position that the form should have been in

08:57:30   1   the form submitted by the Defendant and objects to the

08:57:32   2   changes but understands that the Court -- we just want to

08:57:37   3   maintain our objection to that -- those changes.

08:57:38   4           THE COURT:  Very well.  Okay.

08:57:38   5           MR. BENNETT:  And just one housekeeping item.

08:57:41   6   There is a page break on the Word version that we received

08:57:46   7   at Page 17 --

08:57:48   8           THE COURT:  Yes, sir.

08:57:48   9           MR. BENNETT:  -- some white space there.  I don't

08:57:52  10   know if that was intentional or not or -- I just wanted to

08:57:56  11   draw it to the Court's attention.

08:57:59  12           THE COURT:  Thank you.  It was unintentional.  It

08:58:01  13   was just an oversight.  Shouldn't make any difference,

08:58:02  14   unless there's -- we'll confirm, but I think that

08:58:07  15   Paragraph 7, Section 7.1 is -- consists of just the one

08:58:10  16   paragraph which you've seen on Page 17.

08:58:11  17           MR. BENNETT:  And to be clear, Plaintiff has no

08:58:13  18   objection to the white space.  I'm just drawing it to the

08:58:16  19   Court's attention.

08:58:16  20           THE COURT:  I understand.  No, I appreciate you

08:58:18  21   pointing it out.

08:58:19  22           With respect to the motions for judgment as a --

08:58:23  23   or the motion for judgment as a matter of law, I appreciate

08:58:28  24   that getting filed last night, Mr. Oliver.  I have had an

08:58:35  25   opportunity to review it, as well as the response that was

08:58:40  1    filed earlier this morning.

08:58:43  2           Does any -- either party wish to make any

08:58:46  3    additional arguments with respect to that motion?

08:58:50  4           MR. BENNETT:  Plaintiff will rest on its

08:58:52  5    submission, Your Honor.

08:58:54  6           MR. OLIVER:  Your Honor, the Defendant will rest

08:58:57  7    on its submission.  There is an issue in one of those

08:59:01  8    motions that is going to come up in Mr. Bennett's objection

08:59:05  9    to opening slides that we'll need to discuss about whether

08:59:10  10   circumstantial evidence can prove more than one unit of use

08:59:15  11   for a method claim.

08:59:17  12          THE COURT:  Let's deal with the JMOL first and --

08:59:17  13          MR. OLIVER:  Okay.

08:59:20  14          THE COURT:  -- then we'll talk about objection --

08:59:20  15   objections to the slides.

08:59:22  16          MR. OLIVER:  So Defendant will rest on its

08:59:25  17   submissions for the JMOLs.

08:59:27  18          THE COURT:  Very good.  Thank you, Mr. Oliver.

08:59:29  19          Okay.  You all may be seated.

08:59:31  20          As you all are well aware, when the Court

08:59:38  21   considers a motion for judgment as a matter of law, I'm

08:59:46  22   required to review all the evidence that is in the record

08:59:49  23   drawing all reasonable inferences in favor of the

08:59:54  24   non-movant.

08:59:55  25          I have to give credence to the evidence supporting

08:59:59  1   the movement that is uncontradicted and unimpeached and

09:00:04  2   refrain from making any credibility determinations for

09:00:09  3   waiving the evidence as those are functions of the jury.

09:00:12  4          The law requires that a JMOL should be granted

09:00:16  5   when there is no legally sufficient evidentiary basis for a

09:00:22  6   reasonable jury to find on an issue on which the party has

09:00:27  7   been fully heard, and this usually happens in two types of

09:00:32  8   situations, first where there is a complete absence of

09:00:41  9   pleading or proof on an issue that is material to the claim

09:00:43  10  or the defense, or in the second case where there are no

09:00:46  11  controverted issues of fact on which reasonable persons

09:00:50  12  could differ.

09:00:52  13         In other words, if the evidence, when it is

09:00:55  14  construed in the light most favorable to the non-moving

09:00:59  15  party only allows one reasonable conclusion, judgment as

09:01:04  16  matter of law is proper.

09:01:06  17         If, however, reasonable minds could differ as to

09:01:11  18  the import of the significance of the evidence, the JMOL

09:01:15  19  should be denied and the case submitted to the jury.

09:01:27  20         Having said all that, on each issue that the

09:01:30  21  parties have moved on, I am going to carry those motions

09:01:35  22  for judgment as a matter of law.  Obviously, depending on

09:01:39  23  how the verdict turns out, the parties may file renewed

09:01:44  24  motions for judgment as a matter of law under Rule 50(b),

09:01:50  25  and at that point, we will be in a position to make a more

| | | |
|---|---|---|
| 09:01:54 | 1 | careful, considered scrutiny of the record and the |
| 09:01:58 | 2 | transcript of testimony. |
| 09:02:01 | 3 | So that will be my ruling. |
| 09:02:05 | 4 | Any questions about that ruling? |
| 09:02:07 | 5 | MR. BENNETT:  No, Your Honor. |
| 09:02:09 | 6 | MR. OLIVER:  No, Your Honor.  Thank you. |
| 09:02:10 | 7 | THE COURT:  All right.  Objections to |
| 09:02:12 | 8 | demonstratives? |
| 09:02:13 | 9 | MR. BENNETT:  Yes.  If I may put one on the Elmo. |
| 09:02:18 | 10 | This is in line with some of the arguments on the JMOLs. |
| 09:02:37 | 11 | We object to the use of this slide as phrased |
| 09:02:40 | 12 | because it asserts a legal position that we think is |
| 09:02:45 | 13 | untrue.  That's just not the law. |
| 09:02:47 | 14 | And they use the word "entitled" to one unit of |
| 09:02:52 | 15 | sales for each accused product.  They're arguing that |
| 09:02:55 | 16 | that's what the jury instructions -- and they're going to |
| 09:02:56 | 17 | show a slide, and I don't mind them showing the slide and |
| 09:02:59 | 18 | circling the language and saying this is what the |
| 09:03:02 | 19 | instructions say, but when you then draw the conclusion and |
| 09:03:06 | 20 | say, based on the Court's instruction, this is all Lone |
| 09:03:10 | 21 | Star gets, and that's wrong as a matter of law, it can't be |
| 09:03:13 | 22 | argued that way. |
| 09:03:14 | 23 | So if they were to change it to say, a reasonable |
| 09:03:17 | 24 | royalty would be, something like that, or -- that's a |
| 09:03:19 | 25 | different -- that's a different argument.  That's a factual |

09:03:20   1   argument, not a legal one.

09:03:21   2           So this is unduly prejudicial, confusing to the

09:03:25   3   jury, the wrong legal standard.  For all those reasons, we

09:03:30   4   object to it.

09:03:31   5           THE COURT:  Thank you, Mr. Bennett.

09:03:33   6           Who is arguing this for the Defendant?

09:03:35   7           MR. OLIVER:  I am, Your Honor.

09:03:37   8           Is it possible to switch to my screen?

09:03:40   9           So, Your Honor, I'm showing here a highlighted

09:03:43   10  portion of -- of -- this is Lucent v. Gateway, the Federal

09:03:58   11  Circuit case that controls here.  And what it says is:  All

09:04:02   12  that circumstantial evidence supports is the jury's

09:04:07   13  implicit finding that at one person perform the patented

09:04:11   14  method one time in the United States sometime during the

09:04:12   15  relevant period.

09:04:13   16          Beyond that finding, all the jury had was

09:04:16   17  speculation, and that's the Federal Circuit law.

09:04:19   18          I know in a JMOL motion, Plaintiff pointed to some

09:04:26   19  other language in this case and was challenging the damages

09:04:30   20  methodology.  And what that language said was -- one of the

09:04:34   21  parties had said, the Plaintiff, after somebody had used

09:04:41   22  the product to infringe had to keep proving continued

09:04:44   23  infringement by that person to keep getting the credit for

09:04:49   24  that product.  And the Court said, no -- the Federal

09:04:52   25  Circuit said, no, you just have to prove that each product

09:04:55  1   has been used once to infringe, and it's an infringing

09:04:58  2   product, and that can be included in the damages base.

09:05:02  3          And so here, what the slide is presenting is the

09:05:04  4   Federal Circuit law as it stands and as it's clear.

09:05:10  5   Circumstantial evidence permits a finding that one person

09:05:14  6   has used a product to infringe in the United States in a

09:05:19  7   situation where that product is not necessarily infringing.

09:05:24  8          So this goes back to the Moleculon v. CBS case

09:05:32  9   that had to do with Rubik's Cube, and the Court that found

09:05:37 10   in that case that instructions on how to solve a Rubik's

09:05:43 11   Cube, providing those to the customers would induce them to

09:05:47 12   indeed solve the Rubik's Cube because there's really only

09:05:55 13   one use of a Rubik's Cube.

09:05:57 14          In this case, and in all other cases since then

09:05:59 15   that I'm aware of, where the product has noninfringing use,

09:06:05 16   instructions alone are not enough to get beyond one unit of

09:06:09 17   sales for each product.

09:06:10 18          So, yes, circumstantial evidence can be used to

09:06:13 19   find infringement.  And that finding that somebody has

09:06:20 20   infringed requires one unit of sales, but beyond that, the

09:06:25 21   Plaintiff has the burden to prove damages by proving how

09:06:35 22   many people have actually used the infringing method.

09:06:36 23          THE COURT:  Anything else, Mr. Bennett?

09:06:38 24          MR. BENNETT:  No, that's all.

09:06:40 25          THE COURT:  Okay.  I do think the slide has to be

09:06:41   1   removed based on my ruling on the motion for judgment as a

09:06:46   2   matter of law.

09:06:46   3        I do think you can argue that Lone Star hasn't

09:06:52   4   proven that the method is used.  But you can't say that

09:06:56   5   Lone Star is limited to damages for one unit of each

09:07:00   6   accused product as a matter of law.  Based upon my

09:07:05   7   determination to carry the motions, I think that's -- I

09:07:10   8   think that's the effect of that.  So I'll ask you to remove

09:07:13   9   that slide.

09:07:13  10        MR. OLIVER:  May we -- may we refer -- the jury

09:07:18  11   instruction explicitly says they have to prove the number

09:07:23  12   of people that use that.

09:07:24  13        THE COURT:  You certainly can point to the jury

09:07:27  14   instructions throughout your closings.

09:07:29  15        MR. OLIVER:  Okay.  Thank you, Your Honor.

09:07:31  16        THE COURT:  All right.  Anything else that we need

09:07:33  17   to discuss before we have the jury brought in?

09:07:36  18        MR. BENNETT:  They had an objection to one of our

09:07:38  19   slides, Your Honor.

09:07:39  20        THE COURT:  Okay.

09:07:40  21        MR. OLIVER:  Yes.

09:07:56  22        MR. BENNETT:  I can put it up on the Elmo, if you

09:07:59  23   want, Mr. Oliver, for sake of time.

09:08:00  24        MR. OLIVER:  That would be helpful.  It takes my

09:08:02  25   computer -- oh, here we go.  Are you able to pull up my

09:08:11  1   computer?  Oh, am I not plugged in?

09:08:11  2         MR. BENNETT:  Here, I got it.

09:08:12  3         MR. OLIVER:  Thank you, sir.

09:08:19  4         No, it wasn't that one.

09:08:20  5         MR. BENNETT:  Sorry, you're right.  Well, I

09:08:30  6   thought I had it.

09:08:30  7         MR. OLIVER:  So, Your Honor, while he's finding

09:08:35  8   the slide, basically, the slide at the top says:  ASUS

09:08:38  9   induced end users to infringe, and --

09:08:38  10        MR. BENNETT:  There it is.

09:08:42  11        MR. OLIVER:  -- and at the bottom, it refers to

09:08:47  12  routine maintenance, and there was no evidence that ASUS

09:08:50  13  induced routine maintenance.  There's these other things,

09:08:57  14  there's the user manuals, marketing, troubleshooting, which

09:08:59  15  is in the user manual.

09:09:02  16        The expert witness testified that people would do

09:09:05  17  routine maintenance, but that was not an instruction coming

09:09:09  18  from ASUS or any type of encouragement or inducement from

09:09:14  19  ASUS.  So we objected to the listing of that as ASUS

09:09:20  20  inducement.

09:09:21  21        THE COURT:  Mr. Bennett?

09:09:23  22        MR. BENNETT:  The Troubleshooting FAQ says color

09:09:27  23  will become distorted at points, and our expert said, yeah,

09:09:29  24  that's routine, and the industry guidance is two to

09:09:32  25  300 hours.  You should recalibrate your display.

09:09:37   1   Circumstantial -- it's circumstantial evidence.

09:09:37   2           THE COURT:  I'm sorry?

09:09:40   3           MR. BENNETT:  It's circumstantial evidence of

09:09:41   4   inducement based -- between the expert and the manuals.

09:09:43   5           THE COURT:  So did the expert testify that users

09:09:46   6   on their own can modify the colors?

09:09:48   7           MR. BENNETT:  Yes.

09:09:49   8           THE COURT:  Okay.  I'm going to -- I'll permit the

09:09:51   9   slide to be used.

09:09:53  10           MR. OLIVER:  Your Honor, on the slide that was

09:09:55  11   excluded, may I read it into the record to preserve it for

09:09:59  12   appeal?

09:09:59  13           THE COURT:  You certainly may, or you may file it

09:10:01  14   on the docket, whichever you wish.

09:10:03  15           MR. OLIVER:  If you don't mind, it's about five

09:10:06  16   sentences.  I'll just read it into the record.

09:10:08  17           THE COURT:  Certainly.

09:10:09  18           MR. OLIVER:  So the slide that was excluded says:

09:10:11  19   So what do you do if you if you think ASUS infringes and

09:10:15  20   the patent is valid, question mark?  See Instruction 8.9.

09:10:21  21   If so, Lone Star entitled to one unit of sales of each

09:10:29  22   accused product.  134 accused products on

09:10:34  23   Dr. Ducharme's chart.  Mr. Perdue's only rate was 61 cents

09:10:41  24   per unit.  61 cents times 134 equals $81.74.  Mr. Reed

09:10:57  25   corrected the error to 7 cents per unit.  7 cents times 134

09:11:04   1   equals $9.38.

09:11:09   2        Thank you, Your Honor.

09:11:10   3        THE COURT:  Okay.  Thank you, Mr. Oliver.

09:11:10   4        So let me just clarify, though, Mr. Bennett.

09:11:11   5   There was only an objection to one of the sentences, is

09:11:13   6   that correct, or was the entire slide objected to?

09:11:16   7        MR. BENNETT:  It was -- so it was a combination, I

09:11:18   8   guess, of elements.

09:11:20   9        The one sentence, "the entitled to," was the one

09:11:25  10   that we principally objected to.  If they remove that

09:11:29  11   sentence and they left just "we think they're entitled to

09:11:33  12   this under the reasonable royalty discussion," we're fine.

09:11:33  13   We just don't want them telling the jury the law is

09:11:36  14   something other than it is.

09:11:36  15        THE COURT:  So, Mr. Oliver, that -- does that

09:11:38  16   clarify?  It's not the entire slide that's the problem.

09:11:40  17   It's just the one sentence about the one unit of sales.

09:11:43  18        MR. OLIVER:  Okay.  I will take that sentence out

09:11:45  19   and retain the rest of the slide.

09:11:45  20        THE COURT:  All right.

09:11:48  21        MR. OLIVER:  Thank you, Your Honor.

09:11:48  22        THE COURT:  Anything else?

09:11:51  23        Okay.  Good.

09:11:53  24        So it's 9:10.  We'll get the jury in.  I'm not

09:11:58  25   sure how long it will take to read the instructions.  I --

09:12:08   1   I am not a fan of taking a break between the parties'

09:12:14   2   closings.  So we may take a -- depending on how long it

09:12:23   3   takes me to get through the instruction, we may take a very

09:12:28   4   short break before we come back and begin with the

09:12:31   5   Plaintiff's closing.

09:12:31   6          All right.  Any questions about what we're going

09:12:37   7   to do?

09:12:37   8          MR. JOSHI:  What are the instructions for counsel

09:12:38   9   after the jury is deliberating?  We stay in the courtroom?

09:12:39  10          THE COURT:  I'll tell you more about that.  I

09:12:42  11   don't want you -- you don't have to stay in the courtroom,

09:12:44  12   Mr. Joshi, but I don't want you to get terribly far from

09:12:46  13   the courthouse.

09:12:47  14          MR. JOSHI:  Okay.  Thank you, Your Honor.

09:12:48  15          THE COURT:  If you would, have the jury brought

09:12:50  16   in.

09:12:51  17          COURT SECURITY OFFICER:  All rise for the jury.

09:12:53  18          (Jury in.)

09:13:39  19          THE COURT:  Please be seated.

09:13:42  20          Good morning, ladies and gentlemen of the jury.

09:13:44  21   Welcome back.  Hope y'all had a nice evening.  Thanks for

09:13:48  22   being here on time.  We're actually starting pretty close

09:13:51  23   to what I had hoped.  And so we're -- we're right on

09:13:56  24   schedule this morning.

09:13:57  25          When I gave you the roadmap on Monday about what

09:14:01  1  this trial would be like, you will recall that the last

09:14:09  2  thing to occur is the jury instructions that will provide

09:14:15  3  information to you about the law that you must follow in

09:14:20  4  your deliberations, the parties's closing arguments, and

09:14:28  5  then the deliberations, so we are moving right along well.

09:14:32  6      I'm now going to go through the instructions that

09:14:40  7  you must follow in your deliberations, and you're more than

09:14:48  8  welcome to take notes on these instructions as I go through

09:14:51  9  them, as you see fit, but I do want you to know that each

09:14:56  10  of you will have a copy of these instructions for your

09:14:58  11  individual use when you begin your deliberations, so feel

09:15:00  12  free to make whatever notes you want to, but you'll all

09:15:04  13  have a copy of this.

09:15:05  14      Depending on what time it is when I finish these

09:15:09  15  instructions, we may take a short recess before we come

09:15:13  16  back and begin the closing arguments.

09:15:15  17      All right.  Members of the jury, you've now heard

09:15:18  18  the evidence in the case, and I will instruct you on the

09:15:21  19  law that you must apply.  It is your duty to follow the law

09:15:25  20  as I give it to you.

09:15:27  21      On the other hand, you, the jury, are the sole

09:15:29  22  judges of the facts.  Do not consider any statement I may

09:15:34  23  have made during the trial or make in these instructions as

09:15:38  24  an indication that I have any opinion about the facts of

09:15:41  25  the case.

09:15:42   1        After I instruct you on the law, the attorneys

09:15:45   2   will have an opportunity to make their closing arguments.

09:15:48   3   Statements and argument of the attorneys are not evidence

09:15:52   4   and are not instructions on the law.  They are intended

09:15:57   5   only to assist you in understanding the evidence and what

09:16:00   6   the parties' contentions are.

09:16:04   7        A verdict form has been prepared for you.  You

09:16:07   8   will take this form with you to the jury room, and when you

09:16:09   9   have reached a unanimous agreement as to your verdict, you

09:16:13  10   will have your foreperson fill in, date it, and sign the

09:16:18  11   form.

09:16:19  12        Answer each question on the verdict form from the

09:16:21  13   facts as you find them.  Do not decide who you think should

09:16:25  14   win and then answer the questions accordingly.  Your

09:16:28  15   answers and your verdict must be unanimous.

