IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| LONE STAR TECHNOLOGICAL INNOVATIONS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ASUSTEK COMPUTER INC.,<br><br>Defendant. | Civil Action No. 6:19-CV-00059-RWS<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT ASUSTEK COMPUTER INC.'S REPLY BRIEF IN SUPPORT OF ITS COMBINED RENEWED MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND MOTION FOR REMITTITUR (DKT. 368)**

ASUSTeK Computer Inc. ("ASUS" or "Defendant") respectfully submits this Reply brief in response to Lone Star's Opposition (Dkt. 369) to ASUS's renewed JMOL motion (Dkt. 368). Below, ASUS provides corrections and clarification to numerous assertions and arguments made in Lone Star's Opposition. In sum, Lone Star's Opposition is not persuasive, and the Court should grant ASUS's motion for remittitur.

1. On page 2 of the Opposition, Lone Star cites to various cases attempting to suggest that damages can be awarded for all sales regardless of use of the infringing method. This isn't correct. Even the cases cited by Lone Star contradict Lone Star's argument. *See, e.g., Sentius Int'l, LLC v. Microsoft Corp.,* No. 5:13-cv-00825-PSG, 2015 U.S. Dist. LEXIS 10423, at *39 (N.D. Cal. Jan. 27, 2015) ("Microsoft is correct that Sentius is required to show "proof' that the accused devices 'actually executed the claimed method.'").. On pages 1 and 2 of the Opposition, Lone Star tries to minimize or eliminate the importance of quantifying the amount of usage of the infringing features. However, under the controlling law and the law of the case, quantification matters, as the Court held

1

in the JMOL Order (Dkt. 268). *See e.g.,* Dkt. 268 at 12 ("damages award ought to be correlated, in some respect, to the extent the infringing method is used by consumers.")

2. On pages 2 and 3 of the Opposition, Lone Star asserts that the royalty rate paid by Acer for the license to the patent-in-suit factored in the extent of "use" of the patented technology. That is not true. It is simply impossible that that would be the case. When the Acer license agreement was entered, the patent-in-suit included system claims, i.e., claims 17-30 that were invalidated later by this Court's claim construction order. ECF No. 105 p. 28 ("[C]laim 17 and all claims depending therefrom are indefinite under 35 U.S.C. §112 ¶2."). So the extent of use was not important at all at the time of the Acer license. Rather, every product was assumed to infringe the system claims. So, unlike this trial where proof of the extent of use of the method was important, the parties to the Acer license just assumed infringement.

3. On pages 3 and 4 of the Opposition, Lone Star mentions the commissioned survey and the testimony of ASUS's damages expert Mr. Reed. As an initial matter, Mr. Reed's testimony generally and Mr. Reed's testimony about the survey was not presented to the jury until after ASUS moved for JMOL under Rule 50(a). ASUS's Rule 50(a) motion (Dkt. 347) was filed on June 28, after Lone Star had rested its case but before Mr. Reed offered any testimony. Mr. Reed began testifying on June 29 (Trial Tr. p. 573). ASUS's Rule 50(a) JMOL motion was based on Lone Star's failure to provide any evidence that more than about 5 people infringed. Thus, Lone Star should not be permitted to rely upon Mr. Reed's later survey testimony to defend against ASUS's renewed JMOL motion.

4. However, should the Court allow Lone Star to rely on Mr. Reed's survey testimony, the testimony does not help Lone Star. Reed's survey testimony was not evidence of the number of people that actually used the method. Rather, it was rebuttal to Lone Star's assumption that 100% used the method. Moreover, Mr. Reed's evidence at most only establishes that Lone Star is entitled

2

to damages for 17 users. And those users are already accounted for in the units that are in the remittitur calculation. But even if the Court added the 17 users to the calculation, that would increase the total amount of the remittitur by less than $12.00, not hundreds of thousands of dollars. In sum, the survey evidence does not help Lone Star.

5. In numerous places in the Opposition, Lone Star argues that any remittitur should not be in a lesser amount than a hypothetical amount identified by ASUS's damages expert. *See e.g.,* Opposition at 1 ("Asus also requests the Court reduce the damages award—not to the $461,800 that Asus's own damages expert testified constitute a reasonable royalty— but for a much less amount of $17.22 or $172.20.") Lone Star misunderstands the law regarding hypothetical negotiations and misstates Mr. Reed's testimony. As damages experts, both Mr. Reed and Mr. Dell (Lone Star's expert) were required to assume that each device infringed. And each expert so testified. Trial Tr. at 384:20-385:10 (Mr. Dell) and 578:5-13 (Mr. Reed). Their testimony does not establish actual use without proof of use. Rather, their testimony is directed to their opinions regarding a reasonable royalty if someone actually proved that <u>every</u> device was used to perform the infringing method. Neither Mr. Dell nor Mr. Reed provided any testimony that every device was used to perform the infringing method. Nor did any other witness.

6. On page 7 of the Opposition, Lone Star fails to offer even token resistance to ASUS's assertion that the only way the jury could have arrived at the damages award that it arrived at was by assuming that each and every accused monitor was used in an infringing manner. There is no evidence of that much usage and the Court should set aside the jury's verdict. Lone Star does not even attempt to explain how the jury could have arrived at the damages award some other way.