09:16:31  16        In determining whether any fact has been proven in

09:16:39  17   this case, you may, unless otherwise instructed, consider

09:16:44  18   the testimony of all witnesses regardless of who may have

09:16:47  19   called them and all exhibits received into evidence

09:16:50  20   regardless of who may have produced or introduced them.

09:16:54  21        You, the jurors, are the sole judges of the

09:16:58  22   credibility of all the witnesses and the weight and effect

09:17:02  23   of all the evidence.

09:17:03  24        By the Court allowing testimony or other evidence

09:17:06  25   to be introduced over the objection of an attorney, the

09:17:09  1   Court did not indicate any opinion as to the weight or

09:17:12  2   effect of such evidence.

09:17:14  3          In determining the weight to give to the testimony

09:17:17  4   of a witness, you should ask yourself whether there was

09:17:20  5   evidence intending to prove that the witness testified

09:17:24  6   falsely concerning some important fact or whether there was

09:17:28  7   evidence that at some other time the witness said or did

09:17:32  8   something or failed to say or do something that was

09:17:35  9   different from the testimony the witness gave -- gave

09:17:40  10  before you during the trial.

09:17:41  11         You should keep in mind, of course, that a simple

09:17:45  12  mistake by a witness does not necessarily mean that the

09:17:49  13  witness was not telling the truth as he or she remembers it

09:17:52  14  because sometimes people may forget some things or remember

09:17:56  15  other things inaccurately.

09:17:58  16         So if a witness has made a misstatement, you need

09:18:01  17  to consider whether that misstatement was an intentional

09:18:05  18  falsehood or simply an innocent lapse of memory.  And the

09:18:10  19  significance of that may depend on whether it has to do

09:18:13  20  with an important fact or with only an unimportant detail.

09:18:17  21         In deciding whether to accept or rely upon the

09:18:21  22  testimony of any witness, you may also consider any bias of

09:18:24  23  the witness.

09:18:25  24         Certain testimony in the case has been presented

09:18:32  25  to you through a deposition.  A deposition is the sworn,

09:18:34  1  recorded answers to questions asked to a witness in advance

09:18:39  2  of the trial.  Under some circumstances, if a witness

09:18:43  3  cannot be present to testify from the witness stand, the

09:18:47  4  witness's testimony may be presented under oath in the form

09:18:51  5  of a deposition.

09:18:52  6        Before the trial, the attorneys representing the

09:18:55  7  parties in the case questioned these deposition witnesses

09:19:00  8  under oath.  A court reporter was present and recorded the

09:19:03  9  testimony.

09:19:04  10        Deposition testimony is entitled to the same

09:19:07  11  consideration as testimony given by a witness in person

09:19:10  12  from the witness stand.  You should judge the credibility

09:19:15  13  of and weigh the importance of deposition testimony to the

09:19:19  14  best of your ability, just as if the witness had testified

09:19:25  15  in court in person.

09:19:26  16        While you should consider only the evidence in

09:19:29  17  this case, you are permitted to draw such reasonable

09:19:34  18  inferences from the testimony and exhibits as you feel are

09:19:37  19  justified in the light of common experience.  In other

09:19:42  20  words, you may make deductions and reach conclusions that

09:19:48  21  reason and common sense lead you to draw from the facts

09:19:52  22  that have been established by the testimony and evidence in

09:19:54  23  the case.

09:19:54  24        The testimony of a single witness may be

09:19:57  25  sufficient to prove any fact, even if a greater number of

09:20:00  1  witnesses may have testified to the contrary, if after

09:20:04  2  considering all of the other evidence, you believe that

09:20:07  3  single witness.

09:20:07  4      The parties have stipulated or agreed to some

09:20:18  5  facts in the case.  And when the lawyers on both sides

09:20:22  6  stipulate to the existence of a fact, you must, unless

09:20:25  7  otherwise instructed, accept the stipulation as evidence

09:20:27  8  and regard the fact as proved.

09:20:29  9      Some of you may have heard the terms "direct

09:20:32  10  evidence" and "circumstantial evidence."  Direct evidence

09:20:34  11  is simply evidence that the testimony -- like the testimony

09:20:38  12  of an eyewitness, which if you believe it, directly proves

09:20:43  13  a fact.

09:20:44  14      Circumstantial evidence is simply a chain of

09:20:47  15  circumstances that indirectly proves a fact.  If someone

09:20:51  16  walked into the courtroom wearing a raincoat covered with

09:20:54  17  drops of water and carrying a wet umbrella, that would be

09:21:00  18  circumstantial evidence from which you could conclude that

09:21:02  19  it was raining.

09:21:03  20      It is your job to decide how much weight to give

09:21:08  21  the direct and circumstantial evidence.  As a general rule,

09:21:11  22  the law makes no distinction between the weights that you

09:21:16  23  should give to direct and circumstantial evidence, nor does

09:21:19  24  it say that one is any better evidence than the other.  It

09:21:23  25  simply requires that you find the facts from all the

09:21:25   1   evidence, both direct and circumstantial, and give it the

09:21:31   2   weight you believe it deserves.

09:21:33   3           Attorneys representing clients in courts such as

09:21:36   4   this one have an obligation to assert objections when they

09:21:43   5   believe testimony or evidence is being offered that is

09:21:45   6   contrary to the rules of evidence.

09:21:47   7           The essence of a fair trial is that we conduct it

09:21:51   8   pursuant to the rules of evidence and that your verdict be

09:21:54   9   based only on legally admissible evidence.  So you should

09:21:58  10   not be influenced by any objection or by the Court's ruling

09:22:02  11   on it.

09:22:03  12           If an objection was sustained, you should ignore

09:22:06  13   the question.  If the objection was overruled, you may

09:22:09  14   treat the answer to that question just as you would treat

09:22:12  15   the answer to any other question.

09:22:14  16           During the trial, I may not have let you hear the

09:22:17  17   answers to some of the questions the lawyers asked.  I also

09:22:21  18   made it a rule you could not see some of the exhibits that

09:22:25  19   the lawyers wanted you to see.  And sometimes I may have

09:22:29  20   ordered you to disregard things that you saw or heard.  You

09:22:33  21   must completely ignore all of these things as I instructed

09:22:38  22   you to disregard or ignore.

09:22:39  23           Do not speculate about what a witness might have

09:22:43  24   said or what an exhibit might have shown.  These things are

09:22:47  25   not evidence, and you're bound by your oath not to let them

09:22:51   1   influence your decision in any way.

09:22:54   2          At times during the trial it was necessary for me

09:22:56   3   to talk with the lawyers at the bench outside your hearing

09:23:03   4   or by calling a recess and talking to them when you were

09:23:05   5   out of the courtroom.  This happened because sometimes

09:23:08   6   during a trial, something comes up that doesn't involve the

09:23:11   7   jury, and you should shouldn't speculate on what was said

09:23:16   8   during those discussions that took place outside of your

09:23:18   9   presence.

09:23:19   10         Certain exhibits were shown to you as

09:23:21   11   illustrations of the evidence but are not evidence

09:23:25   12   themselves.  We call these type of exhibits demonstrative

09:23:29   13   exhibits.

09:23:29   14         Demonstrative exhibits are a party's description

09:23:32   15   or picture or model to describe something that's involved

09:23:36   16   in the trial.  If your recollection of the evidence differs

09:23:41   17   from the demonstrative exhibit, you should rely on your

09:23:44   18   recollection.

09:23:45   19         When knowledge of a technical subject matter may

09:23:49   20   be helpful to the jury, a person who has special training

09:23:52   21   or experience in that technical field -- he or she is

09:23:56   22   called an expert witness -- is permitted to state his or

09:24:00   23   her opinion on technical matters.  However, you are not

09:24:03   24   required to accept that opinion.

09:24:05   25         As with any other witness, it's up to you to

09:24:09  1  decide whether the witness's testimony is believable or

09:24:15  2  not, whether it is supported by the evidence, and whether

09:24:18  3  to rely upon it.

09:24:19  4      As I did at the start of the case, I want to give

09:24:22  5  you a summary of each side's contentions in the case, and I

09:24:27  6  will then provide you with detailed instructions on what

09:24:31  7  each side must prove to win on each of its contentions.

09:24:36  8      Plaintiff, Lone Star Technical [sic] Innovations,

09:24:39  9  LLC, Lone Star, or the Plaintiff, seeks money damages from

09:24:42  10  the Defendant, ASUSTeK Computer, Inc., ASUS, or the

09:24:46  11  Defendant, for allegedly infringing certain claims of U.S.

09:24:52  12  Patent No. 6,724,435, referred to as the '435 or '435

09:24:59  13  patent.

09:24:59  14      The Plaintiff contends that certain ASUS monitors,

09:25:03  15  displays, and projectors infringe Claims 1 through 3, 5

09:25:07  16  and 6, and 13 through 15 of the '435 patent.

09:25:12  17      The '435 patent is also referred to as the

09:25:18  18  patent-in-suit, and Claims 1 through 3, 5 and 6, and 13

09:25:23  19  through 15 are referred to as the asserted claims.

09:25:28  20      Lone Star contends that ASUS has induced

09:25:33  21  infringement of the asserted claims of the '435 patent by

09:25:36  22  others, such as its customers, by making, using, selling,

09:25:41  23  offering for sale or importing certain monitors and

09:25:44  24  displays in the United States.

09:25:47  25      ASUS denies that it has induced infringement of

09:25:52  1   the asserted claims of the patent-in-suit.  ASUS further

09:25:56  2   denies that Lone Star is entitled to any damages.

09:25:59  3          ASUS also contends the asserted claims are invalid

09:26:03  4   because they are anticipated or rendered obvious by the

09:26:07  5   prior art.

09:26:08  6          ASUS contends that at the time of the alleged

09:26:11  7   invention, prior art existed that disclosed every element

09:26:15  8   of the asserted claims and made them obvious to a person of

09:26:21  9   ordinary skill in the art.

09:26:23 10          ASUS further contends that the claims of the '435

09:26:26 11   patent are invalid in view of a doctrine referred to as

09:26:31 12   obviousness-type double patenting.

09:26:35 13          ASUS contends that Claims 1 through 3, 5 and 6,

09:26:39 14   and 13 through 15 in the '435 patent are invalid because

09:26:44 15   they are an obvious variation of the claims and/or not

09:26:48 16   otherwise patentably distinct from one another, earlier

09:26:57 17   expiring patent having a common invention.

09:26:59 18          ASUS further contends that Claims 1 through 3, 5

09:27:04 19   and 6, and 13 through 15 of the '435 patent are invalid as

09:27:08 20   they are not enabled.  A claim is invalid for lack of

09:27:14 21   enablement if the specification does not provide a

09:27:19 22   sufficient description of the manner and process of making

09:27:22 23   and using the invention that would allow one of ordinary

09:27:26 24   skill in the art to make and use the claimed invention

09:27:30 25   without undue experimentation.

09:27:32  1      Your job is to decide whether ASUS has infringed
09:27:36  2  the asserted claims of the patent-in-suit and whether the
09:27:39  3  asserted claims in the patent-in-suit are invalid.
09:27:42  4      Infringement and invalidity are separate and
09:27:47  5  distinct questions and should be considered and answered
09:27:50  6  separately.
09:27:51  7      If you decide that any asserted claim has been
09:27:57  8  infringed and is not invalid, you will then need to decide
09:28:01  9  the amount of money damages to be awarded to Lone Star to
09:28:06 10  compensate them for the infringement, if any.
09:28:09 11      Facts must be proved by a required standard of
09:28:12 12  evidence known as the burden of proof.  You've heard about
09:28:17 13  it, I'm sure, from television in criminal cases, the
09:28:20 14  reference to proof beyond a reasonable doubt.  That does
09:28:24 15  not apply in a civil case like this.
09:28:26 16      In a civil case, a patent case like this, there
09:28:32 17  are two burdens of proof that will apply.
09:28:36 18      Number one, the preponderance of the evidence
09:28:37 19  standard.
09:28:37 20      And number two, the clear and convincing evidence
09:28:42 21  standard.
09:28:43 22      Plaintiff, Lone Star, must prove its claims of
09:28:46 23  patent infringement and damages by a preponderance of the
09:28:49 24  evidence.
09:28:49 25      When a party has the burden of proof by a

09:28:52  1  preponderance of the evidence, it means that you must be

09:28:57  2  persuaded that what the parties seeks to prove is more

09:29:01  3  probably true than not true.

09:29:04  4       If you put the evidence for and against the party,

09:29:07  5  you must prove the fact on opposite sides of the scale.

09:29:12  6  The preponderance of the evidence standard requires that

09:29:14  7  the scale tip at least somewhat toward the party who has

09:29:18  8  the burden of proof.

09:29:19  9       ASUS has the burden of proving invalidity by clear

09:29:24  10  and convincing evidence.  This means evidence that produces

09:29:27  11  in your mind a firm conviction or belief as to the matter

09:29:33  12  at issue.  Although proof to a certainty is not required,

09:29:37  13  the clear and convincing standard requires a greater degree

09:29:40  14  of persuasion than is necessary for the preponderance of

09:29:44  15  the evidence standard.

09:29:44  16       If the proof establishes in your mind a firm

09:29:48  17  belief or conviction, then the clear and convincing

09:29:52  18  evidence standard has been met.

09:29:54  19       The fact that the Plaintiff brought a lawsuit in

09:29:58  20  this Court seeking damages creates no inference that the

09:30:01  21  Plaintiff is entitled to a judgment or damages.  The act of

09:30:05  22  making a claim in a lawsuit by itself does not in any way

09:30:10  23  tend to establish that claim and is not evidence.

09:30:13  24       Before you can decide many of the issues in this

09:30:18  25  case, you will need to understand the role of the patent

09:30:21  1    claims.

09:30:22  2            Patent claims are the numbered sentences at the

09:30:25  3    end of each patent, and the claims are important because it

09:30:29  4    is the words of the claims themselves that define what a

09:30:34  5    patent covers.

09:30:35  6            The figures and text in the rest of the patent

09:30:39  7    provide a description and/or examples of the invention and

09:30:45  8    provide a context for claims, but it is the claims that

09:30:49  9    defined the breadth of the patent's coverage.

09:30:54  10           Each claim is effectively treated as if it were a

09:30:59  11   separate patent, and each claim may cover more or less than

09:31:04  12   another claim.  Therefore, what a patent covers depends

09:31:07  13   upon what each of its claims cover.

09:31:10  14           You will first need to decide -- you will first

09:31:12  15   need to understand what each claim covers in order to

09:31:16  16   decide whether or not there is infringement of the claim

09:31:19  17   and to decide whether or not the claim is invalid.

09:31:21  18           The law says that it is my role to define the

09:31:24  19   terms of the claims, and it's your role to apply those

09:31:28  20   definitions to the issues that you are asked to decide in

09:31:33  21   this case.

09:31:34  22           Therefore, as I explained to you at the very start

09:31:38  23   of the case, I have determined the meaning of certain claim

09:31:42  24   terms at issue in the case, and I have provided you those

09:31:45  25   depositions -- definitions in Appendix A.  You must accept

09:31:52  1  the definitions of these words in the claims as being

09:31:54  2  correct.

09:31:55  3          It is your job to take these definitions and apply

09:31:58  4  them to the issues that you are deciding, including

09:32:01  5  infringement and validity.  The claim language I have not

09:32:05  6  interpreted for you is to be given its ordinary and a

09:32:10  7  accustomed meaning as understood by one of ordinary skill

09:32:15  8  in the art.

09:32:15  9          I will now explain how a patent claim defines what

09:32:21  10  it covers.

09:32:22  11          A claim sets forth in words a set of requirements.

09:32:27  12  Each claim sets forth its requirements in a single

09:32:31  13  sentence.  If a device or system satisfies each of these

09:32:35  14  requirements, then it is covered by the claim.

09:32:37  15          In patent law, the requirements of a claim are

09:32:41  16  often referred to as claim elements or claim limitations.

09:32:46  17          There can be several claims in a patent, and each

09:32:49  18  claim may be narrower or broader than another claim by

09:32:55  19  setting forth more or fewer requirements.  The coverage of

09:32:59  20  a patent is assessed claim by claim.

09:33:03  21          In patent law, the requirements of a claim are

09:33:06  22  often referred to, as I said, as claim elements or claim

09:33:10  23  limitations.  When a thing, such as a device, a product, or

09:33:14  24  a system, meets all of the requirements of the claim, the

09:33:18  25  claim is said to cover that thing, and that thing is said

09:33:22  1   to fall within the scope of the claim.

09:33:25  2        In other words, a claim covers a feature, product,

09:33:28  3   or system where each of the claim elements or limitations

09:33:34  4   is present in that device, product, or system.  A claim

09:33:37  5   covers such a product or system even if the product or

09:33:40  6   system has additional features or components that are not

09:33:44  7   covered by the claim.

09:33:46  8        Conversely, if the device, product or system meets

09:33:50  9   only some but not all of the claim elements or limitations,

09:33:54  10  then that device, product, or system is not covered by the

09:33:57  11  claim.

09:33:59  12       By understanding the meaning of the words in a

09:34:02  13  claim and by understanding that the words in a claim set

09:34:05  14  forth the requirements that a product must meet in order to

09:34:09  15  be covered by that claim, you will be able to understand

09:34:11  16  the scope of coverage for each claim.

09:34:15  17       Once you understand what the -- what each claim

09:34:18  18  covers, then you are there to decide the issues that you

09:34:21  19  will be asked to decide, such as infringement and

09:34:25  20  invalidity.

09:34:26  21       I will now explain to you the meaning of some of

09:34:29  22  the words in the -- of the claims in this case.  In doing

09:34:32  23  so, I will explain some of the requirements.

09:34:35  24       As you may recall, certain of those terms have

09:34:39  25  already been interpreted or defined by the Court.  These

09:34:42  1  are called, sometimes, claim constructions.  And as I said,

09:34:48  2  these are set forth in a chart that are attached as -- that

09:34:53  3  is attached as Appendix A.

09:34:55  4      You must accept my definitions of these words in

09:34:59  5  the claims as correct, and you must disregard any argument

09:35:03  6  or evidence presented by either party suggesting that the

09:35:07  7  terms in the claim construction chart mean anything other

09:35:12  8  than the definitions that are provided in the chart.

09:35:16  9      For any words in the claim for which I have not

09:35:20  10  provided you with a definition, you should apply their

09:35:23  11  common meaning.  You should not take my definition of the

09:35:27  12  language of the claim as an indication that I have a view

09:35:31  13  regarding how you should decide the issues that you are

09:35:33  14  being asked to decide, such as infringement and validity.

09:35:38  15  These are your issues decide.

09:35:40  16      So Appendix A, the claim term is "hue," and it has

09:35:48  17  been defined as (1) tint, (2) gradation or shade of a color

09:35:54  18  or color component, or (3) the angle between one color or

09:36:00  19  color component and the other colors or color components

09:36:05  20  characterized in a particular color space.

09:36:08  21      The claim term "saturation" means (1) the

09:36:14  22  intensity of a color or a color component characterized in

09:36:18  23  a particular color space or (2) vividness of hue.

09:36:26  24      The claim term or phrase "individual color" means

09:36:30  25  linear combination of colors or color components.