7. On pages 8 and 9 of the Opposition, Lone Star lists numerous webpages of ASUS and third parties as evidence of extent of infringing use. First, as was established in the original

JMOL order,[1] webpages don't show circumstantial evidence of usage beyond a single user of each type of accused product. Second, the Court had warned Lone Star that value and usage are not the same thing. Dkt. 324 Order at 8 ("The Court recognizes that there is a thin line—between evidence of value and the correlation to consumer usage as required by *Lucent Techs.* — that will be policed at trial. The Court will hold Lone Star to its representation that it will put on evidence that "directly concerns *Georgia Pacific* Factor No. 11."") The webpages listed by Lone Star might be considered by the jury to show value to ASUS and inducement by ASUS, but not they are not evidence of consumer usage. Even videos showing the number of viewers do not establish (a) that those viewers are either in the United States, (b) that those viewers used the method on an ASUS product in the United States, or (c) that those viewers were induced by ASUS (as opposed to being induced by the third-party video).

8. On page 10 of the Opposition, Lone Star states that its does not believe that a new trial is necessary. As Lone Star is not requesting a new trial as an alternative to remittitur, the question of whether Lone Star is would be entitled to yet another new trial on damages is moot.

9. On page 11 of the Opposition, Lone Star alleges that ASUS ambushed its damages expert. Also, without citing to authority, Lone Star alleges that ASUS waived argument that Lone Star's damages expert's damages calculation improperly included products that were not found to infringe in the May 2021 trial. Lone Star's assertions in this regard are without merit. It is normal for cross-examination of misrepresentations and erroneous positions to take place at trial. There is no waiver in deciding to forego motion practice, especially when the decision is a trial strategy decision to cross-examine a witness about his errors at trial to demonstrate to the jury that the

---

[1] ECF No. 268 p. 13 (quoting the *Lucent* case's statement that "…all the circumstantial evidence supports is the jury's implicit finding that at least one person performed the patented method one time in the United States during the relevant period. Beyond that finding, all the jury had was speculation…" and then holding, "Such is the case here.").

witness is not credible.

10. On page 11, Lone Star implicitly concedes that its damages expert included non-accused products in its damages calculation. Lone Star contends that ASUS is the one at fault for producing sales information for non-accused products. Lone Star's argument is flawed. ASUS over-produced discovery on many fronts out of abundance of caution and in compliance with Rule 26. It was Lone Star's duty to ensure that it only used the relevant data when it proposed a damages number. Further, Lone Star's argument about 135 product families (also on page 11) is flawed. Lone Star limited its damages to those products identified in the user manuals. At the infringement trial, Dr. Ducharme limited his testimony to those products identified by the user manuals. Those were 135 total products, as demonstrated in the product listing that Dr. Ducharme showed to the jury. As an aside, some user manuals were included by Lone Star multiple times; e.g., plaintiffs exhibits P-26-1 through P-26-8 are just copies of the same document with different bates numbers applied by Lone Star. Lone Star did so because there were 8 accused products listed in that one manual. The parties didn't stipulate to representative products. And Lone Star is only entitled an infringement finding for the products identified to the initial jury as accused products.

11. Although counsel didn't identify all non-accused products, the bench conference references numerous categories of products that were not accused but were included in Mr. Dell's calculations. Trial Tr. p. 422:5-8 (referring to MK, ML, MM, MS, MT, MW products); *See also* Trial Tr. p. 422:2-3 (referring to MB168B, which doesn't even have the relevant color controls). Out of the 128 non-accused products that ASUS identified in its JMOL Exhibit 3, Lone Star pointed to one (VP247QG) that is purportedly included in the accused products. Lone Star claims it was mentioned in the bench conference during trial without pointing to any citation; ASUS cannot find that product in the trial transcript. But even if it was there, this is less than 1% of the 128 non-accused products that were included improperly by Mr. Dell. The non-accused products addressed

with the jury were MB168B (Trial T. p. 482) and VE228H (Trial Tr. p. 483).  Importantly, Lone Star never identified the accused products to this jury, so jury couldn't know which products to include in the damages calculation.  That was Lone Star's burden and Lone Star failed to meet its burden.

**CONCLUSION**

For the reasons set forth above and in its initial motion filings, ASUS respectfully requests that the Court grant ASUS's renewed JMOL that Lone Star is entitled to collect damages on only 246 units of accused products and grant remittitur in order to reduce the jury's excessive damages award.

Dated:  July 27, 2022                                  Respectfully submitted,

By: _/s/ Vinay V. Joshi_
Vinay V. Joshi (Calif. Bar No. 213487)
vjoshi@thepatentattorneys.com
Andrew T. Oliver (Calif. Bar No. 226098)
aoliver@atwiplaw.com
Michael C. Ting (Calif. Bar No. 2476100)
mting@atwiplaw.com
Amin Turocy & Watson LLP
160 West Santa Clara Street
Suite 975
San Jose CA 95113
Telephone: (650) 618-6481
Facsimile:  (216) 696-8731

Counsel for Defendant
ASUSTeK Computer Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 27, 2022, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, Tyler Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Vinay V. Joshi*
**Vinay V. Joshi**