09:36:35  1        The claim term or phrase, "without affecting the
09:36:40  2   hue or the saturation of any other individual color means
09:36:45  3   without affecting the hue or the saturation of any other
09:36:49  4   individual color in the remaining plurality or of input
09:36:56  5   image pixels.
09:36:57  6        The claim term or phrase "input image pixel" means
09:37:02  7   input data that includes color or color component values
09:37:06  8   and that can be plotted in an input grid of a display
09:37:13  9   device.
09:37:14  10       And, finally, the claim term or phrase "arbitrary
09:37:18  11  interval of integers" means a range between two whole
09:37:25  12  numbers, the range including only whole numbers.
09:37:28  13       Now, this case involves two types of patent
09:37:33  14  claims, independent claims and dependent claims.  An
09:37:40  15  independent claim sets forth all the requirements that must
09:37:43  16  be met in order to be covered by the claim.  Thus, it is
09:37:46  17  not necessary to look at any other claim to determine what
09:37:50  18  an independent claim covers.
09:37:52  19       In this case, Claim 1 of the '435 is the dependent
09:37:57  20  [sic] claim.  Other claims in the case are dependent
09:38:01  21  claims.  A dependent claim does not itself recite all of
09:38:05  22  the requirements of the claim but refers to another claim
09:38:08  23  for some of its requirements.
09:38:10  24       In this case, for example, Claim 3 of the '435
09:38:17  25  patent depends from Claim 1.  In this way, the claim

09:38:21  1   depends on another claim.  The dependent claim incorporates

09:38:25  2   all of the requirements of the claims to which it refers.

09:38:29  3          Claim 3, for example, includes all of the

09:38:32  4   requirements of Claim 1 and additionally includes the

09:38:35  5   additional requirements set forth in Claim 3.  The

09:38:40  6   dependent claim then adds it's own additional requirements.

09:38:44  7          To determine what a dependent claim covers, it's

09:38:48  8   necessary to look at both the dependent claim and any other

09:38:51  9   claims to which it refers.  A feature or a product that

09:38:55  10  meets all of the requirements of both the dependent claim

09:38:58  11  and the claim to which it refers is covered by that

09:39:02  12  dependent claim.

09:39:04  13         I will now instruct you how to decide whether or

09:39:08  14  not ASUS has infringed the patent-in-suit.

09:39:14  15         Infringement occurs when a person without the

09:39:17  16  patent owner's permission makes, uses, offers to sell or

09:39:22  17  sells the patent infringement anywhere in the United States

09:39:24  18  or imports the patent infringement into the United States

09:39:28  19  while the patent is in force.

09:39:31  20         Infringement is assessed on a claim-by-claim

09:39:35  21  basis.  Therefore, there may be infringement as to one

09:39:38  22  claim but not infringement as to another.  In order to

09:39:42  23  prove infringement, Lone Star must prove that the

09:39:45  24  requirements for one or more of these types of infringement

09:39:50  25  are met by a preponderance of the evidence, that is,

09:39:53   1   more -- that it is more likely than not that all of the

09:39:57   2   requirements of one or more of each of these types of

09:40:02   3   infringement has been proved.

09:40:03   4        In this case, Lone Star's claim for patent

09:40:07   5   infringement is for what is called "active inducement."

09:40:10   6   Active inducement is referred to as indirect infringement.

09:40:16   7   There cannot be indirect infringement without someone else

09:40:23   8   engaging in direct infringement.

09:40:28   9        For ASUS to be liable, its customers must be

09:40:32   10  direct infringers, either literally or under the doctrine

09:40:38   11  of equivalents.  To prove indirect infringement, Lone Star

09:40:39   12  must also prove that ASUS's indirect infringement caused

09:40:43   13  direct infringement within the United States.

09:40:46   14       Lone Star has alleged that ASUS's customers or end

09:40:51   15  users directly infringe -- infringe the patent-in-suit in

09:40:55   16  the United States and that ASUS is liable for actively

09:40:59   17  inducing that direct infringement by its customers or end

09:41:03   18  users in the United States.

09:41:04   19       For ASUS to be liable for indirect infringement,

09:41:07   20  you must first find that Lone Star has proven direct

09:41:12   21  infringement, either literally or under the doctrine of

09:41:17   22  equivalents.

09:41:17   23       Let me start, then, by explaining direct

09:41:22   24  infringement in more detail and then indirect infringement.

09:41:25   25       As I mentioned, a finding of indirect infringement

09:41:29  1  requires a showing that someone has directly infringed one
09:41:33  2  of the asserted claims within the United States.  Lone Star
09:41:39  3  asserts that ASUS's customers directly infringed the
09:41:45  4  asserted claims by using the ASUS product in an infringing
09:41:48  5  manner within the United States.
09:41:49  6       However, a Plaintiff is not required to present
09:41:53  7  direct evidence that any individual third-party direct
09:41:59  8  infringer was actually persuaded to infringe but may
09:42:04  9  instead present circumstantial evidence of inducement
09:42:07 10  directed to an entire class of direct infringers.
09:42:13 11       For example, customers or end users, you must
09:42:16 12  consider the question of direct infringement for its
09:42:23 13  customers in determining whether or not ASUS indirectly
09:42:26 14  infringes any asserted claim.
09:42:29 15       You cannot find that ASUS indirectly infringes a
09:42:35 16  claim of the patent-in-suit if you do not first find that
09:42:38 17  at least one of its customers directly infringes that claim
09:42:43 18  by how the device operates.
09:42:46 19       To show direct infringement of a claim, Lone Star
09:42:49 20  must prove by a preponderance of the evidence that ASUS's
09:42:53 21  accused products practice every step in that claim.  You
09:42:59 22  must compare the accused product with each and every one of
09:43:02 23  the requirements of the claim to determine whether all of
09:43:06 24  the requirements are met.
09:43:07 25       A claim requirement or step is present if it

09:43:10  1  exists in the accused product or method, just as it is

09:43:14  2  described in the claim language, either as I have explained

09:43:18  3  that language to you, or if I did not explain it, as it

09:43:22  4  would be understood by one of ordinary skill in the art.

09:43:25  5       Whether ASUS's customers knew that its product or

09:43:33  6  method infringed does not matter for your consideration of

09:43:37  7  direct infringement.  The customer may directly infringe a

09:43:40  8  patent even if it believed in good faith that what it was

09:43:45  9  doing was not infringement of any patent and even if it did

09:43:48  10  not know about the patent.

09:43:49  11      If you find that the accused product or system

09:43:53  12  includes each element of the claim, then that product or

09:43:56  13  system infringes the claim, even if such product or system

09:44:02  14  contains additional features or components that are not

09:44:05  15  recited in the claims.

09:44:08  16      If a company makes, uses, sells, offers to sell

09:44:13  17  within or imports into the United States a product that

09:44:16  18  does not meet all of the requirements under a claim and

09:44:21  19  thus does not literally infringe that claim, there can

09:44:25  20  still be direct infringement if that product satisfies that

09:44:29  21  claim under the doctrine of equivalents.

09:44:34  22      Under the doctrine of equivalents, a product

09:44:38  23  infringes the claim if the accused product contains

09:44:41  24  elements corresponding to each and every requirement of the

09:44:44  25  claim that is equivalent to, even though not literally met

09:44:49  1  by the accused product.

09:44:50  2  You may find that an element is equivalent to a

09:44:53  3  requirement of a claim that is not met literally if a

09:44:57  4  person having ordinary skill in the field of technology of

09:45:01  5  the patent would have considered the differences between

09:45:04  6  them to be insubstantial or would have found that the

09:45:09  7  structure performed substantially the same function and

09:45:13  8  works in substantially the same way to achieve

09:45:17  9  substantially the same result as the requirement of the

09:45:20  10  claim.

09:45:20  11  In order to prove infringement by equivalents,

09:45:26  12  Lone Star must prove the equivalence of the structure to a

09:45:32  13  claim element by a preponderance of the evidence.

09:45:38  14  Lone Star alleges that ASUS is liable for

09:45:41  15  infringement by actively inducing its customer to directly

09:45:46  16  infringe the '435 patent within the United States.  As with

09:45:53  17  direct infringement, you must determine whether there has

09:45:56  18  been active inducement on a claim-by-claim basis.

09:45:59  19  To prove active inducement, Lone Star must

09:46:03  20  establish that it is more likely than not that, Number 1,

09:46:06  21  the acts are actually carried out by another, such as

09:46:11  22  ASUS's customers, and that the other directly infringes

09:46:15  23  that claim within the United States;

09:46:16  24  Number 2, that ASUS took action during the time

09:46:20  25  the patent was in force, intending to cause the infringing

09:46:25  1  acts by another;

09:46:26  2          And, Number 3, that ASUS was aware of the

09:46:29  3  patent-in-suit and knew that the acts, if taken, would

09:46:32  4  constitute infringement of that patent, or ASUS believed

09:46:37  5  that there was a high probability that the actions taken by

09:46:40  6  others infringed the patent-in-suit and took deliberate

09:46:47  7  steps to avoid learning of that infringement.

09:46:50  8          Although Lone Star need not prove that ASUS has

09:46:54  9  directly infringed, to prove indirect infringement, Lone

09:47:00  10  Star must prove that someone directly infringed.  If there

09:47:03  11  is no direct infringement by anyone within the United

09:47:08  12  States, ASUS cannot have actively induced infringement of

09:47:12  13  the patent.

09:47:12  14          If you find that ASUS was aware of the

09:47:16  15  patent-in-suit but believed that the acts it encouraged did

09:47:21  16  not infringe that patent, ASUS cannot be liable for

09:47:25  17  inducement.  In order to establish inducement of

09:47:28  18  infringement it is not sufficient that another directly

09:47:31  19  infringes the claims, nor is it sufficient that ASUS was

09:47:35  20  aware of the acts by another that allegedly constitute the

09:47:39  21  direct infringement.

09:47:41  22          Rather, in order to find inducement of

09:47:44  23  infringement, you must find that ASUS specifically intended

09:47:48  24  another to infringe the patent-in-suit.  The mere fact, if

09:47:53  25  true, that ASUS knew or should have known that there was a

09:47:57  1  substantial risk that another's acts would infringe the

09:48:00  2  patent-in-suit would not be sufficient for active

09:48:04  3  inducement of infringement.

09:48:05  4      Like all other disputed issues in this case, this

09:48:09  5  final element of induced infringement can be proven by

09:48:14  6  circumstantial evidence.

09:48:16  7      Lone Star is not required to present hard proof of

09:48:21  8  any direct infringer.  Lone Star must prove that ASUS's

09:48:27  9  actions led customers to directly infringe a claim of the

09:48:32  10  patent-in-suit within the United States.  But Lone Star may

09:48:36  11  do so with circumstantial, as opposed to direct evidence.

09:48:42  12      I will now instruct you on the rules you must

09:48:46  13  follow in deciding whether or not ASUS has proven that

09:48:49  14  Claims 1 through 3, 5 and 6, and 13 through 15 of the '435

09:48:53  15  patent are invalid.  Before discussing the specific rules,

09:48:58  16  I want to remind you about the standard of proof that

09:49:01  17  applies to this defense.

09:49:05  18      To prove invalidity of any patent claim, ASUS must

09:49:10  19  persuade you by clear and convincing evidence that the

09:49:13  20  claim is invalid.  Patent invalidity is a defense to patent

09:49:18  21  infringement.  For a patent to be valid, the invention

09:49:21  22  claimed must be new, useful, and not obvious.

09:49:25  23      A patent cannot take away from people their right

09:49:28  24  to use what was known or what would have been obvious when

09:49:32  25  the invention was made.

09:49:34  1          That which precedes the priority date of the

09:49:39  2  patent, invalidates, and that which comes after, infringes.

09:49:43  3  Claims are given the same meaning for the purpose of both

09:49:47  4  validity and infringement.

09:49:51  5          An issued patent is accorded a presumption of

09:49:54  6  validity based on the presumption that the Patent Office

09:49:57  7  acted correctly in issuing a patent.  Each claim of a

09:50:02  8  patent is presumed valid, independently of the validity of

09:50:08  9  the other claims.  The presumption of validity remains

09:50:12  10  intact.  In other words, the burden never shifts to Lone

09:50:16  11  Star to prove that its patent is valid.

09:50:20  12          Even though the Patent Office has allowed the

09:50:24  13  claims of a patent, you have the ultimate responsibility

09:50:28  14  for determining whether the claims of the patent are valid.

09:50:33  15          The presumption of validity is not an additional

09:50:37  16  hurdle to be cleared for finding invalidity.  By applying

09:50:46  17  the clear and convincing standard, you are already

09:50:51  18  accounting for the presumption of validity.

09:50:53  19          That which came before a patent is generally

09:50:56  20  referred to as prior art.  Prior art may include items that

09:51:00  21  were publicly known, such as patents and printed

09:51:03  22  publications, as well as products that have been used or

09:51:06  23  offered for sale in this country that disclose the claimed

09:51:10  24  invention or elements of the claimed invention.

09:51:13  25          To be prior art, the item or reference must have

09:51:16   1   been made, known, used, published, or patented before the

09:51:20   2   priority date of the patent.

09:51:21   3           The parties agree that the priority date for the

09:51:26   4   patent-in-suit is August 6th, 2001.  And the effective

09:51:33   5   U.S.  filing date of the application of the patent is

09:51:35   6   August 6th, 2001.

09:51:36   7           For a claim to be invalid because it is

09:51:39   8   anticipated, ASUS must show by clear and convincing

09:51:43   9   evidence that all of its requirements must have existed in

09:51:47  10   a single device or method that predates the claimed

09:52:01  11   invention or must have been described in a single previous

09:52:04  12   publication or patent that predates the claimed invention.

09:52:09  13   In patent law, these previous devices, methods,

09:52:12  14   publications, or patents are called prior art references.

09:52:16  15           The description in the written reference does not

09:52:20  16   have to be in the same words as the claim, but all of the

09:52:24  17   requirements of the claim must be there, either stated or

09:52:27  18   necessarily implied so that someone of ordinary skill in

09:52:33  19   the field of digital video system design, looking at that

09:52:36  20   one reference, would be able to make and use the claimed

09:52:40  21   invention.

09:52:41  22           To anticipate the invention, the prior art

09:52:45  23   reference or system must disclose all of the requirements

09:52:49  24   of the claim, either expressly or implicitly, to a person

09:52:54  25   having ordinary skill in the art in the technology of the

09:53:00  1   invention so that looking at that one prior art reference
09:53:02  2   or system, the person could make and use the claimed
09:53:05  3   invention.
09:53:06  4        Anticipation must be determined on a
09:53:11  5   claim-by-claim basis.  In determining whether a single item
09:53:15  6   of prior art anticipates a patent claim, you may consider
09:53:20  7   not only what is expressly disclosed in that item of prior
09:53:25  8   art, but also what is inherently present or disclosed in it
09:53:28  9   or inherently results from its use.  Prior art inherently
09:53:33  10  anticipates a patent claim if the missing requirement or
09:53:37  11  feature would necessarily be present in prior art.
09:53:40  12       In order for someone to be entitled to a patent,
09:53:44  13  the invention must actually be new.  In general, inventions
09:53:49  14  are new when the claimed invention has not been used in
09:53:53  15  this country or the claimed invention was already patented
09:53:55  16  or described in a printed publication anywhere in the world
09:54:00  17  before the priority date of the patent.
09:54:02  18       Here is a list of the ways that ASUS can show that
09:54:06  19  a patent claim is anticipated:
09:54:10  20       1.  The claimed invention was already publicly
09:54:14  21  known or publicly used by others in the United States
09:54:16  22  before August 6, 2001;
09:54:19  23       2.  If the claimed invention was already patented
09:54:22  24  or described in a printed publication anywhere in the world
09:54:25  25  before August 6, 2001;

09:54:29  1        If the claimed invention was already patented or

09:54:32  2    described in a printed publication anywhere in the world by

09:54:36  3    anyone else more than a year before the effective

09:54:39  4    U.S. filing date of the application for the patent.  An

09:54:43  5    invention was patented by another if the other patent

09:54:46  6    describes the same invention claimed by Lone Star to a

09:54:50  7    person having ordinary skill in the technology;

09:54:53  8        If the claimed invention was already described in

09:54:57  9    another issued U.S. patent or published U.S. Patent

09:55:02  10   application that was based on a patent application filed

09:55:06  11   before August 6, 2001;

09:55:08  12       5.  If the claimed invention was publicly used,

09:55:14  13   sold, or offered for sale in the United States more than

09:55:18  14   one year before the effective U.S. filing date of the

09:55:23  15   application for the patent, an invention was publicly used

09:55:27  16   when it was either accessible to the public or commercially

09:55:32  17   exploited.

09:55:32  18       To understand how the prior art system operates,

09:55:34  19   you may rely on multiple pieces of evidence that describe a

09:55:39  20   same prior art system for the purposes of finding

09:55:44  21   anticipation.  In other words, if you find a single prior

09:55:48  22   art system existed that meets every element of the claim,

09:55:51  23   then that is enough to find the claim invalid as

09:55:55  24   anticipated.

09:55:56  25       ASUS also contends that the asserted claims are

09:56:00  1   invalid as obvious.  Even though an invention may not have

09:56:06  2   been identically disclosed or described before it was made

09:56:08  3   by an inventor, in order to be patentable, the invention

09:56:12  4   must also not have been obvious to a person of ordinary

09:56:15  5   skill in the field of technology of the patent at the time

09:56:18  6   the invention was made.

09:56:19  7        ASUS may establish that a patent claim was invalid

09:56:22  8   by showing by clear and convincing evidence that the

09:56:25  9   claimed invention would have been obvious to persons having

09:56:29  10  ordinary skill in the art of the field of the invention at

09:56:32  11  the time the invention was made.

09:56:34  12       In determining whether a claimed invention is

09:56:36  13  obvious, you must consider the level of ordinary skill in

09:56:40  14  the field of technology of the patent that someone would

09:56:43  15  have had at the time the claimed invention was made, the

09:56:45  16  scope and content of the -- a prior art and any differences

09:56:52  17  between the prior art and the claimed invention.

09:56:55  18       In deciding what the level of ordinary skill in

09:56:58  19  the field of the invention is, you should consider all the

09:57:01  20  evidence introduced at trial, including but not limited to:

09:57:07  21       1.  The levels of education and experience of the

09:57:11  22  inventor and other persons actively working in the field;

09:57:15  23       2.  The types of problems encountered in the

09:57:18  24  field;

09:57:18  25       3.  Prior art solutions to those problems;

09:57:22  1          4.   The rapidity with which innovations are made;

09:57:22  2   and

09:57:29  3          5.   The sophistication of the technology.

09:57:31  4          In considering whether the claimed invention was

09:57:33  5   obvious, you must first determine the scope and content of

09:57:37  6   the prior art.  The scope and content of -- content of

09:57:42  7   prior art for deciding whether the intention -- invention

09:57:46  8   was obvious includes at least prior art in the same field

09:57:51  9   as the claimed invention, regardless of the problem

09:57:53  10   addressed by the item or reference and prior art from

09:57:56  11   different fields that a person of ordinary skill would have

09:58:00  12   considered when trying to solve the problem that is

09:58:04  13   addressed by the invention.

09:58:06  14          You should analyze whether there are any relevant

09:58:09  15   differences between the prior art and the claimed invention

09:58:12  16   from the view of a person of ordinary skill in the art at

09:58:16  17   the time of the invention.

09:58:18  18          Your analysis must determine the impact, if any,

09:58:22  19   of such difference on the obvious or nonobviousness of the

09:58:26  20   claimed invention.

09:58:27  21          ASUS contends that Claims 1 through 3, 5 and 6,

09:58:31  22   and 13 through 15 of the '435 patent are invalid under a

09:58:35  23   doctrine known as obviousness-type double patenting.

09:58:40  24          This doctrine prevents one person from obtaining

09:58:44  25   more than one valid patent for either, A, the same

09:58:48  1  invention, or, B, an obvious modification of the same

09:58:51  2  invention.

09:58:52  3       The doctrine exists to prevent an inventor from

09:58:56  4  extending the life and protection of his or her invention

09:58:59  5  by securing a second later expiring patent for the same

09:59:04  6  invention.

09:59:04  7       To succeed on this defense, ASUS must show by

09:59:08  8  clear and convincing evidence that the claim defines an

09:59:11  9  invention that is an obvious variation of or anticipated by

09:59:16  10  an invention claimed in another patent or patents owned by

09:59:22  11  Lone Star.

09:59:23  12       There are two steps involved in assessing whether

09:59:26  13  this doctrine applies.

09:59:27  14       First, you should compare the claims of the other

09:59:30  15  patent or patents with the claim of the later patent,

09:59:34  16  taking into account the claim construction definitions that

09:59:38  17  I have previously given you and determine whether or not

09:59:40  18  there are any differences between them.

09:59:42  19       In making this comparison, you may compare one or

09:59:45  20  more claims of earlier Lone Star patents with the later

09:59:50  21  claims asserted in this case by Lone Star that ASUS

09:59:54  22  contends are invalid.

09:59:56  23       Lone Star patents that were issued earlier than

09:59:58  24  the asserted patents in this case or later issued but

10:00:02  25  earlier expiring Lone Star patents can qualify as a double

10:00:07  1   patenting reference.

10:00:08  2          If you find by clear and convincing evidence that

10:00:11  3   there are no differences between the claims of the earlier

10:00:15  4   patent or patents and that the asserted claim -- and the

10:00:20  5   asserted claim of a later patent, then the asserted claim

10:00:23  6   is invalid under the doctrine of double patenting.

10:00:26  7          Second, if you find that differences exist between

10:00:30  8   the claims of the earlier patent or patents and the

10:00:33  9   asserted claim of a later patent, you must then determine

10:00:36  10  whether any such differences rendered the claimed

10:00:39  11  inventions patentably distinct.

10:00:42  12         To answer the second question, you should consider

10:00:46  13  whether the claim or claims of the referenced patent

10:00:50  14  renders the claim asserted in this case obvious.

10:00:53  15         Under the doctrine of double patenting, the claims

10:00:58  16  in the early-filed or expiring patent or patents serve as

10:01:02  17  the prior art.  This analysis differs from general

10:01:09  18  obviousness because you need not consider any secondary

10:01:12  19  considerations of nonobviousness.

10:01:15  20         Any differences between the referenced claims and

10:01:18  21  the asserted claim at issue should not be considered in

10:01:23  22  isolation for purposes of determining whether the claimed

10:01:26  23  inventions are patentably distinct.  Rather, the claims

10:01:31  24  must be considered and compared to one another as a whole.

10:01:34  25         If you find by clear and convincing evidence that

10:01:36  1  any differences between the claims of the earlier patent or

10:01:40  2  patents and the asserted claim of a later patent would have

10:01:45  3  been obvious or not patentably distinct to a person of

10:01:51  4  ordinary skill in the art than the asserted claims -- then

10:01:54  5  the asserted claim is invalid under the doctrine of double

10:01:58  6  patenting.

10:01:58  7       If you find that ASUS has infringed any valid

10:02:09  8  claim of the patent-in-suit, you must then consider what

10:02:12  9  amount of damages award to Lone Star.  If you find that

10:02:17  10  ASUS has not infringed any valid claim of the patent, then

10:02:21  11  Lone Star is not entitled to any damages.

10:02:25  12       I will now instruct you about the measure of

10:02:28  13  damages, and by instructing you on damages, I'm not

10:02:32  14  suggesting which party should win on any issue.

10:02:35  15       Any damages you award must be adequate to

10:02:39  16  compensate Lone Star for any infringement you find.

10:02:42  17  Damages are not meant to punish an infringer or to set an

10:02:48  18  example.  Any damages award, if you reach this issue,

10:02:52  19  should put Lone Star in approximately the same financial

10:02:54  20  position that it would have been had the infringement not

10:02:57  21  occurred.

10:02:58  22       Lone Star has the burden to establish the amount

10:03:01  23  of its damages by a preponderance of the evidence.  The

10:03:08  24  Plaintiff is not required to prove its damages with

10:03:11  25  mathematical precision but must prove them with reasonable

10:03:15  1   certainty.  You may not award damages that are speculative,

10:03:19  2   damages that are only possible, or damages that are based

10:03:22  3   on guesswork.

10:03:23  4         In this case, Lone Star seeks damages in the form

10:03:27  5   of a reasonable royalty.  A reasonable royalty is defined

10:03:31  6   as the money amount Lone Star and ASUS would have agreed

10:03:35  7   upon as a fee for ASUS's use of the invention at the time

10:03:40  8   ASUS sold its first accused products.

10:03:43  9         The damages should be no more or no less than the

10:03:47  10  value of the patented invention.  The patent law does not

10:03:52  11  allow you to use the value of an entire product or service

10:03:56  12  or the value of an entire market to determine damages

10:04:04  13  unless you find that Lone Star has proven by a

10:04:07  14  preponderance of the evidence that the patented feature of

10:04:09  15  the product drives consumer demand for the entire product

10:04:14  16  or service.

10:04:15  17        If you find that Lone Star has established

10:04:19  18  infringement of a valid claim, Lone Star is entitled to at

10:04:24  19  least a reasonable royalty to compensate them for that

10:04:29  20  infringement.

10:04:29  21        A reasonable royalty is the amount of money that a

10:04:32  22  willing patent owner and a willing prospective licensee

10:04:37  23  would have agreed upon at the time the infringement began

10:04:40  24  for a license to make, use, or sell the invention.

10:04:45  25        It is the royalty that would have resulted from an

10:04:47  1   arm's length negotiation between a willing licensor and a

10:04:53  2   willing licensee.  Here Lone Star as the licensor, and ASUS

10:04:58  3   as the licensee, at the time that ASUS sold its first

10:05:04  4   accused products.

10:05:04  5        This is known as the hypothetical negotiation.

10:05:09  6   Unless like a real-world negotiation, all parts to the

10:05:14  7   hypothetical negotiation are presumed to believe that the

10:05:18  8   patent is both infringed and valid.

10:05:22  9        In considering this hypothetical negotiation, you

10:05:25  10  should focus on what the expectations of the patent owner

10:05:30  11  and the infringer would have been had they entered into an

10:05:35  12  agreement at that time and had they acted reasonably in

10:05:38  13  their negotiations.

10:05:40  14       The reasonable royalty you determine must be a

10:05:45  15  royalty that would have resulted from the hypothetical

10:05:48  16  negotiation and not simply a royalty either party would

10:05:53  17  have preferred.

10:05:54  18       The date of the hypothetical negotiation between

10:05:57  19  Lone Star and ASUS is the earliest date that ASUS sold in

10:06:04  20  the United States one of the products that Lone Star

10:06:06  21  accuses in this lawsuit of infringing the patent-in-suit.

10:06:10  22       In making your determination of the amount of a

10:06:13  23  reasonable royalty, it is important that you focus on the

10:06:16  24  time period when ASUS first infringed the patent-in-suit

10:06:21  25  and the facts that existed at that time.

10:06:25  1          However, evidence of things that happened after

10:06:28  2   the infringement first began may be considered in

10:06:31  3   evaluating the reasonable royalty only to the extent that

10:06:35  4   the evidence aids in asserting -- in assessing what

10:06:42  5   royalties would have resulted from the hypothetical

10:06:45  6   negotiation.

10:06:45  7          Your determination does not depend on the actual

10:06:48  8   willingness of the parties to the lawsuit to engage in such

10:06:52  9   negotiations.  Your focus should be on what the party's

10:06:59  10  expectations would have been had they entered into the

10:07:03  11  negotiations for royalties on the date of the hypothetical

10:07:05  12  negotiation.

10:07:05  13         In deciding what is a reasonable royalty that

10:07:09  14  would have resulted from the hypothetical negotiation, you

10:07:12  15  may consider the factors that the patent owner, Lone Star,

10:07:15  16  and the alleged infringer, ASUS, would consider in setting

10:07:20  17  the amount of the alleged -- in setting the amount the

10:07:25  18  alleged infringer should pay.

10:07:27  19         I will now list for you a number of factors you

10:07:31  20  may consider.  They're as follows:

10:07:34  21         1.  The royalties received by the patentee for the

10:07:38  22  licensing of the patent-in-suit proving or tending to prove

10:07:42  23  an established royalty;

10:07:43  24         2.  The rates paid by the licensee for the use of

10:07:47  25  other patents comparable to the patent-in-suit;

10:07:52  1          3.   The nature and scope of the license as

10:07:55  2   exclusive or non-exclusive or as restricted or

10:08:01  3   nonrestricted in terms of territory or with respect to whom

10:08:05  4   the manufactured product may be sold;

10:08:09  5          4.   The licensor's established policy and

10:08:11  6   marketing program to maintain his or her patent monopoly by

10:08:16  7   not licensing others to use the invention or by granting

10:08:21  8   licenses under special conditions designed to preserve that

10:08:28  9   monopoly;

10:08:31  10         5.   The commercial relationship between the

10:08:32  11   licensor and licensee, such as whether they are competitors

10:08:35  12   in the same territory, in the same line of business, or

10:08:38  13   whether they are inventor and promoter;

10:08:41  14         6.   The effect of selling the patented specialty

10:08:46  15   in promoting sales of other products of the licensee, the

10:08:52  16   existing value of the invention to the licensor as a

10:08:56  17   generator of sales of his nonpatented items, and the extent

10:09:02  18   of such derivative or conduit sales;

10:09:06  19         7.   The duration of the patent and the term of the

10:09:10  20   license;

10:09:10  21         8.   The established profitability of the product

10:09:14  22   made under the patent, its commercial success, and its

10:09:21  23   current popularity;

10:09:24  24         9.   The utility and advantages of the patented

10:09:28  25   property over the old modes or devices, if any, that had

10:09:32  1  been used for working out similar results;

10:09:35  2       10.  The nature of the patented invention, the

10:09:38  3  character of the commercial embodiment of it as owned and

10:09:42  4  produced by the licensor, and the benefit to those who

10:09:46  5  would have used the invention;

10:09:47  6       11.  The extent to which the infringer has made

10:09:51  7  use of the invention and any evidence probative of the

10:09:55  8  value of that use;

10:09:57  9       12.  The portion of the profit or of the selling

10:10:02  10  price that may be customary in the particular business or

10:10:06  11  in comparable business to allow for the use of the

10:10:10  12  invention or analogous inventions;

10:10:13  13       13.  The portion of the realizable profits that

10:10:17  14  should be credited to the invention as distinguished from

10:10:23  15  nonpatented elements, the manufacturing process, business

10:10:27  16  risks, or significant features or improvements added by the

10:10:31  17  infringer;

10:10:32  18       14.  The opinion and testimony of qualified

10:10:36  19  experts;

10:10:37  20       15.  The amount that a licensor, such as the

10:10:42  21  patentee, and a licensee, such as the infringer, would have

10:10:46  22  agreed upon at the time the infringement began if both had

10:10:51  23  been reasonably and voluntarily trying to reach an

10:10:54  24  agreement, that is, the amount which a pursuant licensee

10:10:58  25  who desired as a business proposition to obtain a license

10:11:02   1   to manufacture and sell a particular article embodying the

10:11:08   2   patented invention would have been willing to pay as a

10:11:11   3   royalty and yet be able to make a reasonable profit and

10:11:15   4   which amount would have been acceptable by a pursuant

10:11:19   5   patentee who was willing to grant a license.

10:11:22   6          The value that the patent owner gave to purchase

10:11:27   7   the patent may be relevant to the determination of a

10:11:32   8   reasonable royalty.

10:11:34   9          No one factor is dispositive, and you can and

10:11:39   10  should consider the evidence that that has been presented

10:11:42   11  to you in this case on each of these factors.

10:11:46   12         You may also consider any other factors which in

10:11:50   13  your mind would have increased or decreased the royalty the

10:11:55   14  alleged infringer would have been willing to pay and the

10:11:59   15  patentholder would have been willing to accept, acting as

10:12:02   16  normally pursuant business people.

10:12:05   17         In determining a reasonable royalty, you may also

10:12:07   18  consider whether or not a commercially acceptable

10:12:11   19  noninfringing alternative was available to ASUS at the time

10:12:15   20  of the hypothetical negotiation and whether that would have

10:12:20   21  affected the reasonable royalty the parties would have

10:12:23   22  agreed upon.

10:12:24   23         When determining a reasonable royalty, you may

10:12:27   24  consider evidence concerning the amounts that other parties

10:12:30   25  have paid for rights to the patent in question or for

10:12:34  1  rights to similar technologies.  A license agreement need

10:12:39  2  not be perfectly comparable to a hypothetical license that

10:12:43  3  would have been negotiated between Lone Star and ASUS in

10:12:46  4  order for you to consider it.

10:12:47  5        However, if you choose to rely upon evidence from

10:12:51  6  any licensing agreements, you must account for any

10:12:56  7  differences between those licenses and the hypothetically

10:13:00  8  negotiated license between Lone Star and ASUS when you make

10:13:04  9  your reasonable royalty determination, including the type

10:13:08  10  of technology license; whether the license contained a

10:13:13  11  cross license or other similar patent protections; whether

10:13:16  12  the license contained any value related to a release of

10:13:20  13  liability; the date when the license was entered; the

10:13:25  14  financial or economic conditions of the parties at the time

10:13:28  15  the parties entered into the license; the extent of use, if

10:13:33  16  any, of any particular licensed patents; the number of

10:13:38  17  patents involved in the license; whether or not the license

10:13:41  18  covered foreign intellectual property rights; the extent to

10:13:44  19  which litigation may have affected the license; and whether

10:13:49  20  contrary to the hypothetical negotiation, the licensee in

10:13:52  21  the real world license at the time of entering the license

10:13:57  22  believed that the patents were either not infringed or were

10:14:02  23  invalid.

10:14:02  24        Licenses and settlements must not be considered

10:14:08  25  when determining issues of infringement or invalidity.

10:14:13  1  However, licenses and settlement agreements may be

10:14:18  2  considered when considering damages.  Thus, the fact that

10:14:21  3  other companies have taken licenses from Lone Star or have

10:14:26  4  settled litigation with Lone Star is not relevant to any

10:14:29  5  issue other than damages in this case.

10:14:32  6      In determining a reasonable royalty, you may also

10:14:38  7  consider evidence concerning the availability and cost of

10:14:45  8  noninfringing alternatives to the patented invention.  A

10:14:49  9  noninfringing alternative must be an acceptable product

10:14:52  10 that is licensed under the patent or that does not infringe

10:14:56  11 the patent.

10:14:57  12     Damages for patent infringement must be

10:15:03  13 apportioned to reflect the value the invention contributes

10:15:07  14 to the accused products or features and must not include

10:15:14  15 value from the accused products or features that is not

10:15:19  16 attributable to the patent.

10:15:20  17     In considering the evidence of a reasonable

10:15:22  18 royalty, you are not required to accept one specific figure

10:15:26  19 or another for the reasonable royalty.  You are entitled to

10:15:30  20 determine what you consider to be a reasonable royalty

10:15:33  21 based upon your consideration of all of the evidence that

10:15:38  22 was presented by the parties, whether that evidence is of a

10:15:41  23 specific figure or a range of figures.

10:15:44  24     A royalty may be calculated as a one-time lump-sum

10:15:52  25 payment or a running royalty.  A one-time lump-sum payment

10:15:57   1   that the infringer would have paid at the time of the

10:16:02   2   hypothetical negotiation for a license covers all sales of

10:16:05   3   the licensed product, both past and future.

10:16:10   4        This differs from payment of a running royalty

10:16:12   5   because with a running royalty, the licensee pays based on

10:16:17   6   the actual licensed product it sells.  When a one-time

10:16:23   7   lump-sum is paid, the infringer pays a single price for a

10:16:28   8   license covering both past and future infringing sales.

10:16:34   9        It is up to you, based on the evidence, to decide

10:16:37  10   what type of royalty, if any, is appropriate in this case

10:16:40  11   for the life of the patent.

10:16:41  12        In determining the amount of damages, you should

10:16:43  13   not award damages for any infringement occurring before the

10:16:47  14   lawsuit was brought.  The lawsuit was filed on February 20,

10:16:55  15   2019.  As such, you should not award damages for any

10:16:59  16   infringement occurring prior to February 20, 2019.

10:17:04  17        As noted above in discussing Lone Star's burden of

10:17:08  18   proving ASUS's liability for active inducement,

10:17:12  19   circumstantial evidence is sufficient for a finding of

10:17:15  20   indirect infringement without requiring proof that any

10:17:19  21   individual third-party direct infringer was actually

10:17:22  22   persuaded to infringe.

10:17:24  23        In order to recover damages for induced

10:17:29  24   infringement, Lone Star must either prove that ASUS's

10:17:34  25   accused products necessarily infringe the patent-in-suit or

10:17:37  1  prove acts of direct infringement by others that were

10:17:42  2  induced by ASUS.  Because the amount of damages for induced

10:17:47  3  infringement is limited by the number of instances of

10:17:50  4  direct infringement, Lone Star must prove -- must further

10:17:57  5  prove the number of direct acts of infringement of the

10:18:00  6  patent-in-suit, for example, by showing individual acts of

10:18:03  7  direct infringement or by showing that a particular class

10:18:07  8  of product -- direct -- products directly infringes.

10:18:12  9      You must perform your duties as jurors without

10:18:15  10  bias or prejudice as to any party.  The law does not permit

10:18:19  11  you to be controlled by sympathy, prejudice, or public

10:18:23  12  opinion.  Both parties expect that you will carefully and

10:18:28  13  impartially consider all of the evidence, follow the law as

10:18:32  14  I am now giving it to you, and reach a just verdict,

10:18:36  15  regardless of the consequences.

10:18:39  16      It is your sworn duty as jurors to discuss the

10:18:42  17  case with one another in an effort to reach agreement, if

10:18:45  18  you can do so.  Each of you must decide the case for

10:18:50  19  yourself, but only after full consideration of the evidence

10:18:54  20  with the other members of the jury.

10:18:56  21      While you are discussing the case, do not hesitate

10:19:00  22  to reexamine your own opinion and change your mind if you

10:19:07  23  become convinced that you are wrong.  However, do not give

10:19:10  24  up your honest beliefs solely because others think

10:19:15  25  differently or meant merely to finish the case.  Remember,

10:19:18  1  in a very real way, you are the judges of the facts.  Your

10:19:23  2  only interest is to seek the truth from the evidence in a

10:19:27  3  case.  You should consider and decide this case as a

10:19:33  4  dispute between persons of equal standing in the community,

10:19:37  5  of equal worth, and holding the same or similar stations in

10:19:41  6  if life.

10:19:42  7        Corporations and businesses are entitled to the

10:19:44  8  same fair trial as a private individual.  All persons,

10:19:50  9  including corporations, both foreign and domestic, stand

10:19:56  10  equal before the law, regardless of size or who owns them

10:20:02  11  or where they're located, and they are to be treated as

10:20:05  12  equals.

10:20:05  13        When you retire to the jury room to begin your

10:20:09  14  deliberations on your verdict, you will each have a copy of

10:20:13  15  this charge, and the exhibits which the Court has admitted

10:20:18  16  into evidence will be delivered to you.

10:20:21  17        The first thing you should do is to select one

10:20:25  18  among your number to serve as your foreperson and then

10:20:29  19  begin conducting your deliberations.  If at any time you

10:20:34  20  recess during your deliberations, please follow all of the

10:20:39  21  instructions that I have previously given you about your

10:20:43  22  conduct during the trial.

10:20:45  23        After you have reached your verdict, your

10:20:49  24  foreperson will fill in on the form your answers to the

10:20:52  25  questions.  You should not reveal your answers until such

| | | |
|---|---|---|
| 10:20:59 | 1 | time as the verdict is accepted and you are discharged, |
| 10:21:03 | 2 | unless you are otherwise directed by me. |
| 10:21:06 | 3 | There is also a place on the verdict form for the |
| 10:21:10 | 4 | foreperson to sign and date. |
| 10:21:13 | 5 | As I told you when we began the trial, any notes |
| 10:21:19 | 6 | that you may have taken during the trial are only aids to |
| 10:21:24 | 7 | your memory.  And if your memory should differ from your |
| 10:21:27 | 8 | notes, you should rely on your memory and not on your |
| 10:21:31 | 9 | notes. |
| 10:21:31 | 10 | Your notes are not evidence, and a juror who has |
| 10:21:36 | 11 | not taken notes should rely on his or her own independent |
| 10:21:41 | 12 | recollection of the evidence and not be unduly influenced |
| 10:21:45 | 13 | by the notes of other jurors.  Notes are not entitled to |
| 10:21:49 | 14 | any greater weight than the recollection or impression of |
| 10:21:53 | 15 | each juror about the testimony. |
| 10:21:56 | 16 | If at any time during your deliberations you need |
| 10:22:00 | 17 | to communicate with me, please give a written message or |
| 10:22:04 | 18 | question to the court security officer who will bring it |
| 10:22:08 | 19 | directly to me, and I will then respond as promptly as |
| 10:22:13 | 20 | possible, either in writing or by having you brought back |
| 10:22:17 | 21 | into the courtroom so that I can address you orally as I am |
| 10:22:20 | 22 | now.  I will always first disclose to the attorneys your |
| 10:22:23 | 23 | question and my response before I answer your -- your |
| 10:22:28 | 24 | question. |
| 10:22:28 | 25 | And then finally -- and I will give you further |

10:22:33  1   instructions about this at the very conclusion -- after you

10:22:37  2   have reached a verdict, you're not required to talk with

10:22:40  3   anyone about the case unless I order otherwise.

10:22:43  4        All right.  We have been going a little more than

10:22:47  5   an hour, so to avoid breaking between the parties' closing

10:22:51  6   arguments, we're going to go ahead and recess for a short

10:22:54  7   time now.  And when we return, the parties will begin their

10:22:57  8   closing arguments.

10:22:57  9        So we'll be in recess about 15 minutes.

10:23:01  10       COURT SECURITY OFFICER:  All rise for the jury.

10:23:04  11       (Jury out.)

10:29:19  12       (Recess.)

10:36:36  13       THE COURT:  Okay.  Does the Plaintiff want a

10:36:41  14   warning, five-minute warning, or something like that?

10:36:45  15       MR. BENNETT:  Let's say two minutes, Your Honor.

10:36:47  16       THE COURT:  Two minutes.

10:36:50  17       Defendant?

10:36:51  18       MR. OLIVER:  No, Your Honor.  I have a timer that

10:37:07  19   I'll look at.

10:37:08  20       THE COURT:  Okay.  Let's have the jury brought in.

10:37:12  21       COURT SECURITY OFFICER:  All rise for the jury.

10:37:14  22       (Jury in.)

10:37:28  23       THE COURT:  Please be seated.

10:37:30  24       Okay.  At this time, ladies and gentlemen, the

10:37:33  25   parties will present their closing arguments to you.

10:37:35  1              Mr. Bennett, you may proceed.

10:37:37  2              MR. BENNETT:  Thank you, Your Honor.

10:37:39  3              Ladies and gentlemen of the jury.

10:37:39  4              Some time ago -- I won't admit to how long ago --

10:37:44  5      I was about five -- four or five years old, I was in the

10:37:48  6      grocery store with my mom.  I didn't really understand

10:37:51  7      property rights at that age.  I knew what I wanted, and at

10:37:55  8      that point I wanted a pack of gum.  My mother had said no.

10:37:59  9      When her back was turned, talking to the clerk, I slipped

10:38:03  10     that pack of gum into my pocket, and I walked out the store

10:38:06  11     with my mom.  She saw the gum in my pocket, asked me why I

10:38:10  12     took it.  And instead of letting me take it, she took me

10:38:15  13     back into the store, made me account for it, helped me

10:38:20  14     understand that when you take something, even if you didn't

10:38:23  15     mean to or even if you didn't know, you need to account for

10:38:27  16     it.

10:38:28  17             And accounting for it is why we're here today.

10:38:35  18     Sadly, unfortunately for Lone Star, multinational faceless

10:38:41  19     corporations don't have mothers.  Doesn't mean they aren't

10:38:47  20     people who can hold them to account for what they do.

10:38:51  21     There are those people, and today those people are you.

10:38:55  22             Been a long road.  I think you've seen during the

10:38:58  23     course of this trial the burdens that we've faced in trying

10:39:01  24     to help ASUS account for its use of our property, the

10:39:07  25     efforts that we've gone to to show them that we have a

10:39:11  1   valid U.S. patent that offers the public a valuable

10:39:17  2   invention that they have used to enhance their product, to

10:39:23  3   enhance their sales for which they owe us compensation,

10:39:28  4   reasonable compensation.

10:39:29  5       But they've fought us at every turn.  They

10:39:36  6   wouldn't be held to account.  All of that has led to this

10:39:41  7   moment in this courtroom right now.

10:39:43  8       Your Honor -- you guys -- the jury has heard a lot

10:39:50  9   of evidence and seen a lot of documents and heard a lot of

10:39:53  10  things.  And that's hard to sort through sometimes, and

10:39:58  11  that was the purpose of this document the Court just read

10:40:02  12  to you and that you'll receive a copy of back in that jury

10:40:05  13  room.  This is here to help you make sense of it all, to

10:40:10  14  tell you what matters, what doesn't -- you've heard a lot

10:40:15  15  of what doesn't -- and tell you who you should listen to

10:40:18  16  and to give you the principles and factors that tell you

10:40:23  17  who you shouldn't.

10:40:24  18      And it's my job the help you understand that as I

10:40:27  19  go through the evidence that we've discussed during this

10:40:30  20  week.

10:40:32  21      I want to start where ASUS has started at every

10:40:40  22  turn, at all of our witnesses, at all of their witnesses.

10:40:44  23  Not with infringement.  They don't want to focus on

10:40:47  24  infringement.

10:40:47  25      When they took Dr. Ducharme on cross, where did

10:40:51  1  they start?  Invalidity.  When they took their expert on

10:40:55  2  the stand on direct, where did they start?  Invalidity.

10:40:59  3  They don't want you to focus on infringement because they

10:41:03  4  know it's not good for them.

10:41:08  5       But let's focus on invalidity.

10:41:11  6       Dallas, can you bring up -- Dallas -- Denver --

10:41:18  7  different city, I did it again -- 103A, please.

10:41:22  8       You're going to get a verdict form back in the

10:41:24  9  jury room, and that verdict form on the invalidity question

10:41:27  10  is going to look like this, and there's going to be a

10:41:29  11  question:  Has ASUS proved by clear and convincing evidence

10:41:32  12  that any of the following claims of Lone Star's '435 patent

10:41:35  13  are invalid?  Clear and convincing evidence.

10:41:37  14       ASUS wants to adopt a policy of the best defense

10:41:41  15  is a good offense.  Don't look at infringement.  Let's look

10:41:48  16  at invalidity.  Well, we're happy to look at that, and

10:41:52  17  we're happy to match their burden of clear and convincing

10:41:55  18  evidence, the highest civil standard, to see if they've met

10:41:58  19  that burden, and they have not.

10:42:00  20       They submitted to you two invalidity defenses.

10:42:04  21       124, please.

10:42:08  22       One of them, quite frankly, is nonsensical.

10:42:17  23  Double patenting.  The original inventor of the '435 patent

10:42:23  24  had an earlier patent, and you heard some testimony about

10:42:26  25  that.

10:42:26   1          Do you remember what Mr. Oliver said in opening

10:42:28   2   about double patenting, that when you try to get a double

10:42:32   3   patent, it's somehow us trying to pull a fast one on the

10:42:37   4   Patent Office?  Remember that?

10:42:39   5          Their expert took the stand, and he talked all

10:42:41   6   about invalidity and how, well, the Patent Office didn't

10:42:44   7   have all the information I had.  You remember when he said

10:42:46   8   that on direct?  Well, the truth came out on cross.

10:42:50   9          On cross-examination, Mr. Liddle took the podium

10:42:56  10   and pointed out facts that ASUS never pointed out to you

10:43:00  11   about double patenting.  We had to do it.  And the facts we

10:43:03  12   pointed out were we didn't try to pull a fast on the Patent

10:43:06  13   Office.  We told them about the prior invention in three

10:43:10  14   different places.

10:43:11  15          Next slide.

10:43:12  16          There on the very face of the patent, later on in

10:43:16  17   the abstract, the same inventor present -- of the present

10:43:19  18   invention, and it goes on to describe.

10:43:23  19          Knowing all of that, despite what Dr. Stevenson

10:43:26  20   says, the Patent Office gave us the '435 patent.  Clearly,

10:43:31  21   it thought the patent was different.

10:43:35  22          And then we put on the stand Dr. Ducharme, and he

10:43:38  23   followed up for all the reasons that it was different.  Two

10:43:42  24   different technologies, two different patents, not the same

10:43:46  25   invention.  Fake news.

10:43:56   1            107, please.

10:43:58   2            I won't get in all the minutia you heard about the

10:44:08   3    Brett reference.  There's a lot of reasons.  For whatever

10:44:12   4    reason on cross-examination, they tried to get Dr. Ducharme

10:44:15   5    to say it was limited to one or the other, real time video.

10:44:20   6            That's noise.  Dr. Ducharme gave several reasons

10:44:25   7    why the Brett reference, the only other basis they've given

10:44:28   8    you for finding our patent invalid, and he gave you several

10:44:33   9    reasons.  This was one of the most prominent ones, that the

10:44:41  10    saturation changes more than one color.

10:44:43  11            That's the focus of our invention, right?  We'll

10:44:48  12    look at the documents that ASUS itself created showing the

10:44:51  13    inventions is for individual colors.  This changes more

10:44:56  14    than one individual color.

10:45:01  15            We show that in the body of the patent.  The

10:45:04  16    patent is in evidence, and you can look at it, and you

10:45:07  17    could remember the testimony of Dr. Ducharme about that

10:45:08  18    particular feature of the Brett reference.  It was referred

10:45:11  19    to repeatedly during the trial, the prior patent, the 1998

10:45:16  20    patent, the film processing patent.  Not the same.

10:45:21  21            Let me make it even easier for you.  If you looked

10:45:27  22    at our expert and the fact that the Patent Office granted

10:45:32  23    us a patent, despite the existence of the Brett reference,

10:45:38  24    despite the existence of the prior patent, the '012, the

10:45:42  25    other Segman patent and you thought, well, they're about

10:45:46    1  even.  ASUS has already lost because clear and convincing

10:45:53    2  evidence isn't here.  It's here.

10:45:55    3         Clear and convincing evidence is the standard they

10:45:58    4  apply when they're going to take people's kids away.

10:46:01    5  That's the standard they're applying to take away Lone

10:46:04    6  Star, Mr. Rice, the patent.

10:46:09    7         Has the evidence come even close to that, clear

10:46:12    8  and convincing?  The evidence is neither clear, and it's

10:46:17    9  certainly not convincing.

10:46:19   10         Invalidity is easy.  You can go there first.  It's

10:46:23   11  not the first question on your form, but we're okay with

10:46:26   12  it.  You go right there.

10:46:27   13         103(b), please.

10:46:30   14         As to every claim -- the independent Claim 1:  No.

10:46:42   15         All the way down.

10:46:43   16         Our patent is presumed valid, and it is valid

10:46:45   17  because it's different.  It's an innovation.  It's

10:46:48   18  valuable.  And that's what we'll talk about next.

10:46:59   19         Go to 102(a).

10:47:02   20         That's what they didn't want to talk about.  Has

10:47:06   21  Lone Star proved by a preponderance of the evidence --

10:47:09   22  different standard -- that ASUS infringed any of the

10:47:11   23  following claims of its U.S. Patent -- and then it lists

10:47:16   24  the claims.  Claim 1 -- the 15 claims that we addressed

10:47:20   25  during trial.

10:47:21   1          Let's go to 109, please.

10:47:24   2          Now, look, the difficulty sometimes with patent

10:47:31   3   cases, it's a word salad.  There's words and said patent

10:47:36   4   and said this and said that.  The Court has given you

10:47:39   5   instructions about how to understand the patent definitely.

10:47:43   6   But the evidence is there to help you understand how ASUS

10:47:45   7   infringed.

10:47:46   8          These are the five claims reduced down to their

10:47:49   9   essence, the five steps of the method that Claim 1

10:47:54  10   provides.  You have to receive and characterize the pixels,

10:47:58  11   and you got to select some, identify which ones are going

10:48:03  12   to be change, determine that, and then display them.

10:48:07  13          Dr. Ducharme went through all of that for every

10:48:09  14   claim.

10:48:09  15          110, please.

10:48:11  16          He looked at four different levels of proof.

10:48:21  17   He -- Plaintiff's Exhibit 26 has 135 subparts.  Plaintiff's

10:48:29  18   Exhibit 26-1 through -135.  Those are the user names.

10:48:34  19          Dr. Ducharme went through those.  Looked at

10:48:37  20   several different pieces of those manuals, the menus that

10:48:41  21   show you can adjust saturation.  Some of them, the 6-axis

10:48:45  22   products, it was for all six colors, the hue and

10:48:49  23   saturation.  For the 3-axis products, it was saturation of

10:48:53  24   the R, G, and B.

10:48:55  25          Denver, go the Plaintiff's Exhibit 13.

10:49:00  1          We also saw internal documents from ASUS.

10:49:07  2  Remember this email?  Chatted with Mr. Lin about it, about

10:49:15  3  how they incorporated that feature into their products.

10:49:20  4          110, please.

10:49:24  5          We talked about No. 2, spectrometer testing.  That

10:49:37  6  was the -- the slide where --

10:49:43  7          123, Denver, please.

10:49:45  8          That -- that test with all the colors, he attached

10:49:49  9  that high-powered camera through the monitors and ran those

10:49:57 10  tests.  Gave you the feedback.  And every time where it

10:50:00 11  said "pass," that means it failed, meaning it infringed the

10:50:03 12  patent.

10:50:04 13          Dr. Ducharme showed you real test results.  Found

10:50:06 14  infringement, yet another basis for finding infringement.

10:50:10 15          Go back to 110, please.

10:50:13 16          Source code analysis.  We asked for the source

10:50:23 17  code.  The testimony showed you the product maker.  We

10:50:27 18  don't have it, they said.  This is where you can get it.

10:50:31 19          So we subpoenaed the source code from MediaTek.

10:50:34 20  Dr. Ducharme looked at it, reviewed the code, found

10:50:39 21  elements of the code that showed infringement in 6-axis

10:50:43 22  products and 3-axis products because of their similarities.

10:50:49 23          Infringement, yet another basis.  And then in live

10:50:53 24  open court, we turned on the monitor.  Dr. Ducharme came

10:50:58 25  over with the camera pointed right at it so all of you

10:51:02   1   could see it quite easily, larger than life, and he

10:51:07   2   adjusted the colors.

10:51:08   3          Now, I'm going to pause here and address one issue

10:51:13   4   that needs addressing.

10:51:18   5          During opening statement, Mr. Oliver made a

10:51:20   6   statement --

10:51:23   7          105(a), please.

10:51:25   8          This is what he said.  As we listened to the

10:51:33   9   testimony, as we listened to Dr. Ducharme, who tested only

10:51:37  10   a couple of colors, he's not going to be able to tell you

10:51:41  11   what actually happened.

10:51:42  12          Wrong.  He did.  He showed you four different

10:51:45  13   ways.

10:51:47  14          There's this last sentence.  He has to show you

10:51:51  15   that you can change red without changing any other colors.

10:51:54  16          And then he brought up the monitor right here that

10:51:57  17   I couldn't see, with no camera like we ran, and they tried

10:52:03  18   to prove infringement -- noninfringement to you in opening

10:52:08  19   statement with no context and nothing else.

10:52:11  20          Well, as it turns out and as you were later

10:52:14  21   instructed by the Court and as you've been instructed again

10:52:18  22   in the current charge, that last sentence was wrong.

10:52:22  23          Based on that term that you heard about from the

10:52:27  24   Court, preferred embodiment -- I don't have a lot of time.

10:52:30  25   I wish I could explain it in-depth.  But as best as I can

10:52:34  1   explain it, when you have a patent and you get it on a --
10:52:37  2   let's say it's a combustion engine, and you patent it under
10:52:42  3   one preferred embodiment where the pistons are in the shape
10:52:47  4   of a V.  It's not limited to that shape.  You can come
10:52:51  5   along later and somebody has an H-block engine, it can
10:52:55  6   still infringe.  Just because the preferred embodiment said
10:53:00  7   "V" doesn't mean it's limited to that.
10:53:02  8        Well, that's what they tried to tell you when they
10:53:05  9   brought up all that R inequality nonsense that took the
10:53:12  10  Court to come instruct you about what was real.  And they
10:53:15  11  did that in opening.  That should tell you something.
10:53:20  12       And we got Dr. Ducharme on the stand to set things
10:53:24  13  right.  What they showed you was wrong.
10:53:31  14       Dr. Ducharme set you right.  He adjusted the red.
10:53:34  15  The only thing that changed was red on the 3-axis.  Yes,
10:53:39  16  magenta changed, but that was exactly what Dr. Ducharme
10:53:42  17  said would happen, and it's exactly consistent with the
10:53:45  18  claims in the patent.
10:53:46  19       Claim 1, all the way through.  We'll talk about
10:53:48  20  the dependent claims in a second.
10:53:50  21       122, please.
10:53:53  22       That was the test we ran.  On the 6-axis monitor,
10:53:58  23  you'll remember, he talked about the brain and how it can
10:54:03  24  select each individual color.  If you want to adjust just
10:54:06  25  magenta, it'll adjust magenta.  That's the patent.  You saw

10:54:16  1   that with your own eyes in open court.  No backs to anyone.

10:54:18  2   The Court saw it.  Everyone saw it.  Infringement.

10:54:21  3   Infringement.

10:54:30  4         Now, we have to show an extra step to prove

10:54:34  5   infringement --

10:54:34  6         130, please.

10:54:34  7         -- and that's induced infringement.  Because ASUS

10:54:37  8   is not in the United States and because we have to prove

10:54:40  9   infringement in the United States, we have an extra step,

10:54:45  10  and we've met that extra step.  The Court just instructed

10:54:49  11  you about what inducement means.  It means that ASUS has to

10:54:53  12  take action to show you -- there's three -- three

10:55:00  13  requirements in the charge to show infringement.

10:55:13  14        The act's actually carried out by another, such as

10:55:16  15  ASUS customers.  ASUS took action during the time the

10:55:16  16  patent was in force, right now, intending to cause the

10:55:16  17  infringing acts by another.  And ASUS was aware of the

10:55:26  18  patent-in-suit and knew that the acts, if taken, would

10:55:29  19  constitute infringement.

10:55:30  20        I'll start there.  You heard Mr. Rice on the

10:55:32  21  stand.  He said, the reason we sue companies like ASUS is

10:55:35  22  because they ignore us.  So that's why we sued them.  And

10:55:39  23  when we is sued them, they knew about the patent, yet they

10:55:44  24  kept selling the products without authorization and without

10:55:48  25  taking a license.

10:55:49   1           THE COURT:  Mr. Bennett, you have used 18 minutes.

10:55:52   2           MR. BENNETT:  Thank you.  Did they take action

10:55:54   3   during the time the patent was in force?  Yes, you've seen

10:55:58   4   the user manual.

10:55:59   5           Denver, let's look at 14-A one more time.

10:56:12   6           If I had a dime for every time we saw this

10:56:15   7   document during trial, I probably could buy an ASUS

10:56:19   8   monitor.

10:56:19   9           This is direct evidence of infringement.  This

10:56:23  10   invokes the very language of the very patent we're here

10:56:26  11   about.  They infringe.

10:56:29  12           Wrap it up -- or last slide, Denver, please.

10:56:33  13           So we looked at marketing materials, looked at

10:56:39  14   troubleshooting solutions.  I will not go through all of

10:56:43  15   those troubleshooting facts that I went through with

10:56:47  16   Mr. Alvin Lin.  It was painful.  I had to drag every answer

10:56:51  17   out of him.  I had to cross-examine him on whether it was a

10:56:56  18   genuine ASUS document, until his lawyer got up and showed

10:56:59  19   him documents we produced, and he was a book of wisdom.

10:57:03  20   And I'll get back to that.

10:57:06  21           Then we had Dr. Ducharme testify about how the

10:57:08  22   troubleshooting solutions reflect industry standards, which

10:57:11  23   are every two to 300 hours, users will recalibrate their

10:57:16  24   monitors.  That's inducement.  ASUS knew it's sending it to

10:57:20  25   its customers, it's advertising the feature, it knows the

10:57:23   1   feature is valuable.  And you know how you know that?  From

10:57:27   2   ASUS's own lawyer.

10:57:30   3           Go to 108, please.

10:57:39   4           This is during cross-examination or attempted

10:57:42   5   cross-examination of our damages expert.

10:57:43   6           They asked him:  Isn't it pretty common that if a

10:57:48   7   company has a feature that's important, they advertise it?

10:57:53   8           ASUS knew the feature was there and that people

10:57:54   9   would use it here.  They wanted people to.  That's induced

10:57:58   10  infringement.

10:57:59   11          So I don't have time to go into every claim.  You

10:58:02   12  heard the testimony from Dr. Ducharme who confirmed that

10:58:05   13  their products, 3-axis/6-axis infringe every claim listed

10:58:11   14  in the first question.

10:58:13   15          Denver, 102(b), please.

10:58:17   16          When you get back to that jury room, first

10:58:21   17  question, you answer yes all they way down, because they

10:58:22   18  did.  That's why they don't want you to look at it.

10:58:25   19  Dr. Ducharme confirmed every claim.

10:58:27   20          On the last question, damages.  We haven't come

10:58:31   21  here can asking for a billion dollars.  We've come here

10:58:34   22  asking for 57 cents, two quarters, a nickel, and two

10:58:40   23  pennies from a $1,400 monitor.

10:58:43   24          Our expert went through the analysis, he took you

10:58:46   25  every step of the way through all the analytics, and showed

10:58:54   1   you.

10:58:54   2        104.

10:58:56   3        So what sum of money if paid now do you find by a

10:58:59   4   preponderance of the evidence would fairly and reasonably

10:59:03   5   compensate Lone Star?

10:59:05   6        2.8.  2.8.  A reasonable royalty.

10:59:08   7        A penny more would be a windfall for us.  A penny

10:59:12   8   more would be a windfall to them.  We're just -- a penny

10:59:15   9   less would be a windfall to them.  We're just asking for

10:59:19   10   what the reasonable value of the technology is, a one-time

10:59:24   11   lump-sum payment.  Thank you.

10:59:27   12        THE COURT:  Thank you, Mr. Bennett.

10:59:30   13        Mr. Oliver.

10:59:36   14        MR. OLIVER:  Your Honor, I'm going to try the

10:59:39   15   lapel mic for the first time.  If you can't hear me, please

10:59:45   16   let me know.

10:59:49   17        Ladies and gentlemen of the jury, thank you for

10:59:51   18   being here.  Thank you for your service.  I'm not the type

10:59:55   19   to get up and, you know, yell and wave my arms and get all

10:59:58   20   excited about this.  I don't think passion is what one

11:00:02   21   needs to prove a patent case, a patent infringement case, a

11:00:05   22   patent invalidity case.  I think what we need to see is

11:00:10   23   what is in the patent, what is in the products -- excuse

11:00:15   24   me, not what somebody can make a lot of noise about.

11:00:19   25        I'm going to correct one thing that the

11:00:23   1   Plaintiff's counsel said.  He put up a slide, and he

11:00:27   2   crossed out something I said in opening statement.  And he

11:00:29   3   said:  You heard from the Court that -- that ASUS was

11:00:32   4   wrong.  I don't think that's what the Court said.  The

11:00:34   5   Court was talking about a different thing during a

11:00:39   6   different part of the presentation.

11:00:42   7        I was going to get right into my presentation on

11:00:46   8   the merits of the case and on what the evidence shows.  I

11:00:52   9   notice there has been a lot of hand waving and it kind of

11:00:58  10   reminded me of my wife's favorite movie, which I also enjoy

11:01:03  11   quite a bit, the Wizard of Oz.  Have these people set up on

11:01:08  12   this journey to see this fantastic wizard, and they get

11:01:12  13   there and the dog pulls back the curtain and then the

11:01:16  14   wizard says, you know, please don't pay attention to the

11:01:20  15   man behind the curtain.  And I'm viewing what we're doing

11:01:24  16   as kind of the dog pulling back the curtain.

11:01:27  17        You see their expert saying used magic to get to

11:01:31  18   the numbers.  We see Mr. Bennett here saying you don't have

11:01:34  19   to look at the product, just look at the screen, look at

11:01:37  20   what -- you know, look at the website, look at an email,

11:01:41  21   and so on.  But we should look at the product.

11:01:44  22        But first, I want to reiterate -- you now have a

11:01:49  23   package of instructions and it took a long time to read and

11:01:52  24   by the time I got to the one that I want you to think about

11:01:55  25   the most, I was nodding off.  I listen to these things

| | | |
|---|---|---|
| 11:02:01 | 1 | regularly, so I can imagine you were probably not |
| 11:02:06 | 2 | completely -- not completely focused on it, but -- if |
| 11:02:13 | 3 | you're like me. |
| 11:02:14 | 4 | But Instruction 8.9, it's near the end.  It's on |
| 11:02:20 | 5 | Page 30.  If you don't remember anything else when you |
| 11:02:22 | 6 | leave here, remember to look at Instruction 8.9.  And what |
| 11:02:27 | 7 | it says is:  Lone Star can use circumstantial evidence to |
| 11:02:32 | 8 | prove indirect infringement.  That's assuming they prove |
| 11:02:36 | 9 | the technical -- all the technical pieces are there.  They |
| 11:02:38 | 10 | can use circumstantial evidence, like a user's manual and |
| 11:02:42 | 11 | kind of saying somebody got this user's manual so somebody |
| 11:02:46 | 12 | must have read it and done something.  They can use that to |
| 11:02:50 | 13 | find indirect infringement. |
| 11:02:52 | 14 | But what they have to do, then, in the second part |
| 11:02:57 | 15 | of 8.9 -- read it closely.  The amount of damages for |
| 11:03:05 | 16 | induced infringement is limited by the number of instances |
| 11:03:11 | 17 | of direct infringement.  So in a case like we have here |
| 11:03:13 | 18 | where these products that you have seen can be used their |
| 11:03:17 | 19 | entire lifetime without ever infringing, right?  We're |
| 11:03:21 | 20 | talking about one little feature in one menu that somebody |
| 11:03:24 | 21 | would have to select. |
| 11:03:26 | 22 | Use your common sense.  Use the evidence you've |
| 11:03:28 | 23 | heard.  I know I've used monitors for about 20 years, and |
| 11:03:35 | 24 | I've never even touched that menu until I started working |
| 11:03:38 | 25 | on this case. |

| | | |
|---|---|---|
| 11:03:39 | 1 | MR. BENNETT:  Objection, Your Honor.  That's |
| 11:03:40 | 2 | outside the evidence. |
| 11:03:41 | 3 | THE COURT:  Well, let's get back to the |
| 11:03:43 | 4 | evidence -- |
| 11:03:43 | 5 | MR. OLIVER:  Okay. |
| 11:03:43 | 6 | THE COURT:  -- Mr. Oliver. |
| 11:03:44 | 7 | MR. OLIVER:  Use the evidence -- use the evidence |
| 11:03:47 | 8 | and use Instruction 8.9, okay? |
| 11:03:52 | 9 | And the amount of damages -- the amount of money |
| 11:03:55 | 10 | they get is limited by the number of instances of direct |
| 11:04:00 | 11 | infringement. |
| 11:04:00 | 12 | Well, what are the number of instances of direct |
| 11:04:03 | 13 | infringement?  Lone Star must prove -- further prove the |
| 11:04:07 | 14 | number of acts of direct infringement.  They must prove the |
| 11:04:10 | 15 | number of acts of direct infringement. |
| 11:04:13 | 16 | Sending -- you remember when I did the opening |
| 11:04:17 | 17 | statement, I put a picture of a gun up, and I said:  Having |
| 11:04:19 | 18 | a gun is not murdering someone, or somebody could use a gun |
| 11:04:29 | 19 | to an illegal act, but most people don't.  That was the |
| 11:04:32 | 20 | point of that argument or that discussion.  You have to |
| 11:04:36 | 21 | prove the number of acts of direct infringement.  They have |
| 11:04:39 | 22 | to show you actual people that did this before they can get |
| 11:04:47 | 23 | damages for it. |
| 11:04:49 | 24 | How do they do that?  They go out and do a survey |
| 11:04:52 | 25 | of users.  You know, they poll people.  They actually go |

11:04:56   1   out and observe people.  You know, sometimes in these

11:04:59   2   methods, you can observe people using them.  This would be

11:05:01   3   a little tough to observe, but -- send out emails to a

11:05:06   4   whole bunch of customers and say, you know, we'll pay you a

11:05:09   5   dollar to respond to this or do it for free or whatever.

11:05:12   6        They have to prove -- in Instruction 8.9, they

11:05:15   7   have to prove the number of people that did it.  Without

11:05:18   8   that number, you can't award damages for this induced

11:05:24   9   infringement, and there's no number here.  Keep that in

11:05:27   10  mind when you go back.

11:05:28   11       I'm going to turn back to the rest of my

11:05:31   12  presentation.  Quite obviously, ASUS would like you to

11:05:40   13  enter the opposite answers in the verdict form than what

11:05:42   14  Mr. Bennett said.

11:05:43   15       Is there infringement?  No.  I'll explain that one

11:05:46   16  in a couple of minutes.

11:05:47   17       Is there invalidity?  Yes.  I'll review that in a

11:05:52   18  couple of minutes.

11:05:54   19       Should there be damages?  No.

11:05:56   20       Now, one of the reasons the patent is invalid is

11:06:08   21  the Brett patent.  And you will have it.  It's Exhibit 9.

11:06:12   22  I've got an excerpt from it up there.  You can see when you

11:06:16   23  pull it up, it's a pretty thick document.

11:06:20   24       The Brett patent has an issue date that's multiple

11:06:26   25  years before the filing date of the Lone Star patent.  And

| | | |
|---|---|---|
| 11:06:34 | 1 | the Brett patent was discussed at length during the trial. |
| 11:06:40 | 2 | Dr. Stevenson, yesterday, went through -- he went |
| 11:06:43 | 3 | through each step of the -- of the patent -- the Lone Star |
| 11:06:48 | 4 | patent, and he went through Brett and showed you where in |
| 11:06:52 | 5 | Brett each element was found. |
| 11:06:55 | 6 | And do you remember Lone Star's expert's one |
| 11:07:02 | 7 | complaint about Brett?  His complaint about Brett was what? |
| 11:07:07 | 8 | The main difference is the Brett patent doesn't deal with |
| 11:07:07 | 9 | real time digital video.  It doesn't disclose real time |
| 11:07:07 | 10 | digital video.  The Brett patent does not discuss real time |
| 11:07:07 | 11 | digital video. |
| 11:07:20 | 12 | These quotes I have up here are from the |
| 11:07:24 | 13 | transcript that's been recorded. |
| 11:07:26 | 14 | (As read):  Does Brett discuss real time video? |
| 11:07:29 | 15 | No. |
| 11:07:29 | 16 | There's no real time digital video component in |
| 11:07:32 | 17 | Brett.  This patent has nothing to do with real time |
| 11:07:36 | 18 | digital video. |
| 11:07:37 | 19 | One of the instructions says you need to consider |
| 11:07:40 | 20 | the credibility of the witnesses that are testifying.  You |
| 11:07:43 | 21 | are the ones that weigh whether they're credible.  So we've |
| 11:07:48 | 22 | seen this one five times, no real time video, no real time |
| 11:07:54 | 23 | digital video, no real time -- nothing to do with real time |
| 11:07:56 | 24 | digital video. |
| 11:07:58 | 25 | Let's look at Brett.  It doesn't disclose real |

| | | |
|---|---|---|
| 11:08:02 | 1 | time digital video.  I'm going to blow this up.  This is |
| 11:08:05 | 2 | front page of Brett, a digital video processing system. |
| 11:08:08 | 3 | Oh, well, it's not real time digital video. |
| 11:08:12 | 4 | Let's look -- this is -- again, it's DX-9.  This |
| 11:08:15 | 5 | is an excerpt from within the patent that Dr. Stevenson |
| 11:08:18 | 6 | showed you:  At present, such an embodiment provides a cost |
| 11:08:25 | 7 | effective solution for processing digital video images in |
| 11:08:29 | 8 | real time, i.e., at the rate a video is seen on television |
| 11:08:35 | 9 | screen.  That's real time, right?  It processes it fast |
| 11:08:39 | 10 | enough to play it back without a delay.  Doesn't disclose |
| 11:08:43 | 11 | real time video.  What patent was he reading? |
| 11:08:50 | 12 | Here's Brett.  Here's where -- we spent an hour or |
| 11:08:55 | 13 | more going through.  And you heard about the standard of |
| 11:09:03 | 14 | clear and convincing evidence.  Lone Star's expert waved |
| 11:09:10 | 15 | his hand and said there's no -- there's no real time |
| 11:09:12 | 16 | digital video here.  Said it six times.  That was his |
| 11:09:16 | 17 | argument about why Brett doesn't invalidate this patent. |
| 11:09:20 | 18 | On cross-examination somebody asked |
| 11:09:25 | 19 | Dr. Ducharme -- or Dr. Stevenson, look at all this stuff. |
| 11:09:31 | 20 | You know, this is some giant thing.  How could that go into |
| 11:09:34 | 21 | one of these monitors?  How could that be -- and what he |
| 11:09:38 | 22 | did is:  He said that could go on an ASIC.  And he said it |
| 11:09:44 | 23 | could go on a chip.  And that's what Lone Star has been |
| 11:09:47 | 24 | calling the brains of these monitors.  This looks big, but |
| 11:09:51 | 25 | this is all microcircuits that can fit on a chip and go |

11:09:55   1   into a monitor easily.

11:09:58   2          I wanted to just walk through it real quickly.  I

11:10:11   3   don't have a ton of time.  I'm going to go through it a lot

11:10:15   4   quicker than they did.

11:10:17   5          The patent receiving and characterizing the input

11:10:21   6   image pixels.  Does it have pixels?  Lone Star's expert

11:10:24   7   says it just takes in video from films.  There's a pixel

11:10:28   8   counter.  Pixel numbers, right?  It's coming in with

11:10:34   9   pixels, selecting to change the hue -- independently change

11:10:38  10   the hue or saturation.  Now, keep in mind that term

11:10:41  11   "independently."  I'm going to talk -- when I talk about

11:10:45  12   noninfringement, I'm going to talk about that.

11:10:47  13          But it selects -- remember, they had to go to the

11:10:50  14   control -- the control screen.  I don't have that in my

11:10:53  15   presentation here today, but they went to the control

11:10:56  16   screen in Brett and showed you what the selection was and

11:11:01  17   selected a hue control delta value, right?

11:11:07  18          So you've got hue.  You've got a change.  That's a

11:11:11  19   plus sign.  You can select the saturation control delta

11:11:15  20   value.  Here's where saturation is.  That's multiplication.

11:11:19  21   That's another way to change it.

11:11:27  22          So identified the pixels.  They have the color you

11:11:30  23   want to change.  And you use the logic, right?  It's

11:11:36  24   talking about a look-up table.  That will be a little bit

11:11:39  25   important a little bit later.

```
11:11:41   1          But the logic comes down, and this is what you
11:11:44   2   want to change.  You do the changes, and it says you get
11:11:49   3   to -- you get to a change in red, green, or blue or all of
11:11:55   4   them, right?  You come back up, add back in and change --
11:12:00   5   change your digital output.
11:12:04   6          I'm not as elegant as he was.  He actually went
11:12:08   7   through and was able to explain every step.
11:12:11   8          And then the final step, displaying, right?  Where
11:12:13   9   does the output go?  There was a couple of images he showed
11:12:17  10   you in Brett where it went to an HDTV.  So Brett does
11:12:23  11   clearly show what's in the '435 patent.
11:12:26  12          What about the other invalidity position that Lone
11:12:28  13   Star has -- or that ASUS has brought you?
11:12:35  14          Oh, one other point about Brett.  When you look at
11:12:39  15   that exhibit, DX 9, you can look at the front of the Lone
11:12:44  16   Star patent, and you won't see it there.  The Patent Office
11:12:49  17   never found this when it was searching for relevant stuff.
11:12:54  18   And that happens.  The Patent Office does a really good
11:12:58  19   job, but they're not perfect.  And that's why the
11:13:00  20   instructions you have here on validity say:  Even though
11:13:04  21   the Patent Office has allowed the claims of the patents,
11:13:10  22   you have the ultimate responsibility for deciding whether
11:13:12  23   they're valid.
11:13:16  24          They come invalid.  If we show you something that
11:13:17  25   invalidates them, they're invalid.
```

11:13:22  1        The other thing we were talking about is double

11:13:26  2   patenting.  You have an instruction on double patenting

11:13:32  3   at 7.5 that tells you a few things.  You know, 7.5 -- I'll

11:13:37  4   paraphrase a little.  I want you to read the exact language

11:13:40  5   when you think about this.  Prevents one person from

11:13:43  6   getting more than one patent for the same thing.  One

11:13:46  7   person, Yosef Segman, Yosef Segman.  It's even the same

11:13:48  8   company, Oplus, Oplus.

11:13:50  9        The doctrine exists to prevent an inventor from

11:13:56  10  extending the life of protection of his or her invention by

11:13:59  11  securing a second later expiring patent on the same

11:14:03  12  invention, right?  So he got the '012 patent first, filed

11:14:08  13  it in 1999, got the patent in 2000.

11:14:12  14        Then two years later, he filed the patent we're

11:14:16  15  talking about in this lawsuit, and he got that patent

11:14:19  16  issued four years later, right?  A second later expiring

11:14:25  17  patent.  So the patent term is measured from the -- from

11:14:29  18  the filing date, expires 2019, March.  This one expires

11:14:40  19  2021, but they actually added time on to it.

11:14:44  20        We were talking about the '012 patent here.  It

11:14:48  21  would have expired before Lone Star, like a week after Lone

11:14:53  22  Star sued ASUS.  That's why we're talking about the other

11:14:57  23  patent.

11:14:58  24        I'm not going to go into all the details of that.

11:15:01  25  But, again, Dr. Stevenson worked through it.  He worked

11:15:05  1  through the claims.  He said:  Look at the claims of this

11:15:07  2  patent and apply them to the other.  They have the same

11:15:09  3  thing.  They use different language, but when you look at

11:15:12  4  it from the vantage point of somebody who knows this, they

11:15:20  5  are the same thing, even though they use slightly different

11:15:23  6  terms.

11:15:24  7        So what was Lone Star's expert's one criticism of

11:15:29  8  the '012 patent?  The '012 patent uses look-up tables.  The

11:15:33  9  '435 patent uses arithmetic and logical operations.  Lookup

11:15:44  10  tables are logical operations.  Something comes in, and it

11:15:48  11  chooses something that goes out.  That's a logical

11:15:51  12  operation.

11:15:51  13        Well, right here, this is another quote from Lone

11:15:53  14  Star's expert.  He says:  It's an array of numbers.

11:16:01  15        I'm going to skip a little.

11:16:03  16        We call it an LUT.  It's a look-up table.  So

11:16:07  17  LUT -- keep that in mind -- it's an abbreviation for

11:16:09  18  look-up table.  You look in the table to see what the new

11:16:12  19  value should be.  That's logic.  That's using logic,

11:16:15  20  computer logic.

11:16:17  21        So then my colleague, Mr. Joshi, cross-examined

11:16:23  22  him, and he said -- at that point, Lone Star's expert, you

11:16:29  23  will remember, was talking about how ASUS infringes, right?

11:16:35  24  And he said:  The ASUS device achieves substantially

11:16:38  25  similar results using insubstantially different operations.

11:16:43  1  So there's nothing substantially different about them,

11:16:46  2  okay?

11:16:47  3        And what he does is he goes down here, and he

11:16:49  4  says -- so even if the accused -- even if the ASUS products

11:16:54  5  use a matrix or, what, an LUT, it'll still be the same

11:17:00  6  thing.

11:17:00  7        So essentially what he was saying is the '435

11:17:09  8  patent does cover LUTs.  And when Mr. Joshi read his report

11:17:13  9  to him, and he said:  Did I read that correctly?

11:17:16  10       And he said:  Yes, you did.

11:17:19  11       So the ASUS products use LUTs -- or he said even

11:17:23  12  if they do, that's the same thing.  And his only complaint

11:17:27  13  about why the two patents were different was the earlier

11:17:30  14  one uses look-up tables.

11:17:32  15       If they're the same, how can they be different?

11:17:39  16  He wants them to be the same for ASUS for infringement but

11:17:40  17  different for invalidity.

11:17:42  18       Let's talk about noninfringement.

11:17:46  19       I heard from Lone Star's counsel that I didn't

11:17:51  20  say -- we never said anything about noninfringement.

11:17:55  21       We actually could have just sat here on

11:17:57  22  infringement and let them put in everything they had and

11:17:59  23  not brought in an expert or anything, and they wouldn't

11:18:03  24  have been able to prove infringement.

11:18:06  25       We saw a lot of this, right?  At the beginning of

11:18:14  1  the case, I said, pay attention to the menus.  The menus

11:18:18  2  are important.  Pay close attention.

11:18:20  3       I picked this guy up, and I showed it to you.

11:18:23  4  Because at the beginning of trial when we sat down, this

11:18:25  5  was accused of infringement.  As we stand here today, it's

11:18:28  6  not, because the menus were too inconvenient for Lone Star.

11:18:41  7       Look at this menu.  It says in the user mode, red,

11:18:47  8  green, or blue are adjustable 0 to 100.  We've seen that

11:18:53  9  100 times this week, right?

11:18:55  10       But that's talk about that same mode that we just

11:18:55  11  -- I'm going to go back one if I can.  User mode, red,

11:18:59  12  green and blue, right?  In the user mode, red, green, and

11:19:03  13  blue, they're configurable.

11:19:05  14       So they ask Mr. Lin:  What is being adjusted?

11:19:09  15       He says:  What's being adjusted, that's to adjust

11:19:12  16  the value of gain.

11:19:14  17       In English, it's a word -- and he spelled it out,

11:19:18  18  g-a-i-n.  I guess he knows how -- Professor Lin obviously

11:19:20  19  could read certain English words.  He probably has to read

11:19:24  20  a lot of technical documents.

11:19:26  21       And then what did he go on to say?

11:19:27  22       Is gain the same or different from hue or

11:19:30  23  saturation?

11:19:30  24       They're different.

11:19:32  25       Now, Mr. -- Dr. Stevenson also testified that

11:19:41  1    they're different than just hue or just saturation.

11:19:46  2           And Dr. Ducharme came up here and said:  Gain is

11:19:49  3    the same.  When I adjust the gain, it's the same.

11:19:54  4           But remember what I said about the patent.  When

11:19:56  5    you look at the language of the claim, it says:  You select

11:20:00  6    to independently control hue or saturation.

11:20:02  7           Now, gain, as we saw from some the demonstrations,

11:20:08  8    affected how bright a color was, not just how saturated it

11:20:11  9    was.  So it affected both saturation and the brightness at

11:20:15  10   the same time.  It was not independently controlling

11:20:17  11   saturation.

11:20:20  12          The patent talks about independently controlling

11:20:22  13   hue or saturation.  When you look at it -- at the terms, I

11:20:26  14   know you've probably seen them way too many times.  It's a

11:20:29  15   long claim, but look for that, independently controlling

11:20:33  16   hue or saturation.

11:20:34  17          Gain might hit one of saturation or hue.  He said

11:20:38  18   it hit saturation.  It might hit saturation, but it also

11:20:43  19   hits brightness at the same time.  It's not independent.

11:20:45  20          There's a bunch of other products where we don't

11:20:53  21   see any evidence that they have that red from 1 to 100

11:20:59  22   control, right?

11:21:01  23          If we go back -- I'm going to go back a couple

11:21:04  24   slides to the -- to the product we just looked at.  You see

11:21:08  25   red is capable of adjusting from 1 to 100 in user mode.

```
11:21:14   1   This product has a different configuration, and there's no
11:21:19   2   evidence that red or -- red, green, or blue can be adjusted
11:21:23   3   from 1 to 100.  There's a saturation, but this is the thing
11:21:27   4   that they showed you in the first opening statement was
11:21:30   5   overall screen saturation.  It doesn't matter for this
11:21:32   6   case.  Brightness or contrast, those aren't part of the hue
11:21:36   7   or saturation.
11:21:36   8           So there's one, two, three, four, five, six,
11:21:41   9   seven, eight, nine, ten -- about ten of the products that
11:21:46  10   they accused that don't have -- (audio drop).
11:21:53  11           You remember when we went over some slides and we
11:21:54  12   changed the colors, and Dr. Ducharme said they all -- they
11:21:57  13   would -- you know, things would change when you adjusted
11:21:59  14   red or blue or green up and down?  This patent talks about
11:22:04  15   an individual color, and the Court has said that's a linear
11:22:07  16   combination of colors or color components.  And you heard
11:22:09  17   the experts say what that means.  It's a combination of
11:22:13  18   red, green, or blue, okay?  It's -- that's the combination.
11:22:17  19   That's the individual color.
11:22:22  20           Here's some more, these happen to all be the same.
11:22:27  21   When they're -- when they're all equal, you get shades of
11:22:30  22   gray and white.  And if you take it all the way down to
11:22:33  23   zero, you get pure black.  And these are also linear
11:22:39  24   combinations, those three units.
11:22:42  25           So when you -- when you look at the patent claim,
```

11:22:51  1  the patent claim says -- run back here to individual color.

11:22:58  2  I don't have a blowup -- selecting to independently change

11:23:03  3  the hue or the saturation in the individual color.  Okay.

11:23:07  4  I'm not going to read all the other language.  But

11:23:12  5  selecting to change the hue or saturation of an individual

11:23:12  6  color.

11:23:16  7       If you go to the next set -- the next thing,

11:23:18  8  identifying a plurality of said input image pixels, the

11:23:24  9  incoming data, having said individual color.  We just

11:23:28  10 selected to change it.  Now we're identifying it.

11:23:31  11      And let's go down to the very end of the claim.

11:23:35  12      It says, when you make this change, when you

11:23:39  13 change all the -- all the pixels you've selected and

11:23:43  14 identify, whereby the hue or the saturation of said

11:23:48  15 individual color in the real time digital video input image

11:23:55  16 has been changed -- last clause of the claim, very

11:23:58  17 important -- without affecting the hue or saturation of any

11:24:02  18 other individual color.  Didn't have to present a piece of

11:24:05  19 evidence for you -- for you to be able to look at the claim

11:24:08  20 and the claim construction to know what happened.

11:24:13  21      You decide whether a product is even selecting an

11:24:21  22 individual color based on that definition, linear

11:24:25  23 combination.  You ever see him select an individual

11:24:29  24 color -- a linear combination of components?  When did you

11:24:35  25 ever see him do the identifying and the modifying step

11:24:39  1   without affecting the hue or saturation of any other

11:24:44  2   individual color?  No, you didn't see that.  You make the

11:24:52  3   decision.

11:25:01  4        Now, we talked a little bit about source code,

11:25:04  5   right?  There was a lot of -- there was a lot of discussion

11:25:07  6   about source code.  We showed you source code.  There was a

11:25:12  7   slide related to source code that they put up that had a

11:25:16  8   product number on it.  You could -- you heard the product

11:25:18  9   number MST8556T.

11:25:21  10       When you get to source code, look at the top of it

11:25:24  11  in the back.  A collection of source codes, it's got

11:25:28  12  product numbers on the top.  A collection of different

11:25:32  13  chunks of code from different products.

11:25:35  14       Dr. Ducharme said, oh, well, I keep code for

11:25:38  15  different products in the same directory.  Big

11:25:41  16  multinational company like MediaTek who sells these chips

11:25:45  17  must do that.

11:25:46  18       Think about that.  This company has thousand of

11:25:50  19  chips, MediaTek.  And MediaTek has probably thousands or

11:25:54  20  tens of thousands of engineers, and they're just kind of

11:25:57  21  throwing their code wherever.  These companies have

11:26:00  22  organization for their code.

11:26:01  23       Let's talk about a couple other things.  I'm going

11:26:05  24  to have to jump forward real fast because I only have a few

11:26:09  25  minutes left to talk to you.

11:26:11   1        If I don't get a chance at the end, thank you for

11:26:14   2   doing this.  Thank you for listening.  Thank you for paying

11:26:17   3   attention.

11:26:17   4        Both the 6-axis and 3-axis products don't have a

11:26:22   5   delta value.  What does that mean?  When you saw the menus,

11:26:24   6   they went from 1 to 100.  What you picked was called an

11:26:30   7   absolute value.  You picked 51, you picked 55, you picked

11:26:34   8   100 or something, the experts were doing it.

11:26:38   9        The delta doesn't change.  So to pick a delta

11:26:41   10  value, you'd pick the change.  You'd say I'm at 55.  I'm

11:26:44   11  going to somehow select 5, and it's going to jump to 55.

11:26:49   12  The delta between 10 and 15 is 5, right?  15 minus 10 is 5.

11:26:53   13  Hundred minus 52 is 48.  Those are delta values.  But what

11:26:58   14  you are picking is an absolute value.  They're missing the

11:27:03   15  delta value selection that's in the claim.  That's another

11:27:05   16  reason why ASUS doesn't infringe.

11:27:06   17        And Dr. Stevenson testified there's no

11:27:08   18  identification of pixels.  There's an identifying step in

11:27:11   19  the patent.  Everything has changed.  Pixels aren't

11:27:15   20  identified.  It's just you shoot it in with a firehose, it

11:27:19   21  gets changed.  The patent requires identifying pixels that

11:27:23   22  had that individual color.  Read the language and apply it,

11:27:28   23  and you'll find there's no infringement.

11:27:34   24        Let's talk quickly about money.

11:27:36   25        You saw this slide at the beginning.  Here's a

| | | |
|---|---|---|
| 11:27:40 | 1 | problem.  2.8 million they're asking for, remember they |
| 11:27:47 | 2 | said 134 products were accused.  They can't get money for |
| 11:27:52 | 3 | products that are not accused of infringement, but what did |
| 11:27:55 | 4 | the -- what did Mr. Perdue include in his chart?  320 |
| 11:28:01 | 5 | products.  These are all the ones I struck out.  We kind of |
| 11:28:05 | 6 | went over it earlier.  So there's more unaccused products |
| 11:28:08 | 7 | than accused products in their damages numbers. |
| 11:28:10 | 8 | And what did he want you to do?  He wanted you to |
| 11:28:15 | 9 | go back and figure it out.  He made his report in |
| 11:28:18 | 10 | September.  Mr. Reed told him in October there was an |
| 11:28:21 | 11 | error.  Seven months later, he never fixed it.  Get to |
| 11:28:24 | 12 | trial, and he says, the jury can go figure it out.  They |
| 11:28:27 | 13 | can figure out how to take out those numbers. |
| 11:28:31 | 14 | Let's look at damages.  Section 8 in your |
| 11:28:37 | 15 | instructions.  Lone Star has the burden to establish the |
| 11:28:40 | 16 | amount of damages.  The last sentence in this paragraph I |
| 11:28:45 | 17 | have circled says:  You may not award damages that are |
| 11:28:50 | 18 | speculative or damages that are based on guesswork. |
| 11:28:53 | 19 | What do you do with this?  I wish you didn't have |
| 11:28:56 | 20 | to decide it.  You're going to have to decide what to do |
| 11:29:00 | 21 | when somebody includes more than twice as many products |
| 11:29:04 | 22 | than the damages that are -- than are accused of |
| 11:29:06 | 23 | infringement. |
| 11:29:06 | 24 | But I think you saw enough in what I showed you on |
| 11:29:10 | 25 | the infringement to know that when you look at the claim |

11:29:12  1   language and compare the flashy demonstrations you saw by

11:29:16  2   Lone Star, the claims of the patent are not met by the ASUS

11:29:20  3   products.  That's why ASUS is fighting.  It's not because

11:29:24  4   ASUS is trying to steal anything.

11:29:31  5        Mr. Perdue said give them 61 cents per unit.  That

11:29:36  6   was based on a miscalculation.

11:29:38  7        Mr. Reed corrected and said, you know, at most,

11:29:41  8   it's about 7 cents per unit.

11:29:43  9        It got to a lump-sum -- let's talk about another

11:29:47 10   case.  Mr. Perdue said Barco owed 1.13 million.  Barco paid

11:29:52 11   a tenth of that.  Mr. Reed adjusted Mr. Perdue's damages,

11:29:57 12   and he said if every single product infringes, 219,000, if

11:30:05 13   every single thing infringes, but remember --

11:30:08 14        THE COURT:  Mr. Oliver, your time has expired.

11:30:10 15        MR. OLIVER:  Okay.  Go to the last slide which

11:30:14 16   just says --

11:30:21 17        THE COURT:  Mr. Oliver?

11:30:24 18        MR. OLIVER:  Thank you.  Sorry.

11:30:28 19        MR. BENNETT:  I guess I'm used to the ad hominem

11:30:31 20   attacks on me.  I'm fine with it.  I have no feelings.  The

11:30:35 21   hand-waving, the references to Wizard of Oz.  I do get a

11:30:40 22   little tired of the jabs at my client, our invention.  I

11:30:44 23   don't know if you heard Mr. Oliver's one-little-feature

11:30:49 24   comment.

11:30:49 25        Our witnesses, he, again, with no basis accuses

| | | |
|---|---|---|
| 11:30:53 | 1 | Glenn Perdue of the magic after he repeatedly said that's |
| 11:30:56 | 2 | not what he was talking about.  He was talking about |
| 11:30:59 | 3 | Georgia-Pacific.  That's what we've been dealing with the |
| 11:31:02 | 4 | last two years, ladies and gentlemen of the jury. |
| 11:31:08 | 5 | I hope you noticed the order of his argument.  He |
| 11:31:10 | 6 | started with damages.  Don't give them too much. |
| 11:31:14 | 7 | Then he went right to invalidity.  It's invalid. |
| 11:31:19 | 8 | And only -- I don't know, I was watching my watch, |
| 11:31:23 | 9 | I stopped watching about 15 minutes, did he get to |
| 11:31:27 | 10 | infringement?  And he didn't spend very much time there. |
| 11:31:31 | 11 | He went right to look at Mr. Brett.  Don't give him too |
| 11:31:37 | 12 | much. |
| 11:31:38 | 13 | I think it's clear by now what's going on.  I |
| 11:31:40 | 14 | think it's clear by now what ASUS knows, that they |
| 11:31:44 | 15 | infringed, and they really, really, really want you to find |
| 11:31:48 | 16 | those patents invalid so that you don't hold them liable |
| 11:31:52 | 17 | for patent infringement. |
| 11:31:53 | 18 | Here's the problem.  They put on witnesses, and |
| 11:31:59 | 19 | they gave you one who was credible.  One. |
| 11:32:05 | 20 | It wasn't Mr. Lin. |
| 11:32:10 | 21 | Denver, would you go to ID No. 127? |
| 11:32:25 | 22 | Remember this?  Right before lunch?  This is the |
| 11:32:28 | 23 | witness who tried to sandbag us.  This is the witness we |
| 11:32:33 | 24 | deposed who knew nothing.  I'm not sure.  We asked him |
| 11:32:37 | 25 | about infringement:  Doesn't this product infringe? |

11:32:43  1          I'm not sure.

11:32:45  2          And they brought him to trial through a video

11:32:48  3  feed, and suddenly he was the book of wisdom.  I confronted

11:32:51  4  him with his testimony.  He could not explain why suddenly

11:32:55  5  he got so smart?  He couldn't explain why he never decided

11:33:00  6  to tell us he knew more than he did.

11:33:03  7          Is that credible?  No.  The only words you should

11:33:06  8  believe out of Mr. Lin's mouths -- out of Mr. Lin's mouth

11:33:10  9  are the ones I got out of him in cross-examination.  That's

11:33:12  10  the truth.  What he didn't want to admit, what the

11:33:16  11  documents made him admit is the truth.

11:33:20  12          Go to Plaintiff's Exhibit 26-76, please, Denver,

11:33:33  13  specifically the page about the RGB from the menu.

11:33:36  14          This is the monitor Dr. Ducharme tested.

11:33:40  15  Mr. Oliver just got up and told you it doesn't infringe

11:33:46  16  because this RGB scale thing is gain, they say.

11:33:49  17          They had an expert, Dr. Stevenson.  He didn't tell

11:33:52  18  you that.  Who did they rely on to tell you that?  Mr. Lin.

11:33:58  19  When did he tell you that?  Questions from their lawyers.

11:34:04  20          So I got up and cross-examined him again.  That's

11:34:07  21  3-axis.  That's what 3-axis means, RGB.  And this nonsense

11:34:13  22  about delta value.  A delta value is upper -- the judge

11:34:17  23  gave you some of that language in the Attachment A to the

11:34:21  24  charge that you'll get.  If it goes up by 1 or down by 1,

11:34:24  25  that's a delta value.  You saw it happen in court.

11:34:30   1          Mr. Oliver is right.  I'm passionate because I'm
11:34:34   2   tired of seeing this multinational corporation appropriate
11:34:39   3   the value of something that doesn't belong to them.  So,
11:34:42   4   yeah, I am a little passionate.  Full of passion about the
11:34:45   5   fact that we have property rights that they won't respect,
11:34:49   6   despite the fact that they have barely mounted a defense to
11:34:53   7   infringement.  Instead, they want to talk about invalidity
11:34:55   8   that they haven't met the burden of.
11:34:58   9          Oh, and you should give them 7 cents a unit
11:35:02  10   because my thrice-excluded expert, Mr. Brett, told you to.
11:35:10  11          Dr. Stevenson wasn't credible, either.
11:35:12  12          Can you go to ID 106, please?
11:35:16  13          Remember this?  This is one of his noninfringement
11:35:20  14   opinions.  They didn't bring it out on direct.  He put it
11:35:23  15   in his report because he didn't want you, the jury, to see
11:35:26  16   it.  He actually opined that almost -- there's no induced
11:35:31  17   infringement because users of monitors and projectors are
11:35:35  18   not sophisticated enough.
11:35:38  19          After we brought that out on cross, he tried to
11:35:40  20   rehabilitate himself and say:  Well, I consider myself as
11:35:45  21   not sophisticated.
11:35:47  22          Except before he did that, he came right up here,
11:35:51  23   they asked him to and he manipulated the screen, showed you
11:35:55  24   where the menus were.
11:35:57  25          Now, for reasons I don't understand, he never

11:36:00  1  altered the values -- the color values.  There's a reason

11:36:03  2  for that.  He knew cross was coming.  He could have

11:36:06  3  adjusted that from 50 to 51.  He chose not to because he

11:36:11  4  knew Mr. Liddle was going to take that podium and make him

11:36:16  5  admit, you can adjust it one by one by one, down or up.

11:36:21  6  That infringes.

11:36:21  7          So it wasn't Dr. Stevenson.  No credible witness.

11:36:26  8          Mr. Reed.  What does Mr. Reed say?  Well, he goes

11:36:33  9  through all the same factors he says Perdue went through,

11:36:37  10  and he says:  The invention that ASUS spent so much time

11:36:41  11  marketing, featured in one of its main products, is worth

11:36:45  12  pennies on the dollar.  They put it on their boxes.  They

11:36:49  13  paraded those around.  They put it on their marketing

11:36:52  14  materials.  They devote facts on their website to it.

11:36:55  15  Pennies on the dollar?  Why would you spend so much money

11:37:00  16  marketing it?

11:37:00  17          THE COURT:  Mr. Bennett -- -

11:37:00  18          MR. BENNETT:  It's not that valuable --

11:37:01  19          THE COURT:  -- Mr. Bennett, you have two minutes.

11:37:02  20          MR. BENNETT:  Thank you, Your Honor.

11:37:03  21          You wouldn't.  One of my good -- one of my mentors

11:37:07  22  in this profession shared with me a phrase that stuck with

11:37:10  23  me.  He said:  If common sense doesn't make good sense,

11:37:14  24  it's nonsense.  Their defenses are nonsense.

11:37:22  25          There was one credible witness presented to you

11:37:27   1   from ASUS.  His name was Mr. Morquecho, and he was here for

11:37:31   2   all of about ten minutes.  They brought him up to talk

11:37:35   3   about sales in other countries.  And I asked him two

11:37:39   4   questions.

11:37:40   5       One:  Corporation uses technology that belongs

11:37:45   6   someone else, they should take a license, right?

11:37:50   7       Answer:  Yes, I agree with that.

11:37:54   8       Second question:  If they take that technology and

11:37:56   9   they use it and they don't take a license, they ought to

11:38:00  10   pay for it, I asked.

11:38:02  11       Answer:  Yes.

11:38:04  12       That's the answer.

11:38:08  13       We appreciate your time and attention, especially

11:38:12  14   during this time, COVID, it's different.  Some of you may

11:38:20  15   have had some hesitation in being part of a jury.  We

11:38:23  16   appreciate what you've done, what you've allowed us to do,

11:38:27  17   have our day and bring ASUS to account.

11:38:30  18       Answer yes to infringement; no to invalidity; 2.8

11:38:35  19   in damages.  That's the reasonable amount of the value of

11:38:38  20   our invention.

11:38:39  21       Thank you.

11:38:40  22       THE COURT:  Thank you, Mr. Bennett.

11:38:41  23       All right.  Ladies and gentlemen, that presents

11:38:43  24   the -- concludes the presentation of the parties' closing

11:38:47  25   arguments to you.  It's now time for you to retire to the

| | | |
|---|---|---|
| 11:38:52 | 1 | jury room to begin your deliberations.  Each of you will |
| 11:38:55 | 2 | have a copy of the Court's instruction previously given to |
| 11:38:59 | 3 | you and one copy of the verdict form. |
| 11:39:01 | 4 | The first thing you should do is to select one |
| 11:39:04 | 5 | among your number to serve as your foreperson who will |
| 11:39:07 | 6 | guide your deliberations in the jury room and speak for you |
| 11:39:14 | 7 | here in the courtroom. |
| 11:39:15 | 8 | If you need to recess for any time during your |
| 11:39:18 | 9 | deliberations, please follow all of the instructions that I |
| 11:39:22 | 10 | have previously given you about your conduct during the |
| 11:39:24 | 11 | trial. |
| 11:39:25 | 12 | And if at any time you need to communicate with me |
| 11:39:28 | 13 | during your deliberations, please get a written message or |
| 11:39:32 | 14 | question on the paper that is provided to you to the court |
| 11:39:35 | 15 | security officer who will bring it to me and then I will |
| 11:39:39 | 16 | respond in writing or by having you brought into the |
| 11:39:42 | 17 | courtroom where I can address you orally. |
| 11:39:45 | 18 | I will always disclose to your attorneys your |
| 11:39:52 | 19 | question and my response before I answer your question. |
| 11:39:56 | 20 | With those comments, it's now time to go to the |
| 11:40:00 | 21 | jury room to begin your deliberations. |
| 11:40:02 | 22 | COURT SECURITY OFFICER:  All rise for the jury. |
| 11:40:31 | 23 | (Jury out.) |
| 11:40:32 | 24 | THE COURT:  Okay.  Please be seated. |
| 11:40:34 | 25 | Just a couple of comments.  Excellent closings to |

11:40:39  1  both of you.

11:40:40  2          Mr. Oliver, I'm sorry to cut you off.  I offered

11:40:43  3  you a warning, and you declined that.  And I didn't have

11:40:45  4  much choice about that.

11:40:47  5          MR. OLIVER:  I understand.  No offense taken.  And

11:40:49  6  I'm sorry I even flipped ahead.  I wanted to say thank you,

11:40:53  7  but I apologize to the Court.

11:40:55  8          THE COURT:  That's fine.

11:40:56  9          Okay.  Let me ask you all to stay near the

11:40:59  10  courthouse.  Doesn't have to be the courtroom, but near the

11:41:02  11  courthouse and accessible by phone.  If you would, both

11:41:07  12  sides provide your phone number to Mrs. Schroeder in case

11:41:11  13  we need to reach you.

11:41:13  14          Oftentimes there will be a note from the jury

11:41:16  15  looking for some document or something.  And if you can get

11:41:19  16  back to the courthouse within ten minutes or so, that would

11:41:22  17  be very helpful.

11:41:23  18          You're welcome to pack up whatever you have, but I

11:41:26  19  would ask that you not take it out of the courtroom.  As I

11:41:29  20  said, sometimes a note might require looking for an exhibit

11:41:35  21  or finding an exhibit, and I need for you all to be able to

11:41:38  22  locate that fairly quickly.  So feel free to box everything

11:41:43  23  up.  Just don't leave -- don't take it out of the courtroom

11:41:47  24  yet.

11:41:47  25          Any questions?

| | | |
|---|---|---|
| 11:41:50 | 1 | All right.  We'll be in recess until we hear from |
| 11:41:52 | 2 | the jury. |
| 11:41:53 | 3 | (Recess.) |
| 02:16:12 | 4 | THE COURT:  Okay.  The jury has reached a verdict. |
| 02:16:15 | 5 | Anything we need to discuss before we have them brought in? |
| 02:16:19 | 6 | MR. BENNETT:  After the verdict can we contact |
| 02:16:22 | 7 | jurors, Your Honor? |
| 02:16:23 | 8 | THE COURT:  Here is my general policy.  I -- I |
| 02:16:26 | 9 | will go back and visit with the jury afterwards, not about |
| 02:16:30 | 10 | the case, of course, or how they reached their verdict but |
| 02:16:35 | 11 | just to find out from them how our processes work, how we |
| 02:16:40 | 12 | function as a court, was there anything we did that they |
| 02:16:44 | 13 | didn't like and, you know, just sort of data points, so to |
| 02:16:48 | 14 | speak, for how we -- how we deal with the jury. |
| 02:16:52 | 15 | And then I'll tell them that they're welcome to |
| 02:16:55 | 16 | talk to you if they want to talk to you, but they're not |
| 02:16:58 | 17 | required to talk to you.  It's just sort of up to them. |
| 02:17:04 | 18 | What I have -- what I will suggest to them, if you |
| 02:17:07 | 19 | guys want to sort of congregate in the lobby down there, if |
| 02:17:15 | 20 | they're going out and they are comfortable talking to you, |
| 02:17:17 | 21 | they're more than welcome to talk to you, but if they don't |
| 02:17:21 | 22 | they can wave goodbye and go on home.  But I don't have any |
| 02:17:31 | 23 | prohibition against them talking to you if they want to |
| 02:17:38 | 24 | talk to you. |
| 02:17:39 | 25 | Anything else? |

02:17:41  1            MR. BENNETT:  No, Your Honor.

02:17:42  2            THE COURT:  Okay.  Let's have the jury brought in

02:17:47  3   please.

02:17:51  4            (Jury in.)

02:18:19  5            THE COURT:  Please be seated.

02:18:21  6            Mr. Lambeth, I understand you're our foreperson.

02:18:26  7   Is that correct?

02:18:27  8            FOREPERSON:  Yes, sir.

02:18:28  9            THE COURT:  Has the jury reached a verdict?

02:18:32  10           FOREPERSON:  We have.

02:18:33  11           THE COURT:  Is the verdict unanimous?

02:18:37  12           FOREPERSON:  Yes, it is.

02:18:38  13           THE COURT:  I'll ask Mr. Lambeth to hand the

02:18:42  14   verdict form to Mr. Richardson, who will bring it to

02:18:46  15   Mrs. Schroeder, who will bring it to me.

02:18:59  16           Okay.  I'm going to hand the verdict form back to

02:19:03  17   Mrs. Schroeder.

02:19:04  18           Ladies and gentlemen of the jury, at this time

02:19:06  19   Mrs. Schroeder is going to read the verdict form and as she

02:19:10  20   does so, I want you to listen very carefully to her because

02:19:14  21   when she gets to the end, I'm going to be ask you whether

02:19:18  22   this is each of your verdicts, so that I can confirm that

02:19:23  23   -- the unanimity of the jury.

02:19:26  24           At this time, Mrs. Schroeder will read the

02:19:29  25   verdict.

02:19:30  1          COURT DEPUTY:  Question Number 1:  Has Lone Star
02:19:33  2   proved by a preponderance of the evidence that ASUS
02:19:36  3   infringed any of the following claims of U.S. Patent
02:19:39  4   number 6,724,435, the '435 patent?
02:19:44  5          Claim 1:  Yes.
02:19:47  6          Claim 2:  Yes.
02:19:51  7          Claim 3:  Yes.
02:19:54  8          Claim 5:  Yes.
02:19:58  9          Claim 6:  Yes.
02:20:00  10          Claim 13:  Yes.
02:20:02  11          Claim 14:  Yes.
02:20:04  12          Claim 15:  Yes.
02:20:11  13          COURT DEPUTY:  Question Number 2:  Has ASUS
02:20:14  14   provided by clear and convincing evidence that any of the
02:20:17  15   following claims of Lone Star's '435 patent are invalid?
02:20:22  16          Claim 1:  No.
02:20:24  17          Claim 2:  No.
02:20:29  18          Claim 3:  No.
02:20:31  19          Claim 5:  No.
02:20:34  20          Claim 6:  No.
02:20:37  21          Claim 13:  No.
02:20:39  22          Claim 14:  No.
02:20:41  23          Claim 15:  No.
02:20:44  24          What sum of money, if paid now, do you find by a
02:20:49  25   preponderance of the evidence would fairly and reasonably

02:20:55  1  compensate Lone Star for ASUS's infringement of the '435

02:20:58  2  patent as a one-time lump sum payment?

02:21:02  3       $825,000.

02:21:05  4       Signed and dated today.

02:21:06  5       THE COURT:  All right.  Thank you, Mrs. Schroeder.

02:21:08  6       Ladies and gentlemen of the jury, will all of you

02:21:11  7  who voted for this verdict please stand at this time.

02:21:16  8       All right.  You may be seated and let the record

02:21:20  9  reflect that all eight jurors stood in response to my

02:21:25  10  request to poll the jury.

02:21:28  11       The verdict is confirmed and accepted and will be

02:21:31  12  filed by the clerk of the court.

02:21:33  13       Ladies and gentlemen of the jury, I told you

02:21:36  14  throughout this case that you could not discuss the case

02:21:40  15  with anyone, including yourselves, until the deliberations

02:21:47  16  had begun.  Your duty in this matter has now concluded and

02:21:58  17  I'm releasing you from those obligations.  Therefore,

02:22:01  18  you're more than happy -- more than welcome to talk with

02:22:04  19  anybody about this at any time.  You're likewise just as

02:22:08  20  welcome not to say another word to anybody about it.  It's

02:22:12  21  totally up to you and your choice.

02:22:15  22       I do have -- a practice in my court is to visit

02:22:22  23  with the jurors very briefly after I've talked to a lawyers

02:22:28  24  for a few moments.  I want to talk to you about your

02:22:32  25  experience as jurors, not to discuss the case or how you

02:22:35   1   reached the verdict you reached, but just to understand if

02:22:39   2   there is anything that we can do as a public institution,

02:22:43   3   as a court, to improve the juror experience.

02:22:48   4        And your having been here and served -- having

02:22:52   5   served with us for a week, I think, and knowing how that

02:22:58   6   experience has been for you would be very beneficial to me.

02:23:02   7        So if you would not mind waiting in the jury room

02:23:07   8   for just a few minutes for me, I will be in to visit with

02:23:11   9   you.

02:23:12   10        I said at the beginning of this trial on Monday

02:23:18   11   that jury service is one of the most important services

02:23:23   12   that you can render to your country, and I believe that

02:23:26   13   more and more with each trial that I have.  I think there

02:23:31   14   are three good -- three pillars to great citizenship in our

02:23:38   15   country.  The first is answering the call of our country in

02:23:44   16   a time of conflict.  The second is being an informed and

02:23:50   17   regular voter.  And the third is being willing to serve as

02:23:54   18   a juror.

02:23:55   19        You-all have demonstrated to all of us this week

02:24:01   20   that aspect of good citizenship by being here and by being

02:24:11   21   willing to give up your time and your energy and your

02:24:14   22   effort to hearing this dispute between these parties.

02:24:18   23        So I know that the parties appreciate that, the

02:24:21   24   attorneys appreciate that, and I, on behalf of the Eastern

02:24:25   25   District of Texas, appreciate that as well.

02:24:26  1          We would pretty well have to shut down for

02:24:30  2   business around here if we did not have people like you-all

02:24:35  3   who were willing to come up here and spend a week of their

02:24:38  4   lives helping us resolve matters like this and on behalf of

02:24:42  5   the Eastern District of Texas I want you to know how

02:24:45  6   grateful we are that you-all have been willing to serve as

02:24:49  7   jurors this week.

02:24:50  8          So thank you very, very much.

02:24:55  9          At this time, Mr. Richardson will take you back to

02:24:59  10   the jury room and if you will wait for a few minutes for

02:25:03  11   me, I need to visit with the attorneys.

02:25:05  12          You're dismissed at this time.

02:25:08  13          COURT SECURITY OFFICER:  All rise.

02:25:09  14          (Jury out.).

02:25:11  15          THE COURT:  Okay.  Please be seated.

02:25:29  16          Mrs. Schroeder has the verdict if anyone wishes to

02:25:33  17   see it.  My common practice is to ask the parties to meet

02:25:38  18   and confer regarding a post-trial briefing schedule and to

02:25:46  19   endeavor to do that within seven to ten days of today.  So

02:25:51  20   by next Friday, if you will file a notice on the docket

02:25:55  21   indicating whether you have agreed to a briefing schedule

02:25:58  22   for any post-trial motions and if so, what that proposed

02:26:02  23   briefing schedule is.

02:26:03  24          Any questions about that from the Plaintiff?

02:26:07  25          MR. BENNETT:  No, Your Honor.

02:26:08   1          THE COURT:  Any questions from the Defendant.

02:26:10   2          MR. OLIVER:  No questions, Your Honor.  I do

02:26:13   3   believe there's the inoperability issue that we discussed

02:26:18   4   taking up at a later date.

02:26:20   5          THE COURT:  Again, happy to handle that however

02:26:23   6   the parties can agree.  What I would propose is you all

02:26:28   7   meet and confer on a post-trial briefing schedule and, once

02:26:31   8   you all have submitted that, if you can agree, we will --

02:26:35   9   we'll -- at the time we enter that order, we'll set it for

02:26:39  10   a hearing and unless someone believes otherwise, we can

02:26:44  11   deal with that at that time, either that very day or the

02:26:47  12   day before or something.

02:26:50  13          How does that sound, Mr. Oliver?

02:26:53  14          MR. OLIVER:  That sounds good.  Thank you.

02:26:56  15          THE COURT:  Okay.  Anything else?  All right.

02:27:01  16   Congratulations again on a well-tried case and safe travels

02:27:05  17   to all of you.

02:27:06  18          MR. BENNETT:  Thank you, Your Honor.

02:27:07  19          MR. OLIVER:  Thank you, Your Honor.

02:27:08  20          COURT SECURITY OFFICER:  All rise.

02:27:12  21          (WHEREUPON, these proceedings were concluded.)

          22

          23

          24

          25

<u>COURT REPORTER'S CERTIFICATION</u>

1

2          I HEREBY CERTIFY that the foregoing is a true and

3    correct transcript from the stenographic notes of the

4    proceedings in the above-entitled matter to the best of my

5    ability.

6

7    <u>May 21, 2021</u>          <u>/s KATHRYN McALPINE/_____</u>
     Date                    KATHRYN McALPINE, RPR, CSR, CCR
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25